# EXHIBIT 7



# State of New Jersey
OFFICE OF THE GOVERNOR
P.O. Box 001
TRENTON, NJ 08625-0001

PHILIP D. MURPHY
*Governor*

September 23, 2022

FHWA - NY Division
RE: CBDTP EA, Consolidated State of New Jersey Government Comments
Leo W. O'Brien Federal Building
11A, Clinton Ave, Suite 719, Albany, NY 12207

Dear Federal Highway Administration,

The New Jersey Department of Transportation (NJDOT), NJ Transit (NJT), New Jersey Turnpike Authority (NJTA), have reviewed the National Environmental Policy Act (NEPA) Environmental Assessment (EA), for the Central Business District (CBD) Tolling Program (the Program or CBDTP).

While New Jersey is conceptually open to traditional congestion pricing that makes traffic reduction its main goal, the Program as proposed has revenue production as a primary goal and the EA released outlines scenarios that cause concern among New Jersey commuters and agencies. There is a high degree of uncertainty and potential for significant impact associated with the CBDTP as outlined. As such, an Environmental Impact Statement should be conducted.

New Jersey roads will be impacted, our vulnerable communities exposed to more congestion and air quality issues, and our state services will be further strained. New Jersey will be left with the difficult decision of considering fare hikes to accommodate these costs, which would be passed on to customers, many of them socioeconomically disadvantaged. Perversely, this may disincentivize transit use and would in fact increase Vehicle Miles Traveled on the New Jersey side of the river, the exact opposite of one of the Program's stated goals.

The Environmental Assessment (EA) is long and complex: 4005 pages in total. Six weeks at the end of summer is insufficient for review and comment. Public hearings should have been held as part of the EA's development, not after the fact. Due to the lack of public outreach, few New Jerseyans had opportunity to comment on the EA. New Jersey residents have the unfortunate distinction of being directly impacted by the Metropolitan Transportation Authority (MTA) plan without any representation in the New York State Legislature, the MTA Board, or the Traffic Mobility Review Board and will not receive any direct benefit from the revenue that the MTA will raise as its stated goal.

Please find attached technical comments from the impacted New Jersey transportation agencies. While we share a goal of cleaner air and greater public transit investment, the burden must be paid by those who are able and willing, not by those who can least afford it, who have no alternatives, and who did not have a voice in the matter. We must get congestion pricing right.

Given the outstanding concerns and lack of analysis produced on how this program will affect New Jersey, the State requests completion of an Environmental Impact Statement. Thank you for your review and consideration.

Sincerely,

Philip D. Murphy
Governor

*New Jersey Is An Equal Opportunity Employer   •   Printed on Recycled Paper and Recyclable*

## Shared Comments by New Jersey Transportation Agencies (NJDOT, NJT, and NJTA)

1. **The EA does not adequately consider New Jersey, which will be significantly impacted.** Not enough analysis has been done on the impacts that the Central Business District (CBD) Tolling Program (the Program) will have on New Jersey. The Best Practices Model (BPM) used by this Program in capturing New Jersey market dynamics is limited. Primarily a regional impact model, the BPM is not necessarily well validated at the facility level, especially in New Jersey.

The National Environmental Policy Act (NEPA) EA for the CBDTP contains a detailed discussion of impacts to various neighborhoods in New York City, but only a generalized analysis of New Jersey. The modeling considers the overall New Jersey transportation network but fails to perform fine-grained analysis of the different markets within New Jersey as it does with New York. It treats areas such as Bergen, Hudson and Essex Counties similarly, even though the trip-making patterns in those areas vary based on the available transportation network, demographics, dominant employment sector and other factors. For example, Hudson County's percentage of households without access to an automobile is similar to Queens (33% vs 37%). The EA contains a neighborhood level discussion of Queens auto access (p. 5A-16) but no such detail regarding Hudson County, even though they are similarly situated with respect to Manhattan (i.e., the Hudson River is all that separates Hudson County from the CBD just as only the East River separates Queens County from the CBD).

