1              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
2
    STATE OF NEW JERSEY,          .
3                                 .
         Plaintiff,               .  Case No. 2:23-cv-3885
4                                 .
    vs.                           .  Newark, New Jersey
5                                 .  September 27, 2023
    UNITED STATES DEPARTMENT OF   .
6   TRANSPORTATION, ET AL,        .
                                  .
7        Defendants.              .

8                      TRANSCRIPT OF HEARING
9            BEFORE THE HONORABLE LEDA D. WETTRE
                 UNITED STATES MAGISTRATE JUDGE
10
    APPEARANCES (the parties appeared via teleconference)
11
    For the Plaintiff:   RANDY M. MASTRO, ESQ.
12                        King & Spalding, LLP
                          1188 Avenue of the Americas
13                        34th Floor
                          New York, NY 10036
14                        212-827-4019
                          rmastro@kslaw.com
15
                          JESSICA BENVENISTY, ESQ.
16                        King & Spalding, LLP
                          1188 Avenue of the Americas
17                        34th Floor
                          New York, NY 10036
18                        212-790-5328
                          jbenvenisty@kslaw.com
19


20
    Audio Operator:
21
    Transcription Service:   KING TRANSCRIPTION SERVICES, LLC
22                           3 South Corporate Drive, Suite 203
                             Riverdale, NJ 07457
23                           (973) 237-6080

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

```
 1  (APPEARANCES continued)

 2  For the Plaintiff:  LAUREN MYERS, ESQ.
                        King & Spalding, LLP
 3                      1188 Avenue of the Americas
                        34ᵗʰ Floor
 4                      New York, NY 10036
                        212-790-5379
 5                      lmyers@kslaw.com

 6  For the Defendant:

 7                      GREGORY M. CUMMING, ESQ.
                        United States Department of
 8                      Justice Environmental and Natural
                        Resources
 9                      Division Natural Resources Section
                        P.O. Box 7611
10                      Washington, DC 20044
                        202-305-0457
11                      Gregory.cumming@usdoj.gov

12                      SHARI HOWARD, ESQ.
                        United States Department of
13                      Justice Environmental and Natural
                        Resources
14                      Division Natural Resources Section
                        P.O. Box 7611
15                      Washington, DC 20044
                        202-598-9407
16                      Shari.howard@usdoj.gov

17                      SAMANTHA G. PELTZ, ESQ.
                        United States Department of
18                      Justice Environmental and Natural
                        Resources
19                      Division Natural Resources Section
                        P.O. Box 7611
20                      Washington, DC 20044
                        202-353-5959
21                      samantha.peltz@usdoj.gov

22                      SHARON VAUGHN-FAIR, ESQ.
                        Federal Highway Administration
23                      711 W. 40ᵗʰ Street
                        Baltimore, MD 21211
24                      410-9622544

25
```

```
 1                (Commencement of proceedings)

 2                THE COURT:  Good afternoon.  We are on the

 3     record in State of New Jersey v United States

 4     Department of Transportation, et al, 23 civil 3885.

 5     This is Magistrate Judge Wettre.  I'm the assigned

 6     magistrate judge on the case.  And I'm convening the

 7     case for a status conference.

 8                So, may I have appearances of the

 9     plaintiffs, please.

10                MR. MASTRO:  Yes, Your Honor.  Randy Mastro

11     of King and Spalding for the State of New Jersey.  I'm

12     here with my colleagues, Jessica Benvenisty and Lauren

13     Myers.  But I will be doing the speaking today.

14                THE COURT:  Okay.  Good morning to -- good

15     afternoon to all of you.

16                MR. MASTRO:  Thank you.

17                THE COURT:  And for the defense.

18                MR. CUMMING:  Good afternoon, Your Honor.

19     This is Gregory Cumming on behalf of Federal

20     defendants.  And with me are my colleagues Shari

21     Howard and Samantha Peltz along with Sharon Vaughn-

22     Fair from the Federal Highway Administration.

23                THE COURT:  Okay.  I think I had one other

24     person.  Do we have Elizabeth Nower (phonetic).  I'm

25     -- I have that on my appearance sheet.
```

1              UNIDENTIFIED FEMALE:  Your Honor, I'm just

2   attending as a member of the public.

