# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMNISTRATION, SHAILEN BHATT, in his official capacity as Administrator of the Federal Highway Administration, and RICHARD J. MARQUIS, in his official capacity as Division Administrator of the New York Division of the Federal Highway Administration,<br><br>*Defendants*. | Civil Action No. 23 Civ. 03885<br><br>Hon. Brian R. Martinotti |

**BRIEF OF AMICI CURIAE EMPOWERNJ, NEW JERSEY POLICY PERSPECTIVE, HEALTH PROFESSIONALS & ALLIED EMPLOYEES, CLEAN WATER ACTION, TURNPIKE TRAP COALITION, HUDSON COUNTY COMPLETE STREET, SOMA ACTION, UNITARIAN UNIVERSALIST FAITH ACTION NJ, PINELANDS PRESERVATION ALLIANCE, BIKE NORTH BERGEN, ECOPOETRY.ORG, DON'T GAS THE MEADOWLANDS, ISLES, INC, BIKEJC, SAFESTREETSJC, 350NJ-ROCKLAND, HACKENSACK RIVERKEEPER, PEOPLE OVER PIPELINES, FUND FOR A BETTER WATERFRONT, NEWARK GREEN TEAM, ACTION TOGETHER NEW JERSEY, NEW JERSEY ASSOCIATION OF RAILROAD PASSENGERS, BLUEWAVENJ, BIKE SOMA, NEWARK SCIENCE AND SUSTAINABILITY INC., OUR REVOLUTION NJ, BICI UC, FRIENDS OF LIBERTY STATE PARK, NEW JERSEY ENVIRONMENTAL LOBBY, NEW JERSEY WORK ENVIRONMENT COUNCIL, NEW JERSEY CITIZEN ACTION, SOUTH WARD ENVIRONMENTAL ALLIANCE, NEW JERSEY WORKING**

**FAMILY PARTY AND BIKE HOBOKEN IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

John H. Reichman
Johnreichmanlaw LLC
56 Oakwood Avenue
Montclair, NJ 07043
917.626.8025
John@johnreichmanlaw.com
(Bar ID # 003981983)

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICI CURIAE ............................................................................1

SUMMARY OF ARGUMENT ...............................................................................2

ARGUMENT ...........................................................................................................5

I.  CONGESTION PRICING WILL BENEFIT NEW JERSEY AND
    JERSEY COMMUTERS PARTICULARLY ................................................5

    A.  The Vast Majority of Jersey Commuters Use Public
        Transportation and Would Benefit from Congestion Pricing ...............5

    B.  Jersey Commuters Would Benefit from Improved MTA
        Services.................................................................................................6

    C.  Jersey Commuters Would Benefit from Cleaner Air in the CBD ........7

    D.  Jersey Drivers Will Benefit from Congestion Pricing .........................7

    E.  There Will be Improved Air Quality and Less Pollution in New
        Jersey ....................................................................................................8

    F.  The Tolling Program is Needed for New Jersey to Meet its
        GHG Reduction Goals.........................................................................10

    G.  The Tolling Program Will Benefit New Jersey Companies ...............11

    H.  The Tolling Program Will Incentivize the Use of Public
        Transportation and Provide Much Needed Revenue for NJT.............11

    I.  There is Wide Support for Congestion Pricing in New Jersey ..........13

II.  PLAINTIFF'S POSITIONS IN THIS ACTION DIRECTLY
     CONFLICT WITH THE POSITIONS IT IS TAKING ON THE
     TURNPIKE EXPANSION............................................................................14

    A.  Plaintiff's Position Regarding the Turnpike Expansion is that
        Large Highway Projects and Increases in VMT Do Not Require
        an EIS ..................................................................................................20

i

B.    Plaintiff's Position Regarding the Turnpike Expansion is that
No Stakeholder Input is Required for Large Highway Projects .........22

C.    Plaintiff Will Not Consider Alternatives to the Turnpike
Expansion ............................................................................................23

CONCLUSION ........................................................................................................26

## INTEREST OF AMICI CURIAE

Amici Curiae ("Amici") are 34 New Jersey environmental, labor, transportation, faith, and community groups, encompassing many of the leading advocates for the environment and public health in the State.[1]  Amici are uniquely qualified to provide a New Jersey environmental voice and perspective to the filings in this action.

Amici strongly support the Manhattan Central Business District ("CBD") tolling program ("Tolling Program") and oppose the attempt by Plaintiff State of New Jersey to derail congestion pricing on environmental grounds. This brief focuses primarily on two reasons why the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiff's motion for summary judgment and allow the Tolling Program to go forward expeditiously.[2] First, the Tolling Program will have enormous environmental benefits for both New Jersey and the entire New York City metropolitan area. Second, the positions Plaintiff is taking in this action directly conflict with its positions regarding its $10.7 billion plan to expand the New Jersey Turnpike. Plaintiff should not be permitted to have it both ways: to claim that no environment impact statement is required for a massive highway

---

[1] A list of the Amici Curiae with a short description of each organization is set forth in the appendix to this brief.

