1                    **UNITED STATES DISTRICT COURT**
                   **FOR THE DISTRICT OF NEW JERSEY**
2

3    ═══════════════════════════════

     STATE OF NEW JERSEY, et al,      CIVIL ACTION NUMBER:
4
          Plaintiff,                  2:23-cv-03885-LMG-LDW
5
     v.                               STATUS CONFERENCE
6
     UNITED STATES DEPARTMENT OF      Pages 1 - 76
7    TRANSPORTATION, et al,

8         Defendant.
     _____
9         Frank Lautenberg Post Office & U.S. Courthouse
          2 Federal Square
10        Newark, New Jersey 07102
          Thursday, March 21, 2024
11        Commencing at 10:35 a.m.

12   B E F O R E:        THE HONORABLE LEO M. GORDON
                         UNITED STATES COURT OF INTERNATIONAL TRADE
13

14   A P P E A R A N C E S

15        KING & SPALDING, LLP
          BY:  RANDY M. MASTRO, ESQUIRE
16        BY:  LAUREN MYERS, ESQUIRE
          1185 Avenue of the Americas, LLP
17        New York, New York 10036
          For the Plaintiff
18
          NAGEL RICE, LLP
19        BY:  RANDEE M. MATLOFF, ESQUIRE
          103 Eisenhower Parkway,  Suite 201
20        Roseland, New Jersey 07068
          For the Plaintiffs Consolidated
21

22
                         Francesca DiBella
23                       Official Court Reporter
                   francesca_dibella@njd.uscourts.gov
24                        (973) 776-3885
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.

1    (Continuing)

2    **A P P E A R A N C E S:**

3         UNITED STATES ATTORNEY'S OFFICE
          DOJ-ENRD
4         NATURAL RESOURCES SECTION
          BY:  GREGORY MARTIN CUMMING, ESQ.
5         150 M. Street, N.E.
          Washington, DC 20002
6         For the Defendants

7
          UNITED STATES ATTORNEY'S OFFICE
8         BY:  ALEX D. SILAGI, ESQ.
          970 Broad Street
9         Newark, New Jersey 07102
          For the Defendants
10

11        UNITED STATES ATTORNEY'S OFFICE
          DOJ-ENRD
12        BY:  SHARI HOWARD, ESQ.
          150 M. Street, N.E. 4th Floor
13        Washington D.C., 20002
          For the Defendants
14

15        SIVE, PAGET & RIESEL, P.C.
          BY:  MARK A. CHERTOK, ESQ.
16        BY:  AMY CASSIDY, ESQ.
          560 Lexington Avenue, 15th Floor
17        New York, New York 10022
          For the Intervenor Defendant
18        Metropolitan Transportation Authority

19

20

21

22

23

24

25

```
 1    (Continuing)

 2    A P P E A R A N C E S:

 3

 4         JOHN REICHMAN LAW, LLC
           BY:  JOHN REICHMAN, ESQ.
 5         56 Oakwood Avenue
           Montclair, New Jersey 07043
 6         For Amicus Empower NJ, New Jersey Policy Perspective,
           Health Professionals & Allied Employees, Clean Water
 7         Action, Turnpike Trap Coalition, Hudson County Complete
           Street, Soma Action, Unitarian Universalist Faith Action
 8         NJ, Pinelands Preservation Alliance, Bike North Bergen,
           Ecopoetry.org, Don't Gas the Meadowlands, Isles, Inc.,
 9         Bike JC, SafestreetsJC, 350 NJ-Rockland, Hackensack
           Riverkeeper, Inc., People Over Pipelines, Fund for a
10         Better Waterfront, Newark Green Team, Action Together
           New Jersey, New Jersey Association of Railroad
11         Passengers, BlueWaveNJ, Bike Soma, Newark Science and
           Sustainability, Inc., Our Revolution NJ, BII UC, Friends
12         of Liberty State Park, New Jersey Environmental Lobby,
           New Jersey Work Environment Council, New Jersey citizen
13         Action, South Ward Environmental Alliance, New Jersey
           Working Family Party, and Bike Hoboken
14

15         KRAMER LEVIN NAFTALIS & FRANKEL, LLP
           BY:  ANDREW OTIS, ESQ.
16         1177 Avenue of the Americas
           New York, New York 10036
17         For the Amicus Environmental Defense Fund
                     -and-
18         ROSENBERG & ESTIS, P.C.
           BY:  CYNTHIA SIDERMAN, ESQ.
19         733 Third Avenue, 14th Floor
           New York, New York 10017
20         For Amicus Environmental Defense Fund

21

           BERGEN COUNTY – COUNTY COUNSEL OFFICE
22         BY:  DAVID MATEEN ESQ.
           One Bergen County Plaza, 5th Floor
23         Hackensack, New Jersey 07601
           For the Amicus – County of Bergen
24

25
```

```
 1              (PROCEEDINGS held in open court before The Honorable
 2    LEO M. GORDON, United States District Court Judge, at 10:34
 3    a.m.)
 4              THE COURT:  Okay.  Good morning, everybody.
 5              MS. MEYERS:  Good morning, your Honor.
 6              MR. MASTRO:  Good morning.
 7              THE COURT:  Welcome.  And thank you for being here.
 8    Okay.  Sharia, you want to call the case, please.
 9              THE COURTROOM DEPUTY:  Sure.  This is an in-person
10    status conference for 23 Civil 03885, State of New Jersey, et
11    al, v. United States Department of Transportation, et al.
12              THE COURT:  Mr. Mastro, you are here on behalf of the
13    plaintiff, I see.
14              MR. MASTRO:  Yes, your Honor.  With my colleague,
15    Lauren Meyers.
16              THE COURT:  Good morning, Ms. Meyers.
17              MS. MEYERS:  Good morning.
18              THE COURT:  And who might be seated behind you?
19              MS. MATLOFF:  Good morning, Judge.  This is Randee
20    Matloff from Nagel Rice.  Mr. Nagel couldn't be here.
21              THE COURT:  Good morning, Ms. Matloff.
22              MS. MATLOFF:  I'm here for the Amici.
23              THE COURT:  Well, Mr. Nagel, I miss his bright and
24    smiling countenance.
25              MS. MATLOFF:  I will let him know that.
```

PROCEEDINGS                                    5

```
 1            THE COURT:  Plaintiff Amici is just -- if I remember
 2   correctly, Mr. Mateen?
 3            MR. MATEEN:  Yes, your Honor.
 4            THE COURT:  You're here.  Would you have a seat back
 5   behind plaintiff's counsel, please.
 6            Mr. Cumming?
 7            MR. CUMMING:  Good morning, your Honor.
 8            THE COURT:  Good morning.  You are accompanied by?
 9            MR. CUMMING:  Shari Howard and Alex Silagi for the
10   Government.  Thank you.
11            THE COURT:  Good morning.
12            Mr. Chertok, I see that you're here on behalf of the
13   MTA.
14            MR. CHERTOK:  Good morning, your Honor.  I'm
15   accompanied by Amy Cassidy.
16            THE COURT:  All right.  Amy?
17            MR. CHERTOK:  Cassidy.  Kind of like --
18            THE COURT:  I do not see your name, so I will add it
19   to my list.
20            The traditional spelling, C-a-s-s-i-d-y?
21            MS. CASSIDY:  Yes, your Honor.
22            THE COURT:  Welcome.  Welcome to the party.
23            Okay.  And on behalf of the Amici on the defendant's
24   side, Mr. Reichman.
25            MR. REICHMAN:  Good morning, your Honor.
```

```
 1              THE COURT:  Good morning.

 2         And Mr. Warren?

 3         MR. OTIS:  Mr. Otis actually.

 4         THE COURT:  Mr. Otis, I'm sorry.

 5         MR. OTIS:  Along with my colleague, Cynthia Siderman.

 6         THE COURT:  I don't have you on my list.

 7         MR. OTIS:  No, she's new.  Siderman.

 8         THE COURT:  S-i-d-e-r-m-a-n?

 9         MS. SIDERMAN:  That is correct.

10         MR. OTIS:  That's correct.

11         THE COURT:  Okay.

12         MS. SIDERMAN:  Good morning, your Honor.

13         THE COURT:  Welcome to the party.

14         MR. OTIS:  Thank you.

15         MS. SIDERMAN:  Thank you.

16              THE COURT:  Mr. Otis, give my regrets to your

17    colleagues who are hosting a party for the NY PAL dinner

18    tomorrow night.  I am not attending, but I appreciate their

19    kind invitation to the party that -- the before- or after-

20    party that they're throwing, but obviously since you all are

21    appearing before me, even if I was attending, I am not showing

22    up.

23              MR. OTIS:  I will send your regrets.

24              THE COURT:  Tell them to have a good time at the

25    party.  Anyway, it's -- the patent prom is always a lot of
```

 1    fun.

 2             MR. OTIS:  I will send your regrets.

 3             THE COURT:  Okay.  Very good.

 4             All right.  So thank you for being here.  We're going

 5    to try to take care of a whole bunch of administrative things.

 6    Candidly, I'm hoping this is not going to take us the full

 7    period of time allotted, but part of this depends upon you all

 8    and kind of how well prepared you are to address the questions

 9    I have how to best proceed two weeks from now at oral

10    argument.

11             First off, I do wish to ask a question.  I know that

12    you all have met plus the folks from New York with Judge

13    Wettre.  I'm not supposed to know the specifics of what's

14    going on in the conversations about settlement and I don't.

15             If somebody would like to give me, perhaps, a status

16    report as to whether things are on track, whether things might

17    be hopeful or not, I'm all ears and willing to listen.  If you

18    are uncomfortable talking about it out here, we can recess

19    into my chambers and have a conversation.  It can be with

20    everybody or it can be, you know, each side one at a time.

21             There appears to be nobody in the gallery.  This is

22    my judicial assistant and my legal intern here.  My law clerk

23    down front.  So it's nobody but us mice here.

24             MR. MASTRO:  Okay.  Your Honor, as much as I have not

25    commented to anyone on anything involving that, at your

1  Honor's request, I will simply say that what I understand to

2  be the state of play is that the MTA and the State are

3  admittedly to get back to Judge Wettre on certain issue and

4  then she will speak to us about certain issues.  But not --

5  that particular day which was an all-day session, there was a

6  day --

7             THE COURT:  Okay.  When are you due to --

8             MR. MASTRO:  -- not anything that I could report on.

9             THE COURT:  Okay.  When are you due to get back to

10  Judge Wettre and meet again?  Do you all know?

11             MR. CHERTOK:  I can respond, your Honor.

12             THE COURT:  Yes, Mr. Chertok.

13             MR. CHERTOK:  We have a call set with Judge Wettre

14  tomorrow afternoon.

15             THE COURT:  Very good.  Anything more that anyone

16  wishes to add?

17             MR. CHERTOK:  I think at this point that's all that

18  we can possibly say.

19             THE COURT:  That's perfectly fine.

20             MR. CHERTOK:  Thank you.

21             THE COURT:  All right.  I will give you some food for

22  thought.  I recently attended a conference on mesh tort

23  litigation, MDL litigation and class actions, and I learned an

24  interesting phrase.  And I was there with a bunch of different

25  folks who I happen to know who -- different judges, mediators,

 1  arbitrators, litigators, etc., and they all kind of

 2  universally concluded the same thing and agreed on the

 3  following statement:   Judgments are for egos -- or verdicts

 4  are for egos.   Settlements feed families.

 5          So if you've never heard that before, bear that in

 6  mind as you talk to Judge Wettre.   You know, maybe that will

 7  be helpful.

 8          Okay.   The first order of business this morning is to

 9  ask whether anybody has any concerns about any of the

10  revisions that were filed relative to the briefs or the

11  amended complaint to conform those documents to the culled

12  concise consolidated administrative record.

13          Does anybody have any concerns that anybody exceeded

14  the bounds of the order, either purposely or inadvertently?

15          I have not seen any motion papers.   I have not seen

16  any e-mail communication to Ms. Creegan, but I just want to

17  verify for the record that, to the best your knowledge, you

18  are all comfortable with what was resubmitted as revised

19  documents.

20          I'll start with the plaintiff.

21          MR. MASTRO:   Yes, your Honor.

22          THE COURT:   You are satisfied?

23          MR. MASTRO:   Yes, your Honor.

24          THE COURT:   Okay.

25          Plaintiff Amici 1.   Ms. Matloff?

```
 1              MS. MATLOFF:  No, I have no --

 2              THE COURT:  Concerns.

 3              MS. MATLOFF:  -- concerns about it.

 4              THE COURT:  Mr. Mateen?

 5              MR. MATEEN:  No concerns.

 6              THE COURT:  Mr. Cummings, on behalf of the defendant?

 7              MR. CUMMING:  No concerns, your Honor.

 8              THE COURT:  Mr. Chertok?

 9              MR. CHERTOK:  No concerns.  And I'm sure if something

10    comes up we'll be discussing it and resolve it very quickly

11    because it would have been an inadvertent error in any event

12    from any of the parties I think.

13              THE COURT:  That's why there's a little pink rubber

14    thing on top of a wooden stick that sits on top of most

15    people's desks or in their desk drawers.  It's called a

16    pencil.  It's called an eraser.  People are human.  People

17    make mistakes.  And, you know, as long as somebody owns up to

18    it, learns from it, we move on.

19              Defendant Intervenors, any concerns?

20              MR. OTIS:  No issues, your Honor.

21              MR. REICHMAN:  No concerns, your Honor.

22              THE COURT:  Okay.  Very good.

23              You all don't have to stand up and down.  We're here

24    to have a conversation today.  I appreciate the respect and

25    the courtesy shown to the Court but, you know, unless you're
```

PROCEEDINGS

1   trying to get your steps in, you know, on your -- on your

2   watch, you don't have to stand and then sit.

3        Okay.  Item next.  We've been through the culled

4   administrative record and we have a number of questions.  I'm

5   hoping to actually get through them in a way that is coherent

6   and concise, but if I have a little problem I'm going to ask

7   my clerk, Mr. Shambon, to help us out.

8        So I'm going to turn your attention to record number

9   39319.  It's a document dated 9/15/2021.  It is a letter from

10  sponsors asking the Federal Highway Administration for

11  approval of New Conformity Assessments of Dutchess County,

12  etc., and the respective transportation counsels regarding

13  p.m. ozone and carbon monoxide.

14       My guess is you obviously don't have the documents

15  here.  Okay.  I'm just going to go through these, give you a

16  list and then we'll arrange for a time for a Teams call next

17  week to try to resolve what's going on, but let me go through

18  these and if you have any questions about what we're concerned

19  about, I'll slow down to make sure that you take some notes.

20       And Len, can we put this in a form to send out to the

21  parties?

22       THE LAW CLERK:  Yeah.

23       THE COURT:  Okay.  So we'll follow up at some time

24  between now and Monday to send you a summary document that

25  outlines the document number, the date, and the concerns.

PROCEEDINGS                                        12

 1          So on this document, the document, this letter from

 2     sponsors, right, are there no attachments -- this is a

 3     response, right, Len?  That we're concerned about 319.

 4          THE LAW CLERK:  This was a response.

 5          THE COURT:  Yeah.  This is a response to the letter,

 6     right, and the document apparently makes reference to some

 7     attachments, and there's no obvious cc to New Jersey

 8     officials, so we're just trying to figure out what's going on

 9     here and are there documents that should attend to this record

10     number that inadvertently were not included?  I'm sure they

11     are in the large 48,000 page, 1,600 plus document record, but

12     they may not have made it over to the consolidated record.

13          Item number 2 is record number 40053.  It's an e-mail

14     from the MTA to the U.S. DOT regarding -- and the EPA

15     regarding a proposed p.m. hot spot methodology for local

16     effects of tolling program attached for a review for the ICG

17     meeting.  There's no attachment to the document in the culled

18     administrative record.

19          Record number 4019 -- oh, I'm sorry.  That second

20     document was dated 4/18/2022.

21          The next one is 40190, dated July 12, 2022.  It's a

22     letter from the Federal Highway Administration to sponsors

23     responding to sponsors June 23, 2022, submission of a revised

24     draft EA.  It makes reference to seeing enclosed items that

25     focus on potentially significant impacts and potential

 1   mitigation that may be needed.

 2         The June 23rd incoming letter and the revised EA are

 3   not in the culled administrative record nor is the Federal

 4   Highway Administration attachment of further suggestions.

 5         Okay.  Am I going at a good enough pace for

 6   everybody?  Okay.

 7         Item next.  Record number 40227, dated July 19,

 8   2022 -- no, I'm sorry.  Forgive me.  Wrong number.  Wrong

 9   number.

10         Document number 41634, dated August 4, 2022.  It is a

11   meeting summary of the August 4th meeting of Regional

12   Transportation and NYC agencies, right, it seems to have been

13   conducted or at least managed by Dr. de Cerrano who opened the

14   meeting for questions and comments with the agency

15   representative and there were no questions.

16         The question to you all, this is a meeting summary.

17   Is there a certified transcript?  Is this the only thing that

18   exists as the record of this August 4th meeting?

19         Okay.  The following involve a series of transcripts,

20   but they all deal with the same basic problem.  So let me give

21   you the record numbers.

22         42828, dated 8/25.  It's the transcript of a public

23   hearing on August 25th.

24         Record number 41973, a transcript of a public hearing

25   on August 29th of 2022.

PROCEEDINGS

1          42393, August 30, 2022, transcript of a public

2    hearing that involved Representative Gottheimer.

3          Record number 43124, August 31, 2022, a transcript of

4    a public hearing on that date that dealt with the New Jersey

5    bus company owner.

6          Document 43145, same date, August 31st, a transcript

7    of a public hearing on that date introducing another New

8    Jersey bus company representative.

9          And lastly, record number 43276, the same date,

10   August 31st, public hearing introducing New Jersey bus

11   facility representative.

12         It appears that the only thing that is in the culled

13   administrative record for each one of those items is the first

14   page of the transcript.  And so the question is why?  Why are

15   the rest of the pages not there, particularly, if they are

16   relevant or important?

17         So these one, two, three, four, five -- six

18   instances, again, could be inadvertence.  We just didn't

19   understand why it's page 1 alone.

20         Record number 40514, an e-mail thread following a

21   meeting, meeting number seven.  This is dated 1/13/2023, it

22   deals with a proposed mitigation package which apparently

23   is -- neither the e-mail thread -- we're not sure why this is

24   on the list.  It may be in the large record, but it's not in

25   the culled record.  Is that correct, Len?

PROCEEDINGS                                    15

1              THE LAW CLERK:  It's the attachment that's missing.

2              THE COURT:  Okay.  We got one or two more here.

3              Document 40683, dated May 8, 2023.  It's an

4    illustrative letter from the Federal Highway Administration to

5    the New York State Parks and it refers to the fact that the

6    final EA also responds to comments received from the public

7    and agencies on the EA that was published in August of 2022.

8    The document does not appear to contain responses to the

9    comments and so the question is:  Aren't they relevant and if

10   not, why not?  And if they are relevant, why weren't the

11   responses included along with the letter?

12             Len?

13             THE LAW CLERK:  So that's one that I think is like

14   20,000 pages long where you summarized 7 or 800 comments and

15   we haven't seen that part of the record to know if there are

16   excerpts in there of comments and responses that are germane

17   to this proceeding.  We're not about to take up reading 28,000

18   pages.  So if you want to find some on either side, find some

19   on either side.

20             THE COURT:  Lastly, record number 45346, May 26,

21   2023, it's an e-mail thread from a Federal Highway

22   Administration, re:  The proposed bullet points for the

23   Secretary of Transportation's call with New Jersey's Governor

24   Murphy regarding the impact on New Jersey.  And the question

25   is:  Is there a written summary that documents this call or is

1   there a transcript?

2          You know, in my area of the law that I spent a lot of

3   time in, were there ex parte conversations?  There were

4   requirements of summaries that have to be put in to the

5   administrative record.  I'm not quite sure what the

6   requirements are here so we need to be educated.

7          Okay.  Any questions, ladies and gentlemen?

8          Okay.  Nina, where are we with this?  Have we given

9   copies to everybody.

10          THE INTERN:  Not yet.  You want me to do that now?

11          THE COURT:  We have prepared a summary from the easel

12   tear sheets from the last meeting about the time line that

13   Mr. Chertok was kind enough to discuss with us at our last

14   meeting.  We've reduced it to writing.  Please pass it out to

15   everybody.

16          I want to spend a few moments confirming whether

17   those events that were denominated as supposed to have

18   happened have, in fact, happened, and whether the rest of the

19   time line that's here remains accurate, or are there any

20   things that needed to be added, subtracted, or amended?

21          Mr. Chertok, according to what you told us at our

22   last meeting, the TBTA was supposed to have a hearing or

23   hearings late February/early March.  The approximate date

24   was -- I think the latest was supposed to be March 4th, and

25   the question is what happened?

17

```
 1            MR. CHERTOK:  The hearings are completed and the
 2    estimated decision on that --
 3            THE COURT:  One step at a time, please.
 4            So the hearings have been completed?
 5            MR. CHERTOK:  The hearings are finished.
 6            THE COURT:  Are done.  Okay.
 7            MR. CHERTOK:  And the TBTA Board is considering --
 8            THE COURT:  Right.
 9            MR. CHERTOK:  And there may be a board meeting at the
10    end of the month.
11            THE COURT:  Okay.  So the target date --
12            MR. CHERTOK:  Close to the end of March.
13            THE COURT:  So the target date of March 31 still
14    appears to be on target.
15            MR. CHERTOK:  Exactly.
16            THE COURT:  Okay.  Then, our understanding was that
17    once that had happened, then the next step was for the Federal
18    Highway Administration to do its reevaluation which you
19    indicated could take all of April, perhaps even all of May,
20    but the time frame for that reevaluation was within that
21    60-day period.
22            MR. CHERTOK:  That is the anticipation.  And as I
23    indicated, I think at the last conference, we can't be -- we
24    can't predict what the Federal agency will want in terms of
25    information, etc., so that's our best estimate at this time.
```

PROCEEDINGS

1    THE COURT:  Okay.  But you obviously can't control

2  that because it's not your client.  It's Mr. Cumming's client

3  who will be in charge of the next step.

4    MR. CHERTOK:  Exactly.

5    THE COURT:  Mr. Cumming, Mr. Silagi, Ms. Howard, do

6  you wish to enlighten the Court as to what you may know and

7  what potentially could occur in that 60-day period that will

8  trigger at some point after the TBTA finishes its work

9  hopefully towards the end of March.

10    MR. CUMMING:  I don't have anything to add,

11  unfortunately, your Honor.

12    THE COURT:  Okay.

13    MR. CUMMING:  I think that time line is accurate as

14  far as I know.

15    THE COURT:  So we're looking still at roughly a

16  60-day window in which for the Federal Highway Administration

17  to act?

18    MR. CUMMING:  Yes.

19    THE COURT:  Okay.  The next step was an agreement

20  with the sponsors.  I'm assuming that occurs as a result of

21  the Federal Highway Administration action and they communicate

22  some notice to the sponsors and then that triggers the

23  beginning of the running of the period in which to look at a

24  draft agreement and conclude it and get it signed.

25    MR. CHERTOK:  The agreement cannot be concluded until

```
 1    after the reevaluation is completed --
 2              THE COURT:  Right.
 3              MR. CHERTOK:  -- and their determination by FHWA that
 4    no further reviews or evaluations of the impacts of the
 5    project are required.
 6              THE COURT:  Okay.  And since that obviously requires
 7    the cooperation of multiple sides, right?  Again, Mr. Cumming,
 8    assuming the reevaluation gets done late April, early May, mid
 9    May, there's roughly a 30-day window or so in order to get the
10    agreement with the sponsors?
11              MR. CUMMING:  Yes, your Honor.  And I think the late
12    May target date on here remains accurate.
13              THE COURT:  But if the FHWA doesn't finish until
14    mid -- middish May, the likelihood is it's got to spill over
15    into mid-June in terms of getting everything done.
16              MR. CUMMING:  I would think so, your Honor, but I
17    don't know beyond speculating.
18              THE COURT:  Okay.  And so, Mr. Chertok, assuming late
19    May is a good estimate on the agreement with the sponsors,
20    we're still targeting somewhere in and around June 15th for
21    flipping the switch?
22              MR. CHERTOK:  That's correct.  I think that was the
23    earliest date that was anticipated at the last conference and
24    that remains the same.
25              THE COURT:  I am going to ask you to think about
```

 1   something, and you don't have to give me an answer right at

 2   the moment.

 3            MR. CHERTOK:  Then I will sit down.

 4            THE COURT:  Yes.  I am going to ask, whether I get it

 5   is a different story, whether I have a commitment from you on

 6   behalf of your client given what we've talked about in time

 7   line all along, right, oral argument, the amount of work that

 8   I need to do to issue an opinion, that nothing will happen in

 9   terms of flipping the switch before I issue my opinion?

10            And if, for some magical reason, these time lines

11   start to speed up, right, I do not want to be in a position

12   where I have to entertain emergency papers because somebody's

13   eager to flip a switch.  All right?  You want me to do my job,

14   I need the opportunity to do my job after the oral argument.

15   I have promised you all and I am going to do my utmost to get

16   you a decision in a very reasonable period of time after the

17   oral argument.  I do not wish to have my attention diverted

18   unnecessarily because somebody has decided to be over eager.

19            If there is any change in these time lines, I wish

20   the Court to be notified as soon as possible.  We will have a

21   conversation.  And if I have to adjust some things because the

22   time lines have sped up, right, I want to know it because I

23   want to -- it is my earnest intent to issue an opinion before

24   the time for flipping the switch on this, to give each side an

25   opportunity to study the opinion and decide what steps they

PROCEEDINGS

1   may need to take in light of that opinion, whatever the

2   outcome may be.

3           I want to be fair to you all in terms of your rights,

4   all right, but I also don't want to be surprised and basically

5   have to deal with emergency practice because somebody got over

6   eager.  I take your representations as officers of the court.