2. **Equity and environmental justice concerns.** The CBDTP will drive new traffic to disadvantaged communities. Traffic will be driven both due to toll shopping at the Hudson River crossings that receive a credit and because the economic burden created by the CBDTP charge of up to $23 will cause traffic to New Jersey's main transit hubs for a "park and ride" response. The Lincoln and Holland tunnels are fed by roads that go through communities such as Union City, Jersey City, and Newark. Similarly, New Jersey's transit hubs – due to legacy passenger railroad investments – are concentrated in some of the same communities enumerated above (Hoboken, Jersey City, and Newark). One in four children in Newark has asthma, three times the national rate. The CBTDP appears to be in direct contradiction to the President's Justice40 commitments as well as Governor Murphy's E.O. 23 on environmental justice.

The socioeconomic and demographic data on who currently drives into the Manhattan CBD is not available or considered in this analysis. Consider that many of these individuals cannot afford to live in Manhattan and must travel great lengths to reach their workplace. Some may work in professions that require off-shift travel when public transit service is reduced. It would be a mistake to assume, without data, that only the most privileged drive into New York

3. **Capacity concerns.** The increase in mass transit ridership (e.g., NJ Transit, PATH, private bus carriers, etc.), which may result from the proposed project would need to accommodate the demand for increased parking facilities and access to mass transit areas outside of the CBD. Furthermore, with the commencement of several infrastructure projects such as the Hudson Tunnel Project and the new Port Authority Bus Terminal, modifications to travel patterns to accommodate construction will also be required. The NJ Transit network may not be prepared for an increase in ridership due to capital program commitments to these projects, its existing conversion of its bus fleet to a Zero Emission bus fleet, and the nationwide shortage of Commercial Driver's License holders (a requirement to serve as a bus operator). Subchapter 4D considers parking in some detail in New York City neighborhoods but speaks only generally of the roughly 400 commuter and intercity rail stations in the regional analysis area. No analysis of the capacity to meet the anticipated increased public transit ridership at park-and-ride facilities on the NJ Turnpike roadways or other New Jersey roadways was performed for the EA.

## Comments from New Jersey Department of Transportation (NJDOT):

The following topics warrant further consideration and study for areas outside of the CBD:

**1. New traffic patterns need to be studied.** The EA mentions that with all the CBD tolling alternatives, between 72 percent and 82 percent of the total traffic reductions in the Manhattan CBD would be from through trips finding other paths that do not include the Manhattan CBD. This will lead to new traffic patterns that must be studied as travelers take diversions to avoid the CBD tolling area, leading to increased traffic and potentially environmental impacts (air and noise) in other areas.

**2. A comprehensive economic evaluation of tolling costs for travelers entering and exiting the CBD by vehicle or truck, more specifically commuters from New Jersey is not included in the EA.** With inflationary pressures already in the costs of goods and services today, an additional cost to these commuters and transportation of goods might be overly burdensome. Furthermore, the collection of tolls on Environmental Justice communities may lead to double tolling for using both bridges/tunnels as well as the CBD access with communities already striving to pay for transportation access. Additionally, New Jersey may need to enable cost-saving measures for certain New Jersey residents/users, similar to what MTA is proposing for certain New York residents/users (disabled, elderly, school-age, etc.) to defray the cost of CBD tolls that are passed onto these riders. Consideration should be given to providing funding from the toll money to offset these costs for New Jersey residents/users.

**3. New Jersey is disproportionally affected.** In Appendix 4.A.2, Transportation, both the 2023 and 2045 Work Journeys to Manhattan CBD tables show projected increased journeys from New Jersey, while journeys from other non-CBD areas into the CBD decrease significantly. Based on a small increase in mode share, New Jersey commuters are affected disproportionally due to this policy (all tolling scenarios).