3              THE COURT:  Oh, I'm sorry.  Okay.  You were

4   -- you were in the wrong spot on my appearance sheet.

5   And of course, you're welcome to -- to listen in.

6              All righty.  So, you know, just by way of

7   background.  I believe they were filed on the docket.

8   I have -- I don't have the banner on the top.  But I

9   -- it does say via ECF on both letters.

10             I have the September 15th letter from

11  plaintiff's counsel.  And a September 18th response

12  from the government.  Is there anything else that I'm

13  missing?  Anything recently filed for instance?

14             MR. MASTRO:  No, Your Honor.

15             THE COURT:  Oh, okay.  And I know that Judge

16  Martinotti, the district judge had set it up where

17  you're anticipating he would have the initial status

18  conference after the defense entered notices of

19  appearance.

20             You know, just by way of internal

21  operations.  I'm the one handling it.  And -- and he's

22  aware that I'm having the conference.  So, you know, I

23  certainly would like to get the case moving.  And it

24  seems like the initial issue is when the

25  administrative record will be produced.

1              I see you have a discrepancy in -- in your

2    request as to the deadline for doing so.  And I wanted

3    to look under the hood a little bit just to see -- to

4    get a sense from the defense of what's involved in --

5    collecting it.

6              Because I -- I agree that -- and I think

7    both sides agree that the briefing can't really occur

8    until the administrative record is produced.

9              So, let -- let me hear first from the

10   government on that.  And the -- the federal

11   government.

12             MR. CUMMING:  Thank you, Your Honor.  So, to

13   give the Court a little bit of background into this

14   type of case.  Plaintiff's lawsuit is primarily one

15   under the National Environmental Policy Act which I'll

16   call NEPA which is a procedural statute that requires

17   an agency to conduct analysis of the environmental

18   impacts of a major federal action.

19             That analysis is typically presented in a

20   document such as an environmental assessment or an

21   environmental impact statement.

22             Here, we're talking about an environmental

23   assessment, what I'll call an EA, which is then

24   followed by a federal decision which is here, a

25   finding of no significant impact.

1          As the Court correctly noted, the briefing

2   here will be based on the administrative record.  So,

3   it is, you know, crucial to the case.  The record in

4   EPA cases is everything relevant and nonprivileged

5   that the agencies directly or indirectly relied on in

6   reaching its decision.

7          The record here is, I think, potentially

8   pretty voluminous.  It's not only the final

9   environmental documents, but publically available

10   drafts, public comments, agency communications and the

11   communications with, you know, extra agency sources

12   such as state governments or other interested parties.

13          The agency -- I think the complaint was

14   filed on -- at the end of July and service was

15   perfected shortly thereafter.  The agency's been

16   working as expeditiously as it can to collect the

17   universe of materials.  And is currently in the

18   process of reviewing them.

19          But that review includes not only sort of

20   privilege review, but ensuring that the agency

21   excludes deliberative materials and then prepare --

22   and irrelevant materials and then preparing the -- the

23   record for production.

24          And simply put, that process takes time

25   given the agency staff involved have other

1   responsibilities.  They're not, you know, solely

2   detailed to -- to preparing the record.

3            THE COURT:  Let me -- let me ask you

4   something.  When -- when you ordinarily produce the

5   administrative record, do you Bates Stamp it?

6            MR. CUMMING:  Yes, Your Honor.

7            THE COURT:  Okay.  So, is -- is there an

8   order in which you -- you normally Bates Stamp it?

9   And where I'm going with this is, the possibility of a

10  rolling production.  At least of the information

11  that's already collected.

12           MR. CUMMING:  Well --

13           THE COURT:  Unless there's some significance

14  to the order in which you produce the information.

15           MR. CUMMING:  Typically, Your Honor, the --

16  the -- the record is produced as a -- as a whole file.