[2] Amici are submitting this brief simultaneously with the brief being submitted by Environmental Defense Fund et.al. (the "EDF et.al. Amicus Brief") and fully support and incorporate by reference the arguments made therein.

1

expansion project in a dense urban area that will increase greenhouse gases and

pollution and disproportionately affect overburdened communities, yet allege in

this action that the Tolling Program, with its undeniable environmental benefits,

needs heightened environmental scrutiny.

## SUMMARY OF ARGUMENT

The Tolling Program is in the best interest of New Jersey and particularly

New Jersey residents who commute regularly into the CBD ("Jersey Commuters")

for eight reasons:

- The vast majority of Jersey Commuters, more than 75%, use public transportation.  The Tolling Program will improve their commutes without any cost to them.

- Almost 50% of Jersey Commuters use public transportation once they arrive in the CBD and would directly benefit from improvements in public transportation in New York.

- All Jersey Commuters, including drivers, have to breathe once they arrive in the CBD.  They will be breathing cleaner air whenever they walk and wherever they work.

- For those who choose to continue to drive into the CBD, the Tolling Program will result in better and faster commutes and faster travel and easier parking once they get there.  For many drivers, these benefits will outweigh paying a toll.

- Congestion pricing will improve air quality in New Jersey as a whole. There are environmental impacts on New Jersey as Plaintiff alleges, but they are overall positive, not negative.

- Congestion pricing will help New Jersey meet its goal of reducing greenhouse gas emissions ("GHGs") by 50% by 2030.

- New Jersey companies would likely receive more than $1 billion of the additional revenue generated by the Tolling Program.

- NJ Transit is in perilous financial condition, facing a nearly $1 billion revenue shortfall in 2026. The Tolling Program will incentivize the use of public transportation and provide much needed revenue for NJ Transit.

Plaintiff cannot get its story straight about what the effects of the Tolling Program will be.  Early in its brief, Plaintiff states that the program is "intended to encourage public transit" and that "New Jersey will have to incur additional transit-related capital costs to accommodate increased ridership caused by the scheme."  (Br. at 4).  Later, it argues that the Tolling Program "may actually *disincentivize* transit use and *increase* vehicles in New Jersey."  (Id. at 16).

Both things cannot be true.  The reality is that the Tolling Program will discourage private vehicles from driving into the CBD and encourage greater use of public transportation. This will be a win-win-win for New Jersey by reducing GHGs, pollution, and traffic congestion; increasing revenue for NJ Transit. and making the lives of the vast majority of Jersey Commuters better. That is why there is substantial support for congestion pricing in New Jersey.

Plaintiff's legal positions in this action directly conflict with positions it is taking regarding the $10.7 billion plan by the New Jersey Turnpike Authority ("NJTA") to expand the 8.1-mile Newark Bay Hudson County Extension ("NBHCE") of the New Jersey Turnpike (the "Turnpike Expansion").  The NJTA is a State agency under the control of the Governor.

3

This huge project will increase vehicle miles travelled ("VMT") GHGs, and pollution; alter traffic patterns; lead to even more traffic on local Jersey City streets; and disproportionately impact environmental justice communities. It is going forward without any public input and over the vehement opposition of public and local officials. Nonetheless, NJTA and Governor Murphy hypocritically contend that no environmental impact statement is required for the Turnpike Expansion and that they have no obligation to get public input, consult with public officials, or consider alternatives to reducing traffic congestion. None of these positions, and others that NJTA is taking regarding the Turnpike Expansion, can be reconciled with New Jersey's contentions in this action.

Plaintiff's conflicting positions regarding the Tolling Program and the Turnpike Expansion turn the purpose of the National Environmental Policy Act ("NEPA") on its head. Plaintiff seeks to stop a project with undeniable environmental benefits on procedural grounds while trying to preclude full environmental review of a massive construction project that will negatively impact the environment for generations. The unbridgeable gap between New Jersey's positions in this action and those on the Turnpike Expansion demonstrate that Plaintiff is not acting out of true environmental concerns.

## ARGUMENT

I.   **CONGESTION PRICING WILL BENEFIT NEW JERSEY AND JERSEY COMMUTERS PARTICULARLY**

Congestion pricing will benefit New Jersey generally and Jersey Commuters particularly in the following eight ways.

A.   **The Vast Majority of Jersey Commuters Use Public Transportation and Would Benefit from Congestion Pricing**

There are more than 400,000 Jersey Commuters.  The vast majority of them, more than 75%, use public transportation to get to the CBD.[3]  Those commuters would not pay a congestion pricing toll and with fewer private vehicles on the road, bus commuters would have shorter and less polluted commutes.