7   You've communicated to me what you know, but I fully

8   understand the pressures that are associated with this case

9   and if I have to move faster, I will.  But I don't like

10  surprises.  Understood?

11          MR. CHERTOK:  Yes, your Honor, and we will certainly

12  inform you if there's any material acceleration of unexpected

13  date.

14          THE COURT:  I appreciate it.  Thank you.

15          Anything else of an administrative matter before we

16  turn to timing and concerns about oral argument?  Plaintiff?

17          MR. MASTRO:  No, your Honor.

18          THE COURT:  Plaintiff Amici, anything?

19          MS. MATLOFF:  No, your Honor.

20          THE COURT:  Defendants?

21          MR. CUMMING:  No, your Honor.

22          THE COURT:  Defendant Intervenor?  Defendant Amici?

23          Okay.  Very good.

24          All right.  So to what degree, if any, have counsel

25  had any conversations, be it e-mail, live, and in person or on

 1    the phone or video conference, about time allocation relative

 2    to April 3 and 4?

 3              MR. MASTRO:  We have not, your Honor.

 4              THE COURT:  Okay.  All right.  So let's have a

 5    conversation.

 6              So, Mr. Mastro, we'll start with you.  What is your

 7    expectation?  Your brief, if I remember correctly, has, I

 8    think, about seven issues.  It's A to G, if I remember

 9    correctly.

10              MR. MASTRO:  Yes, your Honor.

11              THE COURT:  Okay.  So the large majority, in fact,

12    almost all of them, except the last one, relate to claims with

13    respect to NEPA.  It's only the last issue that deals with the

14    Clean Air Act.

15              MR. MASTRO:  Correct, your Honor.

16              THE COURT:  Okay.  So to what degree have you thought

17    about how much time do you need to educate the Court about the

18    claims that you -- and the arguments that you make in your

19    brief?

20              MR. MASTRO:  May I rise, your Honor?

21              THE COURT:  You may.  You may even come to the podium

22    if it makes you happy.

23              MR. MASTRO:  It is obvious to me that my time is not

24    needed to educate the Court, but rather to --

25              THE COURT:  It's a very nice compliment.  The Court

PROCEEDINGS

```
 1   always needs education.  It's a continuing learning process.
 2          MR. MASTRO:  But, your Honor, there are -- with this
 3   kind of dense record, and the complexity of the issues,
 4   there's obviously, I believe, a benefit to the Court from oral
 5   argument going in to the particulars on each of those seven
 6   issues and I know your Honor knows the standards.
 7          While it's an arbitrary and capricious standard, it's
 8   also a hard look standard.  And there has to be rationale
 9   explanation for decisions made that, to us, seem inexplicable
10   for any other reason than to reach a predetermined outcome.
11          So we need to lay that out to the Court on each of
12   those seven areas and how the law applies but how the dense
13   record also proves our case.
14          So, your Honor, I was thinking, if your Honor
15   permitted, I have said this before, I have trouble saying my
16   name in less than half an hour, so I was hoping your Honor
17   would show me -- afford me the opportunity to spend up to two
18   hours laying out those seven issues.
19          THE COURT:  All right.  All right, Mr. Mastro, why
20   don't you have a seat --
21          MR. MASTRO:  Thank you.
22          THE COURT:  -- and we'll have a little conversation
23   about this.  Okay.  So two hours.  I'm not uncomfortable with
24   two hours.
25          What I'd like to do, though, is to have some
```

1  understanding, to the degree that you're comfortable, because

2  I'm not going to ask you in front of the other side to

3  disclose your oral argument strategy, all right, but I am

4  going to ask you to, again, to the degree that you're

5  comfortable, talk to me about how you think you might want to

6  proceed.

7         So given the comment that I made a few minutes ago,

8  my preference would be that we deal with all the NEPA-related

9  issues and then we deal with the Clean Air Act issue.  Okay?

10        Now, whether we do your affirmative oral argument on

11 NEPA, stop, let the plaintiff Amici stand up, say their peace,

12 and then let the defendants and defendant intervenor and

13 defendant Amici respond and then we go to the Clean Air Act.

14 I haven't sorted it out yet, that's part of the conversation I

15 want to have here today.

16        I will say, at this point, what I'll call is a

17 suggestion.  It's not an admonition.  It's not a requirement.

18 All right.  My experience has taught me that not every issue

19 is of equal value.  Not every issue does counsel truly, when

20 you ask them to do a 360 evaluation, counsel has a good faith

21 basis for making the argument, but they don't necessarily

22 believe that it is, shall we say, equal in value to other

23 issues.

24        You want to follow the order in your brief, your

25 choice.  You want to lead with your best issue or issues, it

```
 1    would be greatly appreciated by the Court because I candidly
 2    don't want to sit here for an hour and a half and have the
 3    lead buried and get to the best issue, you know, three
 4    quarters or 90 percent of the way through your oral argument.
 5    I want you to try to focus me on what's your best argument and
 6    why.  All right?
 7            The degree to which you give me a heads-up about the
 8    order in which you're going to proceed, you can do it when you
 9    stand up and right after, "May, it please the Court," you want
10    to give me a heads-up the afternoon before, that's great.
11            Trust me.  We're going to have a conversation.  All
12    right?  You're going to make representations.  I'm going to
13    ask you questions.  All right?  So we're going to have a
14    colloquy.  Right?  So two hours is not going to be two hours.
15    Two hours may be two and a half hours.  It could even be
16    three.  All right?  We'll find a logical place to take a
17    break.  Right?  So everybody gets the opportunity to check
18    their messages, call their office, bathroom break, get a drink
19    of water, whatever it might be.  Okay?
20            How does that sound to you, Mr. Mastro?
21            MR. MASTRO:  Your Honor, I would expect nothing less.
22    I look forward to that colloquy and, of course, the way I
23    prepare an argument is to make sure that my -- what I consider
24    to be the most important arguments in the case get the
25    priority in terms of time and presentation.
```

PROCEEDINGS

```
 1            THE COURT:  I appreciate that, Mr. Mastro.  I will
 2    say to you not everybody does that.  I've had the experience
 3    of a number of counsel who just kind of rotely down the
 4    arguments as outlined in their brief and sometimes that works
 5    and sometimes it doesn't.
 6            MR. MASTRO:  Well, your Honor, I know you and those
 7    on your team will have studied those briefs, so I'm going to
 8    know what I need to talk about in part by that colloquy.  But
 9    yes, I intend to proceed in that manner.  I'm not going to
10    today describe the order in which I would present those
11    arguments.  My adversaries are perfectly capable of figuring
12    out how they want to respond.
13            THE COURT:  Right.
14            MR. MASTRO:  But I will just say this, your Honor,
15    while I may be a grey eminence, I have tremendous stamina so
16    do not worry about how long we go.  I will go the distance.
17            THE COURT:  Okay.  I will make this next comment for
18    the benefit of both sides.  All right.  My experience has
19    taught me in the area of administrative law that generally,
20    right, administrative law cases break down into five basic
21    buckets.  Okay?
22            The first bucket is -- and this is not in order of
23    importance, okay -- substantial evidence.  Right?  Do the
24    findings made by the agency support the decision of the agency
25    on the basis of substantial evidence in the record?
```

PROCEEDINGS

1          I will give you all a clue.  All right.  If you
2    haven't all figured this out as of yet, you're more than
3    welcome to go do Westlaw research for Judge Gordon,
4    substantial evidence is not a quantitative standard.  It is
5    not how big my pile is.  Right.  When you read the Supreme
6    Court decisions it talks about more than a mere scintilla.
7    When you read the treatises, it is clear that substantial
8    evidence, like other standards in administrative law, is a
9    word formula that connotes reasonableness.  Right?

10         So I will tell you, all sides, if you stand up and
11   you start to argue to me that your pile is bigger than the
12   other side's pile, you and I are going to have a very
13   significant conversation about qualitative versus
14   quantitative.  All right?  It's about reasonableness, and I
15   would hope that your arguments are couched in the context of
16   reasonableness or reasonable or unreasonable.

17         If you have any doubt about what substantial evidence
18   means and what I'm going to be looking for, I welcome you to
19   go read my CIT opinions and, candidly, I make some reference
20   in some of those opinions to some of the treatises.  All
21   right?  You want to make sure that we are all on the same wave
22   length.  Do yourself a favor.  All right?

23         And there are certain things that are I'm going to be
24   looking for in the argument.  All right?  If you're going to
25   tell me, for example, the plaintiffs, that the findings made

PROCEEDINGS

1   by the Federal Highway Administration do not meet the

2   substantial evidence standard and they didn't consider facts

3   that detract from that finding, I'm telling you right now,

4   it's not enough to make that broad statement because as sure

5   as we're here, I'm going to ask you where?  What?  So be

6   prepared to point to the record, that portion of the record,

7   that supports your argument that the agency's decision-making

8   was unreasonable.  And if you can't, don't make the argument.

9          Defense, they are going to get up and they are going

10  to say your fact finding is unreasonable.  Right?  They are

11  going to make some representations that there's facts in the

12  record that detract from the findings.  My simple question to

13  you is going to be how did you deal with it?  Where?  If you

14  want an outcome, your job is to ostensibly give me that road

15  map to get there.

16         Oh, by the way, if I ask you a question, please make

17  sure no wax in your ears.  Right?  If I ask the question I

18  know that there's an answer that you want to give me that

19  makes your point, answer my question.  Then you're free to

20  make whatever other point you want to make.

21         If you don't answer my question, it's going to be a

22  very simple comment from me, and so the answer to my question

23  is, and we're not moving off of it until you give me an

24  answer.  And the only way we move off of it if you don't give

25  me an answer is, I'm going to assume an answer, and I'm going

 1    to state it on the record, and then I'm going to tell you to

 2    move on.  It's relatively simple rules of the game.

 3        Okay.  Second bucket, in accordance with law.  In

 4    accordance with law means you're asking me to look at a

 5    statute, a regulation, what the words in the statute or

 6    regulation mean.  If you're going to tell me that they mean

 7    something or don't mean something, you got to point to

 8    something that gives me that road map that allows me to reach

 9    the same conclusion you're reaching.  If you can't, don't make

10    the argument.

11        If you are telling me that the agency didn't apply

12    the law correctly, we're going to have a very different

13    conversation.  Application is law to fact which means I have

14    to look at the record.

15        If I'm deciding what a statute or regulation means, I

16    don't have to look at the record to understand that meaning.

17    I have to look at the FONSI or the EA, right, because that's

18    represents the agency's explanation, but I don't need to look

19    at the record.  Application is substantial evidence in the

20    view of Judge Gordon.  It is not a legal interpretation.

21        Now the interesting question is:  If we have legal

22    issues, namely what the statute means, is that a threshold

23    question that I have to look at first before I even get to

24    substantial evidence in the record?  Because if it turns out

25    that you're right about the legal interpretation question,

1    then it means the agency may have done it incorrectly which

2    means I automatically have to send it back, which may then

3    mean that whatever fact-finding they did may or may not

4    survive.  So in terms of organizing your oral argument, you

5    got to figure out whether you got threshold legal questions or

6    not.  And you got to make sure I understand that it is a

7    threshold legal question, meaning depending upon whether the

8    agency's interpretation of the statute of the reg was correct.

9    If it wasn't, does it mean full stop and do we have to talk

10   about anything else?

11         Third bucket, procedural issues.  Did the agency do

12   what it was supposed to do?  Did it hold a hearing?  Did it

13   issue a notice at an appropriate point in time, etc.?  All

14   right.  To what degree there may or may not have been harmless

15   error if the agency did or didn't do exactly what it was

16   supposed to do.

17         Fourth bucket, past practice.  Right?  Is there even

18   past practice?  Did the agency follow that past practice?  Did

19   it depart from that past practice?  If it departed, why?  What

20   distinguished this situation from the past practice?

21         Fifth bucket, reasonable decision-making.  I'll make

22   it very clear to you folks.  The agency under the standard is

23   not required to write an A paper.  They can write a C plus

24   paper.  The standard is discernible path.  Is there a way to

25   connect the dots?  Did the agency connect the dots in such a

1  way that the Court can see a discernible path?  And that

2  includes drawing all reasonable inferences from the decision

3  making.

4         So if you are looking for the agency in its final

5  written determination to have dotted every I and crossed every

6  T, maybe, maybe not.  Make sure you understand what that

7  standard is on a reasonably discernible path.

8         Gee whiz, there happens to be a theme.

9  Reasonableness.  All right.  Understand what is meant by what

10  is reasonable and what is unreasonable and frame your

11  arguments up.  I'm not saying to you you have to, but trust

12  me, I am looking at your briefs and I'm looking at the record

13  and I'm trying to plug in to each one of those buckets your

14  issues and your arguments.  You're free to present your case

15  however you want to do it, but trust me when we engage in a

16  colloquy, I'm coming -- I'm going to talk to you, I'm going to

17  ask you thinking about it in terms of my five buckets.

18         Now, I know we have this outline that we just went

19  over.  There are additional steps in the administrative

20  process and so defendants raised this in its brief, we've got

21  a ripeness issue.  We have cross-motions for summary judgment.

22         I have to figure out, with your help, what we're

23  doing first.  We got cross-motions for summary judgment.  I

24  got a ripeness defense that's being argued.  The question is:

25  Do we do that first or do we do that second?  Do we do that

PROCEEDINGS

 1    third?  I want to hear from everybody.  All right.  I don't

 2    necessarily know that I have to decide it today before you

 3    walk out of here, which would be nice, but you may want to

 4    think about it.

 5         So any questions about anything that I have said so

 6    far?  Is anybody uncertain about what you need to bring to the

 7    table on April 31st?

 8         Mr. Mastro, anything more you wish to say on behalf

 9    of the plaintiff at this juncture?

10         MR. MASTRO:  Just two things, your Honor, very

11    briefly.

12         I do think your Honor's suggestion about NEPA claims

13    and then Clean Air Act, that makes a lot of sense to me and

14    while there's a relationship between the two claims they are

15    under separate statutory schemes.  Number one.

16         THE COURT:  Yep.

17         MR. MASTRO:  Number two, I will just say this on

18    ripeness, your Honor.  The FONSI, final, there are certain

19    claims that relate to the decision they will have -- they are

20    finalizing now in terms of implementation of the plan, but the

21    FONSI final, they found no significant environmental impact.

22         THE COURT:  So Mr. Mastro --

23         MR. MASTRO:  Yeah.

24         THE COURT:  -- you can save that for the argument.

25         MR. MASTRO:  I will, your Honor.

PROCEEDINGS

1          THE COURT:  I got it.

2          MR. MASTRO:  Okay.

3          THE COURT:  But there is a claim that is out there

4    that is beyond your claims that showed up in the cross-motion

5    for summary judgment and I got to figure out where it fits in

6    the equation so I can help you help me organize the oral

7    argument.

8          MR. MASTRO:  Understood completely, your Honor.

9          THE COURT:  Okay.

10          MR. MASTRO:  It's just that whenever anyone asks me

11   about this case, I go this is the first of its kind,

12   unprecedented, never happened in this nation before, but

13   finding of no significant impact.  Does that compute?  I will

14   be explaining that when we come back on the 3rd.

15          THE COURT:  You got it.

16          MR. MASTRO:  Thank you.

17          THE COURT:  Okay.  Mr. Cummings, what do you have to

18   say?

19          MR. CUMMING:  I would suggest --

20          THE COURT:  You're taking a few deep breaths, getting

21   ready to go.

22          MR. CUMMING:  I'm very relaxed.

23          THE COURT:  I'm happy to see it.

24          MR. CUMMING:  I would suggest, your Honor, and I

25   don't have any strong opinion about the overall time limit,

1    Mr. Mastro proposed, but that the Court break down the

2    argument further, which is to say rather than two hours per

3    side, we proceed issue by issue because I think, as your Honor

4    noted, the NEPA claims and the Clean Air Act claim are

5    distinct, but also within the NEPA claims plaintiffs' argument

6    about public participation is fairly distinct from air quality

7    claims and down the line.  And I think it might be more

8    helpful to the Court if the parties proceed topically.

9          I'm happy to defer to Mr. Mastro on the order in

10   which he would like to address claims or issues, but that we

11   proceed in that order so plaintiffs would speak, defendants

12   would speak, and then defendant Intervenor would speak, and

13   then we would proceed to the next topic and down the line.

14         THE COURT:  Okay.

15         Anything more, Mr. Cumming?

16         MR. CUMMING:  On your ripeness question, your Honor,

17   I think we can address that to the extent the Court adopted my

18   suggestion, we could address that as we go through the topics

19   where that argument is relevant because it is not relevant to

20   all of those claims.  Thank you.

21         THE COURT:  Okay.  Mr. Chertok?

22         MR. CHERTOK:  Now, I can make this very brief, your

23   Honor.  We're in concurrence with Mr. Cumming.  I think it

24   makes more sense to have the colloquy on separate areas rather

25   than trying to do it on a two-hour-plus sweep and then go back

PROCEEDINGS

1   to individual areas.  I think it will make for a more coherent

2   and effective argument for everyone and therefore provide a

3   better education to the Court, if I may use that term.

4           THE COURT:  Okay.  Very good.  All right.

5           Mr. Mastro, any reaction?

6           MR. MASTRO:  Thank you, your Honor.  If I may rise

7   again?  I'm more comfortable on my feet.

8           Your Honor, I committed to the Court which is the way

9   I approach cases that have a variety of complex issues that

10  I'm going to present on those issue and prioritize within

11  those issues the presentation.

12          I think I go first since I'm the plaintiff and then

13  they will know what issues to respond to, but to break out the

14  six or seven different NEPA issues, all of which go to whether

15  it was a proper NEPA process or whether they have to have a

16  remand and do additional work, I think that that is, one,

17  putting the cart before the horse; and two, causing us to

18  spend more time on some issues that it will be apparent are

19  not the priorities from your Honor's questions and from my

20  presentation.

21          And I know how capable Mr. Chertok is to responding

22  to one's arguments, so I don't think Mr. Chertok needs a road

23  map in advance and we break each one separately as if they are

24  all of equal importance or priority.  Your Honor will help us

25  define what the priorities are when we come here from your

PROCEEDINGS

 1   questions.  I will help, hopefully, the Court in defining

 2   those priorities by my presentation and the priority I give

 3   certain issues.

 4         But I don't think that we should be approaching this

 5   in advance as each of the six or seven NEPA issues is of equal

 6   priority and prominence and should be broken down separately.

 7   There's actually a cumulative effect.  Your Honor talked about

 8   it.  At the end of the day, the administrative process in

 9   which I participated defending as an AUSA in the day,

10   participate is as a deputy mayor when I was in government, and

11   participate now so often in private practice is about

12   reasonableness and compliance with the law.  They overlap.  So

13   to separate them out is not to understand the totality of the

14   unreasonableness and violation of law here.

15         So I would suggest that I be able to give my

16   presentation, I be able to respond and, on my feet, respond to

17   your Honor's questions so that I know the priorities from the

18   Court's perspective, both in terms of what I'm presenting and

19   what the Court asks, and that we not pigeonhole issues in

20   advance to separate them out when they overlap and are related

21   and all go to reasonableness and legality.

22         And one last thing I would say, your Honor, your

23   Honor raised it the last time we were here, I think it remains

24   as relevant given the short time frames that are going to

25   exist here, and I appreciate the Court focusing so quickly on

1   these issues, and I intend to help the Court in every way be

2   able to do this in an orderly fashion within the limited time

3   frames available, no surprises.  I want no surprises from

4   them.  You will get none from me.

5          But I think your Honor asked about remedy and I think

6   the parties should be prepared to discuss remedy as well as

7   part of the argument that we have here.

8          Thank you, your Honor.

9          THE COURT:  Mr. Cumming, any thoughts?  Additional

10  thoughts?

11         MR. CUMMING:  Respectfully, your Honor, I disagree

12  with Mr. Mastro.  I think -- to the extent that I think I

13  understand the Court is going to have many questions and will

14  be focused on the record, the ability for each party to move

15  through the record on a specific topic in, you know, quick

16  response to the Court's inquiries will be more helpful to

17  everyone.

18         All right.  Thank you.

19         MR. CUMMING:  Thank you.

20         THE COURT:  Mr. Chertok, anything further?

21         MR. CHERTOK:  I don't think anything more to add.  I

22  think you can break down the NEPA claims into, you know, a

23  handful of major issues without revealing any strategy in

24  advance.

25         THE COURT:  Okay.

 1            MR. CHERTOK:  I don't think it's any secret of what

 2    the principal issues are going to be and I think that would

 3    help the Court.

 4            THE COURT:  They are spelled out in the briefs

 5    already and you know --

 6            MR. CHERTOK:  Exactly.

 7            THE COURT:  -- unless there's a significant change in

 8    circumstances unknown to the Court, the parties are going to

 9    be confined by what they put in the brief to argue before me

10    so.

11            MR. CHERTOK:  Exactly.

12            THE COURT:  And it's not as if the arguments are any

13    great secret.

14            MR. CHERTOK:  Exactly.  And that's why I think it's

15    more productive to break it down into shorter segments rather

16    than two to two-and-a-half hour straight segments of argument.

17            THE COURT:  Okay.  Very good.

18            All right.  Let me shift to the folks not at the

19    tables.  Amci, what is your sense of how much time you would

20    like to stand up and say me, too, I support the arguments

21    raised either by the plaintiff or by the defendant or the

22    defendant Intervenor?  If any at all.

23            MS. MATLOFF:  Well, I had spoken to Bruce Nagel about

24    that and he was requesting 20 minutes.

25            THE COURT:  Okay.  Mr. Mateen?

PROCEEDINGS                                              39

 1              MR. MATEEN:  I don't think I would be more than

 2    20 minutes or even up to 20 minutes.

 3              THE COURT:  Okay.  Mr. Otis?

 4              MR. OTIS:  Yes, your Honor.  The bulk of our argument

 5    is in our brief.  Following the advice of Professor Irving

 6    Younger, we will be brief for the reasons --

 7              THE COURT:  You're showing your age, Mr. Otis.

 8              MR. OTIS:  I am.

 9              And I don't see why we would need more than ten

10    minutes, but we'll take 20 if granted.

11              THE COURT:  Mr. Reichman?

12              MR. REICHMAN:  Your Honor, 20 minutes is also the

13    time I thought that would be appropriate.

14              THE COURT:  Okay.  All right.  We're going to take

15    about a ten-minute break.  I am going to, shall we say, urge,

16    politely suggest, that perhaps the lead counsel on each side

17    might want to recess to the back bench and have a little chat

18    and see if you can come to a reasonable accommodation.  If you

19    can, great.  If you can't, you will tell me and I will decide.

20              I will quietly reflect upon what you each have

21    suggested.  I will consult my team and we'll come back out.

22    All right?  So it is now 11:34.  I will see you at 11:45.

23              (Recess taken from 11:34 a.m. to 11:46 a.m.)

24              THE COURT:  Thank you.  I appreciate it.

25              MR. MASTRO:  Thank you, your Honor.

PROCEEDINGS

40

```
 1            THE COURT:  Okay.  Who wishes to talk?

 2            MR. MASTRO:  Your Honor, if I may approach the

 3   podium?

 4            THE COURT:  Mr. Mastro.

 5            MR. MASTRO:  Thank you, your Honor.

 6            THE COURT:  By all means.

 7            MR. MASTRO:  Thank you.

 8            What we have had -- we have a -- largely, a meeting

 9   of the mind to propose to your Honor if your Honor agrees.

10            Your Honor, we would propose that on the NEPA

11   claim --

12            THE COURT:  Right.

13            MR. MASTRO:  -- that the argument start with me

14   addressing the Court on what's really a threshold issue that

15   overlaps --

16            THE COURT:  Okay.

17            MR. MASTRO:  -- ripeness and the fact that they are

18   actually agreeing upon a plan that wasn't one of the seven

19   scenarios they actually studied means either we automatically

20   lose because it's not ripe or we automatic win because they

21   never studied the alternative that they are now about to

22   adopt.

23            THE COURT:  Okay.  So let me see if I can spit this

24   back to you.

25            You're going to start with a discussion about
```

PROCEEDINGS

```
 1  ripeness?
 2          MR. MASTRO:  Ripeness and whether the alternative
 3  that they -- it has two elements, your Honor.  It's a
 4  double-edged sword.  It's their argument that they haven't
 5  finally decided yet, so we are premature.  And our argument
 6  that well, they now have a final plan that's being approved.
 7  We'll know that by the end of March.
 8          THE COURT:  Right.
 9          MR. MASTRO:  And it's not one of the seven
10  alternatives they actually studied.  And they've admitted in
11  our court papers here that they need to do more study anyway
12  on that, so they should -- there will automatically have to be
13  a remand of that issue in any event.
14          So I will be arguing that their ripeness argument
15  actually speaks too loudly because the alternative they are
16  actually choosing, they haven't studied, and they have to
17  study it anyway.  So there's going to have to be some remand
18  no matter what.
19          They will argue, oh, you shouldn't even think about
20  this at all because it's not ripe.  So I will address that.
21  They will respond to me in 10 or 15 minutes each side --
22          THE COURT:  Okay.
23          MR. MASTRO:  -- on that one issue.
24          THE COURT:  So we're going to be generous and talk
25  about 15 minutes per side, plus a little bit of time for me to
```

PROCEEDINGS

```
 1   ask questions.

 2            MR. MASTRO:  Of course.

 3            THE COURT:  It's going to run roughly, 40,

 4   45 minutes.

 5            MR. MASTRO:  Of course, your Honor.

 6            THE COURT:  Okay.  Before you proceed --

 7            MR. MASTRO:  I get it completely that these spots of

 8   time will be a little stretched.

 9            THE COURT:  Okay.  Before you proceed, to help my

10   simple mind, which of my buckets are we talking about here?

11   Are we talking about procedural?  Due process?  Are we talking

12   about legal requirement?  Are we talking about something that

13   falls outside of one of my five buckets?

14            MR. MASTRO:  Certainly, your Honor, I want to have

15   the buckets in front of me.

16            THE COURT:  You may or may not know the answer to

17   that right at the moment.

18            MR. MASTRO:  Sure.  Your Honor, I think we would be

19   talking about, in these categories of your five buckets, we

20   would be talking about -- in accordance with law, I think we

21   would be talking about procedural issues and I think we would

22   be talking about reasoned decision.

23            THE COURT:  Okay.  Okay.  That's fine.

24            MR. MASTRO:  There's an admission in the record here,

25   your Honor.
```

 1           THE COURT:  We're not going there.

 2           MR. MASTRO:  Okay.

 3           THE COURT:  We're not going there.

 4           MR. MASTRO:  Okay.  You asked for the buckets.

 5           THE COURT:  That's right.  I asked for the buckets.

 6           MR. MASTRO:  The next, your Honor --

 7           THE COURT:  Again, Mr. Mastro, I ask the question,

 8  respond to the question.  Then we'll -- second step in this

 9  process.