**4. Air quality analyses show negative results.** Air quality analyses in New Jersey (mesoscale, mobile source air toxic, and greenhouse gas) resulted in the biggest increase and decrease in vehicle miles traveled in Bergen and Hudson Counties, respectively. The analyses demonstrate increases in air quality pollutants, including carbon monoxide (CO), ozone ($O_3$), particulate matter ($PM_{2.5}$) and ($PM_{10}$), sulfur dioxide ($SO_3$), volatile organic compounds (VOC), nitrogen oxides (NOx) and carbon dioxide ($CO_2e$) in the 2023 and 2045 projections for Bergen County. The potential adverse air quality effect is related to emissions from truck avoidance of the CBD tolling area.

3

**Comments from New Jersey Turnpike Authority (NJTA):**

The below was compiled based on comments received from the NJTA's Finance, Engineering and Operations Departments, and the NJTA's General Traffic Engineering Consultant and General Consulting Engineer and represents a high-level review of the EA with a focus on the potential impacts to the NJTA.

It should be noted that a detailed review of the technical analyses was not performed as part of this review due to time constraints and the numerous tolling scenarios presented with a voluminous amount of supporting data.

**1. Insufficient analysis for New Jersey.** There appears to be a significantly reduced level of analyses performed for the New Jersey impacts as compared with the level of analyses performed for the New York impacts specifically at the approaches to the George Washington Bridge (Interstate 80 and Interstate 95 at the northern end of the NJ Turnpike roadways), and Approaches to the Verrazano Bridge (Interchanges 10, 11, and 13).

**2. New Jersey was inadequately consulted.** Page 3-1 of the EA indicates Federal and New York States agencies were consulted in preparing the EA. Why weren't New Jersey agencies similarly consulted as the Program also has significant impacts on New Jersey?

**3. CBDTP will impact NJTA's ability to maintain its assets.** NJTA's operation, maintenance, and capital improvements are funded from toll revenue. The CBDTP is anticipated to make changes in travel patterns that will impact NJTA's toll revenue by reducing vehicular trips into Manhattan, which will alter traffic on NJ Turnpike roadways. Revenue reductions on the NJ Turnpike roadways resulting from traffic diversions or increased use of alternate means of transportation may impact the ability of the NJTA to fund its Capital Improvement Program and/or State-of-Good-Repair Maintenance Program. Using the NJTA forecast for systemwide annual toll revenue in 2023, the CBDTP is estimated to result in an annual loss of $8.1M to $18.0M to NJTA, depending on the potential tolling scenario adopted. What criteria has been included in the tolling scenarios to consider the impacts to the NJTA's revenue and what measures are proposed to mitigate them?

**4. CBDTP will result in accelerated deterioration of NJTA assets.** Page 2-34 of the EA indicates that net revenues to fund $15B for MTA capital projects will be generated. This net revenue will come at a cost to New Jersey transportation agencies that would need to increase investments in their infrastructure to address accelerated deterioration due to additional diverted traffic volume.

**5. CBDTP does not contemplate mitigation adverse impacts to NJTA.** What analysis has been performed to demonstrate the impacts to the operation of the NJ Turnpike roadways to accommodate the anticipated diversions and how does the CBDTP propose to mitigate these impacts?

**6. CBDTP has not articulated revenue sharing with impacted agencies.** Has the MTA considered mitigating impacts from the CBDTP by cost sharing of the net revenues from the CBDTP with the impacted agencies?

4

## Comments from NJ Transit (NJT):

NJ Transit's review was performed within the timeframe constraints of the review period. It is not comprehensive, and NJ Transit believes that much additional analysis is required to address the EA's description of potential impacts to both roadways and transit networks.

Based on NJ Transit's knowledge of the modeling techniques used and the stated results as they apply to New Jersey and the transportation network in the state, NJ Transit does not agree that a Finding of No Significant Impact (FONSI) is an appropriate outcome of the NEPA process at this time.

The Program's modeling approach conveys an inappropriate level of certainty regarding potential Program impacts. The EA should acknowledge that there is an intrinsic lack of forecasting certainty given the scope of the Program, and consequently should not define (and dismiss) the potential for impacts on the transportation network as is done in EA. To state that based on high-level modeling no major impacts are identified, and therefore the Project Sponsors are not responsible for any mitigation, strains credulity in the context of such a broad-based regional Program for which there is no national precedent.