17  Not -- not in a rolling matter.

18           I will note -- I mean, in many of the I

19  would say the key documents here, the final

20  environmental assessment.  Those are already

21  publically available.  They were -- they were

22  publically released upon being finalized, you know,

23  notices published in the federal registers.

24           So, to the extent its sort of core materials

25  are something that plaintiffs need to have sooner.  I

1   think they already have a great majority of that

2   information.

3         THE COURT:  But, you know, other than its

4   ordin – it's ordinary for the government to produce

5   the administrative record in -- in one fell swoop,

6   what would be the prejudice of, you know, starting a

7   rolling production immediately?

8         MR. CUMMING:  I think, Your Honor, my

9   concern, and this is not having talked to the

10   agencies.  So, my -- my concern would be that some of

11   the -- there could certainly be, I suppose, an initial

12   production of those documents that are already

13   publically available.

14         But the remainder of the documents that are

15   internal communications, I -- I think that -- that

16   production would need to happen all at one time given

17   sort of decisions as to privilege and other -- and

18   deliberative issues would need to be looked

19   holistically in terms of, you know, seeing what

20   communications were publically released.  What was

21   sent outside the agency versus, you know, internal

22   communications.

23         And I think those calls would have to be

24   made in a group.  So, I -- I guess I -- Your Honor,

25   we're certainly open to considering the -- the rolling

1   production.  But I think it would need to be sort of

2   two stages.  The first would be the -- the collection

3   of publically available information.  And then the

4   second would be everything else.

5              THE COURT:  All right.  And what would

6   prevent you from putting sufficient resources on this

7   to have -- whether rolling or not rolling -- to have

8   the administrative record produced by October 20th as

9   requested by the plaintiff?

10             MR. CUMMING:  I think frankly, I mean

11  Federal Highways has relatively limited resources --

12  as I -- I also think the Court is likely aware,

13  there's some potential government funding issues that

14  we may run into next week that are also, I think --

15             THE COURT:  I'm not taking that on.  Absent

16  that.

17             MR. CUMMING:  I'm sorry, Your Honor.

18             THE COURT:  Absent that occurring, what --

19  what would be impossible about producing the record by

20  October 20th?

21             MR. CUMMING:  Ah --

22             THE COURT:  The case has been on file for a

23  while already.

24             MR. CUMMING:  I -- I understand that, Your

25  Honor.  I mean, I think agency resources and the --

1  and the need to make a careful determination as to the

2  documents is the primary -- primary reason.  I mean,

3  I'll -- I'll note Your Honor's pointed out.

4          I don't think our proposed November date is

5  outside the norm in either cases that have been filed

6  in this district or other districts around the

7  country.  That -- that is, you know --

8          THE COURT:  Well, there's no binding date

9  here in -- in this district.  So, we have case

10  managers, namely magistrate judges, who decide what's

11  reasonable based upon the particular facts.  And

12  that's what I'm implying.

13          So, it doesn't move me in the least what

14  other districts ruled on this.  Because we have

15  tailored case management schedules here.  So, okay.

16  I've got the gist of it.  Let me hear -- let me hear

17  from plaintiff's counsel, Mr. Mastro.

18          MR. MASTRO:  Thank you, Your Honor.  Your --

19  Your Honor, you -- you got right to the core of it.

20  And he described the core materials in the

21  administrative record as largely public already.

22          That's why we suggested to Your Honor that

23  they start by giving us, if they feel so strongly it

24  should all be produced at one time.  Start giving a --

25  he knows what the index of materials is.

1          So, that's why we suggested we get a draft

2    index of the administrative record by October 6th.

3    That gives us a snapshot, Your Honor, into not just

4    what's publically available, but where the issues

5    might arise about the sufficiency of the record.

6    Because that's going to be on issues like privilege

7    claims and deliberative process and all of that.

8          So, the index is a -- is a -- should be an

9    easy short form way to give us that window.  And then

10   we --

11         THE COURT:  May I ask you a question though?

12   If they haven't -- completed their privilege review by

13   October 6th, then hen how useful could the index be to

14   you?