A granular study by the Tri-State Transportation Campaign ("TSTC") examined how congestion pricing would affect the twenty-one legislative districts in New Jersey with the most Jersey Commuters.[4]  Collectively, in all the districts surveyed, only 1.6% of all workers would pay the congestion toll.  Drivers are also more affluent than public transportation users with an average median salary of $107,996.  It is also worth noting that the current toll structure recommendations, awaiting final approval, call for a deep discount, 50%, for lower income drivers.[5]

---

[3]U.S. Department of Transportation, Federal Highway Administration, Central Business District (CBD) Tolling Program Final Environmental Assessment ("EA"), August 2023 p. ES-2.
[4] https://tstc.org/nj-fact-sheets/
[5] https://www.northjersey.com/story/news/transportation/2023/12/06/mta-approves-congestion-pricing-toll-for-manhattan/71826462007/

This is what the TSTC data shows for Bergen County, the principal focus of Plaintiff's motion for summary judgment.  Under the 2023 legislative map, there were two districts located solely in Bergen County.  In District 36 only 1% of commuters will pay the congestion charge, while 16.6% use public transportation and will benefit from increased funding for transit.  In District 37, 1.7% of commuters will be subject to the charge and 21.4% would benefit from increased funding for transit.

As described more fully below, Plaintiff's failure to fund public transportation also results in poorer service and fewer public transportation users and options than there should or could be.  Bergen County would particularly benefit from long-promised, but long delayed, investments in public transportation such as completing the Hudson-Bergen Light Rail Line and having one-seat train trips to and from the CBD. Despite its name, the Hudson-Bergen Light Rail line has yet to have a single station in Bergen County.[6]

### B. Jersey Commuters Would Benefit from Improved MTA Services

As more fully described in the EDF et. al. Amicus Brief and in the EA, the tolling program will dramatically improve subway and bus service in Manhattan.

---

[6]https://content.njtransit.com/sites/default/files/pdfs/maps/HBLR_RSM_080522_low.pdf

A large percentage of Jersey Commuters use public transportation once they arrive in the CBD.  Before the pandemic, 200,000 New Jerseyans used the subway daily.[7] The Tolling Program will improve subway and bus service in the CBD, benefiting those Jersey Commuters.

### C.   Jersey Commuters Would Benefit from Cleaner Air in the CBD

As described more fully in the EDF et. al. Amicus Brief and the EA, congestion pricing will dramatically improve air quality in the CBD by, among other things, reducing toxic particulate matter by more than 10%.

All Jersey Commuters, public transportation users and drivers alike will be breathing cleaner air once they arrive in the CBD, whenever they walk and wherever they work.

### D.   Jersey Drivers Will Benefit from Congestion Pricing

Each of the proposed CBD Tolling Program scenarios would reduce all daily vehicle entries into the Manhattan CBD by 15.4 %-19.9%[8] compared to the 2023 no-action scenario.  Similar reductions are forecast when compared to the 2045 no-action scenario.[9]

---

[7] https://www.politico.com/news/2023/07/21/tale-of-two-transit-systems-new-york-new-jersey-00107388

[8] *See* EA Table 4A-5.
[9] *See* EA, Table 4A-12.

For those choosing to continue to drive into the CBD, the Tolling Program will result in better and faster commutes into the CBD and faster travel and easier parking once they get there.  It is reasonable to assume that many, if not most, Jersey drivers would readily pay a toll for a better and faster commute in, easier driving and parking once they arrived, and more time with their families.

### E.   There Will be Improved Air Quality and Less Pollution in New Jersey

The Tolling Program will produce improved air quality and less pollution in New Jersey as a whole.

For example, Hudson County is projected to see reductions in all pollutants compared to the 2045 no-action alternative ranging from a 3.06% reduction in $PM_{10}$ and 2.48% reduction in particulate matter 2.5 microns or less in size ("$PM_{2.5}$") to a 1.31% and 0.61% reduction of the ozone precursors nitrogen oxides ("NOx") and volatile organic compounds ("VOCs") respectively.[10]  There would also be reductions of 3.32 % of 1,3-butadiene, 2.0% of benzene and 3.21% of formaldehyde compared with the 2045 no-action alternative..[11]

Plaintiff ignores such positive aspects.  Plaintiff's argument regarding adverse environmental impact boils down to the Tolling Program increasing pollution in one of New Jersey's twenty-one counties, Bergen County.  (Br. at 3).

---

[10] *EA Table 10-9.*
[11] *EA Table 10-12.*

While Plaintiff suggests that other areas of New Jersey will also be negatively impacted (br. at 22), it provides no support for this assertion.

Amici do not minimize any increased pollution anywhere.  But the environmental and economic benefits of the Tolling Program for the State generally and the economic and environmental benefits to Bergen County and Bergen commuters into the CBD far outweigh any potential harm.  While emissions are projected to increase slightly in Bergen County,[12] these increases will keep air quality levels well below applicable NAAQS and will not generate any hot spots of high concentrations of air pollutants.  Further, as described more fully in the EDF et. al. Amicus Brief, program sponsors have committed to implementing mitigation measures for Bergen County that will reduce the expected truck trips in New Jersey.  Program sponsors have also committed to implementing place-based mitigation programs, and one community in Bergen County (Fort Lee) was identified as a community that may warrant place-based mitigation depending on the final tolling structure adopted.