10           MR. MASTRO:  Would be the bulk of NEPA argument.  It

11  would cover the other major issues raised in our brief with

12  the exception of New Jersey agency participation.  That would

13  be carved out separately at the end.

14           So the other NEPA-related issues about the

15  environmental review process would be covered in this main

16  bucket.  That would involve all aspects by the way of your

17  Honor's -- I shouldn't have used bucket.

18           THE COURT:  No, that's what I call them.  Call it

19  that.  That's fine.

20           MR. MASTRO:  There are elements of all five of your

21  buckets that go in the main NEPA argument and it involves

22  issues -- your Honor is aware of them -- the air quality

23  issue, the mitigation, and other related issues that are the

24  bulk of the argument, including environmental justice.  I'm

25  going to come to that in a second.  They -- as well as

PROCEEDINGS

1    alternatives.

2           They would all be in this main section and that would

3    be approximately an hour and a half on each side.  I would go

4    present our arguments, then they would respond to them.

5           The one tweak on this, your Honor, it's the only area

6    where we don't have complete agreement.  It was suggested by

7    FHWA's counsel that should we carve out the environmental

8    justice consideration.

9           Your Honor, the reason why we think these others

10   overlap and need to be argued together is because they relate

11   to the reasonableness, legality, and the administrative record

12   in the following way:

13          You shouldn't separate out the consideration, the

14   requirement indeed by executive order to consider

15   environmental justice communities as opposed to the air rights

16   issue when the irrationality, the arbitrariness and

17   capaciousness of this is, in part, environmental justice

18   communities they look at certain --

19          THE COURT:  Nice try, Mr. Mastro.

20          MR. MASTRO:  I'm just saying --

21          THE COURT:  I got it.

22          MR. MASTRO:  Okay.

23          THE COURT:  Right.

24          MR. MASTRO:  You understand.

25          THE COURT:  You've tried three times today.  Maybe

1  the third one was a foul ball.  Do not cause me to raise my

2  right hand and punch you out on strike.

3          MR. MASTRO:  I don't want to you punch me out.  I'm

4  just explaining they did not agree to environmental justice --

5          THE COURT:  Fine.  Joe Friday, Bill Gang.  The facts.

6  Nothing but the facts.

7          MR. MASTRO:  Yes.  And I was just explaining why we

8  included it because we think it overlaps.  But, your Honor,

9  that's the next bucket.

10          And then the final bucket would be New Jersey

11  participation and whether that was honored, both it's as a

12  legal requirement in terms of your buckets, your Honor,

13  whether it's well prescribed as a matter of law and what the

14  administrative record actually shows and that would be done

15  separately at the end.  You know, 10, 15 minutes each side on

16  that.

17          And that would cover the NEPA claim.

18          THE COURT:  And then we would proceed to the Clean

19  Air Act.

20          MR. MASTRO:  And then we would have a Clean Air Act

21  claim which I think is probably 15 minutes each side.

22          So the only thing that we had even a slight

23  difference is whether environment justice should be separated

24  out and I was trying to explain why I wouldn't separate it.

25          THE COURT:  I got it.

1          MR. MASTRO:  Okay.  Thank you, your Honor.

2          THE COURT:  Mr. Cumming?

3          MR. CUMMING:  I will speak just to the issue in which

4    we don't have agreement.

5          THE COURT:  You got it.

6          MR. CUMMING:  We believe it would be helpful to

7    separate out environmental justice.  That analysis relies on a

8    separate portion of the environmental assessment and separate

9    appendices.  Two in particular are fairly data heavy and I

10   believe it would be helpful to the Court to be able to address

11   those record issues separately from the remainder.

12         THE COURT:  Okay.

13         MR. CUMMING:  Thank you.

14         THE COURT:  Mr. Chertok, I assume you agree with

15   Mr. Cumming?

16         MR. CHERTOK:  Yes, I do, your Honor but I do have one

17   comment.  I think it's -- and EJ is going to depend a lot on

18   the record, and therefore, it makes sense to also separate it

19   out.

20         But in terms of the time allocations, when you said

21   15 minutes, for example, for each side, I'm not sure what

22   "each side" means, so I'm trying to -- I'd like some

23   clarification on that.

24         THE COURT:  I didn't say anything about each side.

25   Mr. Mastro represented, I nod my head.  I said I understand.

47

1   Right.  I have not yet decided 15 minutes each side.  I am

2   perfectly aware that there are multiple participants on each

3   side.  I will make sure that there's adequate time for each

4   one.

5            MR. CHERTOK:  That was my question then.

6            THE COURT:  However, I will just say this,

7   Mr. Chertok, it is not the MTA's administrative record or

8   agency decision-making that is before the Court.  So I will

9   provide more than adequate time for the MTA to participate.

10           MR. CHERTOK:  Thank you, your Honor.

11           THE COURT:  But "me too" is perfectly acceptable in

12  appropriate places.

13           MR. CHERTOK:  Yes, but in case of "not me too," I was

14  just being cautious.

15           THE COURT:  I got it.

16           MR. CHERTOK:  Thank you, your Honor.

17           THE COURT:  I got it perfectly well.  I will be

18  equitable and fair in allocating time on each of the issues

19  across the board.  Have no fear.

20           So you can report back to those who you represent

21  that their concerns were heard and adequately taken into

22  consideration.  Okay?

23           MR. CHERTOK:  Thank you.

24           THE COURT:  You got it.

25           All right.  Mr. Mastro, I got a bunch of questions.

1           So I think we're fine on charge one.

2           Okay.  The ripeness issue, whether the plan that's

3    under approval was studied or not studied.  I get that.  I'm

4    more than happy to deal with that as the threshold issue.  All

5    right.  So we got some agreement.

6           Let us say that I will finalize this, but I want to

7    give it some thought.  I will give the plaintiff, State of New

8    Jersey, about 15 to 20 minutes on that.  Let's assume for the

9    sake of argument that that block of time will be extended by

10   something.  Ten, 15 minutes for questions from me.  So the

11   affirmative presentation on the first tranche 30 minutes.

12   That includes questions from the Court, approximately.  All

13   right?

14          The response from the DOJ on behalf of the Federal

15   Highway Administration, equal time.  30 minutes.  Right.  15

16   to 20 for presentation plus questions.

17          All right.  So you've got your block of 15 to

18   20 minutes, plus you accommodate whatever questions I may

19   have.  Okay?

20          Mr. Chertok, on this issue how much time do you think

21   you need because you're the defendant intervenor here?  Again,

22   it's not your decision that's being defended.

23          MR. CHERTOK:  Probably 10 to 15, your Honor.

24          THE COURT:  Okay.

25          MR. CHERTOK:  Without colloquy from your Honor.

```
 1            THE COURT:  I got it.  I got it.  Okay.

 2            MR. CUMMING:  Your Honor, to the extent that it's

 3    helpful to the Court, I do not plan on having lengthy

 4    presentations.  I will be here to primarily to answer the

 5    Court's questions.

 6            THE COURT:  Okay.  All right.  You all have to have

 7    expectations.  Right?  I need to fulfill them so that you can

 8    plan appropriately.  If you get up, Mr. Cumming, and say your

 9    Honor, A, B, C, see these documents, and these pages in the

10    administrative record, and we stand on the argument that we

11    made in the brief, that's your choice.  All right?  I'm going

12    to give you time to prepare, to make a presentation.  If it's

13    three and a half minutes, that's your choice.  If it's the

14    full 15 to 20 minutes, it's fine.  If you stand up and say we

15    stand on our brief, we'll be happy to answer any questions

16    that the Court has, so be it.  Okay?

17            All right.  Rebuttal and surrebuttal, Mr. Mastro,

18    five to seven minutes, ten?

19            MR. MASTRO:  You mean on that issue, your Honor?

20            THE COURT:  Yes.

21            MR. MASTRO:  Your Honor, I think I wouldn't need more

22    than five minutes, I hope.

23            THE COURT:  Okay.  You got it.

24            MR. MASTRO:  I do realize I'm arguing against two

25    sets of defendants.
```

PROCEEDINGS

```
 1            THE COURT:  I'm going to accommodate you
 2   appropriately.  So if you tell me you need seven to ten
 3   minutes to respond to two separate arguments made by the
 4   defendant and the defendant Intervenor, I'll accommodate you.
 5   Right?  I'm going to try to be as equal in my time
 6   distributions as possible noting the fact that it's one and
 7   two.
 8            MR. MASTRO:  Thank you, your Honor.  I think I would
 9   only need five minutes.
10            THE COURT:  Okay.
11            Surrebuttal, Mr. Cumming, three to five, in all
12   likelihood?
13            MR. CUMMING:  At most, your Honor.
14            THE COURT:  Mr. Chertok, same thing?
15            MR. CHERTOK:  Thank you.
16            THE COURT:  Okay.  All right.
17            Mr. Mastro, let's talk about the bulk of the NEPA
18   argument for a moment.
19            As best you can tell the Court at this juncture, are
20   there any threshold issues that you are likely to talk to the
21   Court, legal or procedural, in that presentation?
22            MR. MASTRO:  Potentially.  Potentially.
23            THE COURT:  Okay.  I'm assuming you're going to
24   address substantial evidence questions, right, that the
25   findings are not supported by the record or that the agency
```

PROCEEDINGS

1   did not take into account certain facts in reaching its

2   findings of fact.

3            MR. MASTRO:  Yes, your Honor.

4            THE COURT:  I'm assuming you're going to talk about

5   past practice?

6            MR. MASTRO:  Definitely, your Honor.

7            THE COURT:  Okay.  And I'm assuming that you're going

8   to have some commentary about reasoned decision-making or not?

9            MR. MASTRO:  Yes, your Honor.

10           THE COURT:  Okay.  Go ahead, Mr. Mastro.

11           MR. MASTRO:  Thank you, your Honor.

12           But there will be, in certain respects, issues about

13   compliance with law or procedural process in terms of the way

14   the process is structured.

15           THE COURT:  But my assumption is those will be more

16   up front in your presentation?

17           MR. MASTRO:  They will, your Honor, but since they

18   overlap with them getting into the reasonableness of the

19   decision and the administrative record, they are a bit

20   intertwined, but yes, each of those buckets will be raised at

21   certain points in regard to these arguments.

22           THE COURT:  Okay.

23           MR. MASTRO:  Not every one of them.

24           THE COURT:  Right.

25           MR. MASTRO:  But in -- you know, in specific areas,

PROCEEDINGS

```
 1  some of these other buckets that you've mentioned about
 2  compliance with law and procedural will come into play.  And I
 3  will mention them up front, yes, and when I'm discussing that
 4  issue.
 5          THE COURT:  I mentioned the buckets because my
 6  experience has taught me that that's a logical way for me to
 7  think about dealing with challenges in the administrative law
 8  context.
 9          MR. MASTRO:  Yes, your Honor.
10          THE COURT:  That's just me.  If you disagree, you
11  think that there's another formulation, a better way to
12  address this, tell me.  I'm open minded.  I will listen to
13  you.  If there's a different kind of framework that you think
14  I ought to be working under in order to reach my decision
15  here, educate me.  I'm happy to listen.
16          MR. MASTRO:  Your Honor has educated me, so I intend
17  to address the five buckets as often as possible.
18          THE COURT:  All right.  Of the issues that present
19  themselves in the bulk, are those issues -- is there enough
20  that distinguishes the environmental justice issue or, for
21  that matter, any other issue or consideration or factor,
22  however you want to label it, that perhaps requires more focus
23  than others?
24          MR. MASTRO:  I don't think so, your Honor, for the
25  following reason:  There's overlap in the -- in some of the
```

1   issues.  I don't want to get into the merits.  I know your

2   Honor doesn't want me to get into the merits.  But in some

3   cases the explanation of why there's a problem with the

4   environmental justice issue relates to why there's a problem

5   with the air quality issue because they overlap but yet

6   different criteria were chosen and different areas were

7   studied.  So I need to be able to talk about both together.

8            THE COURT:  Okay.  Let's talk about this for a

9   minute.  All right.  You gave me what I think is a good

10  example.  Air quality, environmental justice, they overlap.

11  There are different criteria, but there things about both of

12  them that create this.

13           MR. MASTRO:  Yes.

14           THE COURT:  Right?

15           The suggestion has been to carve out environmental

16  justice and talk about it separately.  What I'm trying to

17  figure out is:  Is there any other issue like environmental

18  justice, right, that could get carved out or needs to be

19  talked about, as you've just explained, in conjunction with

20  environmental justice so that that conversation could, in

21  fact, be separate from all the other issues that you're going

22  to discuss in the bulk?

23           There may well be overlap.  I grant you that.  There

24  may be certain things that you say to me about the other in

25  the bulk that you're also going to say to me about air quality

 1   or environmental justice, but the importance of those two

 2   considerations may, in fact, be more important than some of

 3   the other things that you're going to ask me to consider in

 4   the bulk.  And does it make sense to have a focused

 5   conversation about those so that the importance of those

 6   issues don't necessarily get -- I want to choose the right

 7   word here -- commingled and some of the significance of your

 8   comments lost when you are talking about the bulk?

 9           So what I'm asking you is, in very simple terms, is

10   if you think air quality marries up with environmental justice

11   in a way that's significant, instead of just carving out

12   environmental justice, can we do the bulk minus air quality

13   and environmental justice?

14           MR. MASTRO:  So I appreciate the question, your

15   Honor.  The bulk is air quality, environmental justice,

16   mitigation and alternatives.  Those four issues.  There is an

17   overlap in air quality, environmental justice and mitigation

18   because what comes out of those issues is the --

19           THE COURT:  But mitigation is a remedy with respect

20   to your client's concerns about air quality and environmental

21   justice.  It's a logical flow from the fact that your client

22   believes that the decision-making was not reasonable given the

23   considerations that flow around air quality and environmental

24   justice.  It is a -- the fact that there wasn't enough done,

25   in your opinion, in the plan regarding mitigation is a

PROCEEDINGS

 1    consequence of the inadequacy of the considerations around air

 2    quality and environmental justice.

 3         If you give me air quality and environmental justice

 4    as the predicate separately, isn't it an easy consequential

 5    flow to talk to me, then, about mitigation?

 6         MR. MASTRO:  Yes.  That's why I think it's logical to

 7    do them together because it's -- it logically relates to those

 8    two and overlaps with them.

 9         On mitigation as well, your Honor, it's not simply

10    the absence of specified mitigation for those other areas.

11    It's admissions in the administrative record of significant

12    environmental impacts in certain areas where there isn't any

13    specified mitigation.  So that's a little different than the

14    flow in air quality --

15         THE COURT:  I got it.

16         MR. MASTRO:  -- and environmental justice.

17         But the three together, there's a symbiotic

18    relationship in the three that I -- that's why I would like to

19    do them together.

20         Alternatives is a little different.  Okay?  If your

21    Honor wanted to separate that out, it's a rather discreet

22    issue.  I think it overlaps with these others because, again,

23    the alternatives that were chosen they -- they relate to how

24    the process was truncated or manipulated in those other areas,

25    so I would do them all together, but alternatives could be

 1   done separately after those three.

 2            THE COURT:  Okay.  Mr. Cumming, any reaction?

 3            MR. CUMMING:  As I said earlier, my preference would

 4   be to address air quality, environmental justice, and

 5   litigation separately.  We did reach agreement on --

 6            THE COURT:  Everything else.

 7            MR. CUMMING:  -- everything else.

 8            THE COURT:  Okay.

 9            MR. CUMMING:  I do agree with Mr. Mastro that

10   alternatives is a different inquiry and I would offer that the

11   record on which that analysis depends is discreet from the

12   other topics.

13            THE COURT:  Mr. Chertok?

14            MR. CHERTOK:  I'm being very short today.  I agree

15   with Mr. Cumming.

16            THE COURT:  Thank you.

17            Okay.  I'm going to cogitate and ponder for a couple

18   of minutes on this while we're talking about other things.

19            Let's move to New Jersey participation.  We talked

20   again about 15 to 20 minutes, correct, Mr. Mastro?

21            MR. MASTRO:  Fifteen minutes is fine.

22            THE COURT:  Mr. Cumming, we'll give you the same

23   opportunity.

24            Mr. Chertok, MTA's needs around?

25            MR. CHERTOK:  I'm sorry, I didn't hear what the other

1    parties were saying, your Honor.

2            THE COURT:  Fifteen to 20 minutes on the issue of New

3    Jersey participation.

4            MR. CHERTOK:  I think 15 because a lot of their

5    participation came from MTA activities.

6            THE COURT:  Okay.  Rebuttal, we're still in the same

7    ballpark, about five to seven, or do you think you're going to

8    need more time because of the, shall we say, sensitivity of

9    the question of New Jersey participation?

10           MR. MASTRO:  Your Honor, I think five minutes would

11   still be fine for rebuttal and I know your Honor's being

12   sensitive to giving everyone the same amount of time, and

13   that's appreciated, but there's a plaintiff's side and there's

14   a defendant side.  It seems they are getting more time on the

15   codefendants' side than we are getting in terms of the

16   allocations, but that's okay.

17           THE COURT:  Mr. Mastro, trust me, I'm not going to

18   sit here with a stop watch.  Okay?  I'm just looking for

19   parameters.  If you think you need more time to respond in

20   rebuttal after there have been two sets of comments from the

21   defendant's side of the V, I'm more than happy to give it to

22   you.

23           I'm trying to figure out, candidly, whether we do

24   this in one day in a marathon session or after I sit down and

25   add up the time lines that we need to roll over into the

PROCEEDINGS                                                              58

1   second day.

2          If you think that, because there's a cumulative

3   hammering effect of two sets of comments by the defendant and

4   the defendant intervenor, you need 10 to 15 minutes in

5   rebuttal, I'm happy to give it to you.

6          You know don't tell me yes, that five minutes is okay

7   and then turn around and kvetch to me, right, that you got to

8   respond to two sets of comments.  Just answer my question.

9   You need ten minutes.  You think that you need more time to

10  balance the equation, tell me.  You will get it.

11         MR. MASTRO:  I appreciate that, your Honor.  I think

12  five minutes will be enough.  I was a wrestler in high school.

13  I'm used to tag team.

14         THE COURT:  Okay.

15         Clean Air Act.  Moving on.  I'm assuming surrebuttal

16  is in the same range of the three to five minutes.  Right?

17         MR. CUMMING:  Correct.

18         THE COURT:  Clean Air Act, talk to me, Mr. Mastro,

19  what do you need?

20         MR. MASTRO:  I think it would be similar, your Honor,

21  15 to 20 minutes.

22         THE COURT:  Same thing?

23         MS. HOWARD:  Yes, your Honor.  Fifteen to 20 minutes

24  would be --

25         THE COURT:  Ah, I'm going to have the pleasure of

PROCEEDINGS

1   your company at the podium?

2          MS. HOWARD:  Yes, your Honor.  Would you like me to

3   come up there right now?

4          THE COURT:  No.  No, not at all.  You're perfectly

5   good, Ms. Howard.

6          MS. HOWARD:  Thank you.

7          THE COURT:  Fifteen to 20 minutes in response,

8   correct?

9          MS. HOWARD:  Yes, that works for me, your Honor.

10         THE COURT:  Mr. Chertok?

11         MR. CHERTOK:  Ten to 15 minutes.

12         THE COURT:  Okay.  Since we have a nice discreet

13  issue here, Mr. Mastro, I'm going to give you ten to

14  15 minutes in reply and we'll do about five to seven in

15  surrebuttal.  Okay?

16         MS. HOWARD:  Thank you, your Honor.

17         THE COURT:  Are there any other issues that don't

18  fall under any other category that we need to theoretically

19  preserve a little time for?

20         MR. MASTRO:  As I mentioned earlier today and your

21  Honor mentioned --

22         THE COURT:  Remedy.

23         MR. MASTRO:  Remedy, yes.

24         THE COURT:  We'll see where we are on the clock as to

25  where we're going to go with that.  But figure around ten

PROCEEDINGS

1   minutes, folks, to talk about that.

2          I'm going to take another break.  I'm going to go in

3   the back for ten minutes and map out all of this and figure

4   out what that means for whether we can do this in one day or

5   two days.  So give us about ten minutes and we'll be back.

6          MR. MASTRO:  Thank you, your Honor.

7          (Recess taken from 12:25 p.m. to 12:25 p.m.)

8          THE COURT:  Mr. Chertok, I hope you and Ms. Siderman

9   are taking good notes because Ms. Knauer, who I'm assuming is

10  making most of the argument, who's not with us, and she needs

11  to be -- I'm sure she's getting ready to or has already gone

12  off on her well-needed child break.

13         MR. CHERTOK:  She sends her regards from London, your

14  Honor.

15         THE COURT:  All right.

16         MR. CHERTOK:  Where she is now.

17         THE COURT:  She's where, Mr. Chertok?

18         MR. CHERTOK:  She is in London.

19         THE COURT:  Wonderful for her.

20         MR. CHERTOK:  But she will be here to do her part in

21  the oral argument.

22         THE COURT:  Well, I trust you will educate her.

23         MR. CHERTOK:  We'll do our best.

24         THE COURT:  Well, folks, I've given this a bunch of

25  consideration and we're not doing this in one day.  So April 3

PROCEEDINGS

1  and 4 are absolutely in play.  There will be a modest amount

2  of flexibility depending upon how much time we eat up.  All

3  right.

4         I'm going to give you the outline of what I think

5  we're going to do.  I will reduce it to writing.  You will get

6  it sometime on Monday and I will give you somewhere between 24

7  and 36 hours to respond.  I am hoping that we do not have a

8  lot of controversy around this, but, you know, I want to give

9  you some time to reflect.  So let me give you some broad

10  strokes with some specifics.  All right?

11         My recollection is we're supposed to start at 10:30

12  on the 3rd, but I think there's some -- there may be some

13  modest flexibility.  And so I know a bunch of you are coming

14  from out of town and New York.  I know what traffic is.  So

15  10:30 is the proposed start time.  If you think we can start

16  at 10 o'clock in your comments, you will tell me.

17         So here's what -- here's how I think I'd like us to

18  proceed.

19         Again, the assumption is starting at 10:30.  We will

20  run from 10:30 to lunch, whenever that happens, 12:15, 12:30,

21  12:45, 1 o'clock, 1:15, whatever it might be.

22         We will take up the issue as you described it, the

23  threshold issue, ripeness, etc.  That will eat -- that will

24  take care of our morning on day one.

25         The afternoon of day two with an end time of

PROCEEDINGS

 1   approximately 4:30.  All right?  Trust me, you know, eight

 2   hours here in the courtroom, ten hours including travel and

 3   everything else, and then your ability to go back and, shall

 4   we say, debrief and figure out what adjustments, if any, you

 5   may need for day two, I want to give you an opportunity to do

 6   that.  All right.

 7           So I know you all are going to work after we're done

 8   here, but I also don't want you to suffer fatigue.  So we're

 9   going to plan to end around 4:30.

10           What I would like to do in the afternoon session is

11   begin the argument on the bulk of the NEPA issues except New

12   Jersey agency participation and alternatives.

13           What I would like to concentrate on in that afternoon

14   session is, Mr. Mastro, you give me an introduction, you tell

15   me whatever you want to tell me as kind of an overall

16   framework for the discussion, the colloquy around the bulk of

17   the NEPA issues.

18           I would respectfully request that in that you can

19   interrelate whatever you want to interrelate in a general

20   manner about those issues and air quality and environmental

21   justice.  I would like you to then, after you've done what

22   you've needed to do on the, what I will call, big picture

23   overall and whatever other issues that are specific, other

24   than air quality and environmental justice.

25           We'll take a break for a few minutes, and then I'm

1   going to give you an opportunity to talk to me about air

2   quality and environmental justice and you can relate them,

3   integrate them back, however you wish with respect to whatever

4   you said to me before.

5          And in your setup and discussion of the other issues

6   you can lean forward to whatever you might be discussing in

7   greater detail about air quality and environmental justice in,

8   what I will call, part two of the afternoon.

9          We'll then take a pause for five minutes and then you

10  will talk to me about mitigation, however it relates to air

11  quality and environmental justice or the larger bigger picture

12  issues that you referred to in part one of your afternoon

13  presentation.

14         I think that meets your needs and concerns about how

15  you want to structure your presentation and yet at the same

16  time it meets the needs from the defendant's side of the V

17  that we've got some way to focus without being all over the

18  place.

19         That will take us through the afternoon.

20         We'll reconvene the next morning and we will do New

21  Jersey participation.  Candidly, I think given what may be at

22  stake there, that will take us to lunchtime, right, whatever

23  else you may want to say about New Jersey participation and

24  how it may have interrelated to anything that you said on day

25  one, more than happy to listen to you, Mr. Mastro.

PROCEEDINGS

 1          We'll take a lunch break.  We will do alternatives

 2   and remedy.  That will take us through the first two-thirds of

 3   the afternoon.  And then we'll reserve the last third of the

 4   afternoon for the Clean Air Act.

 5          Assuming we can do that in a reasonable period of

 6   time, we'll hear from the respective Amici.  I will work the

 7   time periods that hopefully we will finish on day two, but

 8   there is a small -- depending on how long certain things take,

 9   there may be a small chance that we may roll over to Friday

10   morning.  All right?