**1. Additional analysis of tolling scenarios is needed.** Such analysis is needed to define the range of possible outcomes more accurately should the Program be implemented. The EA should acknowledge the potential for additional impacts given the sensitivity of New Jersey's transportation network to tolling.[1] The EA should include a more flexible framework to address unforeseen impacts; failing to do so would shift the mitigation burden for New York City's transportation work to NJ Transit.

Key transit facilities are potentially subject to increased area automobile traffic, which would not only cause inconvenience but also potential operational impacts, especially to bus passengers, who comprise most of the NJ Transit customers and are more likely to be members of minority and low-income populations. Associated potential air quality impacts could result from those auto users who no longer drive into the CBD but instead travel via local roads to transit nodes in New Jersey. These locations are in various stages of monitoring for attainment of air quality standards of various pollutants of concern. NJ Transit recommends further broad-based monitoring at multiple locations as issues could emerge at transit hubs including Secaucus Junction, Journal Square, Liberty State Park, Newark Penn Station, or other facilities. Mitigations should be identified to address potential impacts to both crowding on the transit system, and traffic congestion and air quality around key transit facilities. The Program identifies a goal of auto traffic reduction traveling to the CBD, and presumably a shift of motorists to transit, but under some scenarios there are contradictory policy proposals, including a lack of exemptions for transit providers. This could increase operating costs for such providers, which could result in the need for those providers to implement fare increases, and therefore lead to less attractive transit options across the region. The Program increases the potential for increased stress on the transit system at what are generally the highest transit load points approaching the Manhattan CBD.

**2. The commuter bus charge is problematic.** Certain scenarios contemplated by the Program involve charging NJ Transit buses a fee, amounting to a transfer subsidy to MTA by NJ Transit. Costs are estimated to be between $12M-$25M per year, above the more than $2M that NJ Transit pays to the Port

---

[1] NJ Transit would like to acknowledge the limited engagement that MTA initiated regarding potential impacts at Hoboken (although such potential impacts were not identified at other locations). While the EA acknowledges NJ Transit's feedback, the document does not properly acknowledge certain constraints at Hoboken. The application of CEQR techniques led to incorrect statements that there are not 'capacity constrained' elements, especially under perturbed conditions. (P 4C-62). NJ Transit appreciates the EA's statement that "If Tolling Scenario E or F is selected by the MTA's Triborough Bridge and Tunnel Authority (TBTA), the Project Sponsors will monitor ridership at this station during the first year after Project implementation to evaluate whether projected ridership has materialized due to the Project. The specific plan for monitoring is being developed in coordination with PANYNJ (PATH) and NJ Transit" P 4C-64. However, NJ Transit believes that under any scenario, a monitoring plan should be developed and in place for multiple years.

Authority of New York and New Jersey (PANYNJ) for PABT departure fees and more than $15M in PANYNJ tolls on the George Washington Bridge, Lincoln Tunnel, and Holland Tunnel (half of which accrues to the State of New York).

In the case of the Program, it may propose charging NJ Transit buses even though the majority do not touch NYC streets in an appreciable manner, as most trips utilize the PANYNJ-owned Lincoln Tunnel and the Port Authority Bus Terminal (PABT) and associated ramps.[2]

Any scenario that charges buses is not consistent with the Program's stated Purpose & Need, Objectives 1 and 2, to reduce vehicle miles travelled and the number of vehicles in the Manhattan CBD, because it could result in the need for NJ Transit to offset costs via a fare increase, thereby discouraging ridership.[3] Scenarios B and F (and potentially E) provide the necessary exemption for buses, and Scenario F's George Washington Bridge credit would reduce toll shopping at the Lincoln and Holland Tunnels, which could reduce traffic impact on buses utilizing those tunnels.