15         MR. MASTRO:  Your Honor, the index isn't

16   necessarily going to give us complete insight into

17   their privilege claims.  What we're trying to do, Your

18   Honor, because you know, we -- we appreciate that the

19   Court wants to move the case.  We want to move the

20   case and get it resolved as quickly as possible.

21         The index would allow us to identify areas

22   before the record is -- is fully produced where we

23   might have challenges to the sufficiency.  So, that we

24   don't have to delay resolution of the case after they

25   produce the full record.  We can identify them, within

Hearing
2:23-cv-3885, September 27, 2023

1    a week.  And it would be our deadline to object to

2    things in the index or things that are missing from

3    the index.

4            So, that we could -- we could expedite that

5    process so that when they produce the full record, we

6    will be at a point where we really have the full

7    record and we aren't going to have to delay over

8    issues we raise about the sufficiency of the record.

9            Partial production, rolling production won't

10   allow us to do that 'cause we won't know what they're

11   fretting over.  And what parts of --

12           THE COURT:  Okay.

13           MR. MASTRO:  -- they're, you know, still

14   deciding whether to claim privilege or not on.  So, we

15   actually propose this as a way to streamline the

16   process and put the burden on us to state objections

17   sooner.

18           So that when they finally produce the full

19   record on October 20th, which by the way, Your Honor,

20   is a hundred and nineteen days.  Almost four full

21   months after we filed the case to great public

22   attention.  And a hundred and nine days since it was

23   fully served.  It was actually filed on July the 21st.

24

25           So, we suggested that approach.  Of course,

1   we're also amenable to receiving a rolling production

2   in the interim since the vast majority of the

3   administrative record is going to be the studies that

4   were done that have already been made publically

5   known.  They're not gonna be privileged.

6           The public comments and additional materials

7   put in by the public.  All of that should be able to

8   be produced now.

9           Your Honor, they took -- just to put it in

10  some perspective.  And as somebody who worked in the

11  Department Of Justice in -- in my career.  I know both

12  the burdens and the joys of that experience.

13          Your Honor, they took forty-six days to

14  issue the FONSI.  Meaning the final, you know,

15  statement of no environmental impact.  And supposedly

16  they found, based on this record, no environmental

17  impact from something they acknowledge a is unique

18  landmark, unicorn in the United States.  It never

19  happened before.

20          But they took only forty-six days to issue

21  that finding.  They should be able to produce the

22  administrative record in the time frame that -- that

23  we have requested which is much more than the usual

24  sixty days from filing --

25          THE COURT:  Okay.  Let me -- let me pause

Hearing
2:23-cv-3885, September 27, 2023

1  there.  I want to ask the defense whether the index

2  could be produced by October 6th.

3         MR. CUMMING:  I don't believe so, Your

4  Honor, because I think plaintiff's counsel is

5  confusing that -- we couldn't produce an index without

6  having completed a privilege review.  Like, I don't

7  know what an index that was -- I don't -- I -- I can't

8  envision a provisional index that would not, you know,

9  have a -- be done after a full privilege view.

10         In other words, I'm not sure what --

11         THE COURT:  Okay.

12             (Simultaneous speaking)

13         MR. CUMMING:  -- useful that --

14         THE COURT:  All right.  So, are you custom

15  to producing the index in advance of the

16  administrative record?

17         MR. CUMMING:  We -- we can -- we can

18  certainly do that --

19         THE COURT:  Is that something that's

20  ordinarily done, I'm asking.

21         MR. CUMMING:  It is not ordinarily done.

22  But we are happy to -- we are happy to do so here to

23  try to move things along.

24         THE COURT:  By what date?  Waiting for the

25  defense to answer that?

1          MR. CUMMING:  Your Honor, frankly, I -- I

2    don't know sitting here right now, I need to talk with

3    the agency.  We're certainly happy to inform the Court

4    tomorrow.  But I -- I can't -- I can't tell the Court

5    that right now.