---

[12] Emissions increases ranging from 0.2% for VOCs to 0.74% for $PM_{10}$ are forecasted for Bergen County in 2023 and from 0.14% to 0.67% in 2045.  In 2045, carbon monoxide levels are forecasted to increase by 0.40% and $PM_{10}$ levels are forecasted to increase to 0.21% in 2045.  Total mobile source toxic air emissions were forecasted to increase by 0.7% in Bergen County in 2023.  *See* EA Figure 10-14.

**F.**     **The Tolling Program is Needed for New Jersey to Meet its GHG Reduction Goals**

The Tolling Program is needed for New Jersey to meet its goal of reducing GHGs by 50% from 2006 levels by 2030 (the "50x30 Goal").

The 50x30 goal is mandated by both statute and executive order.  Executive Order 274 directs all State agencies to develop strategies to accomplish New Jersey's policy of reducing GHGs by 50% below 2006 levels by 2030.  N.J.S.A. 26:2C-58, part of New Jersey's Global Warming Response Act, requires the State to lower GHGs in accordance with the goals established by the United States Climate Alliance.  One of those goals is to reduce GHG emissions by at least 50-52% below 2005 levels by 2030.[13]

37% of GHGs in New Jersey are produced by the transportation sector, by far the largest source of GHGs in the State.[14]  New Jersey is not on track to meet the 50x30 Goal and has no plan to meet it.  Without a substantial reduction in GHGs from the transportation sector, the 50x30 Goal cannot be met.

The Tolling Program could go a long way to meeting the 50x30 Goal and it is difficult to imagine meeting that goal without the Tolling Program.

---

[13] https://usclimatealliance.org/policy-priorities/ghg-targets-governance/
[14] https://dep.nj.gov/drivegreen/mhdv-contribute/#:~:text=Just%20like%20the%20nation%20as,of%20the%20state's%20entire%

### G.     The Tolling Program Will Benefit New Jersey Companies

Plaintiff wrongly considers the Tolling Program as a zero-sum game. To the contrary, MTA spending has benefited New Jersey companies and the Tolling program will enhance those benefits.

For the period 2018-2022, the MTA paid New Jersey companies $2,430,984,512 for goods and services it procured. This constituted approximately 9% of the MTA's total spending. [15]

Congestion pricing tolls will generate approximately $15 billion of additional revenue to complete the MTA's $55 billion capital plan.  Consistent with historical spending, New Jersey companies will likely receive more than $1 billion in revenue generated solely from the Tolling Program.

### H.     The Tolling Program Will Incentivize the Use of Public Transportation and Provide Much Needed Revenue for NJT

By discouraging private vehicles from driving into the CBD and encouraging greater use of public transportation, the Tolling Program will provide desperately needed revenue for NJ Transit ("NJT").

As previously noted, NJT is facing a nearly $1 billion operating shortfall in 2026 with no plan to fill the gap.[16] The Governor has refused calls to provide a

---

[15] https://data.ny.gov/Transportation/MTA-Spending-by-States-2018-2022/fxuw-y87w

[16] https://www.northjersey.com/story/news/transportation/2023/04/20/nj-transit-facing-a-nearly-billion-dollar-hole-in-2026/70131020007/

dedicated funding source for NJT.  This has left NJT unable to invest in needed capital improvements. There are more than $45 billion worth of needed projects in the capital plan,  80% of which do not have funding, [17] These include  many projects that would directly benefit Bergen County such as the long-delayed extension of the Hudson-Bergen Light Rail line into Bergen County, the construction of the Bergen Loop that would allow  one-seat rides into the CBD for Bergen County residents, Bergen County rapid bus transit and the electrification of Bergen County trains..[18] Billions of dollars have been diverted from NJT's Capital Budget to cover NJT operating expenses.[19]  In 2022 NJ Transit trains broke down twice as often as they did six years ago.[20]

While NJT has innumerable capital needs, they will not increase because of the Tolling Program as Plaintiff suggests without a shred of evidence.  Additional train riders, for example, will fill seats that have been empty since the pandemic at no additional cost. The Tolling Program will bring sorely needed revenue relief to NJT.

---

[17] https://www.northjersey.com/story/news/transportation/2023/03/06/nj-transit-budget-woes-are-decades-old-will-politicians-dedicate-funds/69955351007/
[18] https://tstc.org/wp-content/uploads/2020/04/Rail-and-Road-To-Recovery-Final.pdf
[19] https://www.bloomberg.com/news/articles/2022-03-30/murphy-s-flat-nj-transit-fares-leave-major-projects-short-funds
[20] https://www.northjersey.com/story/news/transportation/2023/03/06/nj-transit-budget-woes-are-decades-old-will-politicians-dedicate-funds/69955351007/

## I.      <u>There is Wide Support for Congestion Pricing in New Jersey</u>

There is substantial support in New Jersey for congestion pricing and for the

Governor to start emulating the Tolling Program, not fighting it.