11          I am more than willing to stay until 6:00-ish on day

12   two to get everything done, but if it looks like it's going to

13   run a significant period of time beyond 4:30, we will break

14   and commence Friday morning.

15          I will adjust the time periods back on a starting

16   time if I think I need to in order to get us done on day two,

17   but if there's more than an hour and a half to be finished on

18   day two, then we're going to roll into day three.  I'm hoping

19   not.

20          I'm being very liberal and generous on the time

21   periods because I don't know -- I know what you've told me

22   your presentations are likely to be.  Just don't know how

23   colloquy is going to play itself out, and I don't know what

24   one side or the other is going to say that is going to trigger

25   some unanticipated longer -- some need for a longer response,

PROCEEDINGS

1   whether it's in rebuttal, reply, surrebuttal, or an answer to

2   Court questions.

3        Part of this is going to depend, candidly, if we're

4   getting into nitty-gritty, you know, making sure we understand

5   what is or may not be in the administrative record and what

6   those documents are saying.  As much as I would like us to

7   finish in two days, candidly, less than two full days, I'm

8   being a little bit cautious here to make sure that there's

9   adequate time for everyone.

10       I will wrap this up in a chart or a memo, send this

11  to you.

12       Mr. Mastro, you look like you're having a massive

13  headache from what I said.

14       MR. MASTRO:  No, your Honor.  Not having a massive

15  headache, but I will -- and this is my highest priority so as

16  long as it takes I will be here with bells on.  I just wanted

17  the Court to be aware that I'm on the board of the University

18  of Pennsylvania Law School.  We have an important dinner on

19  the evening of the 4th in Philadelphia and then our board

20  meeting on the morning of the 5th and if I have to miss it, I

21  have to miss it.  It was just that I was planning to go

22  directly from court to --

23       THE COURT:  Folks, it's real easy.  You can tell them

24  maybe.  I will be as kind and magnificent as I can be.

25  Because you've got this commitment that you believe is uber

PROCEEDINGS

1  important to you, we will find a way to work on an

2  accommodation.  And if we can't continue to Friday, then maybe

3  it's Monday.  The longer we elongate this, it's one less day I

4  have to do my job.  So the more you all cooperate and we move

5  through things, I will get you out the door, whether it's by

6  train, helicopter, power boat, flashing lights down the New

7  Jersey Turnpike, whatever it might be.  I will get you to

8  Philadelphia.

9         MR. MASTRO:  Your Honor, I can't tell you how much I

10 appreciate that, but I didn't share that because I, you know,

11 of course, I speak quickly so maybe this will go faster than

12 you think, but I didn't share that because --

13        THE COURT:  You did.  So you can't stuff the genie

14 back in the bottle.

15        MR. MASTRO:  No, no, I shared it because your Honor

16 saw the distress in my face.  But I -- this is the highest

17 priority to be here in this courtroom and not put you at any

18 inconvenience.  So we will do what we have to do here.  I

19 don't want to put things off.

20        THE COURT:  Folks, you tell me.  You want to start at

21 8:30 in the morning.  I'll start at 8:30 in the morning to

22 ensure that there's time.  I don't want to impose on the staff

23 here.  I don't want to -- you know, make any of you get up at

24 5 o'clock in the morning to be here on time.  I'm trying to be

25 accommodating.  I'm going to give you a straw man.  You tell

PROCEEDINGS

```
 1    me what adjustments you want to make.

 2              MR. CUMMING:  Your Honor?

 3              THE COURT:  It's that simple.

 4              MR. CUMMING:  Your Honor, to the point about the

 5    start time, from the folks coming from D.C., we'll be staying

 6    over in Newark the night before and we're happy to start as

 7    early as convenient for the parties to move through this.

 8              THE COURT:  Well, Mr. Chertok is probably not staying

 9    overnight in Newark.  He's coming from New York.  And

10    candidly, Ms. Knauer is not here and so, you know, if his

11    client wants to pay for a hotel rooms in Newark so everybody

12    can be here or they find some way to come through the tunnel

13    with flashing lights or otherwise to be here, you all just

14    tell me.

15              MR. CHERTOK:  We'll look into that, but certainly we

16    can start, you know, probably 9:30, certainly, or even 9:00

17    would be a reasonable time.

18              THE COURT:  Do you know what?  I will make an

19    adjustment.  I will do the proposal for 9:30 and we will

20    figure out if we can get everything done.

21              MR. MASTRO:  Really appreciate it, your Honor.

22              THE COURT:  Just out of curiosity, Mr. Mastro, what

23    time is your dinner on Thursday night?

24              MR. MASTRO:  My dinner starts at 6:30, your Honor.

25              THE COURT:  That means you got to be on the road by
```

PROCEEDINGS

```
 1   4:30 or else you're not going to make it.  And unless they are
 2   going to put your nice piece of steak in a warmer, you're
 3   probably going to eat salad and dessert.
 4           MR. MASTRO:  I will miss the cocktail hour, your
 5   Honor, and I don't need the cocktails.
 6           THE COURT:  All right.  Any questions or concerns
 7   about what the Court has outlined?
 8           I will start with plaintiff Amici.  Any concerns?
 9           MS. MATLOFF:  No, your Honor.
10           THE COURT:  You know you're at the tail end --
11           MS. MATLOFF:  Right.
12           THE COURT:  -- ultimately, of all of this.  Okay.
13           MS. MATLOFF:  Well, I have one question.  What you
14   send around, will it include the time that you're allotting to
15   each of us?
16           THE COURT:  I'm assuming that you're a college
17   graduate and a law school graduate and if I say something's
18   going to start at 9:30 and run to 12:30, you can pretty much
19   figure out that I've allotted three hours for the argument in
20   respective --distributed relatively equally amongst the sides,
21   but yes, I will include the time and I will do the
22   mathematics.
23           Okay.  Defendant Intervenors, questions or comments?
24           No, okay.
25           You raised your hand?  You wish to be recognized,
```

PROCEEDINGS

1   Mr. Mastro?

2          MR. MASTRO:  Yes, your Honor.  Thank you.

3          THE COURT:  Is Ms. Meyers going to have an

4   opportunity to say anything or are you just going to continue?

5          MR. MASTRO:  I will look for that opportunity.  I'm

6   sure she would be delighted.

7          THE COURT:  You raised your hand.  How may I help

8   you, Mr. Mastro?

9          MR. MASTRO:  Your Honor, I just -- in oral arguments

10  sometimes we present certain materials, boards are displayed,

11  items, I don't know that it's capable of doing that in this

12  courtroom.  Is there a screen or anything like that or we

13  should just present poster boards or displays if we have some

14  slides we want your Honor to see, parts of the record or

15  things like that?

16         THE COURT:  You're asking me several questions in

17  one, Mr. Mastro.  First question you're asking me is:  Will I

18  allow to you present --

19         MR. MASTRO:  Yes, your Honor.

20         THE COURT:  -- demonstrative information to the

21  Court?

22         You want to give me a copy of administrative record

23  document 43285 to look at specifically while you're making,

24  then provide it to me.

25         Second question you're asking me, obviously, with

PROCEEDINGS

70

1    sufficient copies for everyone else who's participating, are

2    you asking me do we have the technology for you to do show and

3    tell the answer is, Sharia, you got to tell me, this courtroom

4    does not, but do we have the ability to do show and tell?

5            THE COURTROOM DEPUTY:  Yes, they can bring a portable

6    television up.

7            THE COURT:  Okay.  And do they have to supply us with

8    a flash drive and we post it or do we connect their laptop?

9            THE COURTROOM DEPUTY:  They can connect to the

10   television.

11           THE COURT:  So, Mr. Mastro, when you submit your

12   comments about the time allocations, tell us what you need and

13   I will have Ms. Creegan or someone else from the clerk's

14   office respond to you so that we can accommodate the

15   technology for show and tell.

16           MR. MASTRO:  Thank you, your Honor.  That would be

17   wonderful.

18           THE COURT:  Anything else, Mr. Mastro?

19           MR. MASTRO:  Not from me, your Honor.

20           THE COURT:  Mr. Cumming?  Ms. Howard?

21           MR. CUMMING:  Nothing from us.

22           THE COURT:  Mr. Chertok?

23           MR. CHERTOK:  Nothing, your Honor.

24           THE COURT:  Okay.  So we're in pretty good shape.

25           All right.  I am going to do one more thing while I

1  need to beg your indulgence.  I do wish to speak to each side.

2  I wish to have a candid conversation about a couple of things

3  that are on my mind with each side, but it potentially borders

4  on the disclosure of oral argument strategy, so I'm going to

5  do it separately in chambers.  It should take probably not

6  much more than about ten minutes a side, and my hope is to get

7  you out of here, actually a half hour before we were scheduled

8  to end.

9         So are there objections?  Okay.  There being none,

10  plaintiff's side, including Amici, come talk to me.  You will

11  then come back out for a final couple of words.

12         (Recess taken from 12:43 p.m. to 1:19 p.m.)

13         THE COURT:  All right, folks.  We've had very

14  fruitful conversations.  I appreciate your professionalism and

15  courtesy, your respect for the Court, your candor.  It was --

16  I think we made a lot of progress today and I appreciate it

17  greatly.

18         I want to leave you all with a couple of last

19  thoughts.  Number one, I'm going to get you a summary, right,

20  give you a reasonable period of time to respond to it.

21         If there's any reason that you think we need to talk

22  about anything even if it's the simplest issue between now and

23  April the 3rd, send a note to Ms. Creegan.  We'll do it either

24  in little two-by-two boxes or we'll do it here.  I don't care

25  how simple or how ridiculous you think it might be that you

1    don't want to bother the Court.  I'd rather we take care of it

2    all up front so that everybody is calm and ready to go and

3    focused on the things that we need to do on April 3rd.  Okay?

4          Second thing, see this little handheld computer.  Not

5    only am I going to make sure that it's on off or vibrate for

6    everybody, if I see anyone reach for these in any way shape or

7    form while we are in active session, whether they are at

8    counsel table or they belong to you or a surrogate of yours or

9    your client or some representative of your client in the

10   gallery, we are stopping and we're having a conversation.

11         If you don't know what the New Jersey local rule is

12   on social media or simultaneous recording or broadcasting or

13   whatever, you might want to call.

14         If somebody's using this, we're stopping and having a

15   conversation.  I do not wish to embarrass anybody and I will

16   determine whether that person will be allowed to stay in the

17   courtroom or have to surrenderer their cell phone.

18         Any time we take a break you want to get on your cell

19   phone, check your messages, call your office, that's fine.  I

20   am fully aware of incidents where associates have been sitting

21   at counsel table and posting on Twitter or Instagram.  Trust

22   me, you don't want me to stop and have a conversation.  I

23   don't want to put you as the leads in this case in a position

24   where you have to go back and talk to the managing partner of

25   your firm because you got to discipline somebody because they

PROCEEDINGS

73

1   were dialectically stupid.

2           I can't control your clients and what they do or your

3   surrogates and what they do.  You're officers of the Court.

4   You got to behave with courtesy, dignity, and respect to the

5   Court.  You're professional enough, experienced enough that I

6   know you will but, unfortunately, I got to give you an

7   admonition that those who are here with you or work under you,

8   etc., may not be as experienced as you.  They're different

9   generations.  They may not think like you.

10          Trust me, the moment somebody walks out the

11  courtroom, they can report on whatever they want to report on.

12  I have no problems with it.  Inside this courtroom,

13  100 percent attention has got to be focused on you and what

14  you have to say on behalf of your clients, right, and I have

15  to be able to concentrate on that.  If there is a distraction

16  because somebody decides they want to be important and post on

17  social media, that's not respectful of you.  Forget about

18  being respectful of me.  It's not respectful of you.

19          We already had one incident, okay, in which somebody

20  associated with one of the entities here made two

21  inappropriate phone calls.  We've taken care of all of that.

22  I do not wish a repeat during oral argument.  It's too

23  important a case for our attention to be diverted by nonsense.

24          Understood?  Mr. Mastro?

25          MR. MASTRO:  Absolutely, your Honor.

PROCEEDINGS

```
 1            THE COURT:  Plaintiff Intervenors, understood?
 2            MS. MATLOFF:  Yes, your Honor.
 3            THE COURT:  Government counsel?
 4            MR. CUMMING:  Yes, your Honor.
 5            THE COURT:  MTA counsel?
 6            MR. CHERTOK:  Yes, your Honor.
 7            THE COURT:  Defendant Intervenors?
 8            MR. REICHMAN:  Yes, your Honor.
 9            THE COURT:  You walk out of this courtroom, you want
10   to post something on social media, you want to talk to the
11   media, I don't care, that's your absolute right.  But while
12   we're here, we got to abide by the Rules.  Okay?
13            I really appreciate your professionalism.  I
14   appreciate your cooperation.  You've been nothing but model
15   attorneys before me since we started our time together.  I
16   fully look forward to that continuing on April 3rd and 4th and
17   you putting me in the best position possible to do my job to
18   get you an opinion in a very reasonable period of time.
19            I do want to reiterate the more you cooperate in that
20   regard, the easier you make it for me, it will be -- it is my
21   clear intention to issue an opinion in a timely manner that
22   allows you to assess the opinion, advise your clients, and
23   figure out what you have to do next sufficiently in advance of
24   what right now is the targeted green light day of
25   approximately June 15th.
```

PROCEEDINGS

1          The more you do to help me, the more I can help you

2    and give you that opportunity.  So I appreciate everything.  I

3    appreciate your time.  A child's birthday party, a family get-

4    together, a law school dinner and board meeting, if it affects

5    the timing on what we're trying to do here on April 3rd and

6    4th, tell me, I will do my utmost to move heaven and earth to

7    accommodate you all.  What you choose to do, your business,

8    but I will do what I can to accommodate you as best you can

9    because you have been kind enough to accommodate me as we've

10   worked our way toward April 3rd and 4th and I appreciate it.

11         This is a cooperative effort to get us through an end

12   result and I cannot thank you enough for your cooperation.

13         And we're at 1:25, five minutes before the end period

14   so we are done on time.  Thank you much-ly.  We'll send you

15   something, hopefully on Monday, that outlines the blocks of

16   time.  And as I calculate those blocks, we'll figure out an

17   appropriate start and end time.

18         For those of you who traveled, please travel safely

19   back, and I will see you in two weeks.

20         MR. MASTRO:  Thank you, your Honor.

21         MS. MATLOFF:  Thank you, your Honor.

22         MR. CUMMING:  Thank you, your Honor.

23         MR. CHERTOK:  Thank you, your Honor.

24         THE COURT:  For those of you who are celebrating the

25   upcoming Good Friday, Easter holiday, have a pleasant one.

PROCEEDINGS

 1   For those who are waiting another month to eat matzoh, we'll

 2   make that comment after the oral argument on the 3rd and 4th.

 3          Have a good holiday.  Travel safely wherever you

 4   travel from.

 5              (Proceedings concluded at 1:27 p.m.)

 6   _____

 7              FEDERAL COURT REPORTER'S CERTIFICATE

 8

 9          I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   /S/ Francesca DiBella, RPR, CCR, CRR, CRC          03/25/24
     Official Court Reporter                           Date
13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*District of New Jersey*

## /

/S [1] - 76:12

## 0

**03/25/24** [1] - 76:12
**03885** [1] - 4:10
**07043** [1] - 3:5
**07068** [1] - 1:20
**07102** [2] - 1:10, 2:9
**07601** [1] - 3:23

## 1

**1** [4] - 1:6, 9:25, 14:19, 61:21
**1,600** [1] - 12:11
**1/13/2023** [1] - 14:21
**10** [5] - 41:21, 45:15, 48:23, 58:4, 61:16
**100** [1] - 73:13
**10017** [1] - 3:19
**10022** [1] - 2:17
**10036** [2] - 1:17, 3:16
**103** [1] - 1:19
**10:30** [4] - 61:11, 61:15, 61:19, 61:20
**10:34** [1] - 4:2
**10:35** [1] - 1:11
**1177** [1] - 3:16
**1185** [1] - 1:16
**11:34** [2] - 39:22, 39:23
**11:45** [1] - 39:22
**11:46** [1] - 39:23
**12** [1] - 12:21
**12:15** [1] - 61:20
**12:25** [1] - 60:7
**12:30** [2] - 61:20, 68:18
**12:43** [1] - 71:12
**12:45** [1] - 61:21
**14th** [1] - 3:19
**15** [18] - 41:21, 41:25, 45:15, 45:21, 46:21, 47:1, 48:8, 48:10, 48:15, 48:17, 48:23, 49:14, 56:20, 57:4, 58:4, 58:21, 59:11, 59:14
**150** [2] - 2:5, 2:12
**15th** [3] - 2:16, 19:20, 74:25
**19** [1] - 13:7
**1:15** [1] - 61:21
**1:19** [1] - 71:12
**1:25** [1] - 75:13
**1:27** [1] - 76:5

## 2

**2** [2] - 1:9, 12:13
**20** [14] - 38:24, 39:2, 39:10, 39:12, 48:8, 48:16, 48:18, 49:14, 56:20, 57:2, 58:21, 58:23, 59:7
**20,000** [1] - 15:14
**20002** [2] - 2:5, 2:13
**201** [1] - 1:19
**2022** [8] - 12:21, 12:23, 13:8, 13:10, 13:25, 14:1, 14:3, 15:7
**2023** [2] - 15:3, 15:21
**2024** [1] - 1:10
**21** [1] - 1:10
**23** [2] - 4:10, 12:23
**23rd** [1] - 13:2
**24** [1] - 61:6
**25th** [1] - 13:23
**26** [1] - 15:20
**28,000** [1] - 15:17
**29th** [1] - 13:25
**2:23-cv-03885-LMG-LDW** [1] - 1:4

## 3

**3** [2] - 22:2, 60:25
**30** [3] - 14:1, 48:11, 48:15
**30-day** [1] - 19:9
**31** [2] - 14:3, 17:13
**319** [1] - 12:3
**31st** [3] - 14:6, 14:10, 32:7
**350** [1] - 3:9
**36** [1] - 61:7
**360** [1] - 24:20
**39319** [1] - 11:9
**3rd** [8] - 33:14, 61:12, 71:23, 72:3, 74:16, 75:5, 75:10, 76:2

## 4

**4** [3] - 13:10, 22:2, 61:1
**4/18/2022** [1] - 12:20
**40** [1] - 42:3
**40053** [1] - 12:13
**4019** [1] - 12:19
**40190** [1] - 12:21
**40227** [1] - 13:7
**40514** [1] - 14:20
**40683** [1] - 15:3
**41634** [1] - 13:10
**41973** [1] - 13:24

**42393** [1] - 14:1
**42828** [1] - 13:22
**43124** [1] - 14:3
**43145** [1] - 14:6
**43276** [1] - 14:9
**43285** [1] - 69:23
**45** [1] - 42:4
**45346** [1] - 15:20
**48,000** [1] - 12:11
**4:30** [4] - 62:1, 62:9, 64:13, 68:1
**4th** [9] - 2:12, 13:11, 13:18, 16:24, 65:19, 74:16, 75:6, 75:10, 76:2

## 5

**5** [1] - 66:24
**56** [1] - 3:5
**560** [1] - 2:16
**5th** [2] - 3:22, 65:20

## 6

**60-day** [3] - 17:21, 18:7, 18:16
**6:00-ish** [1] - 64:11
**6:30** [1] - 67:24

## 7

**7** [1] - 15:14
**733** [1] - 3:19
**76** [1] - 1:6
**776-3885** [1] - 1:24

## 8

**8** [1] - 15:3
**8/25** [1] - 13:22
**800** [1] - 15:14
**8:30** [2] - 66:21

## 9

**9/15/2021** [1] - 11:9
**90** [1] - 25:4
**970** [1] - 2:4
**973** [1] - 1:24
**9:00** [1] - 67:16
**9:30** [3] - 67:16, 67:19, 68:18

## A

**a.m** [4] - 1:11, 4:3, 39:23
**abide** [1] - 74:12
**ability** [1] - 37:14,

62:3, 70:4
**able** [6] - 36:15, 36:16, 37:2, 46:10, 53:7, 73:15
**above-entitled** [1] - 76:10
**absence** [1] - 55:10
**absolute** [1] - 74:11
**absolutely** [2] - 61:1, 73:25
**acceleration** [1] - 21:12
**acceptable** [1] - 47:11
**accommodate** [7] - 48:18, 50:1, 50:4, 70:14, 75:7, 75:8, 75:9
**accommodating** [1] - 66:25
**accommodation** [2] - 39:18, 66:2
**accompanied** [2] - 5:8, 5:15
**accordance** [3] - 29:3, 29:4, 42:20
**according** [1] - 16:21
**account** [1] - 51:1
**accurate** [3] - 16:19, 18:13, 19:12
**Act** [10] - 22:14, 24:9, 24:13, 32:13, 34:4, 45:19, 45:20, 58:15, 58:18, 64:4
**act** [1] - 18:17
**Action** [5] - 3:7, 3:7, 3:10, 3:13
**ACTION** [1] - 1:3
**action** [1] - 18:17
**actions** [1] - 8:23
**active** [1] - 72:7
**activities** [1] - 57:5
**add** [5] - 5:18, 8:16, 18:10, 37:21, 57:25
**added** [1] - 16:20
**additional** [3] - 31:19, 35:16, 37:9
**address** [10] - 7:8, 34:10, 34:17, 34:18, 41:20, 46:10, 50:24, 52:12, 52:17, 56:4
**addressing** [1] - 40:14
**adequate** [3] - 47:3, 47:9, 65:9
**adequately** [1] - 47:21
**adjust** [2] - 20:21, 64:15
**adjustment** [1] - 67:19
**adjustments** [2] - 62:4, 67:1
**Administration** [10] -

11:10, 12:22, 13:4, 15:4, 15:22, 17:18, 18:16, 18:21, 28:1, 48:15
**administrative** [22] - 7:5, 9:12, 11:4, 12:18, 13:3, 14:13, 16:5, 21:15, 26:19, 26:20, 27:8, 31:19, 36:8, 44:11, 45:14, 47:7, 49:10, 51:19, 52:7, 55:11, 65:5, 69:22
**admission** [1] - 42:24
**admissions** [1] - 55:11
**admitted** [1] - 41:10
**admittedly** [1] - 8:3
**admonition** [2] - 24:17, 73:7
**adopt** [1] - 40:22
**adopted** [1] - 34:17
**advance** [5] - 35:23, 36:5, 36:20, 37:24, 74:23
**adversaries** [1] - 26:11
**advice** [1] - 39:5
**advise** [1] - 74:22
**affects** [1] - 75:4
**afford** [1] - 23:17
**afternoon** [10] - 8:14, 25:10, 61:25, 62:10, 62:13, 63:8, 63:12, 63:19, 64:3, 64:4
**age** [1] - 39:7
**agencies** [2] - 13:12, 15:7
**agency** [16] - 13:14, 17:24, 26:24, 29:11, 30:1, 30:11, 30:15, 30:18, 30:22, 30:25, 31:4, 43:12, 47:8, 50:25, 62:12
**agency's** [3] - 28:7, 29:18, 30:8
**ago** [1] - 24:7
**agree** [4] - 45:4, 46:14, 56:9, 56:14
**agreed** [1] - 9:2
**agreeing** [1] - 40:18
**agreement** [9] - 18:19, 18:24, 18:25, 19:10, 19:19, 44:6, 46:4, 48:5, 56:5
**agrees** [1] - 40:9
**ahead** [1] - 51:10
**aided** [1] - 1:25
**Air** [10] - 22:14, 24:9, 24:13, 32:13, 34:4,

45:19, 45:20, 58:15, 58:18, 64:4
**air** [21] - 34:6, 43:22, 44:15, 53:5, 53:10, 53:25, 54:10, 54:12, 54:15, 54:17, 54:20, 54:23, 55:1, 55:3, 55:14, 56:4, 62:20, 62:24, 63:1, 63:7, 63:10
**al** [4] - 1:3, 1:7, 4:11
**ALEX** [1] - 2:8
**Alex** [1] - 5:9
**all-day** [1] - 8:5
**Alliance** [2] - 3:8, 3:13
**Allied** [1] - 3:6
**allocating** [1] - 47:18
**allocation** [1] - 22:1
**allocations** [1] - 46:20, 57:16, 70:12
**allotted** [2] - 7:7, 68:19
**allotting** [1] - 68:14
**allow** [1] - 69:18
**allowed** [1] - 72:16
**allows** [2] - 29:8, 74:22
**almost** [1] - 22:12
**alone** [1] - 14:19
**alternative** [3] - 40:21, 41:2, 41:15
**alternatives** [9] - 41:10, 44:1, 54:16, 55:20, 55:23, 55:25, 56:10, 62:12, 64:1
**Amci** [1] - 38:19
**amended** [2] - 9:11, 16:20
**Americas** [2] - 1:16, 3:16
**Amici** [11] - 4:22, 5:1, 5:23, 9:25, 21:18, 21:22, 24:11, 24:13, 64:6, 68:8, 71:10
**Amicus** [4] - 3:6, 3:17, 3:20, 3:23
**amount** [3] - 20:7, 57:12, 61:1
**AMY** [1] - 2:16
**Amy** [2] - 5:15, 5:16
**analysis** [4] - 46:7, 56:11
**ANDREW** [1] - 3:15
**answer** [14] - 20:1, 28:18, 28:19, 28:21, 28:22, 28:24, 28:25, 42:16, 49:4, 49:15, 58:8, 65:1, 70:3
**anticipated** [1] - 19:23
**anticipation** [1] -