The Program's implementation would be permanent, and therefore would outlast the impact of the Covid-19 pandemic and associated depressed weekday ridership between New York and New Jersey (weekend travel has returned to roughly pre-pandemic levels). As a result of the Program, more users may shift to a system that was operating at capacity during peak hours, which the EA fails to acknowledge may result in the potential need for NJ Transit to operate more service, with increased maintenance/operating costs and/or the potential for fare increases.

The EA notes the potential for +2.3% increase in NJ Transit rail. Depending on the specific rail service, that ridership increase coupled with ambient growth could require additional service or enhanced capacity if possible, as some trains were already operating well above capacity. Adding service on either the New York-bound bus and rail systems is challenging given the existing capacity constraints at the Port Authority Bus Terminal and Penn Station New York.

Capacity improvements to these facilities and supporting infrastructure are not anticipated for at least a decade. Similarly adding the identified 1.5% to NJ Transit's Lincoln Tunnel-bound bus services would have an impact on a system that was already operating at capacity during peak hours. As noted above, the EA fails to consider that specific percentage increases are speculative, that impacts cannot be predicated with certainly, and that impacts would be distributed unevenly throughout the transit system with resultant uneven impacts. The EA does not demonstrate the fine-grained modeling needed to come to that conclusion with certainty, based on a review of Appendix 4C.[4]

Even modest increases in bus service would result in millions of dollars of new expenditures per year. While any analysis or projection of potential needed service must be treated as extremely rough for the reasons noted above, by one estimate the Program's impacts would lead NJ Transit to add over 100,000 bus trips per year and over 4,700 train trips in a 2045 horizon year context, utilizing pre-pandemic

---

[2] It is notable that there is significant complexity in the proposed tolling infrastructure in PABT area (figure on EA page 2-23) and it is not clear how reliable that infrastructure would be in charging tolls appropriately.]]

[3] Any scenario that charges an individual bus multiple times per day will be an incentive NJ Transit to keep buses in NYC rather than return to NJ in midday, despite the operational efficiency of doing so.

[4] "Suburban commuter rail options in the greater New York City area are extensive. Metro-North and Long Island Rail Road (LIRR) have seated capacity of 100 passengers per car or more. These routes cover extensive geographies, with 13 commuter rail routes serving New York suburban counties and an additional 9 serving New Jersey. Train schedules operate at regular intervals, with most routes operating at least half-hour headways during peak periods (many routes operate more frequently). Increases in ridership due to the Project would be incremental and distributed across the region, such that noteworthy increases are not projected in any local geography. In coordination with Metro-North and LIRR, CEQR methodologies were used to assess ridership of commuter rail lines and stations. This analysis recognizes that five additional passengers within a train car in its most crowded point would be noticeable. Similarly, analyses of stations for the New Jersey Transit Corporation (NJ Transit) and PATH were performed using CEQR guidelines for consistency and because NJ Transit and the Port Authority of New York and New Jersey (PANYNJ) do not have an alternative guideline." *This statement demonstrates the difference in analysis of the LIRR and MNR systems (seating per car, service levels) and its potentially inappropriate application to NJ Transit rail service (which does not necessary operate at regular intervals, for example).*

baseline passenger volumes. While these estimates are not resource constrained and may or may not be feasible at that point in time, they demonstrate that the Program's impacts may be far greater than are stated in the EA.

**3. CBDTP does not consider regional economic dynamics between NJ and NY.** Among the three suburban locations outside of NYC providing 20 percent of NYC's employees (New Jersey, Connecticut and the Hudson Valley, and Long Island), New Jersey sends the most workers and its labor exports to NYC have grown the fastest, according to data from the US Census as well as NY Metropolitan Transportation Council's Hub Bound Report. The average annual tax yield to New York State per New Jersey return is $8,520. Every 1,000 NJ commuters accommodated by Trans-Hudson transit capacity thus generates approximately $8.52M annually in additional personal tax revenue for New York State, according to the New York State Department of Taxation and Finance. The benefits of NJ Transit provided service to New York State (and City) need to be factored into the ultimate policy prescriptions that the Program may recommend. The Program should not recommend policies that inflict harm on other transit providers in the region.