6          THE COURT:  Okay.  Listen -- well, let me --

7    let me let Mr. Mastro wrap it up on the administrative

8    record.

9          MR. MASTRO:  Certain --

10          THE COURT:  So, I'll turn back to him.

11          MR. MASTRO:  Certainly, Your Honor.  The

12    point of an index, even if they haven't decided for

13    sure whether to claim privilege on every document, in

14    a privilege log you have to identify the document.

15          The index would simply be, you know, what

16    documents are part of the administrative record or

17    that they may be considering, you know, to include in

18    the administrative record.  So, we -- we would have

19    that insight.

20          And to expedite the process and -- and I

21    have seen in other cases.  I've been involved in --

22    the -- in my earlier career in government where

23    indexes were produced -- usually, the administrative

24    record is produced by the time of the answer which is

25    supposed to occur tomorrow, Your Honor, Friday.

1              So, you know, I -- we just proposed that to

2   expedite the process here so we don't delay the

3   process on the back end when they produce an

4   administrative record and then we have to raise

5   challenges to it.

6              It actually should be a benefit to the

7   government as well that we're willing to expedite the

8   process for us to have to bring challenges based on an

9   index before they've actually produced the full

10  record.

11             THE COURT:  Okay.  And is there any

12  particular reason that the plaintiff is seeking

13  production of the full administrative record by

14  October 20th, is -- is there any magic to that date or

15  was it just a date that you thought was eminently

16  reasonable?

17             MR. MASTRO:  Your Honor, this goes into the

18  next issue that I'm sure the Court is going to

19  address.  Which is how we get the case to

20  resolution --

21                   (Simultaneous speaking)

22             THE COURT:  --

23             MR. MASTRO:  -- dispositive motions.  The --

24  the point of that date.  That -- that was not our

25  preferred date, Your Honor.  We -- we -- we don't

1  understand how they couldn't have produced the

2  administrative record when they found no --

3         THE COURT:  Okay.  So, you backed into that

4  date by -- because you wanted briefing completed by

5  the end of the year.  Is that right?

6         MR. MASTRO:  Correct.  We would have liked

7  -- we asked for the administrative record in

8  September, Your Honor.  But -- but we're left asking

9  for an October date to back in the briefing schedule

10 so that we have the case keyed up for resolution by

11 the end of the year.  Where --

12        THE COURT:  Okay.

13        MR. MASTRO:  -- the district court will have

14 full briefing on cross motions and can decide the case

15 at the end of the year or early next year.

16        THE COURT:  Okay.  So, suppose the -- either

17 the index or the entire record or both are produced in

18 the month of October.  And you have an ambitious

19 briefing schedule where you want launch into the start

20 -- the opening briefs about two weeks later.

21        Suppose you have a dispute about their

22 assertions of privilege.  Does that hold up the

23 briefing in your mind?

24        MR. MASTRO:  Well, Your Honor, that -- that

25 -- that's what we're trying to avoid with an index

1  which presumably would flag some of these issues.  And

2  we have a profound interest on behalf of the State of

3  New Jersey in getting this case resolved by the end of

4  the year or as close to that as possible.

5           What's happening in New York City right now,

6  Your Honor, to be frank about it is, the city and

7  state are rolling ahead with the complete

8  infrastructure for this project.

9           So, at any point in the spring they can

10  flick a switch.  I see what they call, you know,

11  gantries which are the machines that -- that sort of

12  pick you off as cars go by for -- for the toll for the

13  congestion pricing tax.  They're being put up all over

14  the edge of the zone, right now, as we speak.  I see

15  them --

16           THE COURT:  Okay.  I -- I'm gonna stop you

17  there.  But -- so here's -- here's something that you

18  all need to consider.  We're an extremely busy court.

19  This is an important case and it will be given its due

20  attention.  But we have a lot of competing important

21  cases that affect the public.

22           And so, the notion that briefing will be

23  completed say Christmas Eve and you'll get a decision

24  by New Year's Day is fanciful at best.