Charles Stile, a lead columnist for northjersey.com and the Bergen Record

wrote in a column, entitled "Faux outrage over congestion tolls may be good

politics. NJ Transit is still a mess":[21]

> The vast majority of daily New Jersey commuters, some
> 432,000 who take trains or buses to Manhattan, stand to
> benefit from New York's new tolling plan….
> Instead [of extolling how congestion pricing is a good
> bargain for New Jersey mass transit riders], "we got
> chest-thumping and wails of bluster from New Jersey
> Democrats, who vowed not to get pushed around by the
> Big Bad Bully across the Hudson….
> In other words, New Jersey's Democrats were going to
> war with New York on behalf of a minority of driving
> commuters who are generally high earners, hoping to
> block a policy that benefits a majority of commuters who
> tend to earn less money.

Another recent December 3, 2023 Star Ledger article aptly summed up the

situation when it wrote the following:

> Instead of responding with lawsuits and political
> kvetching and can-kicking, the governor can best serve
> his state by investing in our own rail and bus systems,
> and prevent New Jersey Transit from being slammed by a
> $1 billion deficit in two years….
>
> Gov. Kathy Hochul showed political will and took bold
> action to begin the process of fixing a century-old

---

[21] https://www.northjersey.com/story/news/columnists/charles-stile/2023/07/25/nj-transits-woes-are-deflected-by-congestion-tolling-lawsuit/70457287007/

> subway that moves 1.7 billion people a year, while Gov.
> Murphy seems content to watch NJ Transit get flattened
> by a dive off a fiscal cliff.
>
> The contrast is striking. The MTA is cleaning up its act
> because Albany had an action plan, and NJ Transit is
> about to go broke because Trenton is dozing….
>
> This not the time to snarl at Albany, this is the time for
> Trenton to follow its example, and to bolster our transit
> network, our workforce, and our state economy….
>
> Congestion pricing is on the way, it will benefit New
> Jersey straphangers and the regional economy, and it
> serves as a compelling reminder that it is time for our
> state to invest in its own system.[22]

Simply stated, the Tolling Program is in New Jersey's best interests.

## II.    PLAINTIFF'S POSITIONS IN THIS ACTION DIRECTLY CONFLICT WITH THE POSITIONS IT IS TAKING ON THE TURNPIKE EXPANSION

Plaintiff's positions in this action directly conflict with its positions regarding NJTA's $10.7 billion Turnpike Expansion and show Plaintiff's hypocrisy in claiming that there is an environmental basis to oppose the Tolling Program. Plaintiff cannot have it both ways: to claim that no environment impact statement is required for its massive highway expansion project with undeniable environmental impacts, yet allege that the Tolling Program, with its undeniable environmental benefits, needs even more environmental scrutiny.

---

[22] https://www.nj.com/opinion/2023/12/enough-whingeing-over-congestion-pricing-governor-do-your-job.html

Governor Murphy appoints the NJTA Board and can veto any NJTA action.[23]  For example, shortly before November's election, the Governor vetoed a toll increase for the Turnpike and Garden State Parkway, even though he had previously authorized it.[24]

In March 2020, NJTA, with the Governor's approval, adopted a ten-year capital plan that calls for spending more than $16 billion to widen sections of the New Jersey Turnpike and Garden State Parkway all over the State.[25] This is a small fraction of what these projects will eventually cost. The capital plan projected that the Turnpike Expansion would cost $4.3 billion.  Amicus EmpowerNJ discovered that NJTA's internal documents were projecting the cost to be $10.7 billion, a figure the NJTA then reluctantly confirmed.[26]

The Turnpike Expansion has four phases.  The first phase is to tear down and double the capacity of the Newark Bay Bridge (the "Bridge" or "NBB").  Currently, the Bridge has two lanes of traffic in each direction.  NJTA's plan is to build one new four lane bridge, demolish the existing bridge, and then build

---

[23] N.J.S.A. 27:23-3

[24] https://www.northjersey.com/story/news/transportation/2023/10/26/phil-murphy-veto-nj-turnpike-budget-toll-hike/71331512007/

[25] https://www.njta.com/media/5832/2020_njtalongrangecapitalplan_v1-as-approved-may-2020.pdf

[26] https://www.nj.com/opinion/2022/11/the-turnpike-fiasco-just-got-twice-as-bad-editorial.html; https://www.nj.com/news/2022/11/cost-to-widen-nj-turnpike-extension-to-holland-tunnel-balloons-to-106b.html

another four-lane bridge so that two new bridge spans will have twice the capacity of the old bridge.  The Bridge replacement alone will cost more than $6 billion.[27] Future phases of the Project will demolish, replace, and expand the remainder of the NBHCE, which runs through Bayonne and Jersey City, and ends at the Holland Tunnel access roads.[28]