17:22
**anyway** [2] - 41:11, 41:17
**Anyway** [1] - 6:25
**apparent** [1] - 35:18
**appear** [1] - 15:8
**appearing** [1] - 6:21
**appendices** [1] - 46:9
**application** [2] - 29:13, 29:19
**applies** [1] - 23:12
**apply** [1] - 29:11
**appreciate** [17] - 6:18, 10:24, 21:14, 26:1, 36:25, 39:24, 54:14, 58:11, 66:10, 67:21, 71:14, 71:16, 74:13, 74:14, 75:2, 75:3, 75:10
**appreciated** [2] - 25:1, 57:13
**approach** [2] - 35:9, 40:2
**approaching** [1] - 36:4
**appropriate** [4] - 30:13, 39:13, 47:12, 75:17
**appropriately** [2] - 49:8, 50:2
**approval** [2] - 11:11, 48:3
**approved** [1] - 41:6
**approximate** [1] - 16:23
**April** [10] - 17:19, 19:8, 22:2, 32:7, 60:25, 71:23, 72:3, 74:16, 75:5, 75:10
**arbitrariness** [1] - 44:16
**arbitrary** [1] - 23:7
**arbitrators** [1] - 9:1
**area** [3] - 16:2, 26:19, 44:5
**areas** [8] - 23:12, 34:24, 35:1, 51:25, 53:6, 55:10, 55:12, 55:24
**argue** [3] - 27:11, 38:9, 41:19
**argued** [2] - 31:24, 44:10
**arguing** [2] - 41:14, 49:24
**argument** [43] - 7:10, 20:7, 20:14, 20:17, 21:16, 23:5, 24:3, 24:10, 24:21, 25:4, 25:5, 25:23, 27:24,

28:7, 28:8, 29:10, 30:4, 32:24, 33:7, 34:2, 34:5, 34:19, 35:2, 37:7, 38:16, 39:4, 40:13, 41:4, 41:5, 41:14, 43:10, 43:21, 43:24, 48:9, 49:10, 50:18, 60:10, 60:21, 62:11, 68:19, 71:4, 73:22, 76:2
**arguments** [14] - 22:18, 25:24, 26:4, 26:11, 27:15, 31:11, 31:14, 35:22, 38:12, 38:20, 44:4, 50:3, 51:21, 69:9
**arrange** [1] - 11:16
**aspects** [1] - 43:16
**assess** [1] - 74:22
**assessment** [1] - 46:8
**Assessments** [1] - 11:11
**assistant** [1] - 7:22
**associated** [2] - 21:8, 73:20
**associates** [1] - 72:20
**Association** [1] - 3:10
**assume** [3] - 28:25, 46:14, 48:8
**assuming** [10] - 18:20, 19:8, 19:18, 50:23, 51:4, 51:7, 58:15, 60:9, 64:5, 68:16
**assumption** [2] - 51:15, 61:19
**attached** [1] - 12:16
**attachment** [3] - 12:17, 13:4, 15:1
**attachments** [2] - 12:2, 12:7
**attend** [1] - 12:9
**attended** [1] - 8:22
**attending** [2] - 6:18, 6:21
**attention** [4] - 11:8, 20:17, 73:13, 73:23
**ATTORNEY'S** [3] - 2:3, 2:7, 2:11
**attorneys** [1] - 74:15
**August** [10] - 13:10, 13:11, 13:18, 13:23, 13:25, 14:1, 14:3, 14:6, 14:10, 15:7
**AUSA** [1] - 36:9
**Authority** [1] - 2:18
**automatic** [1] - 40:20
**automatically** [3] - 30:2, 40:19, 41:12
**available** [1] - 37:3
**Avenue** [5] - 1:16,

2:16, 3:5, 3:16, 3:19
**aware** [4] - 43:22, 47:2, 65:17, 72:20

**B**

**balance** [1] - 58:10
**ball** [1] - 45:1
**ballpark** [1] - 57:7
**basic** [2] - 13:20, 26:20
**basis** [2] - 24:21, 26:25
**bathroom** [1] - 25:18
**bear** [1] - 9:5
**beg** [1] - 71:1
**begin** [1] - 62:11
**beginning** [1] - 18:23
**behalf** [8] - 4:12, 5:12, 5:23, 10:6, 20:6, 32:8, 48:14, 73:14
**behave** [1] - 73:4
**behind** [2] - 4:18, 5:5
**believes** [1] - 54:22
**bells** [1] - 65:16
**belong** [1] - 72:8
**bench** [1] - 39:17
**benefit** [2] - 23:4, 26:18
**BERGEN** [1] - 3:21
**Bergen** [3] - 3:8, 3:22, 3:23
**best** [7] - 7:9, 9:17, 17:25, 24:25, 25:3, 25:5, 50:19, 60:23, 74:17, 75:8
**better** [2] - 35:3, 52:11
**Better** [1] - 3:10
**between** [8] - 11:24, 32:14, 61:6, 71:22
**beyond** [3] - 19:17, 33:4, 64:13
**big** [2] - 27:5, 62:22
**bigger** [2] - 27:11, 63:11
**BII** [1] - 3:11
**Bike** [4] - 3:8, 3:9, 3:11, 3:13
**Bill** [1] - 45:5
**birthday** [1] - 75:3
**bit** [3] - 41:25, 51:19, 65:8
**block** [2] - 48:9, 48:17
**blocks** [2] - 75:15, 75:16
**BlueWaveNJ** [1] - 3:11
**Board** [1] - 17:7
**board** [5] - 17:9, 47:19, 65:17, 65:19,

75:4
**boards** [2] - 69:10, 69:13
**boat** [1] - 66:6
**borders** [1] - 71:3
**bother** [1] - 72:1
**bottle** [1] - 66:14
**bounds** [1] - 9:14
**boxes** [1] - 71:24
**break** [15] - 25:17, 25:18, 26:20, 34:1, 35:13, 35:23, 37:22, 38:15, 39:15, 60:2, 60:12, 62:25, 64:1, 64:13, 72:18
**breaths** [1] - 33:20
**brief** [12] - 22:7, 22:19, 24:24, 26:4, 31:20, 34:22, 38:9, 39:5, 39:6, 43:11, 49:11, 49:15
**briefly** [1] - 32:11
**briefs** [4] - 9:10, 26:7, 31:12, 38:4
**bright** [1] - 4:23
**bring** [2] - 32:6, 70:5
**Broad** [1] - 2:8
**broad** [2] - 28:4, 61:9
**broadcasting** [1] - 72:12
**broken** [1] - 36:6
**Bruce** [1] - 38:23
**bucket** [9] - 26:22, 29:3, 30:11, 30:17, 30:21, 43:16, 43:17, 45:9, 45:10
**buckets** [15] - 26:21, 31:13, 31:17, 42:10, 42:13, 42:15, 42:19, 43:4, 43:5, 43:21, 45:12, 51:20, 52:1, 52:5, 52:17
**bulk** [13] - 39:4, 43:10, 43:24, 50:17, 52:19, 53:22, 53:25, 54:4, 54:8, 54:12, 54:15, 62:11, 62:16
**bullet** [1] - 15:22
**bunch** [5] - 7:5, 8:24, 47:25, 60:24, 61:13
**buried** [1] - 25:3
**bus** [3] - 14:5, 14:8, 14:10
**business** [2] - 9:8, 75:7
**BY** [12] - 1:15, 1:16, 1:19, 2:4, 2:8, 2:12, 2:15, 2:16, 3:4, 3:15, 3:18, 3:22

# C

**calculate** [1] - 75:16
**calm** [1] - 72:2
**candid** [1] - 71:2
**candidly** [8] - 7:6, 25:1, 27:19, 57:23, 63:21, 65:3, 65:7, 67:10
**candor** [1] - 71:15
**cannot** [2] - 18:25, 75:12
**capable** [3] - 26:11, 35:21, 69:11
**capaciousness** [1] - 44:17
**capricious** [1] - 23:7
**carbon** [1] - 11:13
**care** [6] - 7:5, 61:24, 71:24, 72:1, 73:21, 74:11
**cart** [1] - 35:17
**carve** [2] - 44:7, 53:15
**carved** [2] - 43:13, 53:18
**carving** [1] - 54:11
**case** [9] - 4:8, 21:8, 23:13, 25:24, 31:14, 33:11, 47:13, 72:23, 73:23
**cases** [3] - 26:20, 35:9, 53:3
**CASSIDY** [3] - 2:16, 5:20, 5:21
**Cassidy** [2] - 5:15, 5:17
**categories** [1] - 42:19
**category** [1] - 59:18
**causing** [1] - 35:17
**cautious** [2] - 47:14, 65:8
**cc** [1] - 12:7
**CCR** [1] - 76:12
**celebrating** [1] - 75:24
**cell** [2] - 72:17, 72:18
**Cerrano** [1] - 13:13
**certain** [13] - 8:3, 8:4, 27:23, 32:18, 36:3, 44:18, 51:1, 51:12, 51:21, 53:24, 55:12, 64:8, 69:10
**certainly** [4] - 21:11, 42:14, 67:15, 67:16
**CERTIFICATE** [1] - 76:7
**certified** [1] - 13:17
**certify** [1] - 76:9
**challenges** [1] - 52:7
**chambers** [2] - 7:19, 71:5

**chance** [1] - 64:9
**change** [2] - 20:19, 38:7
**charge** [2] - 18:3, 48:1
**chart** [1] - 65:10
**chat** [1] - 39:17
**check** [2] - 25:17, 72:19
**CHERTOK** [49] - 2:15, 5:14, 5:17, 8:11, 8:13, 8:17, 8:20, 10:9, 17:1, 17:5, 17:7, 17:9, 17:12, 17:15, 17:22, 18:4, 18:25, 19:3, 19:22, 20:3, 21:11, 34:22, 37:21, 38:1, 38:6, 38:11, 38:14, 46:16, 47:5, 47:10, 47:13, 47:16, 47:23, 48:23, 48:25, 50:15, 56:14, 56:25, 57:4, 59:11, 60:13, 60:16, 60:18, 60:20, 60:23, 67:15, 70:23, 74:6, 75:23
**Chertok** [21] - 5:12, 8:12, 10:8, 16:13, 16:21, 19:18, 34:21, 35:21, 35:22, 37:20, 46:14, 47:7, 48:20, 50:14, 56:13, 56:24, 59:10, 60:8, 60:17, 67:8, 70:22
**child** [1] - 60:12
**child's** [1] - 75:3
**choice** [3] - 24:25, 49:11, 49:13
**choose** [2] - 54:6, 75:7
**choosing** [1] - 41:16
**chosen** [2] - 53:6, 55:23
**circumstances** [1] - 38:8
**CIT** [1] - 27:19
**citizen** [1] - 3:12
**Civil** [1] - 4:10
**CIVIL** [1] - 1:3
**claim** [5] - 33:3, 34:4, 40:11, 45:17, 45:21
**claims** [2] - 22:12, 22:18, 32:12, 32:14, 32:19, 33:4, 34:4, 34:5, 34:7, 34:10, 34:20, 37:22
**clarification** [1] - 46:23
**class** [1] - 8:23
**Clean** [11] - 3:6, 22:14, 24:9, 24:13, 32:13,

**clear** [3] - 27:7, 30:22, 34:4, 45:18, 45:20, 58:15, 58:18, 64:4
**CLERK** [4] - 11:22, 12:4, 15:1, 15:13
**clerk** [2] - 7:22, 11:7
**clerk's** [1] - 70:13
**client** [7] - 18:2, 20:6, 54:21, 67:11, 72:9
**client's** [1] - 54:20
**clients** [3] - 73:2, 73:14, 74:22
**clock** [1] - 59:24
**close** [1] - 17:12
**clue** [1] - 27:1
**Coalition** [1] - 3:7
**cocktail** [1] - 68:4
**cocktails** [1] - 68:5
**codefendants'** [1] - 57:15
**cogitate** [1] - 56:17
**coherent** [2] - 11:5, 35:1
**colleague** [2] - 4:14, 6:5
**colleagues** [1] - 6:17
**college** [1] - 68:16
**colloquy** [8] - 25:14, 25:22, 26:8, 31:16, 34:24, 48:25, 62:16, 64:23
**comfortable** [4] - 9:18, 24:1, 24:5, 35:7
**coming** [4] - 31:16, 61:13, 67:5, 67:9
**commence** [1] - 64:14
**Commencing** [1] - 1:11
**comment** [5] - 24:7, 26:17, 28:22, 46:17, 76:2
**commentary** [1] - 51:8
**commented** [1] - 7:25
**comments** [2] - 13:14, 15:6, 15:9, 15:14, 15:16, 54:8, 57:20, 58:3, 58:8, 61:16, 68:23, 70:12
**commingled** [1] - 54:7
**commitment** [2] - 20:5, 65:25
**committed** [1] - 35:8
**communicate** [1] - 18:21
**communicated** [1] - 21:7
**communication** [1] - 9:16

**communities** [2] - 44:15, 44:18
**company** [3] - 14:5, 14:8, 59:1
**complaint** [1] - 9:11
**complete** [1] - 44:6
**Complete** [1] - 3:7
**completed** [3] - 17:1, 17:4, 19:1
**completely** [2] - 33:8, 42:7
**complex** [1] - 35:9
**complexity** [1] - 23:3
**compliance** [3] - 36:12, 51:13, 52:2
**compliment** [1] - 22:25
**compute** [1] - 33:13
**computer** [2] - 1:25, 72:4
**computer-aided** [1] - 1:25
**concentrate** [2] - 62:13, 73:15
**concerned** [2] - 11:18, 12:3
**concerns** [16] - 9:9, 9:13, 10:2, 10:3, 10:5, 10:7, 10:9, 10:19, 10:21, 11:25, 21:16, 47:21, 54:20, 63:14, 68:6, 68:8
**concise** [2] - 9:12, 11:6
**conclude** [1] - 18:24
**concluded** [3] - 9:2, 18:25, 76:5
**conclusion** [1] - 29:9
**concurrence** [1] - 34:23
**conducted** [1] - 13:13
**conference** [5] - 4:10, 8:22, 17:23, 19:23, 22:1
**CONFERENCE** [1] - 1:5
**confined** [1] - 38:9
**confirming** [1] - 16:16
**conform** [1] - 9:11
**Conformity** [1] - 11:11
**conjunction** [1] - 53:19
**connect** [2] - 30:25, 70:8, 70:9
**connotes** [1] - 27:9
**consequence** [1] - 55:1
**consequential** [1] - 55:4
**consider** [4] - 25:23,

28:2, 44:14, 54:3
**consideration** [5] - 44:8, 44:13, 47:22, 52:21, 60:25
**considerations** [3] - 54:2, 54:23, 55:1
**considering** [1] - 17:7
**consolidated** [2] - 9:12, 12:12
**Consolidated** [1] - 1:20
**consult** [1] - 39:21
**contain** [1] - 15:8
**context** [2] - 27:15, 52:8
**continue** [2] - 66:2, 69:4
**continuing** [2] - 23:1, 74:16
**Continuing** [2] - 2:1, 3:1
**control** [2] - 18:1, 73:2
**controversy** [1] - 61:8
**convenient** [1] - 67:7
**conversation** [15] - 7:19, 10:24, 20:21, 22:5, 23:22, 24:14, 25:11, 27:13, 29:13, 53:20, 54:5, 71:2, 72:10, 72:15, 72:22
**conversations** [4] - 7:14, 16:3, 21:25, 71:14
**cooperate** [2] - 66:4, 74:19
**cooperation** [3] - 19:7, 74:14, 75:12
**cooperative** [1] - 75:11
**copies** [2] - 16:9, 70:1
**copy** [1] - 69:22
**correct** [10] - 6:9, 6:10, 14:25, 19:22, 22:15, 30:8, 56:20, 58:17, 59:8, 76:9
**correctly** [4] - 5:2, 22:7, 22:9, 29:12
**couched** [1] - 27:15
**Council** [1] - 3:12
**counsel** [11] - 5:5, 21:24, 24:19, 24:20, 26:3, 39:16, 44:7, 72:8, 72:21, 74:3, 74:5
**COUNSEL** [1] - 3:21
**counsels** [1] - 11:12
**countenance** [1] - 4:24
**COUNTY** [2] - 3:21
**County** [4] - 3:7, 3:22,

3:23, 11:11
**couple** [4] - 56:17, 71:2, 71:11, 71:18
**course** [4] - 25:22, 42:2, 42:5, 66:11
**Court** [43] - 1:23, 4:2, 10:25, 18:6, 20:20, 22:17, 22:24, 22:25, 23:4, 23:11, 25:1, 25:9, 27:6, 31:1, 34:1, 34:8, 34:17, 35:3, 35:8, 36:1, 36:19, 36:25, 37:1, 37:13, 38:3, 38:8, 40:14, 46:10, 47:8, 48:12, 49:3, 49:16, 50:19, 50:21, 65:2, 65:17, 68:7, 69:21, 71:15, 72:1, 73:3, 73:5, 76:12
**court** [4] - 4:1, 21:6, 41:11, 65:22
**COURT** [216] - 1:1, 1:12, 4:4, 4:7, 4:12, 4:16, 4:18, 4:21, 4:23, 5:1, 5:4, 5:8, 5:11, 5:16, 5:18, 5:22, 6:1, 6:4, 6:6, 6:8, 6:11, 6:13, 6:16, 6:24, 7:3, 8:7, 8:9, 8:12, 8:15, 8:19, 8:21, 9:22, 9:24, 10:2, 10:4, 10:6, 10:8, 10:13, 10:22, 11:23, 12:5, 15:2, 15:20, 16:11, 17:3, 17:6, 17:8, 17:11, 17:13, 17:16, 18:1, 18:5, 18:12, 18:15, 18:19, 19:2, 19:6, 19:13, 19:18, 19:25, 20:4, 21:14, 21:18, 21:20, 21:22, 22:4, 22:11, 22:16, 22:21, 22:25, 23:19, 23:22, 26:1, 26:13, 26:17, 32:16, 32:22, 32:24, 33:1, 33:3, 33:9, 33:15, 33:17, 33:20, 33:23, 34:14, 34:21, 35:4, 37:9, 37:20, 37:25, 38:4, 38:7, 38:12, 38:17, 38:25, 39:3, 39:7, 39:11, 39:14, 39:24, 40:1, 40:4, 40:6, 40:12, 40:16, 40:23, 41:8, 41:22, 41:24, 42:3, 42:6, 42:9, 42:16, 42:23, 43:1, 43:3,
43:5, 43:7, 43:18, 44:19, 44:21, 44:23, 44:25, 45:5, 45:18, 45:25, 46:2, 46:5, 46:12, 46:14, 46:24, 47:6, 47:11, 47:15, 47:17, 47:24, 48:24, 49:1, 49:6, 49:20, 49:23, 50:1, 50:10, 50:14, 50:16, 50:23, 51:4, 51:7, 51:10, 51:15, 51:22, 51:24, 52:5, 52:10, 52:18, 53:8, 53:14, 54:19, 55:15, 56:2, 56:6, 56:8, 56:13, 56:16, 56:22, 57:2, 57:6, 57:17, 58:14, 58:18, 58:22, 58:25, 59:4, 59:7, 59:10, 59:12, 59:17, 59:22, 59:24, 60:8, 60:15, 60:17, 60:19, 60:22, 60:24, 65:23, 66:13, 66:20, 67:3, 67:8, 67:18, 67:22, 67:25, 68:6, 68:10, 68:12, 68:16, 68:9, 69:7, 69:16, 69:20, 70:7, 70:11, 70:18, 70:20, 70:22, 70:24, 71:13, 74:1, 74:3, 74:5, 74:7, 74:9, 75:24, 76:7
**Court's** [3] - 36:18, 37:16, 49:5
**courtesy** [3] - 10:25, 71:15, 73:4
**Courthouse** [1] - 1:9
**courtroom** [8] - 62:2, 66:17, 69:12, 70:3, 72:17, 73:11, 73:12, 74:9
**COURTROOM** [3] - 4:9, 70:5, 70:9
**cover** [2] - 43:11, 45:17
**covered** [1] - 43:15
**CRC** [1] - 76:12
**create** [1] - 53:12
**Creegan** [3] - 9:16, 70:13, 71:23
**criteria** [2] - 53:6, 53:11
**cross** [3] - 31:21, 31:23, 33:4
**cross-motion** [1] - 33:4
**cross-motions** [2] - 31:21, 31:23
**crossed** [1] - 31:5

**CRR** [1] - 76:12
**culled** [6] - 9:11, 11:3, 12:17, 13:3, 14:12, 14:25
**Cumming** [14] - 5:6, 18:5, 19:7, 34:15, 34:23, 37:9, 46:2, 46:15, 49:8, 50:11, 56:2, 56:15, 56:22, 70:20
**CUMMING** [30] - 2:4, 5:7, 5:9, 10:7, 18:10, 18:13, 18:18, 19:11, 19:16, 21:21, 33:19, 33:22, 33:24, 34:16, 37:11, 37:19, 46:3, 46:6, 46:13, 49:2, 50:13, 56:3, 56:7, 56:9, 58:17, 67:2, 67:4, 70:21, 74:4, 75:22
**Cumming's** [1] - 18:2
**Cummings** [2] - 10:6, 33:17
**cumulative** [2] - 36:7, 58:2
**curiosity** [1] - 67:22
**Cynthia** [1] - 6:5
**CYNTHIA** [1] - 3:18

# D

**D.C** [2] - 2:13, 67:5
**data** [1] - 46:9
**date** [11] - 11:25, 14:4, 14:6, 14:7, 14:9, 16:23, 17:11, 17:13, 19:12, 19:23, 21:13
**Date** [1] - 76:12
**dated** [8] - 11:9, 12:20, 12:21, 13:7, 13:10, 13:22, 14:21, 15:3
**DAVID** [1] - 3:22
**days** [3] - 60:5, 65:7
**DC** [1] - 2:5
**de** [1] - 13:13
**deal** [6] - 13:20, 21:5, 24:8, 24:9, 28:13, 48:4
**dealing** [1] - 52:7
**deals** [2] - 14:22, 22:13
**dealt** [1] - 14:4
**debrief** [1] - 62:4
**decide** [3] - 20:25, 32:2, 39:19
**decided** [3] - 20:18, 41:5, 47:1
**decides** [1] - 73:16

**deciding** [1] - 29:15
**decision** [14] - 17:2, 20:16, 26:24, 28:7, 30:21, 31:2, 32:19, 42:22, 47:8, 48:22, 51:8, 51:19, 52:14, 54:22
**decision-making** [5] - 28:7, 30:21, 47:8, 51:8, 54:22
**decisions** [2] - 23:9, 27:6
**deep** [1] - 33:20
**Defendant** [2] - 1:8, 2:17
**defendant** [17] - 10:6, 10:19, 21:22, 24:12, 24:13, 34:12, 38:21, 38:22, 48:21, 50:4, 57:14, 58:3, 58:4, 68:23, 74:7
**defendant's** [5] - 5:23, 57:21, 63:16
**Defendants** [3] - 2:6, 2:9, 2:13
**defendants** [5] - 21:20, 24:12, 31:20, 34:11, 49:25
**defended** [1] - 48:22
**defending** [1] - 36:9
**defense** [2] - 28:9, 31:24
**Defense** [3] - 3:17, 3:20
**defer** [1] - 34:9
**define** [1] - 35:25
**defining** [1] - 36:1
**definitely** [1] - 51:6
**degree** [6] - 21:24, 22:16, 24:1, 24:4, 25:7, 30:14
**delighted** [1] - 69:6
**demonstrative** [1] - 69:20
**denominated** [1] - 16:17
**dense** [2] - 23:3, 23:12
**depart** [1] - 30:19
**departed** [1] - 30:19
**DEPARTMENT** [1] - 1:6
**Department** [1] - 4:11
**deputy** [1] - 36:10
**DEPUTY** [3] - 4:9, 70:5, 70:9
**describe** [1] - 26:10
**described** [1] - 61:22
**desk** [1] - 10:15
**desks** [1] - 10:15
**dessert** [1] - 68:3

**detail** [1] - 63:7
**determination** [2] - 19:3, 31:5
**determine** [1] - 72:16
**detract** [2] - 28:3, 28:12
**dialectically** [1] - 73:1
**DiBella** [2] - 1:22, 76:12
**difference** [1] - 45:23
**different** [13] - 8:24, 8:25, 20:5, 29:12, 35:14, 52:13, 53:6, 53:11, 55:13, 55:20, 56:10, 73:8
**dignity** [1] - 73:4
**dinner** [5] - 6:17, 65:18, 67:23, 67:24, 75:4
**directly** [1] - 65:22
**disagree** [2] - 37:11, 52:10
**discernible** [3] - 30:24, 31:1, 31:7
**discipline** [1] - 72:25
**disclose** [1] - 24:3
**disclosure** [1] - 71:4
**discreet** [2] - 55:21, 56:11, 59:12
**discuss** [3] - 16:13, 37:6, 53:22
**discussing** [3] - 10:10, 52:3, 63:6
**discussion** [2] - 40:25, 62:16, 63:5
**displayed** [1] - 69:10
**displays** [1] - 69:13
**distance** [1] - 26:16
**distinct** [2] - 34:5, 34:6
**distinguished** [1] - 30:20
**distinguishes** [1] - 52:20
**distraction** [1] - 73:15
**distress** [1] - 66:16
**distributed** [1] - 68:20
**distributions** [1] - 50:6
**District** [1] - 4:2
**DISTRICT** [2] - 1:1, 1:1
**diverted** [2] - 20:17, 73:23
**document** [14] - 11:9, 11:24, 11:25, 12:1, 12:6, 12:11, 12:17, 12:20, 13:10, 14:6, 15:3, 15:8, 69:23
**documents** [7] - 9:11, 9:19, 11:14, 12:9,

15:25, 49:9, 65:6
**DOJ** [3] - 2:3, 2:11, 48:14
**DOJ-ENRD** [2] - 2:3, 2:11
**done** [13] - 17:6, 19:8, 19:15, 30:1, 45:14, 54:24, 56:1, 62:7, 62:21, 64:12, 64:16, 67:20, 75:14
**door** [1] - 66:5
**DOT** [1] - 12:14
**dots** [2] - 30:25
**dotted** [1] - 31:5
**double** [1] - 41:4
**double-edged** [1] - 41:4
**doubt** [1] - 27:17
**down** [14] - 7:23, 10:23, 11:19, 20:3, 26:3, 26:20, 34:1, 34:7, 34:13, 36:6, 37:22, 38:15, 57:24, 66:6
**Dr** [1] - 13:13
**draft** [2] - 12:24, 18:24
**drawers** [1] - 10:15
**drawing** [1] - 31:2
**drink** [1] - 25:18
**drive** [1] - 70:8
**due** [3] - 8:7, 8:9, 42:11
**during** [1] - 73:22
**Dutchess** [1] - 11:11