25           We have a district judge who needs to -- as

1   -- as -- you're seeking months and months.  This is

2   mostly the federal government's assertion for

3   thoughtful briefing.  Well, don't you want a

4   thoughtful decision where it's kicked around by a

5   district judge and his staff and cases are read?

6           And -- so, you know, you've got to build in

7   time for the Court to decide this.  And what I'm

8   concerned about and I'm mostly concerned what the

9   defense is saying is, you know, the defense is saying,

10  I'm reading and maybe this is a little unfair and they

11  can correct me.

12          But I'm -- I'm getting the tone that well,

13  gee, let everything happen in, you know, in due

14  course, in a thoughtful way and let it unfold and

15  we'll make our privilege determinations.  But there's

16  no obligation -- there's no commitment on the back end

17  to not implement these changes in order to allow for

18  an orderly court decision.

19          And you know, at the same time the federal

20  government's saying well, there's no TRO, let's not

21  treat this like a preliminary injunction motion.

22  Well, hello, I think there's going to be if I don't

23  ensure as the case manager that there is time for an

24  orderly decision and not emergent motions.

25          So, you know, you all have to be cognizant

1   of that.  I am going to try to protect the Court so

2   that it can make a thoughtful and orderly decision and

3   you give it sufficient time.

4           So, you know, bear that in mind.  I'm

5   probably going to run anything, before deciding

6   anything, I'm going to do Judge Martinotti the

7   courtesy of running it by him.

8           But I'm just telling you what I'm going to

9   recommend.  And -- and I'm going to recommend that

10  things move along quickly.  All right.  So --

11          MR. MASTRO:  Yes, Your Honor.

12          THE COURT:  Okay.  Who wants to speak?

13              (Simultaneous speaking)

14          MR. CUMMING:  Your Honor, if I could --

15          MR. MASTRO:  Your Honor --

16          MR. CUMMING:  -- well --

17          MR. MASTRO:  -- Randy Mastro.

18          MR. CUMMING:  Excuse me -- excuse me, Your

19  Honor --

20          THE COURT:  Mr. Mastro, go ahead.

21          MR. MASTRO:  Okay.  I'll be very brief.  I

22  appreciate everything Your Honor said.  And what we're

23  trying to do is have a schedule that avoids

24  duplicative motion practice like preliminary

25  injunctions first and then merits briefing.  And I of

 1    course appreciate the burdens on the Court.  That's

 2    why we're trying to get the briefing done before

 3    Christmas so the Court has time to decide that.

 4            I -- I don't expect that would happen by the

 5    end of 2023.  But sometime early in 2024 so that

 6    there's a time for argument and a thoughtful decision

 7    and either side having the ability to, you know, have

 8    review of that decision.

 9            Before this becomes a -- if we just have a

10    laissez-faire approach, the federal government and the

11    -- and New York would like to just see this roll along

12    into the spring and flip the switch, we'll be ready to

13    go.

14            THE COURT:  Okay.  All right.  Let -- let's

15    hear from the defense.

16            MR. CUMMING:  Thank you, Your Honor.  I -- I

17    do think there are a few inaccuracies I'd like to

18    correct.  I mean, Mr. Mastro's assertion that the

19    switch will be flipped is not -- you know, it makes it

20    sound like this is going to be a secretive process.

21            As we laid out in our letter, there are a

22    number of state administrative processes and some

23    additional processes that need to happen before the

24    tolls will go into effect.

25            The current time line as I understand it is

1   May, but that date may move.  We're certainly happy to

2   update the Court.  But there are state administrative

3   ruling makings that need to happen.  There's a

4   finalization of an agreement between the federal

5   government and the state of New York.

6        All those things need to happen.  And the

7   state process will be public with notice and a full

8   state administrative process.

9        So, the idea that this is going to sneak up

10  on the public or plaintiff is simply inaccurate.

11        THE COURT:  Well, they want a decision

12  before the decision is made for them by the passage of

13  time.  Right?