The Turnpike Expansion has generated enormous and widespread opposition because of the adverse environmental impacts it would create. The Jersey City Council unanimously adopted a resolution opposing the Turnpike Expansion, citing among other things, the increased GHGs and toxic pollutants it would generate.[29]  The Hoboken City Council also passed a resolution against the Turnpike Expansion on similar grounds.[30]  Numerous editorials and op-eds have decried the Turnpike Expansion,[31] and Hudson County residents have rallied to oppose the plan for the same reasons.[32]

---

[27] https://www.northjersey.com/story/news/transportation/2023/10/11/nj-turnpike-authority-widening-newark-jersey-city-highway/71132635007/
[28] https://www.njta.com/media/6149/newark-bay-hudson-county-extension-fact-sheet_final-8-3-21.pdf
[29] https://cityofjerseycity.civicweb.net/document/73115/
[30] https://hobokennj.iqm2.com/Citizens/Detail_LegiFile.aspx?Frame=&MeetingID=2294&MediaPosition=&ID=8423&CssClass=
[31] https://www.nj.com/opinion/2022/11/the-turnpike-fiasco-just-got-twice-as-bad-editorial.html
[32] https://jcitytimes.com/activists-and-local-officials-gather-to-protest-turnpike-widening/

The outpouring of opposition is because traffic studies and experience universally show that highway widenings, particularly in urban areas, only provide temporary, if any, reduction in traffic congestion.  Ultimately, lane widening results in more driving and even greater long-term congestion, a phenomenon known as "induced demand."  Each mile of new highway lane increases capacity up to 2,850 vehicles/hour.[33]  The EPA's Guidebook on Induced Travel concluded that a 10% increase in highway capacity caused an immediate 3% to 5% increase in VMT in 1 to 2 years and a 5% to 9% increase in VMT over 10 to 20 years.[34] There are countless examples of expanding highways increasing vehicle use and not relieving congestion.  Los Angeles' I-405 freeway was completed in 2014 after five years of construction and a cost of more than $1 billion. Traffic  moved slower after the widening.[35]  When Texas in 2011 widened the Katy Freeway in Houston to more than 20 lanes, the widest in the world, at a cost of $2.8 billion, congestion returned to previous levels within a few years, and it is now worse.[36]

---

[33] Traffic Data Computation Method Pocket Guide, USDOT (August 2018). https://www.fhwa.dot.gov/policyinformation/pubs/pl18027_traffic_data_pocket_guide.pdf

[34] https://nepis.epa.gov/Exe/ZyNET.exe/94004L98.txt?ZyActionD=ZyDocument&Client=EPA&Index=2016%20Thru%202020%7C2011%20Thru%202015%7C2000%20Thru%202005%7C2006%20Thru%202010%7CPrior%20to%201976%7C1976%20Thru%201980%7C1981%20Thru%201985%7C1986%20Thru%201990%7C1991%20Thru%201994%7C1995%20Thru%201999%7C

[35] https://www.vox.com/2014/10/23/6994159/traffic-roads-induced-demand.

[36] https://cityobservatory.org/reducing-congestion-katy-didnt/

Funding highway expansions relative to other strategies is "the main driver of emissions outcomes."[37]  Rocky Mountain Institute ("RMI") is a highly regarded firm dedicated to researching climate change and sustainability issues.  Plaintiff hired and relied upon RMI in preparing its 2020 State Energy Master Plan.  RMI summarized the failed policies of highway expansions this way:

> [R]oad expansion projects move us in the wrong direction, generating more traffic that increases climate pollution, worsens local air quality, and leads to more road crashes. Vulnerable and frontline communities bear a disproportionate burden from these impacts, including health effects from hazardous air pollutants.[38]

While Plaintiff in this action is purportedly concerned with Fort Lee and George Washington Bridge traffic, it has shown no concern when it comes to the Turnpike Expansion. It will increase traffic on Jersey City's local streets, which are already utilized as a cut-through alternative to reach the Holland Tunnel due to the frequent congestion at the Holland Tunnel approach.[39]

The Turnpike Expansion also raises substantial environmental justice issues. According to an internal NJTA document, overburdened communities make up 72.1% of the population in the 21 census tracts closest to the NBHCE and will be

---

[37] https://www.georgetownclimate.org/articles/federal-infrastructure-investment-analysis.html

[38] https://rmi.org/if-you-build-it-the-cars-and-the-pollution-will-come/

[39] https://www.nj.com/opinion/2022/08/expanding-the-turnpike-will-hurt-jersey-city-and-the-climate-opinion.html.

disproportionately harmed by the increased traffic and pollution generated by the Turnpike Expansion.[40]  A .Jersey City analysis found that most census tracts within a quarter mile of the NBHCE are considered as having high or very high concentrations of historically underserved populations, especially those tracts in the southeastern portion of the City.[41]