**E**

**e-mail** [6] - 9:16, 12:13, 14:20, 14:23, 15:21, 21:25
**EA** [5] - 12:24, 13:2, 15:6, 15:7, 29:17
**eager** [3] - 20:13, 20:18, 21:6
**earliest** [1] - 19:23
**early** [2] - 19:8, 67:7
**earnest** [1] - 20:23
**ears** [2] - 7:17, 28:17
**earth** [1] - 75:6
**easel** [1] - 16:11
**easier** [1] - 74:20
**Easter** [1] - 75:25
**easy** [2] - 55:4, 65:23
**eat** [4] - 61:2, 61:23, 68:3, 76:1
**Ecopoetry.org** [1] - 3:8
**edged** [1] - 41:4
**educate** [4] - 22:17, 22:24, 52:15, 60:22

**educated** [2] - 16:6, 52:16
**education** [2] - 23:1, 35:3
**effect** [2] - 36:7, 58:3
**effective** [1] - 35:2
**effects** [1] - 12:16
**effort** [1] - 75:11
**egos** [2] - 9:3, 9:4
**eight** [1] - 62:1
**Eisenhower** [1] - 1:19
**either** [6] - 9:14, 15:18, 15:19, 38:21, 40:19, 71:23
**EJ** [1] - 46:17
**elements** [2] - 41:3, 43:20
**elongate** [1] - 66:3
**embarrass** [1] - 72:15
**emergency** [2] - 20:12, 21:5
**eminence** [1] - 26:15
**Employees** [1] - 3:6
**Empower** [1] - 3:6
**enclosed** [1] - 12:24
**end** [14] - 17:10, 17:12, 18:9, 36:8, 41:7, 43:13, 45:15, 61:25, 62:9, 68:10, 71:8, 75:11, 75:13, 75:17
**engage** [1] - 31:15
**enlighten** [1] - 18:6
**ENRD** [2] - 2:3, 2:11
**ensure** [1] - 66:22
**entertain** [1] - 20:12
**entities** [1] - 73:20
**entitled** [1] - 76:10
**Environment** [1] - 3:12
**environment** [1] - 45:23
**environmental** [33] - 32:21, 43:15, 43:24, 44:7, 44:15, 44:17, 45:4, 46:7, 46:8, 52:20, 53:4, 53:10, 53:15, 53:17, 53:20, 54:1, 54:10, 54:12, 54:13, 54:15, 54:17, 54:20, 54:23, 55:2, 55:3, 55:12, 55:16, 56:4, 62:20, 62:24, 63:2, 63:7, 63:11
**Environmental** [4] - 3:12, 3:13, 3:17, 3:20
**EPA** [1] - 12:14
**equal** [6] - 24:19, 24:22, 35:24, 36:5,

48:15, 50:5
**equally** [1] - 68:20
**equation** [2] - 33:6, 58:10
**equitable** [1] - 47:18
**eraser** [1] - 10:16
**error** [2] - 10:11, 30:15
**ESQ** [9] - 2:4, 2:8, 2:12, 2:15, 2:16, 3:4, 3:15, 3:18, 3:22
**ESQUIRE** [3] - 1:15, 1:16, 1:19
**estimate** [2] - 17:25, 19:19
**estimated** [1] - 17:2
**ESTIS** [1] - 3:18
**et** [4] - 1:3, 1:7, 4:10, 4:11
**etc** [6] - 9:1, 11:12, 17:25, 30:13, 61:23, 73:8
**evaluation** [1] - 24:20
**evaluations** [1] - 19:4
**evening** [1] - 65:19
**event** [2] - 10:11, 41:13
**events** [1] - 16:17
**evidence** [9] - 26:23, 26:25, 27:4, 27:8, 27:17, 28:2, 29:19, 29:24, 50:24
**ex** [1] - 16:3
**exactly** [5] - 17:15, 18:4, 30:15, 38:11, 38:14
**Exactly** [1] - 38:6
**example** [3] - 27:25, 46:21, 53:10
**exceeded** [1] - 9:13
**except** [2] - 22:12, 62:11
**exception** [1] - 43:12
**excerpts** [1] - 15:16
**executive** [1] - 44:14
**exist** [1] - 36:25
**exists** [1] - 13:18
**expect** [1] - 25:21
**expectation** [1] - 22:7
**expectations** [1] - 49:7
**experience** [4] - 24:18, 26:2, 26:18, 52:6
**experienced** [2] - 73:5, 73:8
**explain** [1] - 45:24
**explained** [1] - 53:19
**explaining** [3] - 33:14, 45:4, 45:7
**explanation** [3] - 23:9,

29:18, 53:3
**extended** [1] - 48:9
**extent** [3] - 34:17, 37:12, 49:2

**F**

**face** [1] - 66:16
**facility** [1] - 14:11
**fact** [13] - 15:5, 16:18, 22:11, 28:10, 29:13, 30:3, 40:17, 50:6, 51:2, 53:21, 54:2, 54:21, 54:24
**fact-finding** [1] - 30:3
**factor** [1] - 52:21
**facts** [5] - 28:2, 28:11, 45:5, 45:6, 51:1
**fair** [2] - 21:3, 47:18
**fairly** [2] - 34:6, 46:9
**faith** [1] - 24:20
**Faith** [1] - 3:7
**fall** [1] - 59:18
**falls** [1] - 42:13
**families** [1] - 9:4
**family** [1] - 75:3
**Family** [1] - 3:13
**far** [2] - 18:14, 32:6
**fashion** [1] - 37:2
**faster** [2] - 21:9, 66:11
**fatigue** [1] - 62:8
**favor** [1] - 27:22
**fear** [1] - 47:19
**February/early** [1] - 16:23
**FEDERAL** [1] - 76:7
**Federal** [12] - 1:9, 11:10, 12:22, 13:3, 15:4, 15:21, 17:17, 17:24, 18:16, 18:21, 28:1, 48:14
**feed** [1] - 9:4
**feet** [2] - 35:7, 36:16
**few** [4] - 16:16, 24:7, 33:20, 62:25
**FHWA** [2] - 19:3, 19:13
**FHWA's** [1] - 44:7
**Fifteen** [4] - 56:21, 57:2, 58:23, 59:7
**fifth** [1] - 30:21
**figure** [13] - 12:8, 30:5, 31:22, 33:5, 53:17, 57:23, 59:25, 60:3, 62:4, 67:20, 68:19, 74:23, 75:16
**figured** [1] - 27:2
**figuring** [1] - 26:11
**filed** [1] - 9:10
**final** [7] - 15:6, 31:4,

32:18, 32:21, 41:6, 45:10, 71:11
**finalize** [1] - 48:6
**finalizing** [1] - 32:20
**finally** [1] - 41:5
**findings** [5] - 26:24, 27:25, 28:12, 50:25, 51:2
**fine** [9] - 8:19, 42:23, 43:19, 45:5, 48:1, 49:14, 56:21, 57:11, 72:19
**finish** [3] - 19:13, 64:7, 65:7
**finished** [2] - 17:5, 64:17
**finishes** [1] - 18:8
**firm** [1] - 72:25
**first** [12] - 7:11, 9:8, 14:13, 26:22, 29:23, 31:23, 31:25, 33:11, 35:12, 48:11, 64:2, 69:17
**fits** [1] - 33:5
**five** [19] - 14:17, 26:20, 31:17, 42:13, 42:19, 43:20, 49:18, 49:22, 50:9, 50:11, 52:17, 57:7, 57:10, 58:6, 58:12, 58:16, 59:14, 63:9, 75:13
**flash** [1] - 70:8
**flashing** [2] - 66:6, 67:13
**flexibility** [2] - 61:2, 61:13
**flip** [1] - 20:13
**flipping** [3] - 19:21, 20:9, 20:24
**Floor** [4] - 2:12, 2:16, 3:19, 3:22
**flow** [4] - 54:21, 54:23, 55:5, 55:14
**focus** [4] - 12:25, 25:5, 52:22, 63:17
**focused** [4] - 37:14, 54:4, 72:3, 73:13
**focusing** [1] - 36:25
**folks** [10] - 7:12, 8:25, 30:22, 38:18, 60:1, 60:24, 65:23, 66:20, 67:5, 71:13
**follow** [3] - 11:23, 24:24, 30:18
**following** [6] - 9:3, 13:19, 14:20, 39:5, 44:12, 52:25
**FONSI** [3] - 29:17, 32:18, 32:21
**food** [1] - 8:21

**FOR** [1] - 1:1
**foregoing** [1] - 76:9
**forget** [1] - 73:17
**forgive** [1] - 13:8
**form** [2] - 11:20, 72:7
**formula** [1] - 27:9
**formulation** [1] - 52:11
**forward** [3] - 25:22, 63:6, 74:16
**foul** [1] - 45:1
**four** [2] - 14:17, 54:16
**fourth** [1] - 30:17
**frame** [2] - 17:20, 31:10
**frames** [1] - 36:24, 37:3
**framework** [2] - 52:13, 62:16
**Francesca** [2] - 1:22, 76:12
**francesca_dibella@ njd.uscourts.gov** [1] - 1:23
**Frank** [1] - 1:9
**FRANKEL** [1] - 3:15
**free** [2] - 28:19, 31:14
**Friday** [5] - 45:5, 64:9, 64:14, 66:2, 75:25
**Friends** [1] - 3:11
**front** [6] - 7:23, 24:2, 42:15, 51:16, 52:3, 72:2
**fruitful** [1] - 71:14
**fulfill** [1] - 49:7
**full** [4] - 7:6, 30:9, 49:14, 65:7
**fully** [3] - 21:7, 72:20, 74:16
**fun** [1] - 7:1
**Fund** [3] - 3:9, 3:17, 3:20

### G

**gallery** [2] - 7:21, 72:10
**game** [1] - 29:2
**Gang** [1] - 45:5
**Gas** [1] - 3:8
**gee** [1] - 31:8
**general** [2] - 62:19
**generally** [1] - 26:19
**generations** [1] - 73:9
**generous** [2] - 41:24, 64:20
**genie** [1] - 66:13
**gentlemen** [1] - 16:7
**germane** [1] - 15:16
**given** [7] - 16:8, 20:6,

24:7, 36:24, 54:22, 60:24, 63:21
**GORDON** [2] - 1:12, 4:2
**Gordon** [2] - 27:3, 29:20
**Gottheimer** [1] - 14:2
**Government** [1] - 5:10
**government** [2] - 36:10, 74:3
**Governor** [1] - 15:23
**graduate** [2] - 68:17
**grant** [1] - 53:23
**granted** [1] - 39:10
**great** [3] - 25:10, 38:13, 39:19
**greater** [1] - 63:7
**greatly** [2] - 25:1, 71:17
**green** [1] - 74:24
**Green** [1] - 3:10
**GREGORY** [1] - 2:4
**grey** [1] - 26:15
**gritty** [1] - 65:4
**guess** [1] - 11:14

### H

**Hackensack** [2] - 3:9, 3:23
**half** [8] - 23:16, 25:2, 25:15, 38:16, 44:3, 49:13, 64:17, 71:7
**hammering** [1] - 58:3
**hand** [3] - 45:2, 68:25, 69:7
**handful** [1] - 37:23
**handheld** [1] - 72:4
**happy** [10] - 22:22, 33:23, 34:9, 48:4, 49:15, 52:15, 57:21, 58:5, 63:25, 67:6
**hard** [1] - 23:8
**harmless** [1] - 30:14
**head** [1] - 46:25
**headache** [2] - 65:13, 65:15
**heads** [2] - 25:7, 25:10
**heads-up** [2] - 25:7, 25:10
**Health** [1] - 3:6
**hear** [3] - 32:1, 56:25, 64:6
**heard** [2] - 9:5, 47:21
**hearing** [8] - 13:23, 13:24, 14:2, 14:4, 14:7, 14:10, 16:22, 30:12
**hearings** [4] - 16:23, 17:1, 17:4, 17:5

**heaven** [1] - 75:6
**heavy** [1] - 46:9
**held** [1] - 4:1
**helicopter** [1] - 66:6
**help** [12] - 11:7, 31:22, 33:6, 35:24, 36:1, 37:1, 38:3, 42:9, 69:7, 75:1
**helpful** [6] - 9:7, 34:8, 37:16, 46:6, 46:10, 49:3
**high** [1] - 58:12
**highest** [2] - 65:15, 66:16
**Highway** [10] - 11:10, 12:22, 13:4, 15:4, 15:21, 17:18, 18:16, 18:21, 28:1, 48:15
**Hoboken** [1] - 3:13
**hold** [1] - 30:12
**holiday** [2] - 75:25, 76:3
**Honor** [130] - 4:5, 4:14, 5:3, 5:7, 5:14, 5:21, 5:25, 6:12, 7:24, 8:11, 9:21, 9:23, 10:7, 10:20, 10:21, 18:11, 19:11, 19:16, 21:11, 21:17, 21:19, 21:21, 22:3, 22:10, 22:15, 22:20, 23:2, 23:6, 23:14, 23:16, 25:21, 26:6, 26:14, 32:10, 32:18, 32:25, 33:8, 33:24, 34:3, 34:16, 34:23, 35:6, 35:8, 35:24, 36:7, 36:22, 36:23, 37:5, 37:8, 37:11, 39:4, 39:12, 39:25, 40:2, 40:5, 40:9, 40:10, 41:3, 42:5, 42:14, 42:18, 42:25, 43:6, 43:22, 44:5, 44:9, 45:8, 45:12, 46:1, 46:16, 47:10, 47:16, 48:23, 48:25, 49:2, 49:9, 49:19, 49:21, 50:8, 50:13, 51:3, 51:6, 51:9, 51:11, 51:17, 52:9, 52:16, 52:24, 53:2, 54:15, 55:9, 55:21, 57:1, 57:10, 58:11, 58:20, 58:23, 59:2, 59:9, 59:16, 59:21, 60:6, 60:14, 65:14, 66:9, 66:15, 67:2, 67:4, 67:21, 67:24, 68:5, 68:9, 69:2,

69:9, 69:14, 69:19, 70:16, 70:19, 70:23, 73:25, 74:2, 74:4, 74:6, 74:8, 75:20, 75:21, 75:22, 75:23
**Honor's** [6] - 8:1, 32:12, 35:19, 36:17, 43:17, 57:11
**HONORABLE** [1] - 1:12
**Honorable** [1] - 4:1
**honored** [1] - 45:11
**hope** [4] - 27:15, 49:22, 60:8, 71:6
**hopeful** [1] - 7:17
**hopefully** [4] - 18:9, 36:1, 64:7, 75:15
**hoping** [5] - 7:6, 11:5, 23:16, 61:7, 64:18
**horse** [1] - 35:17
**hosting** [1] - 6:17
**hot** [1] - 12:15
**hotel** [1] - 67:11
**hour** [8] - 23:16, 25:2, 34:25, 38:16, 44:3, 64:17, 68:4, 71:7
**hours** [12] - 23:18, 23:23, 23:24, 25:14, 25:15, 34:2, 61:7, 62:2, 68:19
**Howard** [4] - 5:9, 18:5, 59:5, 70:20
**HOWARD** [6] - 2:12, 58:23, 59:2, 59:6, 59:9, 59:16
**Hudson** [1] - 3:7
**human** [1] - 10:16

### I

**ICG** [1] - 12:16
**illustrative** [1] - 15:4
**impact** [5] - 15:24, 32:21, 33:13
**impacts** [2] - 12:25, 19:4, 55:12
**implementation** [1] - 32:20
**importance** [4] - 26:23, 35:24, 54:1, 54:5
**important** [7] - 14:16, 25:24, 54:2, 65:18, 66:1, 73:16, 73:23
**impose** [1] - 66:22
**in-person** [1] - 4:9
**inadequacy** [1] - 55:1
**inadvertence** [1] - 14:18
**inadvertent** [1] - 10:11

**inadvertently** [2] - 9:14, 12:10
**inappropriate** [1] - 73:21
**Inc** [3] - 3:8, 3:9, 3:11
**incident** [1] - 73:19
**incidents** [1] - 72:20
**include** [2] - 68:14, 68:21
**included** [3] - 12:10, 15:11, 45:8
**includes** [2] - 31:2, 48:12
**including** [3] - 43:24, 62:2, 71:10
**incoming** [1] - 13:2
**inconvenience** [1] - 66:18
**incorrectly** [1] - 30:1
**indeed** [1] - 44:14
**indicated** [2] - 17:19, 17:23
**individual** [1] - 35:1
**indulgence** [1] - 71:1
**inexplicable** [1] - 23:9
**inferences** [1] - 31:2
**inform** [1] - 21:12
**information** [2] - 17:25, 69:20
**inquiries** [1] - 37:16
**inquiry** [1] - 56:10
**inside** [1] - 73:12
**Instagram** [1] - 72:21
**instances** [1] - 14:18
**instead** [1] - 54:11
**integrate** [1] - 63:3
**intend** [3] - 26:9, 37:1, 52:16
**intent** [1] - 20:23
**intention** [1] - 74:21
**interesting** [2] - 8:24, 29:21
**INTERN** [1] - 16:10
**intern** [1] - 7:22
**INTERNATIONAL** [1] - 1:12
**interpretation** [3] - 29:20, 29:25, 30:8
**interrelate** [2] - 62:19
**interrelated** [1] - 63:24
**intertwined** [1] - 51:20
**Intervenor** [5] - 2:17, 21:22, 34:12, 38:22, 50:4
**intervenor** [3] - 24:12, 48:21, 58:4
**Intervenors** [4] - 10:19, 68:23, 74:1, 74:7

**introducing** [2] - 14:7, 14:10
**introduction** [1] - 62:14
**invitation** [1] - 6:19
**involve** [2] - 13:19, 43:16
**involved** [1] - 14:2
**involves** [1] - 43:21
**involving** [1] - 7:25
**irrationality** [1] - 44:16
**Irving** [1] - 39:5
**Isles** [1] - 3:8
**issue** [38] - 8:3, 20:8, 20:9, 20:23, 22:13, 24:9, 24:18, 24:19, 24:25, 25:3, 30:13, 31:21, 34:3, 35:10, 40:14, 41:13, 41:23, 43:23, 44:16, 46:3, 48:2, 48:4, 48:20, 49:19, 52:4, 52:20, 52:21, 53:4, 53:5, 53:17, 55:22, 57:2, 59:13, 61:22, 61:23, 71:22, 74:21
**issues** [47] - 8:4, 10:20, 22:8, 23:3, 23:6, 23:18, 24:9, 24:23, 24:25, 29:22, 30:11, 31:14, 34:10, 35:9, 35:11, 35:13, 35:14, 35:18, 36:3, 36:5, 36:19, 37:1, 37:23, 38:2, 42:21, 43:11, 43:14, 43:22, 43:23, 46:11, 47:18, 50:20, 51:12, 52:18, 52:19, 53:1, 53:21, 54:6, 54:16, 54:18, 59:17, 62:11, 62:17, 62:20, 62:23, 63:5, 63:12
**item** [3] - 11:3, 12:13, 13:7
**items** [3] - 12:24, 14:13, 69:11
**itself** [1] - 64:23

## J

**JC** [1] - 3:9
**JERSEY** [2] - 1:1, 1:3
**Jersey** [29] - 1:10, 1:20, 2:9, 3:5, 3:6, 3:10, 3:12, 3:12, 3:13, 3:23, 4:10, 12:7, 14:4, 14:8, 14:10, 15:24, 43:12, 45:10, 48:8, 56:19,

57:3, 57:9, 62:12, 63:21, 63:23, 66:7, 72:11
**Jersey's** [1] - 15:23
**job** [5] - 20:13, 20:14, 28:14, 66:4, 74:17
**Joe** [1] - 45:5
**JOHN** [2] - 3:4, 3:4
**Judge** [10] - 1:12, 4:2, 4:19, 7:12, 8:3, 8:10, 8:13, 9:6, 27:3, 29:20
**judges** [1] - 8:25
**judgment** [3] - 31:21, 31:23, 33:5
**judgments** [1] - 9:3
**judicial** [1] - 7:22
**July** [2] - 12:21, 13:7
**juncture** [2] - 32:9, 50:19
**June** [5] - 12:23, 13:2, 19:15, 19:20, 74:25
**justice** [30] - 43:24, 44:8, 44:15, 44:17, 45:4, 45:23, 46:7, 52:20, 53:4, 53:10, 53:16, 53:18, 53:20, 54:1, 54:10, 54:12, 54:13, 54:15, 54:17, 54:21, 54:24, 55:2, 55:3, 55:16, 56:4, 62:21, 62:24, 63:2, 63:7, 63:11

## K

**Kind** [1] - 5:17
**kind** [11] - 6:19, 7:8, 9:1, 16:13, 23:3, 26:3, 33:11, 52:13, 62:15, 65:24, 75:9
**KING** [1] - 1:15
**Knauer** [2] - 60:9, 67:10
**knowledge** [1] - 9:17
**knows** [1] - 23:6
**KRAMER** [1] - 3:15
**kvetch** [1] - 58:7

## L

**label** [1] - 52:22
**ladies** [1] - 16:7
**laptop** [1] - 70:8
**large** [3] - 12:11, 14:24, 22:11
**largely** [1] - 40:8
**larger** [1] - 63:11
**last** [11] - 16:12, 16:13, 16:22, 17:23,

19:23, 22:12, 22:13, 36:22, 36:23, 64:3, 71:18
**lastly** [2] - 14:9, 15:20
**late** [4] - 16:23, 19:8, 19:11, 19:18
**latest** [1] - 16:24
**Lauren** [1] - 4:15
**LAUREN** [1] - 1:16
**Lautenberg** [1] - 1:9
**LAW** [5] - 3:4, 11:22, 12:4, 15:1, 15:13
**law** [19] - 7:22, 16:2, 23:12, 26:19, 26:20, 27:8, 29:3, 29:4, 29:12, 29:13, 36:12, 36:14, 42:20, 45:13, 51:13, 52:2, 52:7, 68:17, 75:4
**Law** [1] - 65:18
**lay** [1] - 23:11
**laying** [1] - 23:18
**lead** [3] - 24:25, 25:3, 39:16
**leads** [1] - 72:23
**lean** [1] - 63:6
**learned** [1] - 8:23
**learning** [1] - 23:1
**learns** [1] - 10:18
**least** [1] - 13:13
**leave** [1] - 71:18
**legal** [9] - 7:22, 29:20, 29:21, 29:25, 30:5, 30:7, 42:12, 45:12, 50:21
**legality** [2] - 36:21, 44:11
**Len** [4] - 11:20, 12:3, 14:25, 15:12
**length** [1] - 27:22
**lengthy** [1] - 49:3
**LEO** [2] - 1:12, 4:2
**less** [4] - 23:16, 25:21, 65:7, 66:3
**letter** [7] - 11:9, 12:1, 12:5, 12:22, 13:2, 15:4, 15:11
**LEVIN** [1] - 3:15
**Lexington** [1] - 2:16
**liberal** [1] - 64:20
**Liberty** [1] - 3:12
**light** [2] - 21:1, 74:24
**lights** [2] - 66:6, 67:13
**likelihood** [2] - 19:14, 50:12
**likely** [2] - 50:20, 64:22
**limit** [1] - 33:25
**limited** [1] - 37:2
**line** [6] - 16:12, 16:19,

18:13, 20:7, 34:7, 34:13
**lines** [4] - 20:10, 20:19, 20:22, 57:25
**list** [4] - 5:19, 6:6, 11:16, 14:24
**listen** [4] - 7:17, 52:12, 52:15, 63:25
**litigation** [3] - 8:23, 56:5
**litigators** [1] - 9:1
**live** [1] - 21:25
**LLC** [1] - 3:4
**LLP** [4] - 1:15, 1:16, 1:18, 3:15
**Lobby** [1] - 3:12
**local** [2] - 12:15, 72:11
**logical** [4] - 25:16, 52:6, 54:21, 55:6
**logically** [1] - 55:7
**London** [2] - 60:13, 60:18
**look** [15] - 18:23, 23:8, 25:22, 29:4, 29:14, 29:16, 29:17, 29:18, 29:23, 44:18, 65:12, 67:15, 69:5, 69:23, 74:16
**looking** [7] - 18:15, 27:18, 27:24, 31:4, 31:12, 57:18
**looks** [1] - 64:12
**lose** [1] - 40:20
**lost** [1] - 54:8
**loudly** [1] - 41:15
**lunch** [2] - 61:20, 64:1
**lunchtime** [1] - 63:22
**ly** [1] - 75:14

## M

**magical** [1] - 20:10
**magnificent** [1] - 65:24
**mail** [6] - 9:16, 12:13, 14:20, 14:23, 15:21, 21:25
**main** [3] - 43:15, 43:21, 44:2
**major** [2] - 37:23, 43:11
**majority** [1] - 22:11
**man** [1] - 66:25
**managed** [1] - 13:13
**managing** [1] - 72:24
**manipulated** [1] - 55:24
**manner** [3] - 26:9, 62:20, 74:21
**map** [4] - 28:15, 29:8,