14        MR. MASTRO:  Your Honor, I don't --

15        THE COURT:  And without a commitment from

16  the federal government to, you know, not implement the

17  congestion pricing until, you know, a date certain in

18  order to allow the Court to -- to issue its decision.

19        You're going to have a nervous plaintiff.

20  That's inevitable.

21        MR. CUMMING:  I understand that, Your Honor,

22  and we -- we currently want to give the Court

23  sufficient time.  But we do strongly feel that

24  plaintiff's briefing schedule will not give the Court

25  what it needs.

1          I mean, I will propose an alternative here,

2   an orderly schedule for plaintiffs to brief our

3   preliminary injunction motion which seems like what

4   they want.

5          THE COURT:  Well, no, I don't think that's

6   what they want.  Because why -- why decide the

7   likelihood of success on the merits rather than

8   deciding the merits?  They're trying to get a decision

9   on the merits.  And I think everybody would be best

10  served by that.  And there seems to be enough time.

11         I mean, in most cases I have a discovery

12  period that has to be completed before you can have

13  summary judgment motion.  Here we don't have that.

14  So, you can go right into the summary judgment

15  briefing and have the merits decided.

16         MR. CUMMING:  One other point, Your Honor,

17  I'll note is that in plaintiffs -- plaintiffs -- what

18  plaintiffs are seeking to do in this lawsuit is to

19  enjoin Federal Highway's Administ -- environmental

20  assessment and a finding of no significant impact.

21         I mean, this law suit -- the state process

22  can continue.  And everything up to the agreement

23  between the federal government and the state can

24  continue.

25         But, you know, stopping the gantries going

1   on, that -- that's not a remedy that plaintiff can get

2   through this lawsuit.

3            THE COURT:  Okay.

4            MR. MASTRO:  That's -- that's not --

5            THE COURT:  So let's just go back.  All

6   right.  So, I am heavily inclined to -- to order an

7   October completion date for production of the

8   administrative record.  I -- I realize that it can be

9   cumbersome and time consuming to  make privilege

10  determinations.  But this is a case of public

11  interest, there's been plenty of time and you had to

12  apply more resources to get it done soon and I mean in

13  October.

14            I'm not going to pick a date now.  I'm just

15  telling you that's what you should expect.  If I have

16  to rule on it, I'm going to give you another chance to

17  talk to one another about an index and a deadline for

18  production of the complete administrative record.

19            But I like to give you a hint of where its

20  likely to come out if you don't agree.

21            And then on the briefing.  You know, the --

22  the only thing I would say is, you know, I'll -- I'll

23  hear you on the schedule and how much time is needed.

24  But I personally, and I will have to run this by Judge

25  Martinotti, I think when you have simultaneous cross

1   motions, the briefing is very confusing.

2          I -- you know, if a -- if cross motions are

3   going to be briefed for me to decide, and -- and they

4   won't be decided by me in this case, I like four

5   rounds of briefing, so that one brief responds to the

6   other, rather than you get a lot of repetition and

7   ships crossing in the night when you have simultaneous

8   briefing.

9          So, that's my preference.  I'll talk with

10  Judge Martinotti about whether he has a preference on

11  that.  But, you know, if you did agree to four rounds

12  of briefing, you know, and -- and you seemed

13  harmonious about it, if it looked reasonable, Judge

14  Martinotti would probably -- I would guess he would be

15  okay with it.

16         And then, you know, if it's not briefed by

17  the end of the year, I don't think there's any -- that

18  affects the -- the date by which its decided.  If it's

19  more comfortable to -- to brief it and you know, have

20  the closing briefs in January, you know, that's --

21  that's probably reasonable.

22         So, those are -- those are my -- that's my

23  prognosticating how it may turn out.  But I like to

24  give -- it's always better when -- when counsel are

25  able to decide their own schedule.

1          MR. MASTRO:  Yeah, I --

2          THE COURT:  Okay.

3          MR. MASTRO:  Yeah.  Your Honor, Randy

4   Mastro, if I could just briefly be heard on that last

5   point.