Despite all this evidence, NJTA incredibly contends that an EIS is not required for the Turnpike Expansion.  NJTA's Bridge Application and Independent Utility Assessment ("IUA") asks the United States Coast Guard ("USCG") to consider the Bridge as a "stand alone" project, separate and apart from the remaining phases of the Turnpike Expansion and to issue an Environmental Assessment/Finding of No Significant Impact (EA/FONSI) regarding the Bridge replacement.[42]

---

[40] July 17, 2020 Needs Assessment and Alternative Study prepared for NJTA by Jacobs Engineering, page 3-8
[41] JC On the Move Final Report Appendix, https://jconthemove-jerseycity.hub.arcgis.com/pages/study-documents

[42] This position blatantly violates the rule against segmentation; that in determining whether an EIS or EA should be prepared, an agency must examine all connected projects or actions. 40 CFR §1501.3(b). Further, NJTA's contention that it "might" not proceed with phases 2, 3 and 4 after it completes the Bridge Replacement does not pass the straight face test. Its capital plan remains unchanged and it is not credible that NJTA would spend more than $6 billion building two new bridges with eight lanes only to have them feed into a four-lane highway, causing a new bottleneck and a traffic nightmare.

This position conflicts with Plaintiff's position in this action in a number of material respects and undermines the credibility of its arguments here.

**A.    Plaintiff's Position Regarding the Turnpike Expansion is that Large Highway Projects and Increases in VMT Do Not Require an EIS**

In its Complaint and motion in this action, New Jersey argues that large and even small highway projects invariably require an EIS. (Br. at 12-13). According to the Complaint, "NEPA was enacted to address the impacts of large-scale federal highways…, that could harm the environment and adversely affect local communities." (¶7). The "decision to forego an EIS for a proposed action that will affect hundreds of thousands of vehicles driving in and out of states in the New York metropolitan area on a daily basis stands in stark contrast to the FHWA's previous decisions to conduct an EIS for far less significant proposals, such as the addition of a 4.3-mile vehicular travel lane near JFK Airport in 2019." (¶5).

This position is, of course, directly at odds with its position that demolishing and then building a new, expanded 8.1-mile highway through a densely populated urban area does not require an EIS. Plaintiff cannot have it both ways.

Further, according to a recent NJTA filing with the New Jersey Department of Environmental Protection ("NJDEP"), the Bridge replacement alone will generate substantial additional traffic going into Jersey City and New York City. It projects a 32% increase in eastbound traffic, the very type of change that,

according to Plaintiff, should trigger an EIS.[43]  These numbers are also grossly understated because they i) only account for the increased traffic generated by the Bridge replacement alone; and ii) fail to consider induced demand.  Despite all this, NJTA maintains that no EIS is required for the Turnpike Expansion, the exact opposite of Plaintiff's position in this action.

Perhaps the most cynical and disingenuous part of New Jersey's summary judgment motion is linking the Tolling Program to the destructive highway projects of Robert Moses, such as his bulldozing the East Tremont neighborhood in the Bronx to build the Cross Bronx Expressway.  (Br. at 10).

The Tolling Program is the antithesis of the Moses approach; it discourages driving and incentivizes public transportation.  In contrast, Governor Murphy is a modern-day Robert Moses who is emulating the worst aspects of Moses's legacy by seeking to expand the NBHCE and build Moses-style highways all over the State, underfunding public transportation in New Jersey, and in this action trying to kneecap improvements to public transportation in New York.  Plaintiff is falsely accusing the defendants of the very practice it is engaging in elsewhere.

---

[43] https://www.njta.com/media/7714/draft-environmental-impact-statement-for-newark-bay-hudson-county-extension-improvements-program-14-to-14a.pdf at pages 108-9

**B.**     **Plaintiff's Position Regarding the Turnpike Expansion is that No Stakeholder Input is Required for Large Highway Projects**

Plaintiff alleges that the defendants violated NEPA by not meaningfully consulting with the New Jersey public and affected stakeholders throughout the environmental review process. (Br. at 5).  It also complains that FHWA failed to afford New Jersey agencies a meaningful and early opportunity to engage in substantive meetings or dialogue regarding the potential regional impacts of the Tolling Program in the CBD.  (Id. at 6).

The Complaint also cites the lack of input from local communities.  ("There was *no* meaningful engagement with localized groups in Orange, East Orange, Newark, Fort Lee and/or Bergen and Essex County—all of which are geographically proximate to New York City, contain large commuter populations, and are necessarily impacted by congestion pricing") (¶74).  Ironically, while Plaintiff complains that Newark and East Orange, environmental justice communities, were not properly consulted about the Tolling Program, one of the projects in NJTA's capital plan is to expand the Garden State Parkway through the heart of those communities, doubling down on the devastation those communities initially suffered when the Parkway was first built.

Plaintiff further complains the "FHWA did not provide public hearings as *part of* the Draft EA's development, and instead, only held hearings *after the fact*, in direct contradiction of the purpose of NEPA." (¶76).