35:23, 60:3
**marathon** [1] - 57:24
**March** [7] - 1:10, 16:23, 16:24, 17:12, 17:13, 18:9, 41:7
**MARK** [1] - 2:15
**marries** [1] - 54:10
**MARTIN** [1] - 2:4
**massive** [2] - 65:12, 65:14
**MASTRO** [94] - 1:15, 4:6, 4:14, 7:24, 8:8, 9:21, 9:23, 21:17, 22:3, 22:10, 22:15, 22:20, 22:23, 23:2, 23:21, 25:21, 26:6, 26:14, 32:10, 32:17, 32:23, 32:25, 33:2, 33:8, 33:10, 33:16, 35:6, 39:25, 40:2, 40:5, 40:7, 40:13, 40:17, 41:2, 41:9, 41:23, 42:2, 42:5, 42:7, 42:14, 42:18, 42:24, 43:2, 43:4, 43:6, 43:10, 43:20, 44:20, 44:22, 44:24, 45:3, 45:7, 45:20, 46:1, 49:19, 49:21, 49:24, 50:8, 50:22, 51:3, 51:6, 51:9, 51:11, 51:17, 51:23, 51:25, 52:9, 52:16, 52:24, 53:13, 54:14, 55:6, 55:16, 56:21, 57:10, 58:11, 58:20, 59:20, 59:23, 60:6, 65:14, 66:9, 66:15, 67:21, 67:24, 68:4, 69:2, 69:5, 69:9, 69:19, 70:16, 70:19, 73:25, 75:20
**Mastro** [34] - 4:12, 22:6, 23:19, 25:20, 26:1, 32:8, 32:22, 34:1, 34:9, 35:5, 37:12, 40:4, 43:7, 44:19, 46:25, 47:25, 49:17, 50:17, 51:10, 56:9, 56:20, 57:17, 58:18, 59:13, 62:14, 63:25, 65:12, 67:22, 69:1, 69:8, 69:17, 70:11, 70:18, 73:24
**MATEEN** [4] - 3:22, 5:3, 10:5, 39:1
**Mateen** [3] - 5:2, 10:4, 38:25
**material** [1] - 21:12
**materials** [1] - 69:10

**mathematics** [1] - 68:22
**MATLOFF** [13] - 1:19, 4:19, 4:22, 4:25, 10:1, 10:3, 21:19, 38:23, 68:9, 68:11, 68:13, 74:2, 75:21
**Matloff** [3] - 4:20, 4:21, 9:25
**matter** [5] - 21:15, 41:18, 45:13, 52:21, 76:10
**matzoh** [1] - 76:1
**mayor** [1] - 36:10
**MDL** [1] - 8:23
**Meadowlands** [1] - 3:8
**mean** [6] - 29:6, 29:7, 30:3, 30:9, 49:19
**meaning** [2] - 29:16, 30:7
**means** [12] - 27:18, 29:4, 29:13, 29:15, 29:22, 30:1, 30:2, 40:6, 40:19, 46:22, 60:4, 67:25
**meant** [1] - 31:9
**mechanical** [1] - 1:24
**media** [4] - 72:12, 73:17, 74:10, 74:11
**mediators** [1] - 8:25
**meet** [2] - 8:10, 28:1
**meeting** [15] - 12:17, 13:11, 13:14, 13:16, 13:18, 14:21, 16:12, 16:14, 16:22, 17:9, 40:8, 65:20, 75:4
**meets** [2] - 63:14, 63:16
**memo** [1] - 65:10
**mention** [1] - 52:3
**mentioned** [4] - 52:1, 52:5, 59:20, 59:21
**mere** [1] - 27:6
**merits** [2] - 53:1, 53:2
**mesh** [1] - 8:22
**messages** [2] - 25:18, 72:19
**met** [1] - 7:12
**methodology** [1] - 12:15
**Metropolitan** [1] - 2:18
**MEYERS** [2] - 4:5, 4:17
**Meyers** [3] - 4:15, 4:16, 69:3
**mice** [1] - 7:23
**mid** [3] - 19:8, 19:14, 19:15

**mid-June** [1] - 19:15
**middish** [1] - 19:14
**might** [11] - 4:18, 7:16, 24:5, 25:19, 34:7, 39:17, 61:21, 63:6, 66:7, 71:25, 72:13
**mind** [4] - 9:6, 40:9, 42:10, 71:3
**minded** [1] - 52:12
**minus** [1] - 54:12
**minute** [2] - 39:15, 53:9
**minutes** [46] - 24:7, 38:24, 39:2, 39:10, 39:12, 41:21, 41:25, 42:4, 45:15, 45:21, 46:21, 47:1, 48:8, 48:10, 48:11, 48:15, 48:18, 49:13, 49:14, 49:18, 49:22, 50:3, 50:9, 56:18, 56:20, 56:21, 57:2, 57:10, 58:4, 58:6, 58:9, 58:12, 58:16, 58:21, 58:23, 59:7, 59:11, 59:14, 60:1, 60:3, 60:5, 62:25, 63:9, 71:6, 75:13
**miss** [4] - 4:23, 65:20, 65:21, 68:4
**missing** [1] - 15:1
**mistakes** [1] - 10:17
**mitigation** [12] - 13:1, 14:22, 43:23, 54:16, 54:17, 54:19, 54:25, 55:5, 55:9, 55:10, 55:13, 63:10
**model** [1] - 74:14
**modest** [2] - 61:1, 61:13
**moment** [4] - 20:2, 42:17, 50:18, 73:10
**moments** [1] - 16:16
**Monday** [1] - 11:24, 61:6, 66:3, 75:15
**monoxide** [1] - 11:13
**Montclair** [1] - 3:5
**month** [2] - 17:10, 76:1
**morning** [23] - 4:4, 4:5, 4:6, 4:16, 4:17, 4:19, 4:21, 5:7, 5:8, 5:11, 5:14, 5:25, 6:1, 6:12, 9:8, 61:24, 63:20, 64:10, 64:14, 65:20, 66:21, 66:24
**most** [4] - 10:14, 25:24, 50:13, 60:10
**motion** [2] - 9:15, 33:4
**motions** [2] - 31:21,

31:23
**move** [9] - 10:18, 21:9, 28:24, 29:2, 37:14, 56:19, 66:4, 67:7, 75:6
**moving** [2] - 28:23, 58:15
**MR** [187] - 4:6, 4:14, 5:3, 5:7, 5:9, 5:14, 5:17, 5:25, 6:3, 6:5, 6:7, 6:10, 6:14, 6:23, 7:2, 7:24, 8:8, 8:11, 8:13, 8:17, 8:20, 9:21, 9:23, 10:5, 10:7, 10:9, 10:20, 10:21, 17:1, 17:5, 17:7, 17:9, 17:12, 17:15, 17:22, 18:4, 18:10, 18:13, 18:18, 18:25, 19:3, 19:11, 19:16, 19:22, 20:3, 21:11, 21:17, 21:21, 22:3, 22:10, 22:15, 22:20, 22:23, 23:2, 23:21, 25:21, 26:6, 26:14, 32:10, 32:17, 32:23, 32:25, 33:2, 33:8, 33:10, 33:16, 33:19, 33:22, 33:24, 34:16, 34:22, 35:6, 37:11, 37:19, 37:21, 38:1, 38:6, 38:11, 38:14, 39:1, 39:4, 39:8, 39:12, 39:25, 40:2, 40:5, 40:7, 40:13, 40:17, 41:2, 41:9, 41:23, 42:2, 42:5, 42:7, 42:14, 42:18, 42:24, 43:2, 43:4, 43:6, 43:10, 43:20, 44:20, 44:22, 44:24, 45:3, 45:7, 45:20, 46:1, 46:3, 46:6, 46:13, 46:16, 47:5, 47:10, 47:13, 47:16, 47:23, 48:23, 48:25, 49:2, 49:19, 49:21, 49:24, 50:8, 50:13, 50:15, 50:22, 51:3, 51:6, 51:9, 51:11, 51:17, 51:23, 51:25, 52:9, 52:16, 52:24, 53:13, 54:14, 55:6, 55:16, 56:3, 56:7, 56:9, 56:14, 56:21, 56:25, 57:4, 57:10, 58:11, 58:17, 58:20, 59:11, 59:20, 59:23, 60:6, 60:13, 60:16, 60:18, 60:20, 60:23, 65:14, 66:9,

66:15, 67:2, 67:4, 67:15, 67:21, 67:24, 68:4, 69:2, 69:5, 69:9, 69:19, 70:16, 70:19, 70:21, 70:23, 73:25, 74:4, 74:6, 74:8, 75:20, 75:22, 75:23
**MS** [23] - 4:5, 4:17, 4:19, 4:22, 4:25, 5:21, 6:9, 6:12, 6:15, 10:1, 10:3, 21:19, 38:23, 58:23, 59:2, 59:6, 59:9, 59:16, 68:9, 68:11, 68:13, 74:2, 75:21
**MTA** [6] - 5:13, 8:2, 12:14, 47:9, 57:5, 74:5
**MTA's** [2] - 47:7, 56:24
**much-ly** [1] - 75:14
**multiple** [1] - 19:7, 47:2
**Murphy** [1] - 15:24
**MYERS** [1] - 1:16

# N

**N.E** [2] - 2:5, 2:12
**NAFTALIS** [1] - 3:15
**Nagel** [4] - 4:20, 4:23, 38:23
**NAGEL** [1] - 1:18
**name** [2] - 5:18, 23:16
**namely** [1] - 29:22
**nation** [1] - 33:12
**NATURAL** [1] - 2:4
**necessarily** [3] - 24:21, 32:2, 54:6
**need** [34] - 16:6, 20:8, 20:14, 21:1, 22:17, 23:11, 26:8, 29:18, 32:6, 39:9, 41:11, 44:10, 48:21, 49:7, 49:21, 50:2, 50:9, 53:7, 57:8, 57:19, 57:25, 58:4, 58:9, 58:19, 59:18, 62:5, 64:16, 64:25, 68:5, 70:12, 71:1, 71:21, 72:3
**needed** [5] - 13:1, 16:20, 22:24, 60:12, 62:22
**needs** [7] - 23:1, 35:22, 53:18, 56:24, 60:10, 63:14, 63:16
**NEPA** [18] - 22:13, 24:8, 24:11, 32:12, 34:4, 34:5, 35:14,

66:15, 67:2, 67:4, 67:15, 67:21, 67:24, 68:4, 69:2, 69:5, 69:9, 69:19, 70:16, 70:19, 70:21, 70:23, 73:25, 74:4, 74:6, 74:8, 75:20, 75:22, 75:23
35:15, 36:5, 37:22, 40:10, 43:10, 43:14, 43:21, 45:17, 50:17, 62:11, 62:17
**NEPA-related** [2] - 24:8, 43:14
**never** [3] - 9:5, 33:12, 40:21
**NEW** [1] - 1:1, 1:3
**new** [1] - 6:7
**New** [43] - 1:10, 1:17, 1:20, 2:9, 2:17, 3:5, 3:6, 3:10, 3:12, 3:12, 3:13, 3:16, 3:19, 3:23, 4:10, 7:12, 11:11, 12:7, 14:4, 14:7, 14:10, 15:5, 15:23, 15:24, 43:12, 45:10, 48:7, 56:19, 57:2, 57:9, 61:14, 62:11, 63:20, 63:23, 66:6, 67:9, 72:11
**Newark** [7] - 1:10, 2:9, 3:10, 3:11, 67:6, 67:9, 67:11
**next** [13] - 11:3, 11:16, 12:21, 13:7, 17:17, 18:3, 18:19, 26:17, 34:13, 43:6, 45:9, 63:20, 74:23
**nice** [5] - 22:25, 32:3, 44:19, 59:12, 68:2
**night** [3] - 6:18, 67:6, 67:23
**Nina** [1] - 16:8
**nitty** [1] - 65:4
**nitty-gritty** [1] - 65:4
**NJ** [4] - 3:6, 3:8, 3:9, 3:11
**NJ-Rockland** [1] - 3:9
**nobody** [2] - 7:21, 7:23
**none** [2] - 37:4, 71:9
**nonsense** [1] - 73:23
**North** [1] - 3:8
**note** [1] - 71:23
**noted** [1] - 34:4
**notes** [2] - 11:19, 60:9
**nothing** [6] - 20:8, 25:21, 45:6, 70:21, 70:23, 74:14
**notice** [2] - 18:22, 30:13
**notified** [1] - 20:20
**noting** [1] - 50:6
**number** [21] - 11:4, 11:8, 11:25, 12:10, 12:13, 12:19, 13:7, 13:8, 13:9, 13:10, 13:24, 14:3, 14:9,

14:20, 14:21, 15:20, 26:3, 32:15, 32:17, 71:19
**NUMBER** [1] - 1:3
**numbers** [1] - 13:21
**NY** [1] - 6:17
**NYC** [1] - 13:12

**O**

**o'clock** [3] - 61:16, 61:21, 66:24
**Oakwood** [1] - 3:5
**objections** [1] - 71:9
**obvious** [2] - 12:7, 22:23
**obviously** [6] - 6:20, 11:14, 18:1, 19:6, 23:4, 69:25
**occur** [1] - 18:7
**occurs** [1] - 18:20
**OF** [4] - 1:1, 1:3, 1:6, 1:12
**offer** [1] - 56:10
**office** [3] - 25:18, 70:14, 72:19
**Office** [1] - 1:9
**OFFICE** [4] - 2:3, 2:7, 2:11, 3:21
**officers** [1] - 21:6, 73:3
**Official** [2] - 1:23, 76:12
**officials** [1] - 12:8
**often** [2] - 36:11, 52:17
**once** [1] - 17:17
**One** [1] - 3:22
**one** [39] - 7:20, 12:21, 14:13, 14:17, 15:2, 15:13, 17:3, 22:12, 31:13, 32:15, 35:16, 35:23, 36:22, 40:18, 41:9, 41:23, 42:13, 44:5, 45:1, 46:16, 47:4, 48:1, 50:6, 51:23, 57:24, 60:4, 60:25, 61:24, 63:12, 63:25, 64:24, 66:3, 68:13, 69:17, 70:25, 71:19, 73:19, 73:20, 75:25
**one's** [1] - 35:22
**open** [2] - 4:1, 52:12
**opened** [1] - 13:13
**opinion** [10] - 20:8, 20:9, 20:23, 20:25, 21:1, 33:25, 54:25, 74:18, 74:21, 74:22
**opinions** [2] - 27:19,

27:20
**opportunity** [10] - 20:14, 20:25, 23:17, 25:17, 56:23, 62:5, 63:1, 69:4, 69:5, 75:2
**opposed** [1] - 44:15
**oral** [16] - 7:9, 20:7, 20:14, 20:17, 21:16, 23:4, 24:3, 24:10, 25:4, 30:4, 33:6, 60:21, 69:9, 71:4, 73:22, 76:2
**order** [12] - 9:8, 9:14, 19:9, 24:24, 25:8, 26:10, 26:22, 34:9, 34:11, 44:14, 52:14, 64:16
**orderly** [1] - 37:2
**organize** [1] - 33:6
**organizing** [1] - 30:4
**ostensibly** [1] - 28:14
**otherwise** [1] - 67:13
**OTIS** [11] - 3:15, 6:3, 6:5, 6:7, 6:10, 6:14, 6:23, 7:2, 10:20, 39:4, 39:8
**Otis** [5] - 6:3, 6:4, 6:16, 39:3, 39:7
**ought** [1] - 52:14
**outcome** [3] - 21:2, 23:10, 28:14
**outline** [2] - 31:18, 61:4
**outlined** [2] - 26:4, 68:7
**outlines** [2] - 11:25, 15:15
**outside** [1] - 42:13
**overall** [3] - 33:25, 62:15, 62:23
**overlap** [9] - 36:12, 36:20, 44:10, 51:18, 52:25, 53:5, 53:10, 53:23, 54:17
**overlaps** [4] - 40:15, 45:8, 55:8, 55:22
**overnight** [1] - 67:9
**owner** [1] - 14:5
**owns** [1] - 10:17
**ozone** [1] - 11:13

**P**

**P.C** [2] - 2:15, 3:18
**p.m** [7] - 11:13, 12:15, 60:7, 71:12, 76:5
**pace** [1] - 13:5
**package** [1] - 14:22
**page** [3] - 12:11,

14:14, 14:19
**Pages** [1] - 1:6
**pages** [4] - 14:15, 15:14, 15:18, 49:9
**PAGET** [1] - 2:15
**PAL** [1] - 6:17
**paper** [2] - 30:23, 30:24
**papers** [3] - 9:15, 20:12, 41:11
**parameters** [1] - 57:19
**Park** [1] - 3:12
**Parks** [1] - 15:5
**Parkway** [1] - 1:19
**part** [10] - 7:7, 15:15, 24:14, 26:8, 37:7, 44:17, 60:20, 63:8, 63:12, 65:3
**parte** [1] - 16:3
**participants** [1] - 47:2
**participate** [3] - 36:10, 36:11, 47:9
**participated** [1] - 36:9
**participating** [1] - 70:1
**participation** [10] - 34:6, 43:12, 45:11, 56:19, 57:3, 57:5, 57:9, 62:12, 63:21, 63:23
**particular** [2] - 8:5, 46:9
**particularly** [1] - 14:15
**particulars** [1] - 23:5
**parties** [7] - 10:12, 11:21, 34:8, 37:6, 38:8, 57:1, 67:7
**partner** [1] - 72:24
**parts** [1] - 69:14
**party** [8] - 5:22, 6:13, 6:17, 6:19, 6:20, 6:25, 37:14, 75:3
**Party** [1] - 3:13
**pass** [1] - 16:14
**Passengers** [1] - 3:11
**past** [6] - 30:17, 30:18, 30:19, 30:20, 51:5
**patent** [1] - 6:25
**path** [3] - 30:24, 31:1, 31:7
**pause** [1] - 63:9
**pay** [1] - 67:11
**peace** [1] - 24:11
**pencil** [1] - 10:16
**Pennsylvania** [1] - 65:18
**People** [1] - 3:9
**people** [2] - 10:16
**people's** [1] - 10:15
**per** [2] - 34:2, 41:25

**percent** [2] - 25:4, 73:13
**perfectly** [6] - 8:19, 26:11, 47:2, 47:11, 47:17, 59:4
**perhaps** [4] - 7:15, 17:19, 39:16, 52:22
**period** [7] - 7:7, 17:21, 18:7, 18:23, 20:16, 64:5, 64:13, 71:20, 74:18, 75:13
**periods** [3] - 64:7, 64:15, 64:21
**permitted** [1] - 23:15
**person** [3] - 4:9, 21:25, 72:16
**perspective** [1] - 36:18
**Perspective** [1] - 3:6
**Philadelphia** [2] - 65:19, 66:8
**phone** [2] - 22:1, 72:17, 72:19, 73:21
**phrase** [1] - 8:24
**picture** [2] - 62:22, 63:11
**piece** [1] - 68:2
**pigeonhole** [1] - 36:19
**pile** [3] - 27:5, 27:11, 27:12
**Pinelands** [1] - 3:8
**pink** [1] - 10:13
**Pipelines** [1] - 3:9
**place** [2] - 25:16, 63:18
**places** [1] - 47:12
**plaintiff** [13] - 4:13, 5:1, 9:20, 9:25, 21:16, 21:18, 24:11, 32:9, 35:12, 38:21, 48:7, 68:8, 74:1
**Plaintiff** [2] - 1:4, 1:17
**plaintiff's** [2] - 5:5, 57:13, 71:10
**plaintiffs** [2] - 27:25, 34:11
**Plaintiffs** [1] - 1:20
**plaintiffs'** [1] - 34:5
**plan** [8] - 32:20, 40:18, 41:6, 48:2, 49:3, 49:8, 54:25, 62:9
**planning** [1] - 65:21
**play** [4] - 8:2, 52:2, 61:1, 64:23
**Plaza** [1] - 3:22
**pleasant** [1] - 75:25
**pleasure** [1] - 58:25
**plug** [1] - 31:13
**plus** [7] - 7:12, 12:11, 30:23, 34:25, 41:25,

48:16, 48:18
**podium** [3] - 22:21, 40:3, 59:1
**point** [9] - 8:17, 18:8, 24:16, 28:6, 28:19, 28:20, 29:7, 30:13, 67:4
**points** [2] - 15:22, 51:21
**Policy** [1] - 3:6
**politely** [1] - 39:16
**ponder** [1] - 56:17
**portable** [1] - 70:5
**portion** [2] - 28:6, 46:8
**position** [3] - 20:11, 72:23, 74:17
**possible** [4] - 20:20, 50:6, 52:17, 74:17
**possibly** [1] - 8:18
**post** [3] - 70:8, 73:16, 74:10
**Post** [1] - 1:9
**poster** [1] - 69:13
**posting** [1] - 72:21
**potential** [1] - 12:25
**potentially** [5] - 12:25, 18:7, 50:22, 71:3
**power** [1] - 66:6
**practice** [8] - 21:5, 30:17, 30:18, 30:19, 30:20, 36:11, 51:5
**predetermined** [1] - 23:10
**predicate** [1] - 55:4
**predict** [1] - 17:24
**preference** [2] - 24:8, 56:3
**premature** [1] - 41:5
**prepare** [2] - 25:23, 49:12
**prepared** [4] - 7:8, 16:11, 28:6, 37:6
**prescribed** [1] - 45:13
**present** [8] - 26:10, 31:14, 35:10, 44:4, 52:18, 69:10, 69:13, 69:18
**presentation** [2] - 25:25, 35:11, 35:20, 36:2, 36:16, 48:11, 48:16, 49:12, 50:21, 51:16, 63:13, 63:15
**presentations** [2] - 49:4, 64:22
**presenting** [1] - 36:18
**Preservation** [1] - 3:8
**preserve** [1] - 59:19
**pressures** [1] - 21:8
**pretty** [2] - 68:18, 70:24

primarily [1] - 49:4
principal [1] - 38:2
priorities [4] - 35:19, 35:25, 36:2, 36:17
prioritize [1] - 35:10
priority [6] - 25:25, 35:24, 36:2, 36:6, 65:15, 66:17
private [1] - 36:11
problem [4] - 11:6, 13:20, 53:3, 53:4
problems [1] - 73:12
procedural [6] - 30:11, 42:11, 42:21, 50:21, 51:13, 52:2
proceed [12] - 7:9, 24:6, 25:8, 26:9, 34:3, 34:8, 34:11, 34:13, 42:6, 42:9, 45:18, 61:18
proceeding [1] - 15:17
PROCEEDINGS [1] - 4:1
proceedings [1] - 76:10
Proceedings [2] - 1:24, 76:5
process [10] - 23:1, 31:20, 35:15, 36:8, 42:11, 43:9, 43:15, 51:13, 51:14, 55:24
produced [1] - 1:25
productive [1] - 38:15
professional [1] - 73:5
professionalism [2] - 71:14, 74:13
Professionals [1] - 3:6
Professor [1] - 39:5
program [1] - 12:16
progress [1] - 71:16
project [1] - 19:5
prom [1] - 6:25
prominence [1] - 36:6
promised [1] - 20:15
proper [1] - 35:15
proposal [1] - 67:19
propose [2] - 40:9, 40:10
proposed [5] - 12:15, 14:22, 15:22, 34:1, 61:15
proves [1] - 23:13
provide [3] - 35:2, 47:9, 69:24
public [8] - 13:22, 13:24, 14:1, 14:4, 14:7, 14:10, 15:6, 34:6
published [1] - 15:7

punch [2] - 45:2, 45:3
purposely [1] - 9:14
put [7] - 11:20, 16:4, 38:9, 66:17, 66:19, 68:2, 72:23
putting [2] - 35:17, 74:17

**Q**

qualitative [1] - 27:13
quality [20] - 34:6, 43:22, 53:5, 53:10, 53:25, 54:10, 54:12, 54:15, 54:17, 54:20, 54:23, 55:2, 55:3, 55:14, 56:4, 62:20, 62:24, 63:2, 63:7, 63:11
quantitative [2] - 27:4, 27:14
quarters [1] - 25:4
questions [26] - 7:8, 11:4, 11:18, 13:14, 13:15, 16:7, 25:13, 30:5, 32:5, 35:19, 36:1, 36:17, 37:13, 42:1, 47:25, 48:10, 48:12, 48:16, 48:18, 49:5, 49:15, 50:24, 65:2, 68:6, 68:23, 69:16
quick [1] - 37:15
quickly [3] - 10:10, 36:25, 66:11
quietly [1] - 39:20
quite [1] - 16:5

**R**

Railroad [1] - 3:10
raise [1] - 45:1
raised [7] - 31:20, 36:23, 38:21, 43:11, 51:20, 68:25, 69:7
Randee [1] - 4:19
RANDEE [1] - 1:19
RANDY [1] - 1:15
range [1] - 58:16
rather [6] - 22:24, 34:2, 34:24, 38:15, 55:21, 72:1
rationale [1] - 23:8
re [1] - 15:22
reach [5] - 23:10, 29:8, 52:14, 56:5, 72:6
reaching [2] - 29:9, 51:1
reaction [2] - 35:5,