6          THE COURT:  Sure.

7          MR. MASTRO:  The -- the -- the issue -- the

8   issue about cross motions versus, you know, four

9   rounds of briefing.  Of course, the issue becomes

10  there then who has the last word.  And --

11         THE COURT:  Four rounds of briefing,

12  everyone gets a reply brief on their -- their motion.

13  What's the difference?

14         MR. MASTRO:  Well, your -- Your Honor,

15  that's -- that's -- that's -- that is -- the -- what

16  one -- the -- the point of cross briefing as opposed

17  to you know, four rounds of briefing, that -- that --

18  that actually, you know, potentially on -- on their

19  motion, you know when they -- when they move -- if

20  they were to move after us, the question becomes who

21  has to move first, right.

22         And if they move after us, they do get the

23  last word because they have the last reply.

24         THE COURT:  Well, then maybe ask for a

25  surreply if something is inserted in -- in the last

1  brief and it's unfair, it's raised for the first time.

2  But don't -- don't get hung up on that.  We don't get

3  hung up on that down here.

4          MR. MASTRO:  Right.  But what -- what we

5  were trying to do is, with cross motions and cross

6  oppositions and then, if there's a need for either

7  side to reply, the Court can grant permission for

8  that.

9          So, we were actually trying to -- to reduce

10  it to two rounds of briefing and the potential for

11  either side to apply to the Court to do a reply on

12  newly raised issues to avoid confusion.

13          THE COURT:  All right.  Well --

14          MR. MASTRO:  And --

15          THE COURT:  -- I -- I think that it's --

16  it's -- I think, and it's subject to what Judge

17  Martinotti thinks.  It's more important that the

18  briefing is digestible  and understandable for the

19  Court than that one party gets the last word.  Because

20  the last word can always be altered whether it be by

21  surreply or oral argument or what have you.  So, I'm

22  just suggesting that you're not to get too hung up on

23  that.

24          MR. MASTRO:  I -- I -- I understand

25  completely, Your Honor.  I'm just saying that what

1   we're trying to propose is two rounds and maybe a

2   third as opposed to four rounds.  In their schedule it

3   would take us to March.

4           THE COURT:  All right.  I'll let you guys

5   discuss that.

6           MR. MASTRO:  Right.  Thank you, Your Honor.

7           THE COURT:  All right.  So, get me a letter

8   if you would by -- by early next week and I'll take it

9   from there.  Get a joint letter in.  I'd like a joint

10  letter.  You're supposed to confer.

11          MR. MASTRO:  Thank you.

12          THE COURT:  If you can't coordinate on that

13  then we're -- we have a big problem.

14          MR. MASTRO:  Really appreciate the Court's

15  time.  Thank you so much.

16          THE COURT:  Okay.  Likewise.  Thank you.

17  Bye bye.

18          UNIDENTIFIED FEMALE:  Thank you, Your Honor.

19          MR. CUMMING:  Thank you, Your Honor.

20              (Conclusion of proceedings)

21

22

23

24

25

Hearing
2:23-cv-3885, September 27, 2023

29

## Certification

1

2        I, Eileen M. Zakrzewski, Transcriptionist, do hereby

3   certify that the 28 pages contained herein constitute a

4   full, true, and accurate transcript from the official

5   electronic recording of the proceedings had in the above-

6   entitled matter; that research was performed on the

7   spelling of proper names and utilizing the information

8   provided, but that in many cases the spellings were

9   educated guesses; that the transcript was prepared by me

10  or under my direction and was done to the best of my

11  skill and ability.

12       I further certify that I am in no way related to any

13  of the parties hereto nor am I in any way interested in

14  the outcome hereof.

15

16  /s/Eileen M. Zakrzewski              October 31, 2023
    Signature of Approved Transcriber     Date
17
    KING TRANSCRIPTION SERVICES, LLC
18  3 South Corporate Drive, Suite 203
    Riverdale, NJ 07457
19  (973)237-6080

20

21

22

23

24

25