22

Putting aside the innumerable opportunities for public engagement in the EA process, the numerous public hearings held on the Tolling Program, and the meetings with New Jersey officials, many of which are even described in the Complaint, these arguments could not be more hypocritical.  Public input in connection with the Tolling Program was a model of transparency compared to what NJTA is doing in connection with the Turnpike Expansion.   NJTA has refused to accept any meaningful public input of any kind and has ignored the strenuous opposition to the Project by local officials and the public.  It has refused, for example, to have any substantive conversations with Jersey City where the bulk of the NBCHE is located.[44] NJTA's only plan for public "engagement" is supposedly to have some sort of public event in 2024 to present its plans for the Bridge replacement when it is already a fait accompli.

### C.   Plaintiff Will Not Consider Alternatives to the Turnpike Expansion

Plaintiff contends that the MTA wrongly did not consider alternatives to the Tolling Program that would decrease congestion in the CBD.  (Br. at 43-47).

---

[44] https://www.nj.com/news/2022/11/turnpike-widening-opponents-say-report-boosts-case-against-47b-plan-to-add-more-lanes.html; https://www.nj.com/opinion/2022/11/the-turnpike-fiasco-just-got-twice-as-bad-editorial.html

However, when it comes to the Turnpike Expansion, Plaintiff refused to look at a host of alternatives that would reduce traffic congestion.  These include i) investing in public transportation such as express bus lines, improving PATH service, and finally completing, as long promised, the Hudson-Bergen Light Rail Line; ii) carpooling, the very option that Plaintiff says the FWHA should have looked at to reduce traffic congestion (br. at 46); iii) improving freight rail service that would reduce truck traffic from the port area, an approach that California recently adopted when it rejected a long-planned highway expansion from the Port of Long Beach and instead authorized spending $1.5 billion to improve and expand rail service out of the port;[45] and iv) staggering truck traffic leaving the port so that trucks did not use  the NBCHE during rush  hours when there is traffic congestion.

NJTA's refusal to even consider improving bus service into lower Manhattan as an alternative to improving traffic congestion on the NBHCE is particularly egregious.  The decision to put an express bus lane at the Lincoln Tunnel in 1971 completely changed the landscape for Jersey Commuters. In its first full year of operation, the lane accommodated approximately 206,000 buses and 8.7 million passengers.  The express bus lane now carries 18.5 million

---

[45] https://www.asce.org/publications-and-news/civil-engineering-source/civil-engineering-magazine/article/2022/06/1-5b-project-will-boost-rail-capacity-at-port-of-long-beach

passengers annually.[46]  In 2019, 387,186 bus passengers used the Lincoln Tunnel

on a daily basis compared to 126,643 car, van and truck passengers.

These percentages are reversed at the Holland Tunnel where there is no

dedicated bus lane.  There are only 21,901 bus passengers and 106,097 passengers

using cars, trucks, and vans.[47]  Yet the Governor and NJTA have stubbornly

refused to even consider any public transportation component, including dedicated

bus lanes, as an alternative to the $10.7 billion Turnpike Expansion plan.

A Star Ledger editorial summed up Plaintiff's hypocrisy and "political chest

puffing" this way:

> New Jersey has sued the federal government for allowing
> New York City's congestion pricing plan to advance,
> shrieking that it will result in a pollution spike, a specious
> claim that will likely be consigned to history as pointless
> political chest-puffing….
> And this legal Hail Mary is just the kind of hypocrisy one
> expects from a state that fails to take cars off the road by
> expanding its own transit system….
> Meanwhile the Murphy Administration plans to pour $10
> billion into a Turnpike widening project, which will
> induce more vehicles to choke Hudson County

---

[46] https://www.panynj.gov/bridges-tunnels/en/lincoln-tunnel/xbl.html#:~:text=Today%2C%20the%20XBL%20averages%20over,18.5%20million%20passengers%20a%20year

[47] https://www.nymtc.org/Portals/0/Pdf/Hub%20Bound/2020%20Hub%20Bound/DM_TDS_Hub_Bound_Travel_2020.pdf?ver=7-8ajxAjRWKdEvXcdBYagQ%3d%3d.

neighborhoods, rather than walking his talk as a climate hawk.[48]

## CONCLUSION

For the reasons set forth above, Amici Curiae respectfully urge the Court to grant Defendants' cross-motion for summary judgment and deny Plaintiff's motion for summary judgment.

Dated:  December 15, 2023

Respectfully submitted,

*/s/ John H. Reichman*
John H. Reichman
Johnreichmanlaw LLC
56 Oakwood Avenue
Montclair, NJ 07043
917.626.8025
John@johnreichmanlaw.com
(Bar ID # 003981983)

*Attorneys for Amici Curiae*

---

[48] https://www.nj.com/opinion/2023/07/congestion-pricing-is-coming-stop-the-fearmongering-editorial.html