56:2
read [3] - 27:5, 27:7, 27:19
reading [1] - 15:17
ready [3] - 33:21, 60:11, 72:2
real [1] - 65:23
realize [1] - 49:24
really [3] - 40:14, 67:21, 74:13
reason [5] - 20:10, 23:10, 44:9, 52:25, 71:21
reasonable [11] - 20:16, 27:16, 30:21, 31:2, 31:10, 39:18, 54:22, 64:5, 67:17, 71:20, 74:18
reasonableness [8] - 27:9, 27:14, 27:16, 31:9, 36:12, 36:21, 44:11, 51:18
reasonably [1] - 31:7
reasoned [2] - 42:22, 51:8
reasons [1] - 39:6
rebuttal [6] - 49:17, 57:6, 57:11, 57:20, 58:5, 65:1
received [1] - 15:6
recently [1] - 8:22
Recess [3] - 39:23, 60:7, 71:12
recess [2] - 7:18, 39:17
recognized [1] - 68:25
recollection [1] - 61:11
reconvene [1] - 63:20
record [53] - 9:12, 9:17, 11:4, 11:8, 12:9, 12:11, 12:12, 12:13, 12:18, 12:19, 13:3, 13:7, 13:18, 13:21, 13:24, 14:3, 14:9, 14:13, 14:20, 14:24, 14:25, 15:15, 15:20, 16:5, 23:3, 23:13, 26:25, 28:6, 28:12, 29:1, 29:14, 29:16, 29:19, 29:24, 31:12, 37:14, 37:15, 42:24, 44:11, 45:14, 46:11, 46:18, 47:7, 49:10, 50:25, 51:19, 55:11, 56:11, 65:5, 69:14, 69:22, 76:10
recorded [1] - 1:24
recording [1] - 72:12
reduce [1] - 61:5

reduced [1] - 16:14
reevaluation [4] - 17:18, 17:20, 19:1, 19:8
reference [3] - 12:6, 12:24, 27:19
referred [1] - 63:12
refers [1] - 15:5
reflect [2] - 39:20, 61:9
reg [1] - 30:8
regard [2] - 51:21, 74:20
regarding [5] - 11:12, 12:14, 12:15, 15:24, 54:25
regards [1] - 60:13
Regional [1] - 13:11
regrets [3] - 6:16, 6:23, 7:2
regulation [3] - 29:5, 29:6, 29:15
Reichman [2] - 5:24, 39:11
REICHMAN [6] - 3:4, 3:4, 5:25, 10:21, 39:12, 74:8
reiterate [1] - 74:19
relate [5] - 22:12, 32:19, 44:10, 55:23, 63:2
related [4] - 24:8, 36:20, 43:14, 43:23
relates [1] - 53:4, 55:7, 63:10
relationship [2] - 32:14, 55:18
relative [2] - 9:10, 22:1
relatively [1] - 29:2, 68:20
relaxed [1] - 33:22
relevant [6] - 14:16, 15:9, 15:10, 34:19, 36:24
relies [1] - 46:7
remainder [1] - 46:11
remains [4] - 16:19, 19:12, 19:24, 36:23
remand [3] - 35:16, 41:13, 41:17
remedy [6] - 37:5, 37:6, 54:19, 59:22, 59:23, 64:2
remember [5] - 5:1, 22:7, 22:8
repeat [1] - 73:22
reply [2] - 59:14, 65:1
report [5] - 7:16, 8:8, 47:20, 73:11
Reporter [2] - 1:23,

76:12
REPORTER'S [1] - 76:7
represent [1] - 47:20
representations [3] - 21:6, 25:12, 28:11
representative [4] - 13:15, 14:8, 14:11, 72:9
Representative [1] - 14:2
represented [1] - 46:25
represents [1] - 29:18
request [2] - 8:1, 62:18
requesting [1] - 38:24
required [2] - 19:5, 30:23
requirement [4] - 24:17, 42:12, 44:14, 45:12
requirements [2] - 16:4, 16:6
requires [2] - 19:6, 52:22
research [1] - 27:3
reserve [1] - 64:3
resolve [2] - 10:10, 11:17
RESOURCES [1] - 2:4
respect [6] - 10:24, 22:13, 54:19, 63:3, 71:15, 73:4
respectful [3] - 73:17, 73:18
respectfully [2] - 37:11, 62:18
respective [3] - 11:12, 64:6, 68:20
respects [1] - 51:12
respond [15] - 8:11, 24:13, 26:12, 35:13, 36:16, 41:21, 43:8, 44:4, 50:3, 57:19, 58:8, 61:7, 70:14, 71:20
responding [2] - 12:23, 35:21
responds [1] - 15:6
response [7] - 12:3, 12:4, 12:5, 37:16, 48:14, 59:7, 64:25
responses [2] - 15:8, 15:11, 15:16
rest [2] - 14:15, 16:18
resubmitted [1] - 9:18
result [2] - 18:20, 75:12
revealing [1] - 37:23

**review** [2] - 12:16, 43:15
**reviews** [1] - 19:4
**revised** [3] - 9:18, 12:23, 13:2
**revisions** [1] - 9:10
**Revolution** [1] - 3:11
**Rice** [1] - 4:20
**RICE** [1] - 1:18
**ridiculous** [1] - 71:25
**RIESEL** [2] - 2:15
**rights** [2] - 21:3, 44:15
**ripe** [2] - 40:20, 41:20
**ripeness** [10] - 31:21, 31:24, 32:18, 34:16, 40:17, 41:1, 41:2, 41:14, 48:2, 61:23
**rise** [2] - 22:20, 35:6
**Riverkeeper** [1] - 3:9
**road** [4] - 28:14, 29:8, 35:22, 67:25
**Rockland** [1] - 3:9
**roll** [3] - 57:25, 64:9, 64:18
**rooms** [1] - 67:11
**Roseland** [1] - 1:20
**ROSENBERG** [1] - 3:18
**rotely** [1] - 26:3
**roughly** [3] - 18:15, 19:9, 42:3
**RPR** [1] - 76:12
**rubber** [1] - 10:13
**rule** [1] - 72:11
**rules** [1] - 29:2
**Rules** [1] - 74:12
**run** [4] - 42:3, 61:20, 64:13, 68:18
**running** [1] - 18:23

**S**

**safely** [2] - 75:18, 76:3
**SafestreetsJC** [1] - 3:9
**sake** [1] - 48:9
**salad** [1] - 68:3
**satisfied** [1] - 9:22
**save** [1] - 32:24
**saw** [1] - 66:16
**scenarios** [1] - 40:19
**scheduled** [1] - 71:7
**schemes** [1] - 32:15
**School** [1] - 65:18
**school** [3] - 58:12, 68:17, 75:4
**Science** [1] - 3:11
**scintilla** [1] - 27:6
**screen** [1] - 69:12

**seat** [2] - 5:4, 23:20
**seated** [1] - 4:18
**second** [8] - 12:19, 29:3, 31:25, 43:8, 43:25, 58:1, 69:25, 72:4
**secret** [2] - 38:1, 38:13
**Secretary** [1] - 15:23
**SECTION** [1] - 2:4
**section** [1] - 44:2
**see** [15] - 4:13, 5:12, 5:18, 31:1, 33:23, 39:9, 39:18, 39:22, 40:23, 49:9, 59:24, 69:14, 72:4, 72:6, 75:19
**seeing** [1] - 12:24
**seem** [1] - 23:9
**segments** [2] - 38:15, 38:16
**send** [9] - 6:23, 7:2, 11:20, 11:24, 30:2, 65:10, 68:14, 71:23, 75:14
**sends** [1] - 60:13
**Senior** [1] - 1:12
**sense** [5] - 32:13, 34:24, 38:19, 46:18, 54:4
**sensitive** [1] - 57:12
**sensitivity** [1] - 57:8
**separate** [13] - 32:15, 34:24, 36:13, 36:20, 44:13, 45:24, 46:7, 46:8, 46:18, 50:3, 53:21, 55:21
**separated** [1] - 45:23
**separately** [10] - 35:23, 36:6, 43:13, 45:15, 46:11, 53:16, 55:4, 56:1, 56:5, 71:5
**series** [1] - 13:19
**session** [5] - 8:5, 57:24, 62:10, 62:14, 72:7
**set** [1] - 8:13
**sets** [4] - 49:25, 57:20, 58:3, 58:8
**settlement** [1] - 7:14
**settlements** [1] - 9:4
**setup** [1] - 63:5
**seven** [13] - 14:21, 22:8, 23:5, 23:12, 23:18, 35:14, 36:5, 40:18, 41:9, 49:18, 50:2, 57:7, 59:14
**several** [1] - 69:16
**shall** [4] - 24:22, 39:15, 57:8, 62:3

**Shambon** [1] - 11:7
**shape** [2] - 70:24, 72:6
**share** [2] - 66:10, 66:12
**shared** [1] - 66:15
**Shari** [1] - 5:9
**SHARI** [1] - 2:12
**Sharia** [2] - 4:8, 70:3
**sheets** [1] - 16:12
**shift** [1] - 38:18
**short** [2] - 36:24, 56:14
**shorter** [1] - 38:15
**show** [4] - 23:17, 70:2, 70:4, 70:15
**showed** [1] - 33:4
**showing** [2] - 6:21, 39:7
**shown** [1] - 10:25
**shows** [1] - 45:14
**side** [28] - 5:24, 7:20, 15:18, 15:19, 20:24, 24:2, 34:3, 39:16, 41:21, 41:25, 44:3, 45:15, 45:21, 46:21, 46:22, 46:24, 47:1, 47:3, 57:13, 57:14, 57:15, 57:21, 63:16, 64:24, 71:1, 71:3, 71:6, 71:10
**side's** [1] - 27:12
**SIDERMAN** [5] - 3:18, 6:8, 6:9, 6:12, 6:15
**Siderman** [2] - 6:5, 6:7, 60:8
**sides** [4] - 19:7, 26:18, 27:10, 68:20
**signed** [1] - 18:24
**significance** [1] - 54:7
**significant** [8] - 12:25, 27:13, 32:21, 33:13, 38:7, 54:11, 55:11, 64:13
**SILAGI** [1] - 2:8
**Silagi** [2] - 5:9, 18:5
**similar** [1] - 58:20
**simple** [7] - 28:12, 28:22, 29:2, 42:10, 54:9, 67:3, 71:25
**simplest** [1] - 71:22
**simply** [2] - 8:1, 55:9
**simultaneous** [1] - 72:12
**sit** [5] - 11:2, 20:3, 25:2, 57:18, 57:24
**sits** [1] - 10:14
**sitting** [1] - 72:20
**situation** [1] - 30:20
**SIVE** [1] - 2:15
**six** [3] - 14:17, 35:14,

36:5
**slides** [1] - 69:14
**slight** [1] - 45:22
**slow** [1] - 11:19
**small** [2] - 64:8, 64:9
**smiling** [1] - 4:24
**social** [3] - 72:12, 73:17, 74:10
**Soma** [2] - 3:7, 3:11
**someone** [1] - 70:13
**something's** [1] - 68:17
**sometime** [1] - 61:6
**sometimes** [3] - 26:4, 26:5, 69:10
**somewhere** [2] - 19:20, 61:6
**soon** [1] - 20:20
**sorry** [4] - 6:4, 12:19, 13:8, 56:25
**sorted** [1] - 24:14
**sound** [1] - 25:20
**South** [1] - 3:13
**SPALDING** [1] - 1:15
**speaks** [1] - 41:15
**specific** [3] - 37:15, 51:25, 62:23
**specifically** [1] - 69:23
**specifics** [2] - 7:13, 61:10
**specified** [2] - 55:10, 55:13
**speculating** [1] - 19:17
**sped** [1] - 20:22
**speed** [1] - 20:11
**spelled** [1] - 38:4
**spelling** [1] - 5:20
**spend** [3] - 16:16, 23:17, 35:18
**spent** [1] - 16:2
**spill** [1] - 19:14
**spit** [1] - 40:23
**spoken** [1] - 38:23
**sponsors** [8] - 11:10, 12:2, 12:22, 12:23, 18:20, 18:22, 19:10, 19:19
**spot** [1] - 12:15
**spots** [1] - 42:7
**Square** [1] - 1:9
**staff** [1] - 66:22
**stake** [1] - 63:22
**stamina** [1] - 26:15
**stand** [9] - 10:23, 11:2, 24:11, 25:9, 27:10, 38:20, 49:10, 49:14, 49:15
**standard** [7] - 23:7,

23:8, 27:4, 28:2, 30:22, 30:24, 31:7
**standards** [2] - 23:6, 27:8
**start** [17] - 9:20, 20:11, 22:6, 27:11, 40:13, 40:25, 61:11, 61:15, 66:20, 66:21, 67:5, 67:6, 67:16, 68:8, 68:18, 75:17
**started** [1] - 74:15
**starting** [2] - 61:19, 64:15
**starts** [1] - 67:24
**STATE** [1] - 1:3
**State** [5] - 3:12, 4:10, 8:2, 15:5, 48:7
**state** [2] - 8:2, 29:1
**statement** [2] - 9:3, 28:4
**STATES** [6] - 1:1, 1:6, 1:12, 2:3, 2:7, 2:11
**States** [2] - 4:2, 4:11
**status** [2] - 4:10, 7:15
**STATUS** [1] - 1:5
**statute** [5] - 29:5, 29:15, 29:22, 30:8
**statutory** [1] - 32:15
**stay** [2] - 64:11, 72:16
**staying** [2] - 67:5, 67:8
**steak** [1] - 68:2
**stenography** [1] - 1:24
**step** [5] - 17:3, 17:17, 18:3, 18:19, 43:8
**steps** [3] - 11:1, 20:25, 31:19
**stick** [1] - 10:14
**still** [5] - 17:13, 18:15, 19:20, 57:6, 57:11
**stop** [4] - 24:11, 30:9, 57:18, 72:22
**stopping** [2] - 72:10, 72:14
**story** [1] - 20:5
**straight** [1] - 38:16
**strategy** [3] - 24:3, 37:23, 71:4
**straw** [1] - 66:25
**Street** [3] - 2:5, 2:8, 3:7
**street** [1] - 2:12
**stretched** [1] - 42:8
**strike** [1] - 45:2
**strokes** [1] - 61:10
**strong** [1] - 33:25
**structure** [1] - 63:15
**structured** [1] - 51:14
**studied** [8] - 26:7, 40:19, 40:21, 41:10, 41:16, 48:3, 53:7

**study** [3] - 20:25, 41:11, 41:17
**stuff** [1] - 66:13
**stupid** [1] - 73:1
**submission** [1] - 12:23
**submit** [1] - 70:11
**substantial** [9] - 26:23, 26:25, 27:4, 27:7, 27:17, 28:2, 29:19, 29:24, 50:24
**subtracted** [1] - 16:20
**suffer** [1] - 62:8
**sufficient** [1] - 70:1
**sufficiently** [1] - 74:23
**suggest** [4] - 33:19, 33:24, 36:15, 39:16
**suggested** [2] - 39:21, 44:6
**suggestion** [4] - 24:17, 32:12, 34:18, 53:15
**suggestions** [1] - 13:4
**Suite** [1] - 1:19
**summaries** [1] - 16:4
**summarized** [1] - 15:14
**summary** [9] - 11:24, 13:11, 13:16, 15:25, 16:11, 31:21, 31:23, 33:5, 71:19
**supply** [1] - 70:7
**support** [2] - 26:24, 38:20
**supported** [1] - 50:25
**supports** [1] - 28:7
**supposed** [7] - 7:13, 16:17, 16:22, 16:24, 30:12, 30:16, 61:11
**Supreme** [1] - 27:5
**surprised** [1] - 21:4
**surprises** [3] - 21:10, 37:3
**surrebuttal** [5] - 49:17, 50:11, 58:15, 59:15, 65:1
**surrenderer** [1] - 72:17
**surrogate** [1] - 72:8
**surrogates** [1] - 73:3
**survive** [1] - 30:4
**Sustainability** [1] - 3:11
**sweep** [1] - 34:25
**switch** [4] - 19:21, 20:9, 20:13, 20:24
**sword** [1] - 41:4
**symbiotic** [1] - 55:17

**T**

**table** [3] - 32:7, 72:8, 72:21
**tables** [1] - 38:19
**tag** [1] - 58:13
**tail** [1] - 68:10
**talks** [1] - 27:6
**target** [4] - 17:11, 17:13, 17:14, 19:12
**targeted** [1] - 74:24
**targeting** [1] - 19:20
**taught** [3] - 24:18, 26:19, 52:6
**TBTA** [3] - 16:22, 17:7, 18:8
**Team** [1] - 3:10
**team** [3] - 26:7, 39:21, 58:13
**Teams** [1] - 11:16
**tear** [1] - 16:12
**technology** [2] - 70:2, 70:15
**television** [2] - 70:6, 70:10
**ten** [13] - 39:9, 39:15, 48:10, 49:18, 50:2, 58:9, 59:11, 59:13, 59:25, 60:3, 60:5, 62:2, 71:6
**ten-minute** [1] - 39:15
**term** [1] - 35:3
**terms** [14] - 17:24, 19:15, 20:9, 21:3, 25:25, 30:4, 31:17, 32:20, 36:18, 45:12, 46:20, 51:13, 54:9, 57:15
**THE** [223] - 1:1, 1:12, 4:4, 4:7, 4:9, 4:12, 4:16, 4:18, 4:21, 4:23, 5:1, 5:4, 5:8, 5:11, 5:16, 5:18, 5:22, 6:1, 6:4, 6:6, 6:8, 6:11, 6:13, 6:16, 6:24, 7:3, 8:7, 8:9, 8:12, 8:15, 8:19, 8:21, 9:22, 9:24, 10:2, 10:4, 10:6, 10:8, 10:13, 10:22, 11:22, 11:23, 12:4, 12:5, 15:1, 15:2, 15:13, 15:20, 16:10, 16:11, 17:3, 17:6, 17:8, 17:11, 17:13, 17:16, 18:1, 18:5, 18:12, 18:15, 18:19, 19:2, 19:6, 19:13, 19:18, 19:25, 20:4, 21:14, 21:18, 21:20, 21:22, 22:4, 22:11, 22:16, 22:21, 22:25, 23:19, 23:22, 26:1, 26:13, 26:17, 32:16, 32:22, 32:24, 33:1, 33:3, 33:9, 33:15, 33:17, 33:20, 33:23, 34:14, 34:21, 35:4, 37:9, 37:20, 37:25, 38:17, 38:25, 39:3, 39:7, 39:11, 39:14, 39:24, 40:1, 40:4, 40:6, 40:12, 40:16, 40:23, 41:8, 41:22, 41:24, 42:3, 42:6, 42:9, 42:16, 42:23, 43:1, 43:3, 43:5, 43:7, 43:18, 44:19, 44:21, 44:23, 44:25, 45:5, 45:18, 45:25, 46:2, 46:5, 46:12, 46:14, 46:24, 47:6, 47:11, 47:15, 47:17, 47:24, 48:24, 49:1, 49:6, 49:20, 49:23, 50:1, 50:10, 50:14, 50:16, 50:23, 51:4, 51:7, 51:10, 51:15, 51:22, 51:24, 52:5, 52:10, 52:18, 53:8, 53:14, 54:19, 55:15, 56:2, 56:6, 56:8, 56:13, 56:16, 56:22, 57:2, 57:6, 57:17, 58:14, 58:18, 58:22, 58:25, 59:4, 59:7, 59:10, 59:12, 59:17, 59:22, 59:24, 60:8, 60:15, 60:17, 60:19, 60:22, 60:24, 65:23, 66:13, 66:20, 67:3, 67:8, 67:18, 67:22, 67:25, 68:6, 68:10, 68:12, 68:16, 69:3, 69:7, 69:16, 69:20, 70:5, 70:7, 70:9, 70:11, 70:18, 70:20, 70:22, 70:24, 71:13, 74:1, 74:3, 74:5, 74:7, 74:9, 75:24
**theme** [1] - 31:8
**themselves** [1] - 52:19
**theoretically** [1] - 59:18
**therefore** [2] - 35:2, 46:18
**they've** [1] - 41:10
**thinking** [2] - 23:14, 31:17

**third** [4] - 30:11, 32:1, 45:1, 64:3
**Third** [1] - 3:19
**thirds** [1] - 64:2
**thoughts** [3] - 37:9, 37:10, 71:19
**thread** [4] - 14:20, 14:23, 15:21
**three** [12] - 14:17, 25:3, 25:16, 44:25, 49:13, 50:11, 55:17, 55:18, 56:1, 58:16, 64:18, 68:19
**threshold** [7] - 29:22, 30:5, 30:7, 40:14, 48:4, 50:20, 61:23
**throwing** [1] - 6:20
**Thursday** [2] - 1:10, 67:23
**timely** [1] - 74:21
**timing** [2] - 21:16, 75:5
**today** [8] - 10:24, 24:15, 26:10, 32:2, 44:25, 56:14, 59:20, 71:16
**Together** [1] - 3:10
**together** [8] - 44:10, 53:7, 55:7, 55:17, 55:19, 55:25, 74:15, 75:4
**tolling** [1] - 12:16
**tomorrow** [2] - 6:18, 8:14
**top** [2] - 10:14
**topic** [2] - 34:13, 37:15
**topically** [1] - 34:8
**topics** [2] - 34:18, 56:12
**tort** [1] - 8:22
**totality** [1] - 36:13
**toward** [1] - 75:10
**towards** [1] - 18:9
**town** [1] - 61:14
**track** [1] - 7:16
**TRADE** [1] - 1:12
**traditional** [1] - 5:20
**traffic** [1] - 61:14
**train** [1] - 66:6
**tranche** [1] - 48:11
**transcript** [10] - 1:24, 13:17, 13:22, 13:24, 14:1, 14:3, 14:6, 14:14, 16:1, 76:9
**transcription** [1] - 1:25
**transcripts** [1] - 13:19
**Transportation** [3] - 2:18, 4:11, 13:12

**transportation** [1] - 11:12
**TRANSPORTATION** [1] - 1:7
**Transportation's** [1] - 15:23
**Trap** [1] - 3:7
**travel** [4] - 62:2, 75:18, 76:3, 76:4
**traveled** [1] - 75:18
**treatises** [2] - 27:7, 27:20
**tremendous** [1] - 26:15
**tried** [1] - 44:25
**trigger** [2] - 18:8, 64:24
**triggers** [1] - 18:22
**trouble** [1] - 23:15
**truly** [1] - 24:19
**truncated** [1] - 55:24
**trust** [8] - 25:11, 31:11, 31:15, 57:17, 60:22, 62:1, 72:21, 73:10
**try** [5] - 7:5, 11:17, 25:5, 44:19, 50:5
**trying** [10] - 11:1, 12:8, 31:13, 34:25, 45:24, 46:22, 53:16, 57:23, 66:24, 75:5
**tunnel** [1] - 67:12
**turn** [3] - 11:8, 21:16, 58:7
**Turnpike** [2] - 3:7, 66:7
**turns** [1] - 29:24
**tweak** [1] - 44:5
**Twitter** [1] - 72:21
**two** [43] - 7:9, 14:17, 15:2, 23:17, 23:23, 23:24, 25:14, 25:15, 32:10, 32:14, 32:17, 34:2, 34:25, 35:17, 38:16, 41:3, 46:9, 49:24, 50:3, 50:7, 54:1, 55:8, 57:20, 58:3, 58:8, 60:5, 61:25, 62:5, 63:8, 64:2, 64:7, 64:12, 64:16, 64:18, 65:7, 71:24, 73:20, 75:19
**two-and-a-half** [1] - 38:16
**two-by-two** [1] - 71:24
**two-hour-plus** [1] - 34:25
**two-thirds** [1] - 64:2

## U

**U.S** [2] - 1:9, 12:14
**uber** [1] - 65:25
**UC** [1] - 3:11
**ultimately** [1] - 68:12
**unanticipated** [1] - 64:25
**uncertain** [1] - 32:6
**uncomfortable** [2] - 7:18, 23:23
**under** [6] - 30:22, 32:15, 48:3, 52:14, 59:18, 73:7
**understood** [4] - 21:10, 33:8, 73:24, 74:1
**unexpected** [1] - 21:12
**unfortunately** [2] - 18:11, 73:6
**Unitarian** [1] - 3:7
**United** [2] - 4:2, 4:11
**UNITED** [6] - 1:1, 1:6, 1:12, 2:3, 2:7, 2:11
**Universalist** [1] - 3:7
**universally** [1] - 9:2
**University** [1] - 65:17
**unknown** [1] - 38:8
**unless** [3] - 10:25, 38:7, 68:1
**unnecessarily** [1] - 20:18
**unprecedented** [1] - 33:12
**unreasonable** [4] - 27:16, 28:8, 28:10, 31:10
**unreasonableness** [1] - 36:14
**up** [32] - 6:22, 10:10, 10:17, 10:23, 11:23, 15:17, 20:11, 20:22, 23:17, 24:11, 25:7, 25:9, 25:10, 27:10, 28:9, 31:11, 33:4, 38:20, 39:2, 49:8, 49:14, 51:16, 52:3, 54:10, 57:25, 59:3, 61:2, 61:22, 65:10, 66:23, 70:6, 72:2
**upcoming** [1] - 75:25
**urge** [1] - 39:15
**utmost** [2] - 20:15, 75:6

## V

**value** [2] - 24:19, 24:22

**variety** [1] - 35:9
**verdicts** [1] - 9:3
**verify** [1] - 9:17
**versus** [1] - 27:13
**vibrate** [1] - 72:5
**video** [1] - 22:1
**view** [1] - 29:20
**violation** [1] - 36:14

## W

**waiting** [1] - 76:1
**walk** [2] - 32:3, 74:9
**walks** [1] - 73:10
**wants** [1] - 67:11
**Ward** [1] - 3:13
**warmer** [1] - 68:2
**Warren** [1] - 6:2
**Washington** [2] - 2:5, 2:13
**watch** [2] - 11:2, 57:18
**water** [1] - 25:19
**Water** [1] - 3:6
**Waterfront** [1] - 3:10
**wave** [1] - 27:21
**wax** [1] - 28:17
**week** [1] - 11:17
**weeks** [2] - 7:9, 75:19
**welcome** [6] - 4:7, 5:22, 6:13, 27:3, 27:18
**well-needed** [1] - 60:12
**Westlaw** [1] - 27:3
**Wettre** [5] - 7:13, 8:3, 8:10, 8:13, 9:6
**whiz** [1] - 31:8
**whole** [1] - 7:5
**willing** [2] - 7:17, 64:11
**win** [1] - 40:20
**window** [2] - 18:16, 19:9
**wish** [11] - 7:11, 18:6, 20:17, 20:19, 32:8, 63:3, 68:25, 71:1, 71:2, 72:15, 73:22
**wishes** [2] - 8:16, 40:1
**wonderful** [2] - 60:19, 70:17
**wooden** [1] - 10:14
**word** [2] - 27:9, 54:7
**words** [2] - 29:5, 71:11
**works** [2] - 26:4, 59:9
**worry** [1] - 26:16
**wrap** [1] - 65:10
**wrestler** [1] - 58:12
**write** [2] - 30:23

**writing** [2] - 16:14, 61:5
**written** [2] - 15:25, 31:5

## Y

**York** [12] - 1:17, 2:17, 3:16, 3:19, 7:12, 15:5, 61:14, 67:9
**Younger** [1] - 39:6
**yourself** [1] - 27:22