```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
 2   _____
     STATE OF NEW JERSEY,
 3
          Plaintiff,                      CIVIL ACTION:
 4
          vs.                             2:23-cv-3885
 5                                            LMG-LDW
     UNITED STATES DEPARTMENT OF
 6   TRANSPORTATION, et al.,              Oral Argument

 7        Defendants,

 8        and

 9   METROPOLITAN TRANSPORTATION AUTHORITY,
     et al.,
10
          Defendant-Intervenors.
11   _____
     MARK SOKOLICH, in his capacity as the
12   Mayor of Fort Lee and a resident of
     Fort Lee, and RICHARD GALLER,
13   individually and on behalf of all
     others similarly situated,
14
          Plaintiffs,
15                                        CIVIL ACTION:
          vs.
16                                        2:23-cv-21728
     UNITED STATES DEPARTMENT OF              LMG-LDW
17   TRANSPORTATION, et al.,
                                          Oral Argument
18        Defendants.

19        Frank R. Lautenberg Post Office and Courthouse
          Two Federal Square
20        Newark, New Jersey  07102
          February 6, 2024
21
     B E F O R E:              THE HONORABLE LEO M. GORDON,
22                             U.S. COURT OF INTERNATIONAL TRADE

23              Lisa A. Larsen, RPR, RMR, CRR, FCRR
                     Official Court Reporter
24               Lisa_Larsen@njd.uscourts.gov
                       (973)776-7741
25        Proceedings recorded by mechanical stenography.
          Transcript produced by computer-aided transcription.
```

1  **A P P E A R A N C E S:**

2       KING & SPALDING LLP, BY:
        RANDY MICHAEL MASTRO, ESQ.
3       LAUREN MYERS, ESQ.
        1185 Avenues of the Americas
4       New York, New York  10036

5            appeared on behalf of Plaintiff State of
             New Jersey;
6
        NAGEL RICE, LLP, BY:
7       BRUCE H. NAGEL, ESQ.
        103 Eisenhower Parkway, Suite 201
8       Roseland, New Jersey  07068

9            appeared on behalf of Plaintiffs Mark Sokolich
             and Richard Galler;
10
        UNITED STATES DEPARTMENT OF JUSTICE, BY:
11      GREGORY MARTIN CUMMING, ASST. UNITED STATES ATTORNEY
        SAMANTHA G. PELTZ, ASST. UNITED STATES ATTORNEY
12      SHARI HOWARD, ASST. UNITED STATES ATTORNEY
             and
13      OFFICE OF THE UNITED STATES ATTORNEY, BY:
        ALEX D. SILAGI, ASST. UNITED STATES ATTORNEY
14      970 Broad Street
        Newark, New Jersey  07102
15
             appeared on behalf of Defendants United States
16           Department of Transportation, Federal Highway
             Administration, Shailen Bhatt, Richard J. Marquis;
17
        SIVE, PAGET & RIESEL, P.C., BY:
18      ELIZABETH KNAUER, ESQ.
        MARK A. CHERTOK, ESQ.
19      560 Lexington Avenue
        15th Floor
20      New York, New York  10022
             and
21

22

23

24

25

```
 1   A P P E A R A N C E S: (Cont'd.)

 2       KAPLAN HECKER & FINK LLP, BY:
         GABRIELLE E. TENZER, ESQ.
 3       JOSHUA MATZ, ESQ.
         350 Fifth Avenue
 4       63rd Floor
         New York, New York  10118
 5
             appeared on behalf of the Intervenor Defendants
 6           Metropolitan Transportation Authority and Triborough
             Bridge and Tunnel Authority;
 7
         JOHN H. REICHMAN LAW LLC, BY:
 8       JOHN H. REICHMAN, ESQ.
         56 Oakwood Avenue
 9       Montclair, New Jersey  07043

10           appeared on behalf of Amicus parties;

11       KRAMER LEVIN NAFTALIS & FRANKEL LLP, BY:
         ANDREW D. OTIS, ESQ.
12       NATHAN SCHWARTZBERG, ESQ.
         1177 Avenue of the Americas
13       New York, New York  10036

14           appeared on behalf of Amicus parties; and

15       OFFICE OF THE COUNTY COUNSEL, COUNTY OF BERGEN, BY:
         DAVID MATEEN, ESQ.
16       One Bergen County Plaza
         5th Floor
17       Hackensack, New Jersey  07601

18           appeared on behalf of Amicus parties.

19

20

21

22

23

24

25
```

1          (PROCEEDINGS held in open court before the

2          HONORABLE LEO M. GORDON on February 6, 2024.)

3      THE DEPUTY CLERK:  All rise.

4      THE COURT:  You all can be seated.  Thank you.  I

5  appreciate your courtesy.  Anyone with their handheld

6  computer, please turn it off or silence it.  I would

7  appreciate it very much.

8          (Brief pause.)

9          Ms. Creegan, you may call the case.

10      THE DEPUTY CLERK:  We're here in the matter of *State of*

11  *New Jersey vs. United States Department of Transportation,*

12  *et al.*, Case Number 23-cv-3885, as well as *Sokolich vs.*

13  *Department of Transportation*, Case Number 23-cv-21728.

14      THE COURT:  Mr. Nagel, your lead client's name is

15  pronounced "Sokolich"?

16      MR. NAGEL:  Yes, Judge.

17      THE COURT:  Thank you,

18      Plaintiffs, identify yourselves for the record, please.

19      MR. MASTRO:  Your Honor, Randy Mastro of King &

20  Spalding, with my colleague Lauren Myers.  And I have the

21  honor of representing the State of New Jersey.

22      MR. NAGEL:  Judge, Bruce Nagel, Nagel Rice, for the

23  plaintiff in the class action, Mr. Sokolich and Richard

24  Galler.

25      THE COURT:  Are you joined by anybody today, Mr. --

1        MR. NAGEL:  I have an associate, Andrew Nees, who is in

2   the third row, Judge.  Thank you.

3        THE COURT:  If you're comfortable sitting behind

4   Mr. Nagel, you may come to the well.

5        MR. NAGEL:  Thank you, Judge.

6        THE COURT:  For the defense.

7        MR. CUMMING:  Good afternoon, Your Honor.  Gregory

8   Cumming from the Department of Justice on behalf of federal

9   defendants.  With me are my colleagues Samantha Peltz and

10  Shari Howard from the Department of Natural Resources Division

11  and Alex Silagi from the United States Attorney's Office.

12       THE COURT:  All right.  Next for the MTA.

13       MR. CHERTOK:  Mark Chertok, Your Honor, from Sive,

14  Paget, Riesel, along with my partner Elizabeth Knauer and

15  co-counsel Gabrielle Tenzer and Joshua Matz from Kaplan

16  Hecker & Fink.

17       THE COURT:  Thank you.

18         And Empower?

19       MR. REICHMAN:  Good afternoon, Your Honor.  John

20  Reichman of John Reichman Law on behalf of the 34 New Jersey

21  amici and who are supporting the position of the federal

22  government and the FTA.

23       THE COURT:  Hoboken and the Environmental Defense Fund.

24       MR. OTIS:  Andrew Otis from Kramer Levin with my

25  associate Nathan Schwartzberg, representing 11 amici,

1   supporting the Department of Transportation.

2        THE COURT:  County of Bergen?

3        MR. MATEEN:  Good afternoon, Your Honor.  David Mateen,

4   amicus, from the Bergen County Counsel's Office.  Thank you.

5        THE COURT:  Did I miss anybody?

6            (No response.)

7        THE COURT:  All right.  Let me talk a little bit about

8   how we're going to proceed here.  I have a court reporter

9   present.  At all matters here in the courtroom there will be a

10  court reporter present.

11       The purpose is very simple.  I want to make sure that

12  there's a full and complete record, so that if there's any

13  dispute as to what was said, agreed to, or disputed, we have a

14  transcript.

15       I will conduct my proceedings in a way that when we get

16  to the end I will summarize.  I will ask every counsel if they

17  understand.  It is my goal to make sure that nobody leaves

18  this courtroom, right, with a different perception than what

19  has been discussed, agreed to, or a homework assignment, if

20  there is one.

21       My preference is I do not want to get into a situation

22  where someone says 'X' was said and in fact 'X' was not said.

23  I would err completely on the side of asking.  If you have any

24  hesitancy, any confusion, any doubt, right, ask the question.

25  There is no such thing as a silly or stupid question.

1          I am more than happy to answer your questions and be

2     here as long as it takes and make sure that everybody leaves

3     on the same page.  I do not want to engage in the game where

4     one person at the head of the table starts to tell a story and

5     when it comes back around to that person it is a completely

6     different story.  We all need to leave here being on the exact

7     same page.

8          Any questions?

9              (No response.)

10         THE COURT:  Any doubts?  Any concerns?

11             (No response.)

12         THE COURT:  Good.  There being none.

13         Let us proceed.  You all received a memorandum

14    outlining, for planning purposes, what we're gonna cover

15    today, so I'm going to go through them.

16         I have a series of applications for pro hac vice

17    status.  There are a number of them that were granted prior to

18    today.  I have four outstanding in the State of New Jersey

19    case and one in the Sokolich case.  They involve

20    Messieurs Warren, Otis; Ms. Kennedy and Mr. Matz.

21         Are there any others for which there has not been any

22    action on them?

23             (No response.)

24         THE COURT:  Any questions?  Any concerns?

25             (No response.)

1          THE COURT:  Going once, twice.  There being none,

2     orders will be entered with respect to all of those

3     applications sometime within the next 24 hours.

4          I have three motions for amici curiae: one from

5     Empower, one from the Environmental Defense Fund, one from

6     Bergen County.

7          Any concerns?  Any questions?  Any opposition?

8          (No response.)

9          THE COURT:  There being none, the orders will be

10    entered subsequent to today's hearing within the next

11    24 hours.  The orders will be entered granting amici status.

12         What we're going to do about oral argument is something

13    we'll get to later today.  Okay.

14         I have a request from -- in the State of New Jersey

15    action to deal with a motion to amend or supplement the

16    complaint.

17         Now, Mr. Mastro, it is a letter seeking permission to

18    file the motion; correct?

19         MR. MASTRO:  Yes, Your Honor.

20         THE COURT:  You submitted a letter with some detail in

21    it.  There had been opposition that was received on it and

22    there was also a reply filed, if my memory serves me

23    correctly.  I'm willing to hear you orally and any other

24    person -- any other party that wishes to be heard on this.

25         Remember, it's a letter request, so the question is,

1    Mr. Mastro, is what you put in the letter sufficient or do

2    you -- in the course of commenting to the Court, whether you

3    need to file a formal motion with more explanation.

4         I am more than willing to hear your request.

5         MR. MASTRO:  Thank you, Your Honor.  Would Your Honor

6    prefer if I come to the podium?

7         THE COURT:  Yes, please.

8              (Brief pause.)

9         MR. MASTRO:  Thank you, Your Honor.

10        I think Your Honor has hit it on the head for today's

11   purposes.  This was a letter request to be able to make a

12   motion.

13        THE COURT:  Right.

14        MR. MASTRO:  So in answering Your Honor's first

15   question, yes, we would like to make the motion and fully

16   explain the bases for it, the supplements and the amendment,

17   the grounds for them; that they are ripe under the law of the

18   Circuit and that they would not be futile, which I understand

19   to be the MTA's defenses.

20        Now, the MTA submitted itself to this Court's

21   jurisdiction to intervene in this case on the NEPA claim, the

22   core of the case being the NEPA claim.  And we don't want to

23   do anything that delays the resolution of that, Your Honor.

24        But now that -- the MTA and its arm, the TBTA, has

25   actually, for the first time, committed itself to a certain

1  plan or program that even the FHWA now admits it will have to

2  do supplemental environmental review to assess because it is

3  different than any of the alternatives that were suggested

4  before.

5       But there is enough clarity now.  Even the head of the

6  MTA --

7       THE COURT:  Well, let's not argue the merits of what

8  you may be -- the claims that you may be adding in.  I'll give

9  you more than ample opportunity at the right time, assuming I

10  allow the amendment.  Just talk to me about, you know, what

11  should I do here, Mr. Mastro.

12       MR. MASTRO:  Thank you, Your Honor.

13       THE COURT:  And whether you need to provide more

14  information to the Court in support of your position.

15       MR. MASTRO:  I appreciate that, Your Honor.  And of

16  course I was prepared to give a more full-throated defense of

17  the amendment, but I think Your Honor, as I said when you

18  started, hit it on the head.

19       I would like to explain all of that on our papers.

20  I know what they're going to say.  These are liberally

21  granted.  And this comes out of subsequent action after we

22  filed our NEPA case that now affects the scope of the case

23  potentially and additional claims we now have against the MTA.

24       So I think that it would be the prudent course, if I

25  may respectfully suggest, to permit us to file the formal

1  motion.  Again, I want to make crystal clear, we don't want to

2  do anything that slows down the resolution of the NEPA claim.

3  It's now fully submitted, and the resolution of the NEPA claim

4  in our favor may obviate the need to resolve the other claims

5  we now have against the MTA for the specific proposal that it

6  has made for the first time late last year after the

7  environmental review process conducted by the FHWA was

8  completed.

9       So we're just asking for the right to do a

10 full-throated motion to explain our grounds and the viability

11 of the claims and the ripeness, and I think that would be the

12 prudent course.

13      THE COURT:  Okay.  For the sake of argument,

14 Mr. Mastro, let us assume that I am inclined to grant your

15 request.  My question to you is -- because you are concerned

16 about not slowing things down on the merits of the main

17 claims, right -- how soon?  How much time to give the other

18 side?

19      MR. MASTRO:  Your Honor, again, to be clear, the NEPA

20 claim, the Clean Air Act claim, they are fully submitted; and

21 when Your Honor wants to hear from us at oral argument on the

22 merits, we will be here.

23      THE COURT:  Mr. Mastro, I asked you a question.  Answer

24 my question.  How much time do you need to file your

25 full-throated, in your words, motion to amend your complaint?

1        MR. MASTRO:  Your Honor, we would appreciate, since we

2    haven't prepared such a full-throated motion, to have until

3    later this month to file that and the MTA --

4        THE COURT:  Well, later this month, Mr. Mastro, could

5    be five days from now, it could be 24 days from now.

6        How long do you need to file your motion?

7        MR. MASTRO:  Your Honor, we would ask for at least

8    two weeks, as much as three weeks.

9        THE COURT:  Okay, you got it.  How much time should I

10   give the other side to respond?

11       MR. MASTRO:  I'm happy to give them whatever they

12   request because we don't want to slow down the case for this.

13       THE COURT:  Since it's a procedural motion, there are

14   only going to be two bites at the apple if I say yes: your

15   opening brief in support of your motion to amend and their

16   response.  No reply.

17       MR. MASTRO:  Understood, Your Honor.  We would ask for

18   three weeks, and then they can have whatever time they want.

19       THE COURT:  We will figure this out once I figure

20   out -- once we have our discussion about oral argument.

21       MR. MASTRO:  Thank you, Your Honor.  I was jumping

22   ahead.

23       THE COURT:  That's quite all right.  I understand.

24       MR. MASTRO:  My enthusiasm for the merits.

25       THE COURT:  That's quite all right.  I appreciate

1   enthusiasm.

2        MR. MASTRO:  Thank you, Your Honor.

3        THE COURT:  Okay.  Mr. Cumming, do you want to respond

4   first?

5        MR. CUMMING:  We have no position, Your Honor.  The

6   proposed amendment does not add claims against the federal

7   defendants.

8        THE COURT:  Okay.  Mr. Chertok on behalf of the MTA.

9        MR. CHERTOK:  Thank you, Your Honor.  Good afternoon.

10       THE COURT:  Good afternoon.

11       MR. CHERTOK:  I will try to start out on a positive

12  note that we concur with the State of New Jersey that the NEPA

13  claim should be resolved promptly.  Nobody is looking to delay

14  those claims, at least not from our perspective.

15       However, the proposed supplement, our motion to amend,

16  depending on the vernacular, is grossly premature.  I have to

17  back up and give a few steps, some of which is in the letter.

18       There has been no commitment by the MTA to a specific

19  tolling structure.  There has been a recommendation by what's

20  called the TMRB, which is a board that recommended a

21  particular tolling structure.  There's going to be four

22  hearings on that proposal and then the TBTA board will

23  ultimately make a decision.

24       So there is no final decision on which to claim -- to

25  assert these constitutional claims.  It's an abstract issue.

1          Now, the State of New Jersey assumes and hypothesizes

2    and guesses that the recommendation will be adopted in its

3    entirety, but no one knows what will happen.

4          Secondly, after there is that determination by the TBTA

5    board, there needs to be a reevaluation by the FHWA.  This is

6    not some novel procedure as indicated but is a standard

7    operating procedure because projects often change.  And,

8    therefore, the FHWA will reevaluate and make sure that the

9    impacts are not materially different and that the mitigation

10   that's proposed by the MTA is still valid.

11         So there's a number of steps, plus there has to be an

12   agreement with the federal agency before tolling can commence.

13   But most importantly, the assertion of the constitutional

14   claims is based upon a scenario that may well not occur, so

15   the State is asking you to basically guess.

16         I would add that the cases they provided Your Honor --

17         THE COURT:  So I assume, Mr. Chertok, that your

18   defense -- response to the motion to amend the complaint is

19   going to be largely predicated upon a ripeness argument.

20         MR. CHERTOK:  That's correct, Your Honor, because it's

21   not ripe.

22         THE COURT:  We'll see what the case law has to say.

23   That's the MTA's position.

24         MR. CHERTOK:  That's correct.

25         THE COURT:  Whether ultimately that is the answer to

1  the question, we'll take a look at the case law and we'll look

2  at the arguments.

3      MR. CHERTOK:  I would note that the cases that were

4  cited in the last letter really are not relevant.  They

5  undercut the plaintiffs' position.

6      THE COURT:  Let's worry about that when we get to the

7  merits, assuming that I am inclined to grant the request.

8      MR. CHERTOK:  That's why I'm raising those cases.  If

9  Your Honor reviews them, as I'm sure you will, you will see

10  that they have no relevance, particularly the Trump case in

11  which there was a need to have a decision in October of 2020

12  before the presidential election.  And while congestion

13  pricing in our view is quite important, it does not rise to

14  that level.

15      THE COURT:  Thank you, Mr. Chertok.  I think I will

16  give you the same admonition I gave Mr. Mastro.  We're talking

17  conceptually here.  If I need argument on the merits of the

18  request, we'll get into all of that and whether the cases that

19  the plaintiff has cited are applicable or relevant.

20      MR. CHERTOK:  I think my point, to be clear, is that if

21  they make a motion we will be in the same dilemma.  There will

22  not be a final decision, and therefore it will still be

23  unripe.

24      Thank you, Your Honor.

25      THE COURT:  No, no, don't run away yet.

1          MR. CHERTOK:  Whoops.

2          THE COURT:  So I asked Mr. Mastro a very pointed

3   question about how soon.  He's asked for two to three weeks.

4   If I say yes, is a comparable period of time sufficient

5   for you to file a response?

6          MR. CHERTOK:  Yes, Your Honor.

7          THE COURT:  I appreciate that.  Thank you very much.

8          MR. CHERTOK:  Thank you.

9              (Brief pause.)

10         THE COURT:  Anyone else wish to be heard on this?

11             (No response.)

12         THE COURT:  I'm going to reserve decision on this until

13  a little later in this proceeding.

14         We next have the motion by the Sokolich plaintiffs to

15  consolidate the two actions.

16         Mr. Nagel, your motion.  Correct?

17         MR. NAGEL:  Thank you.  Thank you, Judge.  I will

18  attempt to be as brief as possible, as we have already

19  submitted both a brief and a reply brief.

20         We seek Your Honor's discretion to consolidate the

21  two actions.  As Your Honor sees by the reading of the

22  two actions, they are basically identical except for the

23  medical monitoring class that we have set forth in the third

24  count.

25         In paragraph 5 of the amended complaint, we

1   specifically incorporate by reference all of the allegations

2   of the State.  We support the State 1,000 percent.  We have

3   made that clear in all of the papers before Your Honor, and we

4   will address the three concerns that have been raised in

5   opposition.

6        Concern number one:  It's going to slow down things.

7        I tell Your Honor straight and without equivocation it

8   will slow down nothing.  We are not looking for additional

9   time to do anything.  As I said to Your Honor twice, we are

10  looking to simply submit a letter to Your Honor and state that

11  we completely support the position of the State.

12       Second:  There may be risk of confusion because we are

13  asserting a medical monitoring class which is not being

14  asserted in the underlying action.

15       We say that that makes no sense whatsoever.  It's

16  certainly a completely separate and apart claim.  It's

17  understandable and it no way pollutes any of the core claims

18  that the State has alleged.

19       Third:  They say, well, we don't want to consolidate.

20  You appear as amicus.

21       As we have briefed, I am not an amicus because I am a

22  litigant.  We have asserted claims.  We are not a pure friend

23  of court.  The amicus law does not apply, and we should

24  certainly not be relegated to the amicus status, although I

25  talk with the amici curiae counsel here as I have done so

1    many, many times in my career.

2         So we ask Your Honor respectfully to consolidate these

3    two actions.  It is certainly in the interest of judicial

4    economy.  It will not slow down anything, it will not create

5    any problems whatsoever.  If there's any issues, I'll be happy

6    to deal with them with Your Honor.  Any questions?

7         THE COURT:  No questions.

8         MR. NAGEL:  Thank you, sir.

9         THE COURT:  Mr. Cumming.

10        MR. CUMMING:  Thank you, Your Honor.

11        To address Mr. Nagel's first point first, if all the

12   plaintiffs in the Sokolich litigation are seeking to do is

13   submit a letter in support of the State, I don't see a

14   prohibition on them doing so.  We did not object to the

15   various amicus filings and would not object to such a

16   procedure here.

17        That seems, to me, to be the most efficient course of

18   action, given their desire to participate and I guess purely

19   support the State's NEPA positions.

20        I'd also note that I think along with that procedure --

21        THE COURT:  Mr. Cumming, do yourself a favor, please.

22        MR. CUMMING:  Yes, Your Honor.

23        THE COURT:  Take a deep breath, relax.  Breathe in

24   through your nose, out through your mouth.  Calm your body

25   down.  I'm not coming over the top of the bench to tear your

1    head off.  Just relax, take a deep breath, and then proceed.

2         MR. CUMMING:  Thank you, Your Honor.

3         THE COURT:  I don't need to see you drop on the floor

4    with heart palpitations.

5         MR. CUMMING:  Me, neither, Your Honor.  Thank you.

6         Plaintiffs have said in their filings that their

7    class allegations are not in the forefront.  I think the most

8    efficient use of judicial resources here would be a submission

9    of the letter, a letter in support by the plaintiffs, and then

10   a stay of that litigation which would then allow the NEPA

11   issues to be resolved.  If at that point in time plaintiffs

12   wish to proceed with their medical monitoring allegations,

13   they can do so.

14        To the second point, the cases will not be in the same

15   procedural posture.  If the case is not stayed, we intend to

16   proceed by moving to dismiss next week on Thursday.  The

17   medical monitoring claims do not present a waiver of sovereign

18   immunity against the United States.

19        THE COURT:  Speak up, Mr. Cumming.  I can't hear you in

20   a whisper.

21        MR. CUMMING:  The medical monitoring claims do not

22   present a waiver of sovereign immunity against the

23   United States.

24        So even if the plaintiffs seek consolidation and that

25   request is granted, one case will be in the posture of pending

1  motions to dismiss while the other is on the verge of oral

2  argument on the merits.

3       That's all I have, Your Honor.  Thank you.

4       THE COURT:  Okay.  You're welcome.

5       Mr. Chertok, you wish to be heard?

6       MR. CHERTOK:  Your Honor, we confer with the

7  Government's position.  I don't feel the need to go back and

8  forth to make that clear.

9       MR. MASTRO:  Your Honor?

10      THE COURT:  Mr. Mastro, yes, I'm willing to hear from

11  you.

12      MR. MASTRO:  Thank you.  I really appreciate it,

13  Your Honor.  Thank you.

14      THE COURT:  I was getting to you.

15      MR. MASTRO:  I'll be briefer than I was on the first

16  one.

17      Your Honor, we support the application.  The only thing

18  that we ask is that the NEPA claim proceed to resolution as

19  quickly as possible.  The clients that Mr. Nagel -- have the

20  same interest in having that claim resolved.  They assert the

21  same claims, in addition to their medical monitoring claim.

22      Your Honor, I would respectfully say that the interest

23  of Fort Lee and its mayor, while aligned with the State of

24  New Jersey, deserve their own representation in an

25  environmental assessment and finding of no significant impact

1   that recognized Fort Lee as one of four specific cities in

2   New Jersey that are going to have adverse environmental

3   impacts but got no committed mitigation under this plan.  It's

4   one of the reasons why the environmental assessment was, on

5   its face, insufficient.

6          So I welcome Mr. Nagel side by side.  And his client

7   has a related, overlapping but independent interest in

8   explaining to you why this finding of no significant

9   environmental impact, despite the admitted impacts on Fort Lee

10  with no mitigation, vitiates this entire environmental review

11  as insufficient.

12         Thank you, Your Honor.

13         THE COURT:  You're welcome.

14         MR. CHERTOK:  Your Honor, may I speak very briefly?

15         THE COURT:  You may.  Approach the podium, Mr. Chertok.

16         Obviously something Mr. Mastro said, your need to

17  approach the podium and expand upon your momentary -- your

18  very brief agreement with Mr. Cumming and the Government's

19  position.  So have at it.

20         MR. CHERTOK:  We try to be brief but it's difficult.

21         Let me just make it clear, Mr. Mastro's statements

22  about the alleged lack of any mitigation in Fort Lee, those

23  are just wrong.  They are repeated throughout their papers,

24  and we just want to make sure the Court understands that we do

25  not -- we do not agree with his characterization of the

1    record, of the assessment, and of the finding of no

2    significant impact.  Thank you.

3          THE COURT:  You're welcome.

4          We are going to -- as with the motion to amend, I'm

5    going to reserve comment for a little while.  We're going to

6    proceed through the rest of the agenda.

7          Mr. Cumming, we have a challenge here with respect to

8    the administrative record.  Just let me, shall we say,

9    summarize what I think I understand the state of play to be.

10         There was a motion made back in October and granted to

11   exempt the department from filing the full and complete

12   administrative record.  Two days later you filed what appears

13   to be -- I don't know whether it's the full and complete or

14   the first part of what is a record index, which was followed

15   on by a supplemental filing which appears to have filed

16   something additional to the record index.

17         Our brief review of both of those documents, we're not

18   quite sure what the difference is and what changes were made,

19   but as you well know the first document is 175 pages and the

20   second document is 102 pages.  And the Court is dealing with,

21   as are the parties, somewhere in the range of 1,600 total

22   documents and 48,000 pieces of paper.

23         Now, the Court has very significant concerns, because

24   under the standard of review the Court is charged with

25   reviewing the administrative record.  And the Court is well

1  aware of the timeline.

2       But I'm one person with a small staff and we have, just

3  like everybody else, other things on our plate, though

4  everything gets the same level of attention and the Court has

5  the same understanding of the significance and importance

6  of all of its matters.

7       But this is a lot to digest, so the Court needs to

8  understand where you're coming from on this, whether there is

9  or is not agreement from the other parties; and, frankly,

10  it is a distinct possibility that we are going to spend some

11  time now to find a way to put the Court and the parties in a

12  position to understand what's in the administrative record.

13       Part of the Court's concern is that the plaintiffs'

14  briefing cites to documents by virtue of exhibits.  Your

15  briefing seems to be keyed to the record index.  Right?  And

16  the other parties' briefing I haven't examined in complete

17  depth.

18       The problem, very candidly, is if we're all referring

19  to the same documents in different ways, it's gonna be an

20  extraordinary expense of human capital, right, to try to make

21  sure that we're all talking about the right thing at the same

22  time.

23       So I'm not sure I have an answer right at the moment,

24  but I need education.  And I'm hoping that initially you'll be

25  able to shed some light on all of these challenges and

1    collectively we can figure out a solution.

2         With that prelude, Mr. Cumming.

3         MR. CUMMING:  Thank you, Your Honor.  I'm going to

4    preface what I think will be my ultimate suggestion, which is

5    that the parties work to compile and then file on the record a

6    joint appendix of the specific record documents that are cited

7    to in the parties' briefing.

8         THE COURT:  Okay.  That would be helpful.  Let me just

9    give everyone 30 seconds of background.

10        As you all know, I sit as a judge at the United States

11   Court of International Trade.  A large portion of our docket

12   involves the review of administrative record decisions by the

13   U.S. Department of Commerce and the United States

14   International Trade Commission.

15        We are very comfortable with processes that put the

16   Court and the parties in the best possible position to

17   understand what it needs to be looking at.  So if I ask you

18   some questions about your proposal, it's going to be coming

19   through that set of eyes and that perspective.

20        I'm not gonna prevent you from putting your suggestions

21   into play, but I may be making some suggestions that you

22   perhaps talk to your compatriots at the Department of Justice

23   who regularly litigate before us and who are used to compiling

24   large voluminous administrative records that focus the Court's

25   attention on the issues and the key relevant documents.

1          So with that as background, proceed.

2          MR. CUMMING:  So a bit of the history.  As you noted,

3     the record is extremely voluminous in this matter.  And some

4     situations in other cases where there are voluminous records

5     we have approached the matter with providing the Court with a

6     full record on a flash drive, which we're happy to do for

7     Your Honor here.  They were provided to magistrate judges and

8     prior judges on this case, and we are happy to make that

9     happen this week for Your Honor.

10          That being said, filing the full record on the docket

11    would have been unwieldy at best and clogged up the docket and

12    been administratively difficult, given the size of the

13    documents.

14          THE COURT:  Let me ask just a mechanical question.

15    Assuming that the Court asked for the entire administrative

16    record on a flash drive, I doubt seriously that you're gonna

17    get 1,600-plus documents and 48,000 pieces of paper on a

18    single flash drive.

19          So are we talking about 3 flash drives or 13 flash

20    drives?

21          MR. CUMMING:  I would need to consult with our support

22    staff, Your Honor.  I know we were able to successfully do it

23    in this matter, but I can't say I'm aware of the technical

24    details.

25          THE COURT:  Let's try to get that mechanically figured

1 out.  Because if you're giving it to the Court, we may have to

2 make copies or provide the same or similar kinds of access to

3 everybody through some central records secure site.

4      MR. CUMMING:  Your Honor, we served the record

5 electronically via a file-sharing site with opposing counsel

6 and intervenors' counsel.  We are happy to facilitate the

7 Court's access to that database, which might be the most

8 efficient way of doing things.

9      THE COURT:  Okay.  Continue, Mr. Cumming.

10      MR. CUMMING:  I'll note with the joint appendix that,

11 you know, a substantial amount of the record are the

12 environmental assessment and the draft versions of that.  The

13 environmental assessment is about 950 pages, give or take, but

14 I'd say only three to four chapters of that document are

15 actually in dispute in this matter.

16      Mr. Mastro might disagree with me, but I think that's a

17 pretty fair assessment.  There are three or four areas that

18 are in dispute.

19      One option would be to provide those full chapters to

20 the Court, along with, for instance, the introduction to the

21 environmental assessment.

22      THE COURT:  Okay.

23      MR. CUMMING:  Along with other documents cited by the

24 parties, so the Court would have the other documents cited

25 along with the full chapters of what I'll call the key

1  document in the case.

2      THE COURT:  I need you to continue to speak up,

3  Mr. Cumming.

4      MR. CUMMING:  Apologies, Your Honor.

5      To repeat, the Court would have access to, then, full

6  chapters of the key documents in the case as well as the other

7  individual one-off documents that are cited.

8      THE COURT:  So the environmental assessment, which is

9  950 pages, is a key document in any administrative record in

10  whatever form that's gonna be filed with the Court.  Correct?

11      MR. CUMMING:  Yes.

12      THE COURT:  What else?

13      MR. CUMMING:  What's called the finding of no

14  significant impact, that's the decision document that

15  summarizes the -- what I'm going to call the EA and provides

16  the final decision by the agency as to no significant impact

17  caused by the project.

18      THE COURT:  That document is roughly how big?

19      MR. CUMMING:  About 30 pages.  I might be wrong about

20  that.

21      THE COURT:  Okay.  What else?

22      MR. CUMMING:  There are a number of communications

23  between the parties and different agencies, such as between

24  the Department of Transportation and the EPA that were cited

25  to.  Those are fairly small in size, two to three pages.

1      There are, for instance, the State's comment letters on

2  the draft environmental assessment that are also, you know, a

3  handful of pages in length.

4      THE COURT:  Are these three, what I'll call categories

5  of documents, the lion's share of what is cited in the

6  Government's brief?

7      MR. CUMMING:  Yes, Your Honor.

8      THE COURT:  I will ask each side the same question.

9      So out of 47-, 48,000 pages, roughly somewhere in the

10  range of, I'll be generous, maybe 1,100, maybe even 1,500 on

11  the top end, would constitute the core of any documents that

12  are fully cited at this juncture in the parties' briefs.

13      Correct?

14      MR. CUMMING:  I believe so, Your Honor, yes.

15      THE COURT:  All right.  So if I understand you

16  correctly, what you are potentially suggesting is that the

17  Government will file a full and complete certified index of

18  every document in the record and will file a truncated version

19  of the record that would contain all documents that are in --

20  that are cited or potentially citable with respect to a brief

21  from any party in the case.

22      MR. CUMMING:  Yes, Your Honor.

23      THE COURT:  So that the 48,000 pages would be reduced

24  down to a focused, manageable size.

25      MR. CUMMING:  Yes, Your Honor.  As to your certified

1   index question, Your Honor --

2        THE COURT:  Yes.

3        MR. CUMMING:  -- what you referred to as the

4   supplemental index --

5        THE COURT:  Right.

6        MR. CUMMING:  -- that is the full, certified index.

7        THE COURT:  So instead of 175 pages or 176 pages, it's

8   now 102?

9        MR. CUMMING:  I'm sorry, Your Honor.  I don't

10  understand.

11       THE COURT:  There were two documents filed with the

12  Court.

13       MR. CUMMING:  Yes, Your Honor.

14       THE COURT:  One in October and one a couple of months

15  later.  The first one contains 176 pages in what appears to be

16  an Excel spreadsheet format, and the second one is 102 pages

17  in the same format.

18       Are you saying to me that it's the combination of the

19  two that now represents the, quote, certified index of all

20  documents?

21       MR. CUMMING:  No, Your Honor.  It is the latter, the

22  second page of the 102-page second filed document.  In the

23  process of adding documents as requested by plaintiffs, we

24  noticed there were inadvertently a number of duplicates which

25  were included in the initial filing, which we removed.

1          THE COURT:  So my question to you is:  The certified

2     index is now roughly 70 pages less than what was initially

3     filed, due to what you're referring to as "duplicate entries"?

4          MR. CUMMING:  Yes, Your Honor.

5          THE COURT:  So we've got one document to work off of.

6     I can ignore the October 27th filing.  The filing everybody

7     should be working off of is the -- I think it was a January

8     filing.

9          MR. CUMMING:  December 2nd, I believe.

10          THE COURT:  December filing, right.  That is the

11     102-page document?

12          MR. CUMMING:  Correct.

13          THE COURT:  So if there would be an argument that some

14     document that's not included in the slimmed-down, focused

15     version of the record that you would be giving the Court is

16     relevant to the Court's consideration, that document would be

17     found in the 102-page certified index.  Right?

18          MR. CUMMING:  Yes, Your Honor.

19          THE COURT:  Okay.  Very good.

20          Anything more, Mr. Cumming?

21          MR. CUMMING:  No, Your Honor.  Thank you.

22          THE COURT:  Mr. Mastro?

23          MR. MASTRO:  Yes, Your Honor.

24          THE COURT:  Your reaction?

25          MR. MASTRO:  My reaction, Your Honor, is that it's a

1  very constructive step to try to get this record down to its

2  essence.  Having been a former deputy mayor and a Southern

3  District executive at the U.S. Attorney's Office, I know about

4  the Government burying in a mountain of paper the real essence

5  of what they did or didn't do.

6      Your Honor, I think that at its essence you will be

7  able to see what the Government did or didn't do here.  I will

8  add, the draft environmental assessment is also key here,

9  because it's what happened between the draft and the final

10 environmental assessment and the comments that were made and

11 not responded to or the changes that were made between the

12 draft and the environmental assessment that will inform the

13 arguments that are made here about the gross deficiencies in

14 the final environmental assessment and a finding of no

15 significant environmental impact on the first of its kind

16 unprecedented congestion pricing scheme in America.

17     Your Honor, I would say that we're happy to work with

18 the Government to distill that record down, and we'll do that

19 very promptly.  I think that much of what was said overlaps

20 with our thinking, besides the draft EA and some additional

21 comments.

22     There's also e-mails, invitations, meeting notes that

23 go to the heart of one of our claims about New Jersey.  Even

24 though an interested stakeholder entitled underneath but too

25 early at the outset, participation in this process, it just

1  wasn't included the way it should have been included.

2      THE COURT:  So, Mr. Mastro, my belief is, what I hear

3  you saying is that there are documents that exist in the

4  administrative record that you believe the Government should

5  have considered and did not.

6      And I trust that that will be present in your

7  affirmative argument, either in your brief or before the

8  Court, based upon the standards associated with the judicial

9  review of an administrative record decision under the APA.

10      MR. MASTRO:  Precisely, Your Honor, and I just pointed

11  out that that's what we'll ask the Government to add to the

12  slimmed-down version of what really matters in the

13  administrative record.

14      THE COURT:  Okay.  Thank you, Mr. Mastro.

15      MR. MASTRO:  Thank you, Your Honor.

16      THE COURT:  Mr. Nagel.

17      MR. NAGEL:  Yes, Judge.  I support the State of

18  New Jersey's position on this.  I don't have anything to add

19  and --

20      THE COURT:  Thank you, Mr. Nagel.  I appreciate it.

21  Brevity is also much appreciated.

22      Mr. Chertok.

23      MR. CHERTOK:  Thank you, Your Honor.

24      We concur with the Government's suggestion.  We have

25  discussed that approach with them previously and will

 1  obviously work with them.

 2       I will note that Mr. Mastro can't resist argument on

 3  the merits.  I would just say that the State of New Jersey is

 4  like the theater critic:  Easy to pick apart the play after

 5  the fact when you don't choose to participate in its writing.

 6       Thank you, Your Honor.

 7       THE COURT:  Do any of the amicus wish to be heard?

 8       MR. OTIS:  No thank you, Your Honor.

 9       MR. REICHMAN:  No, Your Honor.

10       MR. MATEEN:  No, thank you, Your Honor.

11       THE COURT:  All right.

12       Mr. Cumming and Mr. Chertok, Mr. Mastro and

13  Mr. Nagel -- you can stay at counsel table.

14       Obviously there was some discussion that needs to be

15  had to try to figure out just exactly what needs to go in the

16  slimmed-down record.  I appreciate all of your good faith.  I

17  would hope that there are not any arguments that break out

18  over whether something should or should not be included.

19       If there is for some reason a dispute, then I'm

20  going to say to you, talk to the Court.  And if it means you

21  have to make a phone call to Ms. Creegan and I have to decide

22  it 10 minutes later after we arrange a conference call, so

23  be it.

24       Let me also suggest to you that if you cannot easily

25  come to an agreement, the Court will be left with one of a

1    couple of choices:  I'm going to make you come here and talk

2    to me and I'm gonna figure it out.  I am gonna make you talk

3    to Judge Wettre.  The first two choices, neither of which are

4    terribly good use of judicial resources, or, candidly, I'm

5    going to appoint the master and the master is gonna work it

6    out amongst all of you.

7         So I strongly suggest that you find a way to work

8    cooperatively.  I have no doubt that you will, right, but we

9    need to get to yes on this.

10        Now the question is, I have no earthly idea what your

11   schedules are.  I know we're heading towards the middle of

12   February, and that tends to be vacation time for a whole bunch

13   of people, particularly if you are an age where you have

14   school-aged children.

15        So my question is:  How long is this gonna take you?

16   Because you're all interested in my getting to the merits.

17        Mr. Mastro, you're not in control of this issue.

18        MR. MASTRO:  That's what --

19        THE COURT:  Mr. Mastro, Mr. Cumming is in control.

20   Right?  It's his record; it's his document.

21        So the question is, Mr. Cumming, have you thought about

22   this and do you have a sense of timing?

23        MR. CUMMING:  Thank you, Your Honor.

24        I think if we could have proposals from the other

25   parties by the end of the week -- we do this in other cases --

```
1    I think we could -- I think two weeks -- two to

2    two-and-a-half weeks is a reasonable time to get the appendix

3    filed.

4         THE COURT:  Okay.

5         Mr. Mastro, can you -- let me hear what you have to

6    say.

7         MR. MASTRO:  Your Honor, we can certainly do that.  I

8    intend this to be a completely amicable process where we

9    simply designate things so that you have the record that you

10   need.

11        We can do this by Friday, for sure.  And I would hope

12   that it would then be something that could be gotten to you

13   sooner than two-and-a-half weeks.

14        THE COURT:  Well, that's fine.  I always plan for the

15   worst and hope for the best, Mr. Mastro.

16        MR. MASTRO:  I hope for the best, too, Your Honor.

17        THE COURT:  I've been around the block long enough.

18   Despite the fact that I may not have white or gray hair

19   completely on my head, I've been around for a while.  I guess

20   I have good genes.  What can I tell you.

21        MR. MASTRO:  Better than mine, Your Honor.

22        THE COURT:  Mr. Nagel, you okay with this?

23        MR. NAGEL:  I am, sir.

24        THE COURT:  Thank you.

25        Mr. Chertok?
```

1          MR. CHERTOK:  Yes, Your Honor.

2          THE COURT:  Amici, we're all good?

3          MR. OTIS:  Yes.

4          MR. MATEEN:  Yes, Your Honor.

5          MR. REICHMAN:  Yes.

6          THE COURT:  Mr. Cumming, you're on the clock.

7    Proposals by the end of this week.  Mr. Cumming, I will give

8    you until next Tuesday to alert the Court, based upon those

9    proposals, a date certain by which you will file the record.

10         MR. CUMMING:  Thank you, Your Honor.

11         THE COURT:  Now I'm gonna ask a question and

12   potentially have a caveat to what I just said, all right.  The

13   question becomes -- is how to align the documents in a

14   numbering fashion that makes sense for everybody to understand

15   how to use the documents.

16         So, Mr. Cumming, help me understand.  I'm looking at

17   the 102-page document.  I've got a copy of the first roughly

18   20 pages of the document here.

19         In terms of assembling the slimmed-down version of the

20   record, what numbering system are we gonna use for the

21   documents?  Are we gonna use the Bates stamp numbering, or are

22   we gonna use the row number?

23         How are we gonna figure out just exactly what we have

24   in the document and to utilize that numbering system for the

25   purposes of citation with respect to any briefs?

1      I'm more than happy to use the row number, right.  I'm

2   more than happy to use the Bates stamp number.  I always try

3   to operate by the KISS method, so using the simplest, most

4   direct numbering system is probably gonna help.

5      You may not have an answer to that.  You may have to

6   talk to your logistics people out in Colorado.

7      MR. CUMMING:  My suggestion, Your Honor, is to use the

8   existing Bates numbers.

9      THE COURT:  Okay.

10     MR. CUMMING:  So what we would provide to the Court

11  would be the currently Bates-stamped documents but only the

12  sub-set identified by the parties.  That will, I think, create

13  the least work for everyone, given most briefing refers to

14  those numbers.

15     THE COURT:  Okay.

16     Anybody have any other thoughts or comments?

17        (No response.)

18     THE COURT:  Silence is golden.  That's good.

19     Now, I'm gonna leave it to the parties to work their

20  way through just exactly how many pages of a lengthy document,

21  I will leave it to your good discretion and judgment for you

22  to figure out what is a lengthy document, but let's assume,

23  for the sake of argument, we have a 125-page document, and,

24  candidly, when you review your briefs, you realize that pages

25  23 to 47 of a 125-page document are the relevant things that

1   you want me to look at.

2       You have to choose.  Are you gonna give me the 125-page

3   document and everybody else the 125-page document, or are you

4   going to give me pages 23 to 47 along with whatever other

5   additional pages I need to understand context, whether that's

6   from the introduction or the beginning of a particular section

7   in the document?

8       I'm gonna leave it to your good discretion.  I would

9   urge you that the practice before the CIT tends to be a

10  contextual one, right.  But if you believe that I need all

11  125 pages, trust me, we're not gonna get into a motion

12  practice, right, an argument back and forth, right.  Just be

13  smart and collegial and cooperative about what you're giving

14  the Court.

15      If you think that other pages in the document or some

16  other document that tracks from what is said on pages 23 to

17  47, have at it.  I'm more than happy to look at it.  Okay?

18      Any questions?

19          (No response.)

20      THE COURT:  Understood, plaintiffs?

21      MR. MASTRO:  Yes, Your Honor.

22      THE COURT:  Government?

23      MR. CUMMING:  Yes, Your Honor.

24      THE COURT:  MTA?

25      MR. MASTRO:  Yes, Your Honor.

```
 1          THE COURT:  Amici?

 2          MR. OTIS:  Yes.

 3          MR. MATEEN:  Yes.

 4          MR. REICHMAN:  Yes.

 5          THE COURT:  Mr. Cumming, once we figure all that out,

 6    we will figure out then whether it will be in hard copy filed

 7    on CM/ECF or we will do it on electronic form with either a

 8    central place for everybody to go or you'll provide flash

 9    drives to everybody in a secure manner.

10          MR. CUMMING:  Yes, Your Honor.

11          THE COURT:  Now we got the next challenge, right.

12    We're gonna have a single, slimmed-down administrative record

13    containing the relevant documents that the Court needs to

14    look at.  You all have submitted briefs and you've cited these

15    documents in a variety of ways.

16          I am more than happy to give you one week to resubmit

17    your briefs using a single, uniform set of citations to the

18    slimmed-down administrative record.

19          Comments, plaintiffs?

20          MR. MASTRO:  Fine by me, Your Honor.

21          THE COURT:  Mr. Nagel?

22          MR. NAGEL:  Fine, sir.

23          THE COURT:  Good.

24          Mr. Cumming?

25          MR. CUMMING:  (Nodding head.)
```

1          THE COURT:  Mr. Chertok?

2          MR. CHERTOK:  We will address that, Your Honor, in the

3   same way.

4          THE COURT:  Mr. Chertok, it's real easy; yes or no?

5          MR. CHERTOK:  Yes.

6          THE COURT:  Amici?

7          MR. OTIS:  Yes.

8          MR. MATEEN:  Yes, Your Honor.

9          MR. REICHMAN:  Yes.

10         THE COURT:  Very good.  I will issue an appropriate

11  text order once I received the slimmed-down administrative

12  record.  I want to examine it first before I start the clock

13  running on anyone, okay.  So just stay tuned.  Along the way

14  there will be orders giving appropriate instructions.  Okay.

15         We're doing pretty well on time.  In respect to the

16  court reporter, I will give us about -- it's two minutes after

17  the hour, I'm going to give us an eight-minute stretch break.

18  We'll reconvene at ten minutes after the hour.  You don't have

19  to run.

20         (Recess taken.)

21         (All parties present.)

22         THE COURT:  Be seated.

23         Mr. Chertok, Mr. Mastro, I wish to see both of you.

24         (Off the record.)

25         THE COURT:  Ladies and gentlemen, I want to thank you

1   for your cooperation so far.  We're making good progress on

2   our agenda.

3        Mr. Chertok, my assumption is that the next item

4   principally applies to you.

5        And then, Mr. Cumming, I'll hear from you about the

6   Federal Highway Administration.

7        What I want to do here on this item -- please approach.

8   I need to get a background understanding as to what the

9   timeline is, because I need to know where we are over the next

10  couple of months in order to work backwards to figure out when

11  we need to schedule oral argument.  I will touch on that when

12  we get down to the last item.

13       So, Mr. Chertok, if you would be so kind as to help me

14  understand what the MTA timelines are and the Triborough

15  Bridge and Tunnel Authority, et cetera.

16       MR. CHERTOK:  As you heard, the Traffic Mobility Review

17  Board has issued a recommendation.  There are hearings

18  scheduled for late this month, early next month.  And then

19  after those hearings are concluded and comments received and

20  considered, the TBTA board will make a decision on the final

21  tolling.

22       THE COURT:  So help me understand here, Mr. Chertok.

23  So the TMRB has issued its recommendation.

24       MR. CHERTOK:  Correct.

25       THE COURT:  It's going to have a series of hearings,

1    which you said are scheduled later this month and into March.

2    Correct?

3          MR. CHERTOK:  The TBTA -- after the TMRB issued its

4    recommendation -- I may have misspoke.  The TBTA then issued

5    the proposal based upon the TMRB recommendation.  And the TBTA

6    will hold hearings late this month, early next month.

7          THE COURT:  Do you have a sense as to what the last

8    possible date in March those hearings will be held?

9          MR. CHERTOK:  The hearings, if I recall, early March on

10   March 4th.  There are hearings on February 29th, March 1st,

11   and two on March 4th.

12         THE COURT:  Okay.  March 4th is the last hearing.

13         What happens then after the hearings?

14         MR. CHERTOK:  The TBTA board will obviously consider

15   the record and make a determination adopting a final tolling

16   structure, with the word "final" --

17         THE COURT:  Do you have any sense as to how long after

18   March 4th that process will take?

19         MR. CHERTOK:  I was going to say, put the word "final"

20   in quotes because I'll explain what happens later, but at this

21   point it's expected not before late March.  Because until

22   there are hearings and comments considered, it's hard to have

23   an exact time frame.

24         THE COURT:  I'll say March 31st, just as to put a stake

25   in the ground in terms of concreteness.

1        MR. CHERTOK:  Sure.  That's anticipated to be about the

2    earliest a decision would be made.

3        After the TBTA board adopts a tolling structure, then

4    the next step is a reevaluation by FHWA of that final tolling

5    structure to ensure that it is -- the effects of that

6    structure are consistent with the effects set forth in the

7    environmental assessment.

8        THE COURT:  Okay.  Mr. Chertok -- Mr. Cumming, pay

9    attention.  The same question is going to be asked to you.

10        Is it your understanding that that reevaluation -- the

11    time period for that reevaluation is governed by statute or

12    regulation and, if so, what is the time period associated

13    with --

14        MR. CHERTOK:  I do not believe it's governed because it

15    depends on the extent of any reevaluation.  Our best guess is

16    April/May time frame but that's, frankly, a best guess and we

17    can't determine the time frame for FHWA.

18        THE COURT:  Right.

19        MR. CHERTOK:  That's in their control.

20        THE COURT:  Assuming that FHWA -- I'm just going to

21    pick an arbitrary date, somewhere between April and May, I'm

22    going to say April 30th and May 1st, they make the decision,

23    then what?

24        MR. CHERTOK:  The next step is to have an agreement

25    with FHWA -- well, let me back up.

1    Assuming the reevaluation concludes that the adopted

2 tolling structure is consistent with the EA and there's no

3 further NEPA evaluation that's required, then the next and

4 last step is an agreement between the project sponsors, which

5 are MTA, New York State DOT, and New York City DOT, with FHWA.

6 After that, the tolling could commence.

7    THE COURT:  What is your sense of how long it may take

8 to complete that agreement process?

9    MR. CHERTOK:  It's not clear how long it will take.

10 Again, it's probably in the May time frame.  But our estimate

11 is that the tolling would not commence prior to mid-June,

12 which is the end date I think you're looking for, to get a

13 sense of when tolling would start or could start, I should

14 say, because there are variables here.

15    THE COURT:  Nina, where are you?

16    Just to make sure everybody is on the same page,

17 Mr. Chertok, I've asked my intern, she's going to write up on

18 the sheet.  I'm gonna repeat some things, give her

19 instruction.  You're gonna confirm as we go along.

20    TBTA hearings February early March, end date March 4th.

21    (Brief pause.)

22    THE COURT:  We okay so far, Mr. Chertok?

23    MR. CHERTOK:  Yes.  I want to note that there is a

24 public commentary, but that doesn't affect the time frame I

25 just provided.

1      THE COURT:  Okay.  TBTA final decision, somewhere in
2  and around March 31st.  FHWA reevaluation, April/May.
3          (Brief pause.)
4      THE COURT:  May I ask somebody to help her.  We've got
5  Scotch tape.  We're going to post them on the door over there.
6          (Brief pause.)
7      THE COURT:  Agreement amongst the sponsors sometime
8  later in May.  Tolling plan, mid-June.
9      Did I recite that correctly, Mr. Chertok?
10     MR. CHERTOK:  Yes.
11     THE COURT:  Anything that you want to add that we need
12 to note?
13     MR. CHERTOK:  These are estimated dates and obviously
14 they're anticipated, so I can't predict what will happen.
15     THE COURT:  It may move a little quicker; it may move a
16 little slower.
17     MR. CHERTOK:  Exactly.
18     THE COURT:  Thank you.
19     Mr. Cumming, I want you to talk to us about your
20 understanding about any of these events or time periods.
21     MR. CUMMING:  A couple quick --
22     THE COURT:  Hold on, Mr. Cumming.
23     Mr. Chertok.
24     MR. CHERTOK:  Yes.  Let me just...the tolling plan is
25 not -- the last entry probably should be tolling may commence.

1  The agreement was --

2        THE COURT:  Implementation date.  Implementation date

3  is mid-June.

4        MR. CHERTOK:  Right, not May or June.

5        THE COURT:  Mid-June.

6        MR. CHERTOK:  Right.  Thank you.

7        THE COURT:  Mr. Cumming, you're up.

8        MR. CUMMING:  Just a couple quick points, Your Honor.

9  And I don't know that I can really speak to the timeline

10  because it triggers off of so much that's in MTA.

11        THE COURT:  I got it.

12        MR. CUMMING:  The reevaluation is a process to

13  determine whether the determinations in the FONSI remain

14  valid.  On one hand the agency could determine, yes, they do

15  remain valid and the project proceeds.  There is a possibility

16  the agency decides to repair a supplemental NEPA document

17  which would push the timing up considerably.

18        THE COURT:  Okay.

19        MR. CUMMING:  The second, the tolling implementation --

20        THE COURT:  The MTA -- no.  The FHWA would prepare a

21  revised NEPA document which would then push the dates out.

22  Correct?

23        MR. CUMMING:  Correct.

24        THE COURT:  Okay.

25        MR. CUMMING:  Second, the tolling implementation

1  depends on an agreement between the Department of

2  Transportation and the project sponsors.  My understanding is

3  that's an agreement that has to be approved at fairly high

4  levels at the Department of Transportation.  So the timing of

5  that is, I think, quite variable.  I have not heard anything

6  that makes me question Mr. Chertok's timeline.

7         THE COURT:  Thank you.

8         Mr. Mastro, any comments about what we perceive the

9  timeline is?

10         MR. MASTRO:  Your Honor, we obviously can't speak to

11  their timeline.

12         THE COURT:  Right.

13         MR. MASTRO:  Your Honor asked certain questions, and I

14  think the answers to them were informative.  Your Honor asked

15  whether the reexamination, as it was referred to, whether

16  that's under a governing statute.

17         Well, Your Honor, the reason why there isn't a

18  governing statute on that point is because one wouldn't

19  ordinarily do an environmental review without knowing what the

20  product was that you were supposed to be reviewing.  But here

21  the cart was put before the horse, and now we're trying to

22  catch up after the fact because they didn't know what the

23  final product was.

24         Ordinarily you have a proposal, you know what you're

25  evaluating, and you finish your environmental assessment.

1  This is completely backwards.  That's one of the core of our

2  complaint.

3          THE COURT:  All right.  I got that.

4          MR. MASTRO:  Having said that, Your Honor, I can't

5  comment on the different pieces, other than to say the

6  reexamination required to be done only in a few weeks on what

7  appears to be a completely new proposal, not like any of the

8  other things that were considered before, speaks of the

9  pre-determined outcome as one of the --

10         THE COURT:  Let's hold your commentary to the merits

11 of --

12         MR. MASTRO:  I understand.

13         THE COURT:  All I'm asking here, Mr. Mastro, is your

14 understanding, as best you know it, any different than

15 arguably what is outlined here?  And is there anything else

16 the Court needs to be aware of when it looks at the calendar

17 to try to figure out how to give you what you are here for,

18 which is an argument on the merits and a decision by me?

19         MR. MASTRO:  Completely right, Your Honor.  The only

20 thing I would say is that the MTA has been taking the steps

21 that it's been widely reported to be able to implement

22 already, so that could happen at the flick of a switch.  They

23 said publicly they're 60 to 70 percent of the way there

24 already.

25         So I don't know whether it will take that long, but I

```
 1   cannot dispute the timeline because we're not on the inside.
 2   I can only say they are getting ready to just be able to flick
 3   a switch --
 4           THE COURT:  Now, trust me, Mr. Mastro, we all know the
 5   last 10 percent is the longest distance.
 6           MR. MASTRO:  Very well put, Your Honor.  Can't argue
 7   with that.
 8           THE COURT:  Okay.
 9           Mr. Nagel, do you have any information that would lead
10   you to believe that there's anything up here that we have not
11   either captured or that we are not aware of in terms of a
12   rough or approximate time frame?
13           MR. NAGEL:  Just one follow-up question to Mr. Mastro,
14   and that's if Your Honor would kindly clarify for us the
15   switch -- this move, the switching.  Okay.
16           I'd like to know when it is the technology and the
17   construction will be done so that a car will be charged the
18   extra toll.  Is it mid-June or is the technology construction
19   another month or two?
20           If Your Honor would kindly do that for us, I think that
21   would help us.
22           THE COURT:  Okay.
23           Mr. Chertok, to the degree that you know, what did you
24   mean by implementation by mid-June?
25           MR. CHERTOK:  Let me try to clarify that.
```

1          Implementation means the tolling starts.  Mr. Mastro

2     referred to the installation of infrastructure which would

3     be -- which is typically, you know, on city poles and light

4     poles and streetlights.

5          And regardless of what ultimately -- what tolling

6     structure is adopted by the TBTA board and thereafter, that

7     infrastructure would be used.  It's installed but it can't

8     start the tolling before all those agreements are in place.

9     So --

10         THE COURT:  Well, Mr. Chertok, I'm going to ask you a

11    variation on the theme.  I understand about the

12    infrastructure, right, the physical equipment to either

13    capture E-ZPass readers or license plates, right, in order to

14    determine the assessment of a toll.

15         My assumption is that there's a fair amount of computer

16    programming that is involved in this process.  All right.

17         Do you have any sense that the MTA knows, assuming that

18    there's -- well, different scenarios.  Assume there's no

19    change, assume that there's a modest change, assume that

20    there's a significant change.

21         Is the programming that's necessary in order to make

22    the system effective, has that been accounted for in these

23    timelines?

24         MR. CHERTOK:  I believe it has, Your Honor.

25         THE COURT:  Okay.

1          MR. CHERTOK:  Let me just correct -- you asked me

2     whether there was a specific time frame for FHWA to do the

3     reevaluation.  Mr. Mastro re-framed that as I indicated there

4     was not a statute.

5          There is in fact a regulation that governs

6     reevaluations as standard operating procedure but it's not a

7     specific timeline.  I just wanted to clarify that to the Court

8     because projects typically --

9          THE COURT:  I did not perceive that you were saying

10    much otherwise.

11         MR. CHERTOK:  Thank you.

12         THE COURT:  Mr. Nagel, did I ask the question that

13    answers your concern?

14         MR. NAGEL:  Thank you, Judge.  You did.  I'm assuming

15    that the answer that was set forth by counsel means that in

16    mid-June the City will be able to actually charge the

17    increased toll, that we do not have a lag time.

18         THE COURT:  Mr. Nagel, I'll respond to you this way:  I

19    asked Mr. Chertok about implementation.  That means the system

20    goes live.

21         MR. NAGEL:  Okay.

22         THE COURT:  I believe what Mr. Chertok said was

23    mid-June the system will be live.

24         MR. NAGEL:  Fine.  Thank you, Judge.  That answers the

25    question.

1          THE COURT:  Very good.

2          MR. CHERTOK:  Your Honor, I think I said no earlier

3    than mid-June.

4          THE COURT:  Yes, sir.

5          MR. CHERTOK:  I just wanted to make sure there was no

6    confusion.  Thank you.

7          THE COURT:  But the point in that regard, Mr. Chertok,

8    is I now know that there's a potential stake in the ground for

9    somewhere in mid-June.  So if I'm going to give you all an

10   opportunity to argue to me on the merits and I'm going to make

11   a decision, I now have a date in the calendar that I have to

12   bear in mind.

13         If it turns out that the process slows down, okay.  But

14   my sense is the sooner you all get a decision from me, the

15   better all -- you're gonna like it.  I now know that I'm

16   looking at mid-June as a possible date that I have to be very

17   conscious of with respect to setting timelines.

18         Mr. Mastro, if you would be so kind.

19         MR. MASTRO:  Certainly, Your Honor.

20         THE COURT:  I know what's in the papers, right, but I

21   just want to make sure -- Mr. Nagel, I'm coming to you next.

22         I want to make sure I fully understand what we're doing

23   here, right, because understanding the remedies and depending

24   upon how long it takes us to get to my endpoint may have an

25   impact on certain things that either you may be asking or the

1    Court may do sua sponte.  I just want to make sure I got it

2    straight.

3         MR. MASTRO:  Certainly, Your Honor.

4         THE COURT:  We're dealing with an APA action.  Correct,

5    Mr. Mastro?

6         MR. MASTRO:  Absolutely.

7         THE COURT:  Under 5706, the Court has certain remedies

8    that it can grant.  Correct?

9         MR. MASTRO:  Correct, Your Honor.

10        THE COURT:  In no particular order and no particular

11   order of importance, I want to make sure that I fully

12   understand what you're looking for.

13        Number one, my sense is you're looking for some form of

14   declaratory judgment from the Court as to whether the tolling

15   scheme does or does not meet the standards and comport with

16   the requirements under the various statutes.

17        Correct?

18        MR. MASTRO:  Completely correct, Your Honor.

19        THE COURT:  If I decide that the plaintiff is entitled

20   to relief, you are then looking for some form of injunctive

21   relief, right, to require the defendants to do certain things

22   in compliance with that declaratory judgment.

23        MR. MASTRO:  Correct, Your Honor.

24        THE COURT:  Hypothetically, if I decide that there is

25   a need for a remand to the agencies, either because the

1  explanation was not adequate, there was not reasoned

2  decision-making, or there was some procedural defect and they

3  need to do it again, okay, what is your sense of what would be

4  an appropriate time period?

5       You may not need to answer this question today, but

6  you're going to need to think about it.  Because when we get

7  to the argument on the merits, I'm gonna need to have a sense,

8  right, of what my different dispositional paths may be.

9       MR. MASTRO:  Certainly, Your Honor.

10      THE COURT:  I didn't say declare, right -- I didn't say

11 declare, right, the FONSI unlawful.  I didn't say remand back

12 for the purposes of conducting an environmental impact study.

13 Those are slightly different things, right.

14      But if I can't come to a decision because certain

15 things may be lacking that I need further explanation or

16 procedural boxes need to be checked, right, I need to have a

17 sense of what is a reasonable time period through the eyes of

18 the plaintiff.

19      You may or may not be prepared to answer that question

20 today.  I don't necessarily need you to answer it today, but I

21 need you to think about it.

22      Obviously, if I declare the FONSI unlawful or tell them

23 to go back and do an environmental impact study, those things

24 do not happen in a relatively short period of time.  They

25 don't happen in 60 or 90 days.

1          So I need to understand, right?  Because, trust me,

2     I do not want this litigation to be around when I become a

3     great-grandfather.  I only have a 5 1/2-year-old and a

4     20-month-old as grandchildren.

5          MR. MASTRO:  Well, Your Honor, I don't want the

6     litigation to be around when I become a grandfather, and my

7     daughter is not even married yet.  But in any event,

8     Your Honor has summarized it so well.

9          When I'm representing or appearing on behalf of the

10    government, I always like to say that I'm ready.  I will give

11    you a fuller answer when we reconvene on the merits argument.

12         But I will say you hit on a crucial point, which is we

13    are asking ultimately that you declare that a FONSI was

14    unlawful and an EIS has to be performed under these

15    circumstances for an unprecedented once-in-a-lifetime

16    congestion pricing scheme.  That's never happened before in

17    our country.  That's obviously the ultimate relief I'm

18    going to be arguing for.

19         On the lesser potential remedies Your Honor describes,

20    I will be prepared to give you our sense of what it would

21    take, but of course part of that depends on them, too.

22         THE COURT:  I got it.  What's good for goose is good

23    for the gander.  Mr. Cumming and Mr. Chertok are going to have

24    to answer the same questions.

25         MR. MASTRO:  Understood.  I appreciate that.

1           THE COURT:  Don't run away yet.

2           MR. MASTRO:  I never run away.

3           THE COURT:  I am fully aware of the time pressures

4    associated with this case, and I am fully aware that, shall we

5    say, certain forces may be at play as the calendar days get

6    torn off for plaintiff or plaintiffs to decide to run into

7    court and seek interim interlocutory injunctive relief.

8           I'm gonna provide you with an admonition.  I can't tell

9    you what to do on behalf of your clients.  I am fully aware of

10   the calendar.

11          I would strongly urge you that if you are getting the

12   sense that you may have to do that, that before you do

13   anything, you request a conference with the Court.  Because I

14   would rather spend our time potentially looking at an

15   agreed-upon injunction for a very modest period of time,

16   depending upon where I am in the dispositional path.

17          And here is the deal, folks:  I'm but one person with a

18   relatively small staff.  You got two choices, all right.  I'm

19   more than happy to multitask, but if you're asking me to do

20   two major things at the same time, something is gonna give,

21   right.

22          If you want me to spend my time providently and

23   usefully getting to the merits, do not create distractions

24   that take away from my ability to do that.  I can't forbid you

25   from doing it, right.

1        If you feel you need to do it because it's in the best

2   interest of your clients, do it; but know full well, right,

3   I've only -- there's only so many hours in the day that I can

4   give attention to your matters.

5        I'm happy to try to work things out in a reasonable,

6   logical manner to serve the best interests of justice and the

7   best interests of the parties.  Do not make me crazy.  Okay?

8   It's not going to be a good use of anybody's time.  Got it?

9        I know the pressures are gonna come from the

10  politicians and others because they're gonna get concerned as

11  the calendar days get pulled off as we get towards May.  I am

12  well aware of those pressures, and I will do everything that

13  I can to keep you abreast of what I think the appropriate

14  timeline is, including being self-aware enough that -- let's

15  assume for the sake of argument day one is June 5th.  I cannot

16  issue my opinion on June 4th.  That does not give the parties

17  enough time to digest what I'm gonna say and to take steps

18  necessary to protect themselves.

19       Trust me, I am well aware of the calendar.  Got it?

20       MR. MASTRO:  Your Honor, I got it.  I see the very

21  constructive way you brought us together today to get this

22  case moving.  Appreciate it.  Not my first rodeo.  The last

23  thing in the world I want to do is something that drives you

24  crazy.  Maybe the FHWA and MTA is a different story.

25       THE COURT:  I would treat everybody the same,

1  Mr. Mastro.

2       MR. MASTRO:  But, Your Honor, I just wanted to say I

3  think, as the magistrate judge knows as well, we have

4  approached this case from the beginning to try to not have to

5  make emergency applications, to try to have it in a posture

6  like it is right now where it's fully submitted and ready to

7  be heard on the merits.

8       The NEPA claim is the core claim.  Even today I have

9  emphasized that's the goal, to get that decided paramount

10  above all else as quickly as possible.  So thank you.

11       THE COURT:  Mr. Mastro, my comments were to give you

12  that comfort and assurance that I got it and I know what's

13  utmostly important in the minds of all the litigants.

14       MR. MASTRO:  And I really appreciate it, Your Honor.

15  Thank you.

16       THE COURT:  Mr. Nagel.

17       MR. NAGEL:  Thank you, Judge.  I completely concur with

18  Mr. Mastro.  The way I read the chess board, Judge, is that

19  the disposition of the cross-motions for summary judgment will

20  really give us a template, will give all parties a heads-up in

21  terms of where we're going.

22       In the event both are denied and we're into a discovery

23  phase, then the injunctive relief overlay is an issue we're

24  going to have to consider.  But from my shoes, since -- even

25  if we filed an application for an injunctive relief, you would

1   have to deal with likelihood of success which gets into the

2   underlying merits that Your Honor is going to decide on

3   cross-motions.

4          I'm very happy to let it play exactly the way

5   Your Honor has outlined it in view of the timeline.

6          THE COURT:  Mr. Nagel, I appreciate that very much.  I

7   am a tad concerned about one thing that you said, and that is

8   if I deny the cross-motions, it gets us into a discovery

9   phase.  You gotta help me out here.

10         This is an administrative record case.  My

11  understanding of the law is that there are very few exceptions

12  to allow de novo discovery in an administrative record

13  situation.

14         What are you contemplating?

15         MR. NAGEL:  I will modify that.  I don't know whether

16  this case will fall into those limited exceptions.  I'm

17  broad-stroking now.

18         THE COURT:  Okay.

19         MR. NAGEL:  To that extent I agree with Your Honor.

20  I'm not really prepared today to argue exceptions, but my

21  concern is I think Your Honor's concern.  I don't intend to

22  inject an injunctive action on top of what's already pending.

23         THE COURT:  Thank you so much.  I appreciate it.

24         Your class action issues and your medical issue is

25  something separate and apart, Mr. Nagel.

1      MR. NAGEL:  That's correct.

2      THE COURT:  We'll deal with those procedurally and

3  remedy-wise at an appropriate point in time.

4      MR. NAGEL:  Right.

5      THE COURT:  Mr. Cumming, take a deep breath.  Relax.

6  Go ahead.

7      MR. CUMMING:  I think Your Honor summarized the options

8  on remedy well.  I would note that we frequently ask for the

9  option of briefing on the specific remedy on remand and would

10  reiterate --

11      THE COURT:  Briefing on the merits on remand or

12  briefing on the scope and time period of remand?

13      MR. CUMMING:  Both, Your Honor.  There are situations

14  where we would like the option of briefing whether vacatur is

15  appropriate or whether remand without vacatur is appropriate,

16  depending on an unfavorable ruling.

17      THE COURT:  Well, I'm going to suggest to you,

18  Mr. Cumming, that you need to think about that now.  At the

19  appropriate period in time I will entertain a request.

20      MR. CUMMING:  Thank you, Your Honor.

21      THE COURT:  Mr. Chertok.

22      MR. CHERTOK:  Yes, Your Honor.

23      THE COURT:  Any comments?

24      MR. CHERTOK:  I think the only comment is if everyone

25  wants to get a decision on the merits as soon as possible,

1   then having a motion to amend the complaint now in the middle

2   of this seems to be something that would interfere with that,

3   and that motion could be deferred until after the NEPA

4   decision is made or certainly later in time that it would not

5   impede the quick and expeditious decision on the core NEPA

6   issue, which we agree is the core issue.

7          THE COURT:  Okay.  Anything further, Mr. Chertok?

8          MR. CHERTOK:  No, nothing further.

9          THE COURT:  Thank you, sir.

10         All right, ladies and gentlemen, we're at that point in

11  time.  Pull out your cell phones, pull out your calendars, and

12  let's talk real dates.

13             (Brief pause.)

14         THE COURT:  I'm going to work off of this rough

15  timeline.  I'm gonna assume for the sake of argument, right --

16  before I can speak...

17             (Brief pause.)

18         THE COURT:  I'm gonna assume for the sake of argument

19  that the time to flip the switch and go live is somewhere in

20  and around June 15th, which turns out to be a Saturday.  That

21  means you're gonna need for me to issue a decision sometime

22  before that date which will give you a bit of time to digest

23  what I've said and potentially take any actions that serve the

24  best interest of your clients, running the gambit from motion

25  for re-hearing, filing an appeal, potentially seeking

1   emergency relief on appeal, whether it's before me or before

2   the Third Circuit.

3       So that means I'm gonna be under some constraint to at

4   least target to give you an answer sometime before June 15th

5   that allows you to have a reasonable period of time to digest

6   what I've said and do what you believe is necessary.  That

7   means, for all intents and purposes, I'm gonna have a window

8   of time starting the middle of this month through sometime in

9   May.

10      I'm gonna need a period of time in which to draft an

11  opinion, make sure that it's decision ready and appropriate to

12  release, however many weeks that's gonna take.  So that pushes

13  us now back out clearly to -- through the month of May into

14  perhaps sometime in April.

15      We're coming up on President's week, and I'm sure that

16  there are folks who have plans.  My calendar is already spoken

17  for in many ways for the next couple of weeks.  I would like

18  you all to first tell me -- let's look from the period of

19  approximately March 15th to tax day, and I need you to tell me

20  what are blackout dates for you.

21      I will start with Government counsel, Mr. Cumming.

22      MR. CUMMING:  I am unavailable April 17th through 19th,

23  but otherwise that span works for me, Your Honor.

24      THE COURT:  I should have said this.  I'm gonna expect

25  everyone to be present for oral argument.  I will not do any

1    of it virtually.

2          I can't tell you that it's gonna last two hours, right,

3    but I think we're gonna have to plan for the good portion of a

4    day.  It depends upon whether we start in the morning or the

5    afternoon.

6          If we start in the afternoon, I think you're gonna

7    potentially have to reserve to roll over into the morning.  It

8    depends upon how focused and detailed your presentations

9    will be.  All right.

10         April 17th -- so you're good, Mr. Cumming, from

11   effectively March 15th to April 15th.  Correct.

12         MR. CUMMING:  Yes, Your Honor.  I am particularly

13   available -- the first week of April is particularly good

14   for me, but I realize that may not be the case for everyone

15   else.

16         THE COURT:  Mr. Chertok.

17         MR. CHERTOK:  Yes.  One of the problems is my colleague

18   is out of the country from March 19th to the 29th.

19         THE COURT:  Are you talking about Ms. Kaplan?

20         MR. CHERTOK:  No.  Ms. Knauer.

21         THE COURT:  Ms. Knauer, I trust you can speak for

22   yourself.

23         What are your constraints?

24         MS. KNAUER:  Those are my constraints.  I will be

25   out of the country.  It's actually March 19th through 28th.

1        THE COURT:  Are you the counsel on behalf of the MTA

2   that's planning to do the oral presentation?

3        MR. CHERTOK:  My expectation is she would do a

4   significant part of the oral presentation, Your Honor.

5        THE COURT:  Okay.  From the 19th to the 28th.  Okay.

6        MR. CHERTOK:  The other dates that the client has given

7   me are the 20th, 25th, and 27th.

8        THE COURT:  20th, 25th, and 27th as unavailable?

9        MR. CHERTOK:  Yes.  But they have not -- I can't

10  contact them now for dates in April, is the problem, because

11  we looked at dates in March.

12        THE COURT:  Okay.

13        Mr. Mastro.

14        MR. MASTRO:  Well, Your Honor, this is my highest

15  priority, so I will make myself available whenever the Court

16  can see us.  I'll be here on the 15th.  I'll be here any date

17  after that.

18        THE COURT:  Okay.

19        MR. MASTRO:  I do start to go into other commitments

20  starting in April, but the sooner Your Honor can see us, I'll

21  be here with bells on.  In fact, I'm ready to go today, if

22  Your Honor might have noticed.  Thank you.

23        THE COURT:  Mr. Mastro, the thing on my shoulders is

24  not just a hat rack.  I fully understood that you are ready

25  and raring to go.  The rear wheels were spinning at the start

1  line.

2        MR. MASTRO:  Thank you, Your Honor.

3        THE COURT:  Mr. Nagel.

4        MR. NAGEL:  Ditto.  I'm good to go, Judge.  Thanks.

5        THE COURT:  Mr. Reichman.

6        MR. REICHMAN:  Yes, Your Honor, I'm good any time after

7  March 20th.  I have issues in March but not thereafter.

8        THE COURT:  Okay.

9        Mr. Otis.

10        MR. OTIS:  Available any time between March 15 and

11  April 15, Your Honor.

12        THE COURT:  Thank you.

13        Mr. Mateen.

14        MR. MATEEN:  Likewise, Your Honor, any time the Court

15  is ready.

16        THE COURT:  Thank you.

17        Ms. Knauer, I'm not looking to disrupt your plans.  My

18  question is, is there any flexibility on your front-end date?

19        MS. KNAUER:  No.  It's a family vacation.

20        THE COURT:  Okay.

21        Mr. Reichman, any flexibility on your front end?

22        MR. REICHMAN:  I'm supposed to be overseas until

23  March 19th.

24        THE COURT:  Okay.

25        This completes my laundry list at this moment.

1        Is there any other business that any counsel wishes to
2   raise with the Court?

3        Mr. Mastro?

4        MR. MASTRO:  No, Your Honor, but really appreciate all
5   your consideration.

6        THE COURT:  Thank you.

7        Mr. Nagel?

8        MR. NAGEL:  No, Judge.  I, too, join in the
9   appreciation.

10        THE COURT:  Mr. Cumming?

11        MR. CUMMING:  No, Your Honor.  Thank you.

12        THE COURT:  Mr. Chertok?

13        MR. CHERTOK:  I have two dates in the latter part of
14   April that just came in that I want to give Your Honor.

15        THE COURT:  Go ahead.

16        MR. CHERTOK:  The 22nd and 24th are not good, but other
17   than that, no problem.

18        THE COURT:  Thank you.

19        MR. CHERTOK:  Thank you for your efforts today,
20   Your Honor.  Much appreciated.

21        THE COURT:  Mr. Reichman?

22        MR. REICHMAN:  Nothing further, Your Honor.  Again, I
23   join counsel, thanking you for the way you handled this.

24        THE COURT:  You're very welcome.

25        Mr. Otis.

1     MR. OTIS:  Nothing further, Your Honor.

2     THE COURT:  Mr. Mateen?

3     MR. MATEEN:  Nothing further, Your Honor.

4     THE COURT:  Thank you all.  We are going to stand in

5  recess for about 7 to 10 minutes.  I have a whole bunch of

6  things that I need to give some consideration to.

7     It is my hope that when I come back out I will

8  potentially have a stake in the ground in terms of a date for

9  oral argument.  Thank you all.  I will return shortly.

10          (Recess taken.)

11          (All parties present.)

12     THE COURT:  Everybody can be seated.

13     Okay, folks.  Initially the Court has a couple of

14  comments.

15     Number one, I want to thank -- reiterate what I said

16  earlier.  I appreciate all counsel cooperating with the Court

17  and making time to be here.  I appreciate the professionalism,

18  the courtesy, and dignity with respect to how you treated each

19  other in court today.  It does not go unnoticed, and it is

20  appreciated by the Court.

21     If today is an indication of where we're going on this,

22  we're all gonna be in good shape, and that will be much

23  appreciated by the Court.

24     Okay.  Here is what's gonna happen, folks:  All the

25  orders will be issued within the next 24 hours.  The motion to

1   consolidate is denied.

2       The motion to amend -- the request for the motion to

3   amend the complaint is denied without prejudice, subject to

4   renewal later in the litigation.

5       As I previously noted, the applications for amicus

6   curiae and pro hac vice were all granted.

7       Okay.  Given everyone's schedules and my trying to be

8   courteous to those who are returning from trips, we are gonna

9   look at doing oral argument the week of April the 1st.  We

10  will plan for it to occur on Wednesday and Thursday, April 3rd

11  and 4th.

12      Ms. Knauer, I'm trying to give you a little breathing

13  space so when you come off a plane you are not going to have

14  to go completely into litigator mode to the detriment or

15  exclusion of your family.

16      MS. KNAUER:  Thank you, Your Honor.

17      THE COURT:  Mr. Reichman, it will give you a little

18  more than a week to get your feet back underneath you.

19      MR. REICHMAN:  Thank you, Your Honor.

20      THE COURT:  Okay.  There is a modest outside chance as

21  a placeholder that we would flip to the following week on the

22  9th and the 10th, all right.  If something happens between now

23  and the beginning of April, right, I'm gonna give you the

24  stake in the ground of the 3rd and the 4th; and if we have to

25  move, it's the 9th and the 10th.  No later than that, folks.

1          We will deal with the allocation of time and the focus

2     of the oral argument at a later date.  I am, in all

3     likelihood, contemplating another meeting with counsel before

4     oral argument, all right.

5          Now, with respect to administrative record, counsel are

6     to supply Mr. Cumming with their request list or their

7     proposals by Friday, close of business, 5:00 p.m. East Coast

8     time.  Everybody got that?

9          Mr. Cumming, you will notify the Court no later than

10    close of business on Tuesday as to whether there are any

11    issues.

12         I will tell you that I am traveling on Tuesday to a

13    much different time zone and I will not get back to you with a

14    response until Wednesday morning.  Okay?

15         Assuming that we are good, then, Mr. Cumming, you'll

16    have to tell me that day, given the proposal, whether you need

17    14 or 17 days.  Once I get the slimmed-down administrative

18    record, I will take a day or two to review it and then I will

19    start the clock for counsel to have -- it could be one week,

20    it could be eight days, it could be nine days, it could be

21    ten days.  I'm gonna have to see, candidly, how complicated

22    and difficult it's going to be to make the adjustments.

23         I will give you somewhere between seven and ten days to

24    resubmit your briefs.  Okay?  Any questions?

25         Mr. Mastro, any questions?  Anything you don't

1   understand?  Anything you wish me to clarify?

2        MR. MASTRO:  No, Your Honor.

3        THE COURT:  Good.

4        MR. MASTRO:  Understood.

5        THE COURT:  Mr. Nagel?

6        MR. NAGEL:  Thank you, Judge.  Yes, Judge.  In denying

7   the consolidation motion, I still view myself as an interested

8   party.

9        THE COURT:  Yep.

10        MR. NAGEL:  Do I have leave --

11        THE COURT:  We're going to get there next, Mr. Nagel.

12        MR. NAGEL:  Whether I have leave to appear and argue.

13        THE COURT:  Just hold your patience.  I apologize to

14   you that I didn't address that specifically.  I will.

15        Mr. Cumming, any questions, need for clarification?

16        MR. CUMMING:  Two points, Your Honor.

17        THE COURT:  Yes, sir.

18        MR. CUMMING:  Is Your Honor's expectation the argument

19   will be on both the 3rd and the 4th?

20        THE COURT:  It depends upon -- because you're traveling

21   from D.C., I do not know what your restrictions may be,

22   budgetary or otherwise.  I don't know how much time we're

23   going to need.

24        If you need to travel on a single day, I want to

25   provide enough time for you to be here, along with your

1  co-counsel.  That may mean I start at 10:30, eleven o'clock.

2  It may mean I start at 1:30.  I don't know.

3      If it looks like the oral argument is going to take

4  four to six hours, then the answer is we're going to try to do

5  it all in one day, but I don't need you to incur costs

6  unnecessarily.  I will make that decision as we get closer in

7  time.

8      I would say plan for rollover but don't count on it

9  100 percent.  I will make the adjustments, based upon what I

10  think the appropriate time allocations will need to be and the

11  number of issues that we need to address.

12      MR. CUMMING:  Understood.  We're certainly able to stay

13  overnight, Your Honor.

14      THE COURT:  Okay.

15      Mr. Chertok, Ms. Knauer.

16      MR. CHERTOK:  No questions.  You've been crystal clear,

17  Your Honor.

18      THE COURT:  Mr. Reichman?

19      MR. REICHMAN:  No, Your Honor.

20      THE COURT:  Mr. Mateen?

21      MR. MATEEN:  No, Your Honor.

22      THE COURT:  Mr. Otis?

23      MR. OTIS:  No questions.

24      THE COURT:  Before we conclude -- pretty good.  I said

25  plan about two hours and change.

1          Mr. Nagel, given the fact that I denied the motion to

2    consolidate, you indicated that you will file a letter brief

3    in support.  Yes, you are an interested party.  Whether we

4    need to do that as an amicus or you need to do that as a

5    permissive intervenor, I haven't quite thought that through.

6          Let me ask you, what makes the most sense for you?

7          MR. NAGEL:  To be granted the right to present oral

8    argument as an interested party.  Obviously the relief that's

9    being argued directly affects me.

10          THE COURT:  Any objections to -- I have to figure out

11    what to label you, Mr. Nagel.  I am inclined to provide you

12    with that status, but I'll hear from the other side.

13          Mr. Cumming?

14          MR. CUMMING:  No objection.

15          THE COURT:  Mr. Chertok?

16          MR. CHERTOK:  No objection, Your Honor.

17          THE COURT:  We'll figure it out.  It will be in an

18    order shortly.

19          Mr. Nagel, I'm going to give you one week to file

20    whatever you're gonna need to file from the entry date of that

21    order.

22          MR. NAGEL:  Thank you.

23          THE COURT:  Anything further, Mr. Nagel?

24          MR. NAGEL:  No.  Thank you, sir.

25          THE COURT:  Okay.  I promised you about -- before 4:30.

1    I want to make sure everybody is on the same page.

2        Are there any questions about anything, any topic, any

3    decision made that you all need to ask a question about or

4    need clarification about or do not understand?

5        Mr. Mastro?

6        MR. MASTRO:  No, Your Honor.  Thank you.

7        THE COURT:  Mr. Nagel?

8        MR. NAGEL:  No, Judge.

9        THE COURT:  Mr. Cumming?

10       MR. CUMMING:  One question, Your Honor.

11       THE COURT:  Yes, sir.

12       MR. CUMMING:  Would Your Honor's preference be that the

13   slimmed-down record be of the size that it can be filed on the

14   docket?

15       THE COURT:  The answer is it depends upon what you tell

16   me, all right.  It depends upon what the requests and the

17   proposals are.

18       We know it's gonna be something less than 36,000,

19   right?  Hopefully it's targeted enough that it will not be a

20   problem to come through the pipeline to be filed on CM/ECF,

21   but I don't know the answer to that until.

22       Now, if it means breaking it into digestible pieces

23   because it's close to the limit, we'll see.  I would suggest

24   that you speak to Ms. Creegan, who can then talk to the CM/ECF

25   tech people here, put them in touch with your tech people, and

1    we'll figure out what the pipeline will handle or not handle.

2         Depending upon that, I will make sure in whatever order

3    I issue that the form in which it is to be filed is made

4    abundantly clear.

5         MR. CUMMING:  Thank you.

6         THE COURT:  Mr. Chertok?

7         MR. CHERTOK:  No questions, Your Honor.  Thank you.

8         THE COURT:  Ms. Knauer, you're good?

9         MS. KNAUER:  Yes, Your Honor.  Thank you.

10        THE COURT:  Mr. Reichman?

11        MR. REICHMAN:  All good, Your Honor.

12        THE COURT:  Mr. Otis?

13        MR. OTIS:  No questions, Your Honor.

14        THE COURT:  Mr. Mateen?

15        MR. MATEEN:  All good, Your Honor.

16        THE COURT:  The Court appreciates your time, your

17   interaction with the Court, and answering the Court's

18   questions.  It was a professional exchange.  It's much

19   appreciated; and I appreciate again the courtesy, dignity, and

20   respect to the Court and to all of your fellow participants in

21   the matter.

22        With that, hopefully, you'll be able to get out of

23   downtown Newark before the traffic makes you too crazy.  I

24   wish you all well in the weeks to come, and I look forward to

25   seeing you again at some point before the oral argument.

1        I will tell you, for planning purposes, it is likely to

2    be that we will have a conversation later in March.  For those

3    who cannot be here, if it's in that window of time, I trust

4    you will send a surrogate who will be able to pass along all

5    of the information and the Court's questions and concerns that

6    there might be.

7        With that, enjoy the rest of your week, ladies and

8    gentlemen.  Thank you.

9            (Which were all the proceedings held in the

10            above-entitled matter on said date.)

11                        *   *   *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**</u>

2

3       I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR,** Official Court

4    Reporter of the United States District Court for the District

5    of New Jersey, do hereby certify that the foregoing

6    proceedings are a true and accurate transcript from the

7    record of proceedings in the above-entitled matter.

8

9

10            */S/Lisa A. Larsen, RPR, RMR, CRR, FCRR*

11            Official U.S. District Court Reporter ~

12                  District of New Jersey

13

14            DATED this February 16, 2024

15

16

17

18

19

20

21

22

23

24

25

**/**

**/S/Lisa** [1] - 75:10
**/TPOPBZy** [1] - 45:23

**0**

**07043** [1] - 3:12
**07068** [1] - 2:8
**07102** [2] - 1:20, 2:15

**1**

**1** [1] - 17:1
**1,000** [1] - 16:22
**1,100** [1] - 28:3
**1,500** [1] - 28:3
**1,600** [1] - 22:13
**1,600-plus** [1] - 25:10
**1/2-year-old** [1] - 54:7
**10** [3] - 33:15, 48:13, 65:21
**100** [1] - 69:24
**10022** [1] - 2:20
**10036** [2] - 2:4, 3:16
**10118** [1] - 3:4
**102** [3] - 22:12, 29:1, 29:9
**102-page** [4] - 29:15, 30:4, 30:10, 36:7
**103** [1] - 2:8
**1040** [1] - 3:7
**1050** [1] - 3:7
**10:30** [1] - 69:16
**10th** [2] - 67:12, 67:15
**11** [1] - 5:24
**1177** [1] - 3:15
**1185** [1] - 2:3
**125** [1] - 38:1
**125-page** [4] - 37:13, 37:15, 37:17, 37:18
**13** [1] - 25:12
**14** [1] - 68:6
**15** [2] - 64:1
**15th** [7] - 2:20, 60:16, 60:25, 61:14, 62:5, 63:8
**17** [1] - 68:6
**175** [2] - 22:11, 28:25
**176** [2] - 28:25, 29:8
**17th** [2] - 61:17, 62:4
**19th** [5] - 61:17, 62:11, 62:17, 62:22, 64:14
**1:30** [1] - 69:17
**1st** [3] - 41:21, 43:7, 66:24

**2**

**20** [1] - 36:8

**20-month** [1] - 54:7
**20001** [1] - 3:8
**2020** [1] - 15:8
**2024** [3] - 1:20, 4:3, 75:14
**20th** [3] - 62:24, 62:25, 63:24
**22nd** [1] - 65:7
**23** [3] - 37:14, 37:19, 38:6
**23-cv-21728** [1] - 4:14
**23-cv-3885** [1] - 4:13
**24** [4] - 8:3, 8:11, 12:4, 66:15
**24th** [1] - 65:7
**25th** [2] - 62:24, 62:25
**27th** [3] - 29:24, 62:24, 62:25
**28th** [2] - 62:17, 62:22
**29th** [2] - 41:20, 62:11
**2:23-cv-21728** [1] - 1:16
**2:23-cv-3885** [1] - 1:4
**2nd** [1] - 30:2

**3**

**30** [2] - 24:1, 27:12
**30th** [1] - 43:7
**31st** [2] - 42:9, 44:12
**34** [1] - 5:19
**350** [1] - 3:3
**36,000** [1] - 72:7
**3rd** [3] - 66:25, 67:14, 69:10

**4**

**47** [4] - 28:2, 37:15, 37:19, 38:7
**48,000** [4] - 22:14, 25:10, 28:2, 28:16
**4:30** [1] - 71:14
**4th** [9] - 41:20, 41:21, 41:22, 42:3, 44:5, 56:17, 67:1, 67:14, 69:10

**5**

**5** [2] - 16:20, 54:7
**56** [1] - 3:12
**560** [1] - 2:19
**5706** [1] - 52:13
**5:00** [1] - 67:22
**5th** [1] - 56:16

**6**

**6** [2] - 1:20, 4:3

**60** [2] - 48:6, 54:4
**63rd** [1] - 3:4

**7**

**7** [2] - 65:20, 75:14
**70** [2] - 29:20, 48:6

**9**

**90** [1] - 54:4
**950** [2] - 26:6, 27:2
**970** [1] - 2:14
**973)776-7741** [1] - 1:24
**9th** [2] - 67:12, 67:15

**A**

**ability** [1] - 56:1
**able** [10] - 9:11, 23:17, 25:15, 30:25, 48:4, 48:10, 50:22, 70:2, 73:10, 73:17
**above** [3] - 57:10, 73:23, 75:7
**above-entitled** [2] - 73:23, 75:7
**abreast** [1] - 56:14
**absolutely** [1] - 52:12
**abstract** [1] - 13:24
**abundantly** [1] - 72:17
**access** [3] - 25:21, 25:25, 26:23
**accounted** [1] - 50:3
**accurate** [1] - 75:6
**Act** [1] - 11:19
**action** [9] - 4:24, 7:22, 8:15, 10:20, 17:9, 18:11, 52:10, 58:17, 58:20
**ACTION** [2] - 1:3, 1:15
**actions** [5] - 16:11, 16:17, 16:18, 17:21, 60:19
**actually** [4] - 9:24, 26:8, 50:22, 62:17
**add** [6] - 13:5, 14:15, 31:1, 32:5, 32:12, 44:21
**adding** [2] - 10:7, 29:16
**addition** [1] - 20:14
**additional** [5] - 10:22, 17:3, 22:8, 31:14, 37:20
**address** [5] - 16:24, 18:4, 39:13, 69:5, 70:1
**adequate** [1] - 53:7

**adjustments** [2] - 68:12, 69:24
**Administration** [2] - 2:17, 40:16
**administrative** [18] - 21:25, 22:4, 22:17, 23:4, 24:4, 24:16, 25:8, 27:2, 31:23, 32:2, 32:7, 39:1, 39:7, 39:21, 58:8, 58:10, 67:20, 68:7
**administratively** [1] - 25:5
**admits** [1] - 9:25
**admitted** [1] - 21:2
**admonition** [2] - 15:13, 55:12
**adopted** [3] - 14:1, 43:11, 49:12
**adopting** [1] - 41:25
**adopts** [1] - 42:13
**adverse** [1] - 20:20
**affect** [1] - 44:9
**affects** [2] - 10:21, 70:23
**affirmative** [1] - 31:25
**afternoon** [7] - 5:8, 5:18, 6:2, 13:8, 13:9, 61:24, 61:25
**again** [7] - 10:25, 11:18, 43:20, 53:9, 65:13, 73:7, 73:13
**against** [5] - 10:22, 11:4, 13:5, 19:11, 19:15
**age** [1] - 34:6
**aged** [1] - 34:7
**agencies** [2] - 27:16, 53:6
**agency** [4] - 14:11, 27:9, 45:24, 46:1
**agenda** [2] - 21:23, 40:12
**agree** [2] - 21:17, 58:14, 60:2
**agreed** [3] - 6:12, 6:18, 55:18
**agreed-upon** [1] - 55:18
**agreement** [11] - 14:11, 21:10, 23:1, 33:18, 43:9, 43:14, 43:18, 44:17, 45:11, 46:9, 46:11
**agreements** [1] - 49:14
**ahead** [3] - 12:21, 59:2, 65:6
**aided** [1] - 1:25
**Air** [1] - 11:19

**al** [4] - 1:6, 1:9, 1:17, 4:13
**alert** [1] - 35:23
**Alex** [1] - 5:12
**ALEX** [1] - 2:14
**align** [1] - 36:3
**aligned** [1] - 20:16
**allegations** [3] - 16:21, 18:25, 19:6
**alleged** [2] - 17:12, 21:14
**allocation** [1] - 67:16
**allocations** [1] - 69:25
**allow** [3] - 10:9, 19:4, 58:10
**allows** [1] - 61:1
**along** [10] - 5:15, 18:13, 26:13, 26:16, 26:18, 37:19, 39:23, 44:4, 69:15, 73:17
**already** [5] - 16:14, 48:5, 48:7, 58:18, 61:11
**alternatives** [1] - 10:2
**although** [1] - 17:18
**always** [3] - 35:6, 36:17, 54:13
**am** [21] - 6:25, 9:4, 11:13, 15:4, 17:14, 17:15, 33:20, 35:15, 39:5, 55:7, 55:8, 55:13, 55:19, 56:12, 56:20, 58:6, 61:17, 62:6, 67:17, 68:1, 70:25
**amend** [9] - 8:16, 11:24, 12:14, 13:14, 14:17, 21:21, 59:22, 66:17, 66:18
**amended** [1] - 16:20
**amendment** [4] - 9:15, 10:9, 10:16, 13:5
**America** [1] - 31:10
**Americas** [2] - 2:3, 3:15
**amicable** [1] - 35:1
**amici** [8] - 5:20, 5:24, 8:4, 8:12, 17:18, 35:19, 38:16, 39:17
**amicus** [9] - 6:3, 17:14, 17:16, 17:17, 18:8, 33:1, 66:20, 70:18
**Amicus** [2] - 3:13, 3:17
**amongst** [2] - 33:24, 44:17
**amount** [2] - 26:4, 49:21
**ample** [1] - 10:8

Andrew [2] - 5:2, 5:23
another [1] - 67:18
answer [15] - 6:25,
11:22, 14:23, 23:15,
36:20, 50:21, 53:11,
53:24, 53:25, 54:14,
55:3, 60:25, 69:19,
72:4, 72:9
answering [2] - 9:13,
73:5
answers [3] - 46:22,
50:19, 51:5
anticipated [2] -
42:11, 44:24
anybody [3] - 5:1, 6:5,
37:6
anybody's [1] - 56:9
anyone [2] - 16:6,
39:22
anything [16] - 9:22,
11:1, 17:4, 17:22,
30:13, 32:12, 44:21,
46:13, 47:23, 48:18,
55:16, 60:3, 68:16,
68:17, 71:12, 71:16
APA [1] - 32:3
apart [3] - 17:11,
32:23, 58:21
apologies [1] - 26:22
apologize [1] - 69:4
appeal [2] - 60:21,
60:22
appear [2] - 17:14,
69:3
appeared [6] - 2:5,
2:9, 2:16, 3:9, 3:13,
3:17
appearing [1] - 54:13
appears [4] - 22:4,
22:7, 29:8, 47:15
appendix [3] - 23:23,
26:3, 34:20
apple [1] - 12:13
applicable [1] - 15:16
application [2] -
20:10, 57:25
applications [4] -
7:15, 8:3, 57:5,
66:20
applies [1] - 40:14
apply [1] - 17:16
appoint [1] - 33:23
appreciate [18] - 4:6,
4:8, 10:14, 11:25,
12:24, 16:3, 20:5,
32:14, 33:10, 55:4,
56:23, 57:14, 58:5,
58:19, 64:20, 66:6,
66:7, 73:7
appreciated [5] -

32:15, 65:11, 66:10,
66:13, 73:7
appreciates [1] - 73:4
appreciation [1] -
64:25
approach [4] - 21:7,
21:8, 32:19, 40:17
approached [2] -
24:23, 57:3
appropriate [10] -
39:20, 39:24, 53:10,
56:14, 58:24, 59:11,
59:12, 59:14, 61:7,
69:25
approved [1] - 46:11
approximately [1] -
61:14
April [14] - 43:6, 43:7,
61:9, 61:17, 62:4,
62:5, 62:7, 63:2,
63:12, 64:1, 65:5,
66:24, 66:25, 67:13
April/May [4] - 43:1,
44:12
arbitrary [1] - 43:6
areas [1] - 26:10
arguably [1] - 47:23
argue [5] - 10:6,
48:14, 51:16, 58:15,
69:3
argued [1] - 70:23
arguing [1] - 54:23
Argument [2] - 1:6,
1:17
argument [28] - 8:13,
11:12, 11:20, 12:19,
14:18, 15:14, 19:20,
30:6, 31:25, 32:21,
37:13, 38:2, 40:21,
48:1, 53:13, 54:15,
56:16, 60:11, 60:14,
61:20, 65:25, 66:24,
67:17, 67:19, 69:9,
69:18, 70:22, 73:13
arguments [3] - 14:24,
31:6, 33:11
arm [1] - 9:23
around [7] - 7:4, 35:9,
35:11, 44:12, 54:6,
54:10, 60:16
arrange [1] - 33:16
ask [17] - 6:15, 6:23,
12:6, 12:16, 17:20,
20:11, 24:10, 25:7,
28:1, 32:5, 36:1,
44:14, 49:16, 50:18,
59:4, 70:20, 71:17
assembling [1] - 36:9
assert [2] - 13:24,
20:13

asserted [2] - 17:9,
17:15
asserting [1] - 17:8
assertion [1] - 14:12
assess [1] - 10:1
assessment [16] -
20:18, 20:22, 21:18,
26:5, 26:6, 26:10,
26:14, 27:1, 27:20,
31:1, 31:3, 31:6,
31:8, 42:17, 47:8,
49:20
assignment [1] - 6:18
associate [2] - 5:2,
5:24
associated [3] - 32:1,
42:22, 55:8
ASST [4] - 2:11, 2:12,
2:12, 2:14
assume [9] - 11:13,
14:16, 37:12, 49:25,
50:1, 56:16, 60:11,
60:14
assumes [1] - 13:25
assuming [8] - 10:9,
15:4, 25:8, 43:5,
43:11, 49:23, 50:20,
68:4
assumption [2] -
40:13, 49:21
assurance [1] - 57:12
attempt [1] - 16:14
attention [4] - 22:21,
24:17, 42:19, 56:5
ATTORNEY [4] - 2:11,
2:12, 2:12, 2:14
Attorney's [2] - 5:12,
30:21
Aurora [1] - 62:13
Authority [3] - 3:9,
3:10, 40:25
AUTHORITY [1] - 1:9
available [3] - 62:7,
63:7, 63:25
Avenue [4] - 2:19, 3:3,
3:12, 3:15
Avenues [1] - 2:3
aware [10] - 22:18,
25:16, 47:24, 48:19,
55:7, 55:8, 55:13,
56:13, 56:15, 56:20
away [4] - 15:21, 55:5,
55:6, 56:1

B

B [1] - 1:21
back [12] - 7:4, 13:16,
19:25, 22:2, 38:2,
43:10, 53:17, 54:2,

61:8, 65:23, 67:8,
68:2
background [3] -
24:1, 24:19, 40:18
backwards [2] -
40:20, 47:9
based [2] - 14:13,
32:1, 35:23, 41:15,
69:24
bases [1] - 9:15
basically [2] - 14:14,
16:18
Bate [1] - 37:1
Bates [3] - 36:11,
36:17, 36:23
bear [1] - 51:18
become [2] - 54:6,
54:10
becomes [1] - 36:3
beginning [3] - 37:21,
57:4, 67:13
behalf [13] - 1:13, 2:5,
2:9, 2:16, 3:9, 3:13,
3:17, 5:9, 5:19, 13:7,
54:13, 55:13, 62:18
behind [1] - 5:4
being [9] - 7:5, 7:11,
8:1, 8:9, 9:21, 17:8,
25:3, 56:15, 70:23
belief [1] - 31:21
believe [9] - 28:7,
30:2, 31:23, 37:25,
42:24, 48:18, 50:5,
51:3, 61:2
bells [1] - 63:13
bench [1] - 18:18
Bergen [3] - 6:1, 6:3,
8:6
besides [1] - 31:14
best [11] - 24:8, 25:4,
35:7, 35:8, 42:25,
43:1, 47:22, 56:3,
56:7, 56:8, 60:19
better [2] - 35:13,
51:21
between [10] - 27:16,
31:2, 31:5, 43:6,
43:14, 46:9, 64:1,
67:12, 68:13
Bhatt [1] - 2:17
big [1] - 27:11
bit [3] - 6:7, 24:20,
60:18
bites [1] - 12:13
blackout [1] - 61:15
block [1] - 35:9
Board [1] - 41:2
board [9] - 13:19,
13:21, 14:4, 41:5,
41:24, 42:13, 44:6,

49:12, 57:18
body [1] - 18:17
Borough [1] - 40:24
both [6] - 16:15, 22:9,
40:8, 57:21, 59:9,
69:10
boxes [1] - 53:21
break [2] - 33:11, 40:2
breaking [1] - 72:10
breath [2] - 18:16,
18:19
breathe [1] - 18:16,
59:2
breathing [1] - 67:2
brevity [1] - 32:15
Bridge [2] - 3:10,
40:25
brief [14] - 12:14,
16:14, 16:15, 21:9,
21:12, 22:9, 27:24,
28:14, 31:25, 70:16
Brief [8] - 4:9, 9:8,
16:5, 44:6, 44:13,
44:16, 60:9, 60:13
briefed [1] - 17:14
briefer [1] - 20:8
briefing [3] - 23:6,
23:7, 23:8, 23:24,
37:3, 59:5, 59:7,
59:8, 59:10
briefly [1] - 21:6
briefs [6] - 28:5,
36:15, 37:14, 39:4,
39:6, 68:14
Broad [1] - 2:14
broad [1] - 58:14
broad-stroking [1] -
58:14
brought [1] - 56:22
Bruce [1] - 4:23
BRUCE [1] - 2:7
budgetary [1] - 69:13
bunch [2] - 34:5,
65:21
burying [1] - 30:22

C

C [2] - 2:1, 3:1
calendar [7] - 47:24,
51:17, 55:9, 55:14,
56:12, 56:20, 61:11
calendars [1] - 60:8
calk [1] - 17:18
call [6] - 4:10, 26:18,
27:8, 27:22, 33:14,
33:16
called [2] - 13:19, 27:6
calm [1] - 18:17
came [1] - 65:5

**can't** [14] - 19:12, 25:16, 32:21, 43:2, 44:24, 46:18, 47:12, 48:14, 49:14, 53:20, 55:12, 56:1, 61:21, 63:1
**candidly** [4] - 23:10, 33:22, 37:14, 68:11
**cannot** [4] - 33:17, 48:9, 56:16, 73:16
**capacity** [1] - 1:11
**capital** [1] - 23:12
**capture** [1] - 49:19
**captured** [1] - 48:19
**car** [1] - 48:25
**career** [1] - 17:19
**cart** [1] - 47:4
**case** [23] - 4:10, 7:18, 7:19, 9:20, 9:21, 10:21, 12:11, 14:21, 14:23, 15:7, 19:8, 19:18, 25:1, 26:19, 26:24, 28:14, 55:8, 56:23, 57:4, 58:9, 58:13, 62:8
**Case** [2] - 4:13, 4:14
**cases** [7] - 14:15, 14:25, 15:5, 15:15, 19:7, 24:22, 34:18
**catch** [1] - 47:5
**categories** [1] - 27:22
**caused** [1] - 27:10
**caveat** [1] - 36:2
**cell** [1] - 60:7
**central** [2] - 25:21, 38:22
**certain** [8] - 9:24, 35:24, 46:21, 52:6, 52:13, 53:2, 53:20, 55:9
**certainly** [9] - 17:10, 17:17, 17:21, 34:25, 51:25, 52:9, 53:15, 59:25, 70:2
**CERTIFICATE** [1] - 75:1
**certified** [6] - 28:10, 28:18, 28:24, 29:12, 29:19, 30:10
**certify** [1] - 75:5
**cetera** [1] - 40:25
**challenge** [2] - 21:24, 38:25
**challenges** [1] - 23:17
**chance** [1] - 67:10
**change** [6] - 14:6, 49:25, 50:1, 50:14, 70:14
**changes** [2] - 22:10, 31:5

**chapters** [4] - 26:7, 26:12, 26:18, 26:24
**characterization** [1] - 21:17
**charge** [1] - 50:22
**charged** [2] - 22:16, 48:25
**checked** [1] - 53:22
**CHERTOK** [56] - 2:19, 5:14, 13:8, 13:10, 14:19, 14:25, 15:5, 15:17, 15:22, 16:2, 16:4, 19:24, 21:6, 21:12, 32:17, 35:18, 39:13, 39:16, 41:1, 41:9, 41:13, 41:19, 41:24, 42:4, 42:11, 42:24, 43:4, 43:9, 43:19, 44:8, 44:20, 44:23, 45:2, 45:9, 45:14, 45:16, 49:7, 50:5, 50:7, 50:17, 51:8, 51:11, 59:18, 59:20, 60:4, 62:10, 62:13, 62:20, 62:23, 63:1, 65:4, 65:7, 65:10, 70:5, 71:5, 72:20
**Chertok** [33] - 5:14, 13:7, 14:16, 15:12, 19:23, 21:7, 32:16, 33:5, 35:17, 39:12, 39:15, 40:8, 40:13, 40:23, 41:7, 42:18, 44:2, 44:7, 44:19, 45:8, 49:5, 49:16, 50:25, 51:3, 51:13, 55:2, 59:17, 60:3, 62:9, 65:3, 70:4, 71:4, 72:19
**Chertok's** [1] - 46:14
**chess** [1] - 57:18
**children** [1] - 34:7
**choices** [3] - 33:19, 33:21, 55:21
**choose** [2] - 32:24, 37:17
**Circuit** [2] - 9:17, 60:23
**circumstances** [1] - 54:19
**CIT** [1] - 37:24
**citable** [1] - 28:13
**citation** [1] - 36:14
**citations** [1] - 39:7
**cited** [11] - 15:1, 15:16, 23:23, 26:16, 26:17, 26:25, 27:17, 27:23, 28:5, 28:13, 39:4

**cites** [1] - 23:6
**cities** [1] - 20:19
**city** [2] - 49:10, 50:22
**City** [1] - 43:15
**CIVIL** [2] - 1:3, 1:15
**claim** [14] - 9:20, 9:21, 11:1, 11:2, 11:19, 13:12, 13:23, 17:11, 20:11, 20:13, 20:14, 57:8
**claims** [15] - 10:7, 10:22, 11:3, 11:10, 11:16, 13:5, 13:13, 13:24, 14:13, 17:12, 17:15, 19:10, 19:14, 20:14, 31:17
**clarification** [2] - 69:6, 71:18
**clarify** [4] - 48:22, 49:7, 50:13, 68:17
**clarity** [1] - 10:4
**class** [5] - 4:24, 16:19, 17:8, 18:25, 58:20
**Clean** [1] - 11:19
**clear** [9] - 10:25, 11:18, 15:17, 16:23, 20:1, 21:13, 43:19, 70:5, 72:17
**clearly** [1] - 61:8
**clerk** [1] - 44:6
**CLERK** [2] - 4:4, 4:11
**client** [2] - 20:24, 62:23
**client's** [1] - 4:15
**clients** [4] - 20:12, 55:13, 56:3, 60:20
**clock** [3] - 35:21, 39:22, 68:9
**clogged** [1] - 25:4
**close** [3] - 67:22, 67:25, 72:11
**closer** [1] - 69:21
**CM/ECF** [3] - 38:21, 72:9, 72:12
**co** [2] - 5:15, 69:16
**co-counsel** [2] - 5:15, 69:16
**colleague** [2] - 4:21, 62:10
**colleagues** [1] - 5:10
**collectively** [1] - 23:18
**collegial** [1] - 38:3
**Colorado** [1] - 36:21
**combination** [1] - 29:11
**come** [11] - 5:5, 9:6, 33:18, 33:19, 53:20, 56:10, 65:15, 65:23, 67:3, 72:8, 73:12
**comes** [2] - 7:4, 10:20

**comfort** [1] - 57:12
**comfortable** [2] - 5:4, 24:7
**coming** [5] - 18:18, 22:25, 24:11, 52:2, 61:9
**commence** [4] - 14:11, 43:16, 43:21, 45:10
**comment** [4] - 21:22, 27:19, 47:13, 59:20
**commentary** [2] - 44:9, 47:18
**commenting** [1] - 9:2
**comments** [10] - 31:4, 31:15, 37:6, 39:8, 41:4, 42:7, 46:16, 57:11, 59:19, 66:5
**Commerce** [1] - 24:5
**Commission** [1] - 24:6
**commitment** [1] - 13:17
**commitments** [1] - 63:11
**committed** [2] - 9:24, 20:21
**communications** [1] - 27:15
**comparable** [1] - 15:25
**compatriots** [1] - 24:14
**compile** [1] - 23:22
**compiling** [1] - 24:16
**complaint** [7] - 8:16, 11:24, 14:17, 16:20, 47:10, 59:22, 66:18
**complete** [6] - 6:11, 22:3, 22:5, 23:8, 28:10, 43:18
**completed** [1] - 11:7
**completely** [12] - 6:22, 7:4, 17:6, 17:10, 35:1, 35:11, 47:9, 47:15, 48:2, 52:24, 57:17, 67:4
**completes** [1] - 64:15
**compliance** [1] - 53:3
**complicated** [1] - 68:11
**comport** [1] - 52:21
**computer** [3] - 1:25, 4:7, 49:21
**computer-aided** [1] - 1:25
**conceptually** [1] - 15:14
**concern** [5] - 17:1, 23:5, 50:19, 58:16

**concerned** [3] - 11:14, 56:11, 58:6
**concerns** [6] - 7:9, 7:24, 8:7, 16:24, 22:15, 73:18
**conclude** [1] - 70:13
**concluded** [1] - 41:4
**concludes** [1] - 43:11
**concreteness** [1] - 42:10
**concur** [2] - 13:11, 32:18, 57:17
**conduct** [1] - 6:14
**conducted** [1] - 11:6
**conducting** [1] - 53:18
**confer** [1] - 19:24
**conference** [2] - 33:16, 55:16
**confirm** [1] - 44:4
**confusion** [3] - 6:23, 17:7, 51:12
**congestion** [3] - 15:9, 31:10, 54:20
**conscious** [1] - 51:23
**consider** [2] - 41:24, 57:23
**considerably** [1] - 46:2
**consideration** [3] - 30:9, 64:21, 65:22
**considered** [4] - 31:24, 41:5, 42:7, 47:16
**consistent** [2] - 42:16, 43:12
**consolidate** [6] - 16:11, 16:16, 17:13, 17:20, 66:16, 70:16
**consolidation** [2] - 19:17, 68:23
**constitute** [1] - 28:4
**constitutional** [2] - 13:24, 14:12
**constraint** [1] - 60:24
**constraints** [2] - 62:15, 62:16
**construction** [2] - 48:24, 49:1
**constructive** [2] - 30:19, 56:22
**consult** [1] - 25:14
**Cont'd** [1] - 3:1
**contact** [1] - 63:2
**contain** [1] - 28:12
**containing** [1] - 39:2
**contains** [1] - 29:8
**contemplating** [2] - 58:11, 67:18
**context** [1] - 37:20
**contextual** [1] - 37:25

**continue** [2] - 26:2, 26:20
**control** [3] - 34:10, 34:12, 43:4
**conversation** [1] - 73:15
**cooperating** [1] - 66:6
**cooperation** [1] - 40:11
**cooperative** [1] - 38:3
**cooperatively** [1] - 34:1
**copies** [1] - 25:20
**copy** [2] - 36:7, 38:20
**core** [7] - 9:21, 17:12, 28:4, 47:9, 57:8, 60:1, 60:2
**correctly** [3] - 8:23, 28:9, 44:19
**cost** [1] - 67:23
**costs** [1] - 69:20
**counsel** [16] - 5:15, 6:15, 17:18, 25:23, 25:24, 33:6, 50:21, 61:16, 62:18, 64:17, 65:14, 66:6, 67:18, 67:20, 68:9, 69:16
**counsel's** [1] - 6:3
**count** [3] - 16:19, 17:18, 69:23
**country** [3] - 54:21, 62:11, 62:17
**county** [2] - 6:1, 6:3
**County** [2] - 6:3, 8:6
**couple** [7] - 29:7, 33:19, 40:20, 45:6, 45:18, 61:12, 66:4
**course** [5] - 9:2, 10:15, 10:23, 11:11, 18:10
**Court's** [7] - 9:19, 23:5, 24:17, 25:25, 30:9, 73:5, 73:18
**courteous** [1] - 66:23
**courtesy** [3] - 4:6, 66:8, 73:7
**Courthouse** [1] - 1:19
**courtroom** [2] - 6:9, 6:17
**cover** [1] - 7:13
**crazy** [3] - 56:8, 56:25, 73:11
**create** [3] - 17:22, 37:2, 55:25
**Creegan** [3] - 4:10, 33:15, 72:12
**critic** [1] - 32:23
**cross** [3] - 57:19, 58:2, 58:7
**CRR** [3] - 1:23, 75:3,

75:10
**crucial** [1] - 54:16
**crystal** [2] - 10:25, 70:5
**CUMMING** [58] - 2:11, 5:8, 13:4, 18:3, 18:15, 18:20, 18:23, 19:14, 23:20, 24:20, 25:14, 25:22, 26:3, 26:16, 26:22, 27:4, 27:6, 27:12, 27:15, 27:25, 28:7, 28:15, 28:18, 28:21, 28:24, 29:2, 29:6, 29:14, 29:22, 30:2, 30:5, 30:11, 30:14, 34:16, 35:25, 36:22, 36:25, 38:13, 38:24, 45:6, 45:18, 45:22, 46:4, 46:8, 59:2, 59:3, 59:9, 59:16, 61:17, 62:6, 65:2, 69:7, 69:9, 70:2, 71:3, 71:24, 72:1, 72:18
**Cumming** [35] - 5:9, 13:2, 18:2, 18:14, 19:12, 21:10, 21:24, 23:19, 26:2, 26:21, 30:13, 33:5, 34:12, 34:14, 35:21, 35:22, 36:6, 38:19, 40:15, 42:18, 45:4, 45:7, 45:17, 55:2, 59:1, 59:13, 61:16, 62:4, 65:1, 67:21, 67:24, 68:4, 69:6, 71:2, 71:23
**cure** [1] - 66:20
**curiae** [2] - 8:4, 17:18
**currently** [1] - 37:1

**D**

**D** [1] - 2:14
**D.C** [1] - 3:8
**database** [1] - 25:25
**date** [16] - 35:24, 41:18, 43:6, 43:22, 44:5, 45:12, 51:17, 51:22, 60:18, 63:8, 64:9, 65:24, 67:17, 71:9, 73:23
**DATED** [1] - 75:14
**dates** [8] - 44:23, 46:6, 60:8, 61:15, 62:23, 63:2, 63:3, 65:4
**daughter** [1] - 54:11
**David** [1] - 6:2
**day** [8] - 56:5, 56:16, 61:14, 61:23, 68:5,

68:8, 69:14, 69:20
**days** [11] - 12:4, 22:4, 54:4, 55:9, 56:12, 68:6, 68:10, 68:13
**DC** [1] - 69:12
**de** [1] - 58:10
**deal** [6] - 8:16, 17:24, 55:20, 57:25, 58:23, 67:16
**dealing** [2] - 22:12, 52:10
**December** [2] - 30:2, 30:3
**decide** [5] - 33:15, 52:25, 53:5, 55:10, 58:2
**decided** [1] - 57:9
**decides** [1] - 46:1
**decision** [24] - 13:22, 13:23, 15:8, 15:19, 16:8, 27:7, 27:9, 32:2, 41:5, 42:12, 43:7, 44:11, 48:1, 51:17, 51:20, 53:8, 53:20, 59:21, 59:25, 60:1, 60:17, 61:6, 69:21, 71:17
**decision-making** [1] - 53:8
**decisions** [1] - 24:4
**declaratory** [2] - 52:20, 53:3
**declare** [4] - 53:16, 53:17, 54:1, 54:17
**deep** [3] - 18:16, 18:19, 59:2
**defect** [1] - 53:8
**Defendant** [1] - 1:10
**Defendant-Intervenors** [1] - 1:10
**defendants** [3] - 5:10, 13:6, 53:2
**Defendants** [4] - 1:7, 1:18, 2:16, 3:9
**Defense** [2] - 5:22, 8:5
**defense** [3] - 5:7, 10:15, 14:17
**defenses** [1] - 9:18
**deferred** [1] - 59:24
**deficiencies** [1] - 31:7
**degree** [1] - 49:5
**delay** [1] - 13:12
**delays** [1] - 9:22
**denied** [4] - 57:21, 66:16, 66:18, 70:15
**deny** [1] - 58:7
**denying** [1] - 68:22
**Department** [13] - 1:5, 1:16, 2:16, 4:12,

4:14, 5:9, 5:11, 5:25, 24:5, 24:14, 27:17, 46:9, 46:12
**department** [1] - 22:3
**DEPARTMENT** [2] - 2:11, 2:13
**depending** [5] - 13:15, 52:4, 55:19, 59:12, 72:15
**depends** [8] - 42:25, 46:9, 54:25, 61:23, 62:2, 69:11, 72:4, 72:5
**depth** [1] - 23:9
**deputy** [1] - 30:20
**DEPUTY** [2] - 4:4, 4:11
**describes** [1] - 54:24
**deserve** [1] - 20:17
**designate** [1] - 35:2
**desire** [1] - 18:11
**despite** [2] - 21:2, 35:10
**detail** [1] - 8:20
**detailed** [1] - 62:2
**details** [1] - 25:17
**determination** [2] - 14:3, 41:25
**determinations** [1] - 45:23
**determine** [4] - 43:2, 45:23, 45:24, 49:20
**detriment** [1] - 67:4
**didn't** [7] - 30:23, 30:25, 47:5, 53:16, 53:17, 69:5
**differ** [1] - 68:11
**difference** [2] - 22:10
**different** [13] - 6:17, 7:5, 10:2, 14:8, 23:11, 27:16, 47:13, 47:22, 49:24, 53:14, 53:19, 56:25, 68:2
**difficult** [2] - 21:12, 25:5
**digest** [4] - 22:24, 56:18, 60:18, 61:1
**digestible** [1] - 72:10
**dignity** [2] - 66:8, 73:7
**dilemma** [1] - 15:18
**direct** [1] - 36:19
**directly** [1] - 70:23
**disagree** [1] - 26:9
**discovery** [3] - 57:22, 58:7, 58:10
**discretion** [3] - 16:16, 37:11, 37:23
**discussed** [2] - 6:18, 32:19
**discussion** [2] - 12:19, 33:7

**dismiss** [2] - 19:9, 19:19
**disposition** [1] - 57:19
**dispositional** [2] - 53:14, 55:19
**dispute** [5] - 6:12, 26:8, 26:11, 33:13, 48:9
**disputed** [1] - 6:13
**disrupt** [1] - 64:7
**distance** [1] - 48:13
**distill** [1] - 31:12
**distinct** [1] - 23:2
**distractions** [1] - 55:25
**DISTRICT** [2] - 1:1, 1:1
**District** [5] - 30:21, 75:4, 75:11, 75:12
**ditto** [1] - 63:21
**Division** [1] - 5:11
**docket** [4] - 24:3, 25:3, 25:4, 72:3
**document** [28] - 22:11, 22:12, 26:7, 26:19, 27:2, 27:7, 27:11, 28:11, 29:15, 29:23, 30:4, 30:7, 30:9, 34:13, 36:7, 36:8, 36:13, 37:10, 37:12, 37:13, 37:15, 37:18, 37:22, 38:5, 38:6, 46:1, 46:6
**documents** [25] - 22:9, 22:14, 23:6, 23:11, 23:23, 24:18, 25:6, 25:10, 26:16, 26:17, 26:24, 26:25, 27:23, 28:4, 28:12, 29:4, 29:13, 29:16, 31:22, 36:3, 36:5, 36:11, 37:1, 39:2, 39:5
**doesn't** [1] - 44:9
**door** [1] - 44:15
**DOT** [2] - 43:15
**doubt** [3] - 6:23, 25:9, 34:1
**doubts** [1] - 7:9
**down** [21] - 11:1, 11:15, 12:11, 17:1, 17:3, 17:22, 18:18, 28:17, 30:7, 30:19, 31:12, 32:6, 33:9, 36:9, 39:1, 39:7, 39:21, 40:22, 51:19, 68:7, 72:2
**downtown** [1] - 73:11
**draft** [7] - 26:5, 27:20, 31:1, 31:2, 31:5, 31:14, 61:6

drive [3] - 24:24, 25:9, 25:11
drives [4] - 25:12, 25:13, 38:23, 56:24
drop [1] - 18:21
due [1] - 29:21
duplicate [1] - 29:21
duplicates [1] - 29:17

**E**

e-mails [1] - 31:16
EA [3] - 27:8, 31:14, 43:12
each [2] - 28:1, 66:8
earlier [2] - 51:8, 66:6
earliest [1] - 42:12
early [5] - 31:19, 41:3, 41:16, 41:19, 44:5
earthly [1] - 34:3
easily [1] - 33:17
east [1] - 67:22
easy [2] - 32:23, 39:15
economy [1] - 17:22
education [1] - 23:16
effective [1] - 50:3
effectively [1] - 62:5
effects [2] - 42:15, 42:16
efficient [3] - 18:10, 19:1, 26:1
efforts [1] - 65:10
eight [2] - 40:2, 68:10
eight-minute [1] - 40:2
EIS [1] - 54:18
Eisenhower [1] - 2:8
either [6] - 31:25, 38:21, 48:19, 49:18, 52:6, 53:6
election [1] - 15:9
electronic [1] - 38:21
electronically [1] - 25:23
eleven [1] - 69:16
Elizabeth [1] - 5:15
ELIZABETH [1] - 2:18
else [8] - 16:6, 22:20, 27:5, 27:14, 37:18, 47:23, 57:10, 62:8
emergency [2] - 57:5, 60:21
emphasized [1] - 57:9
Empower [2] - 5:17, 8:5
end [8] - 6:15, 28:4, 34:18, 35:22, 43:22, 44:5, 64:8, 64:12
endpoint [1] - 52:5
engage [1] - 7:2

enjoy [1] - 73:20
enough [6] - 10:4, 35:9, 56:15, 56:18, 69:15, 72:7
ensure [1] - 42:15
entered [3] - 8:2, 8:10, 8:12
entertain [1] - 59:15
enthusiasm [2] - 12:23, 12:25
entire [2] - 21:3, 25:8
entirety [1] - 14:2
entitled [4] - 31:18, 52:25, 73:23, 75:7
entries [1] - 29:21
entry [2] - 45:10, 71:9
Environmental [2] - 5:22, 8:5
environmental [22] - 10:1, 11:6, 20:18, 20:20, 20:22, 21:2, 21:3, 26:5, 26:6, 26:14, 27:1, 27:20, 31:1, 31:3, 31:6, 31:8, 31:9, 42:17, 47:2, 47:8, 53:18, 54:2
EPA [2] - 27:17, 52:10
equipment [1] - 49:18
equivocation [1] - 17:2
err [1] - 6:22
ESQ [12] - 2:2, 2:3, 2:7, 2:7, 2:18, 2:19, 3:2, 3:3, 3:6, 3:6, 3:11, 3:15
essence [3] - 30:20, 30:22, 30:24
estimate [1] - 43:20
estimated [1] - 44:23
et [6] - 1:6, 1:9, 1:17, 4:13, 40:25
evaluating [1] - 47:8
evaluation [1] - 43:13
even [8] - 9:25, 10:4, 19:17, 28:3, 31:17, 54:11, 57:8, 57:24
event [2] - 54:11, 57:21
events [1] - 45:5
every [2] - 6:15, 28:11
everybody [13] - 7:1, 22:20, 25:21, 29:24, 36:4, 37:18, 38:22, 38:23, 44:1, 57:1, 66:3, 67:23, 71:15
everyone [5] - 24:1, 37:3, 59:20, 61:20, 62:8
everyone's [1] - 66:22

everything [2] - 22:21, 56:13
exact [2] - 7:5, 42:8
exactly [5] - 33:8, 36:13, 37:10, 45:2, 58:3
examination [2] - 46:23, 47:14
examine [1] - 39:22
examined [1] - 23:8
Excel [1] - 29:9
except [1] - 16:18
exceptions [3] - 58:10, 58:13, 58:15
exchange [1] - 73:6
exclusion [1] - 58:9
executive [1] - 30:21
exempt [1] - 22:3
exhibits [1] - 23:6
exist [1] - 31:22
existing [1] - 36:23
expand [1] - 21:9
expect [1] - 61:19
expectation [2] - 62:20, 69:9
expected [1] - 25:18
expeditious [1] - 60:1
expense [1] - 23:12
explain [4] - 9:15, 10:18, 11:9, 42:5
explaining [1] - 21:1
explanation [3] - 9:3, 53:7, 53:21
extent [2] - 42:25, 58:14
extra [1] - 48:25
extraordinary [1] - 23:12
extremely [1] - 24:21
eyes [2] - 24:11, 53:23
EZ [1] - 49:19

**F**

F [1] - 1:21
face [1] - 20:23
facilitate [1] - 25:24
fact [7] - 6:21, 32:24, 35:10, 47:5, 50:11, 63:13, 70:15
fair [2] - 26:10, 49:21
fairly [2] - 27:18, 46:11
faith [1] - 33:10
fall [1] - 58:13
family [2] - 64:10, 67:5
far [2] - 40:11, 44:7
fashion [1] - 36:4
favor [2] - 11:3, 18:14
FCRR [3] - 1:23, 75:3,

75:10
February [6] - 1:20, 4:3, 34:5, 41:20, 44:5, 75:14
FEDERAL [1] - 75:1
federal [4] - 5:9, 5:20, 13:5, 14:11
Federal [3] - 1:19, 2:16, 40:16
feel [2] - 19:25, 56:2
feet [1] - 67:8
fellow [1] - 73:8
few [3] - 13:16, 47:14, 58:9
FHWA [13] - 9:25, 11:6, 14:4, 14:7, 42:14, 43:2, 43:5, 43:10, 43:15, 44:12, 46:5, 50:8, 56:25
Fifth [1] - 3:3
figure [14] - 12:18, 23:18, 33:8, 33:20, 36:12, 37:12, 38:19, 38:20, 40:20, 47:25, 70:24, 71:6, 72:14
figured [1] - 25:18
file [15] - 8:18, 9:3, 10:24, 11:23, 12:2, 12:5, 16:1, 23:22, 25:23, 28:10, 28:11, 35:24, 70:16, 71:8, 71:9
file-sharing [1] - 25:23
filed [15] - 8:22, 10:21, 22:4, 22:7, 27:3, 29:4, 29:15, 29:21, 34:21, 38:20, 57:24, 72:2, 72:8, 72:16
filing [5] - 22:3, 22:7, 25:3, 29:18, 29:24, 30:1, 30:3, 60:21
filings [2] - 18:8, 18:24
final [12] - 13:23, 15:19, 27:9, 31:2, 31:7, 41:5, 41:25, 42:1, 42:4, 42:14, 44:11, 47:6
find [2] - 23:3, 33:25
finding [5] - 20:18, 21:1, 21:18, 27:6, 31:8
fine [4] - 35:6, 39:9, 39:11, 51:5
finish [1] - 47:8
Fink [1] - 5:16
FINK [2] - 3:2, 3:5
five [1] - 12:4
flash [6] - 24:24, 25:9, 25:11, 25:12, 38:22

flexibility [2] - 64:8, 64:12
flick [2] - 48:5, 48:10
flip [2] - 60:15, 67:11
floor [1] - 18:21
Floor [2] - 2:20, 3:4
focus [2] - 24:16, 67:16
focused [3] - 28:17, 30:7, 62:2
folks [5] - 55:20, 61:10, 66:4, 66:14, 67:15
follow [1] - 48:21
follow-up [1] - 48:21
followed [1] - 22:6
following [1] - 67:11
FONSI [3] - 53:17, 54:1, 54:17
FOR [1] - 1:1
forbid [1] - 56:1
forces [1] - 55:9
forefront [1] - 18:25
foregoing [1] - 75:5
form [5] - 27:3, 38:21, 52:19, 53:1, 72:16
formal [1] - 9:3, 10:24
format [1] - 29:9, 29:10
former [1] - 30:20
Fort [6] - 1:12, 1:12, 20:16, 20:19, 21:2, 21:14
forth [5] - 16:19, 20:1, 38:2, 42:16, 50:21
forward [1] - 73:12
found [1] - 30:10
four [6] - 7:18, 13:20, 20:19, 26:7, 26:10, 69:19
frame [7] - 42:8, 43:1, 43:2, 43:20, 44:9, 48:20, 50:8
framed [1] - 50:9
Frank [1] - 1:19
FRANKEL [1] - 3:14
frankly [2] - 23:1, 43:1
frequently [1] - 59:4
Friday [2] - 35:3, 67:22
friend [1] - 17:16
front [2] - 64:8, 64:12
front-end [1] - 64:8
FTA [1] - 5:21
full [15] - 6:11, 10:15, 11:9, 11:24, 12:1, 22:3, 22:5, 24:24, 25:3, 26:12, 26:18, 26:23, 28:10, 28:24, 56:4

**full-throated** [4] - 10:15, 11:9, 11:24, 12:1
**fuller** [1] - 54:14
**fully** [11] - 9:14, 11:2, 11:19, 28:5, 52:3, 52:17, 55:7, 55:8, 55:13, 57:6, 63:16
**Fund** [2] - 5:22, 8:5
**further** [8] - 43:13, 53:21, 60:3, 60:4, 65:13, 65:17, 65:19, 71:12
**futile** [1] - 9:17

**G**

**G** [1] - 2:12
**Gabrielle** [1] - 5:16
**GABRIELLE** [1] - 3:2
**GALLER** [1] - 1:12
**Galler** [2] - 2:10, 4:25
**gambit** [1] - 60:20
**game** [1] - 7:2
**gander** [1] - 55:2
**gave** [1] - 15:13
**generous** [1] - 28:3
**genes** [1] - 35:12
**gentlemen** [3] - 40:10, 60:6, 73:21
**gets** [3] - 22:21, 58:1, 58:7
**getting** [5] - 20:7, 34:9, 48:10, 55:15, 55:25
**given** [7] - 18:11, 25:5, 37:3, 62:23, 66:22, 68:5, 70:15
**giving** [4] - 25:19, 30:8, 38:3, 39:24
**go** [16] - 7:14, 19:25, 31:17, 33:8, 38:22, 44:4, 54:2, 59:2, 60:15, 63:11, 63:13, 63:17, 63:21, 65:6, 66:9, 67:4
**goal** [2] - 6:16, 57:9
**goes** [1] - 51:1
**golden** [1] - 37:8
**gonna** [47] - 7:13, 23:11, 24:12, 25:9, 27:3, 33:20, 33:23, 34:8, 36:1, 36:10, 36:11, 36:12, 36:19, 37:9, 37:17, 37:23, 38:1, 39:1, 44:3, 44:4, 51:21, 53:13, 55:12, 55:23, 56:10, 56:11, 56:18, 60:11, 60:14, 60:17, 60:24,

61:3, 61:5, 61:7, 61:19, 61:21, 61:22, 61:25, 66:12, 66:14, 66:23, 67:13, 68:11, 71:9, 72:6
**good** [33] - 5:8, 5:18, 6:2, 7:11, 13:8, 13:9, 30:12, 33:10, 33:22, 35:12, 35:19, 37:8, 37:11, 37:23, 39:12, 40:11, 51:7, 55:1, 56:9, 61:23, 62:4, 62:7, 63:21, 63:23, 65:7, 66:12, 68:4, 68:19, 70:13, 72:21, 72:24, 73:3
**goose** [1] - 55:1
**GORDON** [2] - 1:21, 4:2
**gotta** [1] - 58:8
**gotten** [1] - 35:4
**governed** [2] - 42:21, 42:24
**governing** [2] - 46:24, 47:1
**government** [3] - 5:21, 30:22, 38:12
**Government** [7] - 28:10, 30:25, 31:12, 31:23, 32:5, 54:13, 61:16
**Government's** [4] - 19:25, 21:10, 27:24, 32:18
**governs** [1] - 50:11
**grandchildren** [1] - 54:8
**grandfather** [2] - 54:7, 54:10
**grant** [3] - 11:13, 15:4, 52:14
**granted** [6] - 7:16, 10:20, 19:18, 22:2, 66:21, 70:21
**granting** [1] - 8:12
**gray** [1] - 35:10
**great** [1] - 54:6
**Gregory** [1] - 5:8
**GREGORY** [1] - 2:11
**gross** [1] - 31:7
**grossly** [1] - 13:15
**ground** [4] - 42:10, 51:14, 65:24, 67:14
**grounds** [2] - 9:16, 11:9
**guess** [5] - 14:14, 18:11, 35:11, 42:25, 43:1
**guesses** [1] - 14:1

**H**

**H** [3] - 2:7, 3:11, 3:11
**hac** [2] - 7:15, 66:21
**hair** [1] - 35:10
**half** [2] - 34:20, 35:5
**hand** [1] - 45:24, 53:7
**handful** [1] - 27:21
**handheld** [1] - 4:6
**handle** [2] - 72:14
**handled** [1] - 65:14
**happen** [7] - 14:2, 25:1, 44:24, 48:5, 54:3, 54:4, 66:14
**happened** [2] - 31:2, 54:20
**happens** [3] - 41:23, 42:5, 67:12
**happy** [14] - 6:25, 12:10, 17:23, 24:24, 25:1, 25:24, 31:11, 36:16, 36:17, 38:7, 39:5, 55:22, 56:6, 58:3
**HARRIS** [1] - 3:6
**hat** [1] - 63:16
**haven't** [3] - 12:1, 23:8, 70:19
**having** [4] - 20:13, 30:20, 47:12, 59:22
**head** [6] - 7:3, 9:10, 10:4, 10:17, 18:19, 35:11
**heading** [1] - 34:4
**heads** [1] - 57:20
**heads-up** [1] - 57:20
**hear** [10] - 8:23, 9:4, 11:20, 15:14, 19:12, 20:3, 31:21, 34:23, 40:15, 71:1
**heard** [7] - 8:24, 16:6, 19:23, 33:1, 41:1, 46:13, 57:7
**hearing** [3] - 8:10, 41:22, 60:21
**hearings** [11] - 13:21, 41:2, 41:4, 41:10, 41:16, 41:18, 41:19, 41:20, 41:23, 42:7, 44:5
**heart** [2] - 18:22, 31:17
**Hecker** [1] - 5:16
**HECKER** [2] - 3:2, 3:5
**held** [3] - 4:1, 41:18, 73:22
**help** [7] - 36:6, 36:19, 40:23, 41:7, 44:14, 49:3, 58:8
**helpful** [1] - 23:25

**her** [2] - 44:3, 44:14
**hereby** [1] - 75:5
**hesitancy** [1] - 6:23
**high** [1] - 46:11
**highest** [1] - 63:6
**Highway** [2] - 2:16, 40:16
**history** [1] - 24:20
**hit** [3] - 9:10, 10:17, 54:16
**Hoboken** [1] - 5:22
**hold** [4] - 41:16, 45:7, 47:18, 69:4
**holder** [1] - 67:11
**homework** [1] - 6:18
**Honor's** [5] - 9:13, 16:16, 58:16, 69:9, 72:1
**HONORABLE** [2] - 1:21, 4:2
**hope** [5] - 33:10, 35:3, 35:7, 35:8, 65:23
**hopefully** [2] - 72:7, 73:10
**hoping** [1] - 23:16
**horse** [1] - 47:4
**hour** [2] - 40:2, 40:3
**hours** [7] - 8:3, 8:11, 56:4, 61:22, 66:15, 69:19, 70:14
**HOWARD** [1] - 2:12
**Howard** [1] - 5:11
**however** [2] - 13:14, 61:7
**human** [1] - 23:12
**hypothesizes** [1] - 13:25
**hypothetically** [1] - 53:5

**I**

**I've** [7] - 35:9, 35:11, 36:7, 44:2, 56:4, 60:19, 61:2
**idea** [1] - 34:3
**identical** [1] - 16:18
**identified** [1] - 37:2
**identify** [1] - 4:19
**ignore** [1] - 29:24
**immunity** [2] - 19:11, 19:15
**impact** [9] - 20:18, 21:2, 21:19, 27:7, 27:9, 31:9, 52:5, 53:18, 54:3
**impacts** [3] - 14:8, 20:21, 21:2
**impede** [1] - 60:1
**implement** [1] - 48:4

**implementation** [7] - 45:12, 46:4, 46:9, 49:6, 49:8, 50:25
**importance** [2] - 22:22, 52:17
**important** [2] - 15:10, 57:13
**importantly** [1] - 14:12
**inadvertently** [1] - 29:17
**inclined** [3] - 11:13, 15:4, 70:25
**included** [3] - 29:18, 30:7, 31:20, 33:12
**including** [1] - 56:15
**incorporate** [1] - 16:21
**increased** [1] - 50:23
**incur** [1] - 69:20
**independent** [1] - 20:25
**index** [10] - 22:6, 22:8, 23:7, 28:10, 28:19, 28:22, 28:24, 29:12, 29:20, 30:10
**indicated** [3] - 14:5, 50:9, 70:16
**indication** [1] - 66:11
**individual** [1] - 26:25
**individually** [1] - 1:13
**inform** [1] - 31:6
**informative** [1] - 46:22
**infrastructure** [3] - 49:9, 49:13, 49:18
**initial** [1] - 29:18
**initially** [3] - 23:16, 29:20, 66:4
**inject** [1] - 58:17
**injunction** [1] - 55:18
**injunctive** [5] - 53:1, 55:11, 57:22, 57:25, 58:17
**inside** [1] - 48:9
**installation** [1] - 49:9
**installed** [1] - 49:13
**instance** [2] - 26:13, 27:19
**instead** [1] - 28:25
**instruction** [1] - 44:3
**instructions** [1] - 39:24
**insufficient** [2] - 20:23, 21:4
**intend** [3] - 19:8, 35:1, 58:17
**intents** [1] - 61:3
**interaction** [1] - 73:5
**interest** [6] - 17:21, 20:13, 20:15, 20:25, 56:3, 60:20

interested [5] - 31:18, 34:9, 68:23, 70:17, 70:22
interests [2] - 56:7, 56:8
interfere [1] - 59:23
interim [1] - 55:11
interlocutory [1] - 55:11
intern [1] - 44:2
INTERNATIONAL [1] - 1:22
International [2] - 24:3, 24:6
intervene [1] - 9:20
Intervenor [1] - 3:9
intervenor [1] - 70:19
Intervenors [1] - 1:10
intervenors' [1] - 25:24
introduction [2] - 26:13, 37:21
invitations [1] - 31:16
involve [1] - 7:19
involved [1] - 49:22
involves [1] - 24:4
isn't [1] - 46:25
issue [9] - 13:24, 34:10, 39:20, 56:17, 57:23, 60:2, 60:17, 72:16
issued [5] - 41:2, 41:8, 41:13, 41:14, 66:15
issues [8] - 17:23, 19:4, 24:17, 58:20, 63:24, 68:1, 70:1
item [3] - 40:13, 40:17, 40:22
itself [2] - 9:19, 9:24

## J

J [1] - 2:17
January [1] - 29:25
JERSEY [2] - 1:1, 1:2
Jersey [18] - 1:20, 2:5, 2:8, 2:15, 3:12, 4:12, 4:22, 5:19, 7:18, 8:15, 13:11, 13:25, 20:17, 20:20, 31:17, 32:22, 75:5, 75:12
Jersey's [1] - 32:12
JOHN [2] - 3:11, 3:11
John [2] - 5:18, 5:19
join [2] - 64:24, 65:14
joined [1] - 5:1
joint [2] - 23:23, 26:3
Joshua [1] - 5:16
judges [2] - 24:25, 25:1

judgment [4] - 37:11, 52:20, 53:3, 57:19
judicial [4] - 17:21, 19:1, 32:2, 33:22
jumping [1] - 12:20
juncture [1] - 28:5
June [16] - 43:21, 44:18, 45:13, 45:14, 45:15, 49:1, 49:6, 50:22, 51:4, 51:9, 51:15, 51:22, 56:16, 56:17, 60:16, 60:25
jurisdiction [1] - 9:20
just.. [1] - 45:9
JUSTICE [2] - 2:11, 2:13
justice [1] - 56:7
Justice [2] - 5:9, 24:15

## K

K [1] - 3:7
Kaplan [2] - 5:16, 62:12
KAPLAN [3] - 3:2, 3:3, 3:5
KATE [1] - 3:6
keep [1] - 56:14
Kennedy [1] - 7:20
key [5] - 24:17, 26:18, 26:24, 27:2, 31:1
keyed [1] - 23:7
kind [3] - 31:9, 40:23, 51:24
kindly [2] - 48:22, 49:2
kinds [1] - 25:20
King [1] - 4:20
KING [1] - 2:2
kiss [1] - 36:18
Knauer [6] - 5:15, 62:14, 64:7, 67:2, 70:4, 72:21
KNAUER [5] - 2:18, 62:16, 64:10, 67:6, 72:22
knowing [1] - 47:2
knows [3] - 14:2, 49:23, 57:3
KRAMER [1] - 3:14
Kramer [1] - 5:23

## L

label [1] - 70:25
lack [1] - 21:14
lacking [1] - 53:20
ladies [3] - 40:10, 60:6, 73:20
lag [1] - 50:23
large [2] - 24:3, 24:16

largely [1] - 14:18
Larsen [3] - 1:23, 75:3, 75:10
last [10] - 11:5, 15:1, 40:22, 41:17, 41:22, 43:14, 45:10, 48:13, 56:23, 61:21
late [4] - 11:5, 41:3, 41:16, 42:6
later [16] - 8:14, 12:2, 12:3, 16:9, 22:4, 29:8, 33:15, 41:11, 42:5, 44:18, 59:25, 66:19, 67:15, 67:17, 67:24, 73:15
latter [2] - 29:14, 65:4
laundry [1] - 64:15
Lauren [1] - 4:21
LAUREN [1] - 2:3
Lautenberg [1] - 1:19
law [5] - 9:16, 14:21, 14:23, 17:16, 58:9
Law [1] - 5:19
LAW [1] - 3:11
LDW [2] - 1:5, 1:16
lead [2] - 4:15, 48:17
leak [1] - 51:21
least [4] - 12:6, 13:13, 37:3, 60:25
leave [6] - 7:5, 37:9, 37:11, 37:23, 69:1, 69:3
leaves [2] - 6:16, 7:1
Lee [6] - 1:12, 1:12, 20:16, 20:19, 21:2, 21:14
left [1] - 33:18
length [1] - 27:21
lengthy [2] - 37:10, 37:12
LEO [2] - 1:21, 4:2
less [2] - 29:20, 72:6
lesser [1] - 54:23
letter [12] - 8:17, 8:20, 8:25, 9:1, 9:11, 13:16, 15:1, 17:5, 18:6, 19:2, 70:16
letters [1] - 27:19
level [2] - 15:11, 22:21
levels [1] - 46:12
Levin [1] - 5:23
LEVIN [1] - 3:14
Lexington [1] - 2:19
liberally [1] - 10:19
license [1] - 49:19
lifetime [1] - 54:19
light [2] - 23:17, 49:10
likelihood [2] - 58:1, 67:17
likely [1] - 73:14

likewise [1] - 64:4
limit [1] - 72:11
limited [1] - 58:13
line [1] - 63:18
lion's [1] - 27:23
Lisa [2] - 1:23, 75:3
Lisa_Larsen@njd. uscourts.gov [1] - 1:24
list [2] - 64:15, 67:21
litigant [1] - 17:15
litigate [1] - 24:15
litigation [6] - 18:5, 19:3, 54:6, 54:10, 57:13, 66:19
litigator [1] - 67:4
little [7] - 6:7, 16:9, 21:22, 44:25, 45:1, 67:2, 67:7
live [5] - 51:1, 51:4, 60:15
LLP [5] - 2:2, 2:6, 3:2, 3:5, 3:14
LMG [2] - 1:5, 1:16
LMG-LDW [2] - 1:5, 1:16
logical [1] - 56:7
logistics [1] - 36:21
longest [1] - 48:13
look [8] - 14:23, 14:24, 37:16, 38:7, 39:2, 61:13, 66:24, 73:12
looked [1] - 63:3
looking [12] - 13:12, 17:3, 17:4, 24:9, 36:6, 43:22, 51:22, 52:18, 52:19, 53:1, 55:18, 64:7
looks [2] - 47:24, 69:18
lot [1] - 22:24

## M

M [3] - 1:21, 2:7, 4:2
ma [2] - 64:3, 70:9
magistrate [2] - 24:25, 57:3
mails [1] - 31:16
main [1] - 11:15
major [1] - 55:23
makes [5] - 17:9, 36:4, 46:14, 70:20, 73:11
making [4] - 24:13, 40:11, 53:8, 66:7
manageable [1] - 28:17
manner [2] - 38:23, 56:7
many [6] - 17:19,

37:10, 56:4, 61:7, 61:11
March [23] - 41:11, 41:18, 41:19, 41:20, 41:21, 41:22, 42:3, 42:6, 42:9, 44:5, 44:12, 61:14, 62:5, 62:11, 62:17, 63:3, 63:24, 64:1, 64:14, 73:15
MARK [2] - 1:11, 2:19
Mark [2] - 2:9, 5:14
Marquis [1] - 2:17
married [1] - 54:11
MARTIN [1] - 2:11
master [2] - 33:23
Mastro [38] - 4:20, 8:17, 9:1, 10:10, 11:13, 11:22, 12:3, 15:13, 15:23, 20:3, 21:8, 26:9, 30:15, 31:21, 32:8, 32:21, 33:6, 34:10, 34:12, 34:23, 35:7, 40:8, 46:16, 47:21, 48:12, 48:21, 49:8, 50:9, 51:24, 52:11, 57:1, 57:11, 57:18, 63:5, 63:15, 64:19, 68:16, 71:19
MASTRO [56] - 2:2, 4:20, 8:19, 9:5, 9:9, 9:13, 10:11, 10:14, 11:18, 11:25, 12:6, 12:10, 12:16, 12:20, 12:23, 13:1, 20:2, 20:5, 20:8, 30:16, 30:18, 32:4, 32:9, 34:11, 34:25, 35:8, 35:13, 38:11, 38:15, 39:9, 46:18, 46:21, 47:12, 47:20, 48:2, 48:14, 51:25, 52:9, 52:12, 52:15, 52:24, 53:4, 53:15, 54:9, 55:4, 55:6, 56:21, 57:2, 57:14, 63:6, 63:11, 63:19, 64:20, 68:18, 68:20, 71:20
Mastro's [1] - 21:13
MATEEN [5] - 33:4, 64:4, 65:19, 70:10, 73:3
mATEEN [1] - 6:2
Mateen [3] - 6:2, 65:18, 73:2
materially [1] - 14:8
MATLOFF [1] - 2:7
matter [8] - 4:11, 24:21, 24:23, 25:16,

26:8, 73:9, 73:23, 75:7
**matters** [4] - 6:9, 22:23, 32:6, 56:5
**Matz** [1] - 5:16
**matz** [1] - 7:20
**maybe** [3] - 28:3, 56:25
**Mayor** [1] - 1:12
**mayor** [2] - 20:16, 30:20
**mean** [3] - 49:6, 69:16, 69:17
**means** [8] - 33:14, 49:8, 50:21, 50:25, 60:17, 60:24, 61:3, 72:10
**mechanical** [2] - 1:25, 25:7
**mechanically** [1] - 25:18
**medical** [7] - 16:18, 17:8, 19:5, 19:10, 19:14, 20:14, 58:20
**meet** [1] - 52:21
**meeting** [2] - 31:16, 67:18
**memorandum** [1] - 7:12
**memory** [1] - 8:22
**merits** [19] - 10:6, 11:15, 11:21, 12:23, 15:4, 15:14, 19:20, 32:22, 34:9, 47:18, 48:1, 51:16, 53:13, 54:15, 55:25, 57:7, 58:1, 59:7, 59:21
**Messieurs** [1] - 7:19
**method** [1] - 36:18
**Metropolitan** [1] - 3:9
**METROPOLITAN** [1] - 1:9
**MICHAEL** [1] - 2:2
**mid** [11] - 43:21, 44:18, 45:13, 45:15, 49:1, 49:6, 50:22, 51:4, 51:9, 51:15, 51:22
**mid-June** [11] - 43:21, 44:18, 45:13, 45:15, 49:1, 49:6, 50:22, 51:4, 51:9, 51:15, 51:22
**middle** [3] - 34:4, 59:22, 61:4
**might** [5] - 25:25, 26:9, 27:12, 63:14, 73:19
**mind** [1] - 51:18
**minds** [1] - 57:13

**mine** [1] - 35:13
**minute** [1] - 40:2
**minutes** [4] - 33:15, 40:1, 40:3, 65:21
**miss** [1] - 6:5
**misspoke** [1] - 41:14
**mitigation** [4] - 14:8, 20:21, 21:3, 21:14
**Mobility** [1] - 41:1
**mode** [1] - 67:4
**modest** [3] - 49:25, 55:18, 67:10
**modify** [1] - 58:12
**moment** [2] - 23:15, 64:16
**momentary** [1] - 21:9
**monitoring** [6] - 16:19, 17:8, 19:6, 19:10, 19:14, 20:14
**Montclair** [1] - 3:12
**month** [10] - 12:2, 12:3, 41:3, 41:11, 41:16, 49:2, 61:4, 61:9
**months** [2] - 29:7, 40:20
**more** [13] - 6:25, 9:3, 9:4, 10:8, 10:12, 10:15, 30:13, 36:16, 36:17, 38:7, 39:5, 55:22, 67:8
**morning** [3] - 61:24, 62:1, 68:3
**most** [7] - 14:12, 18:10, 19:1, 25:25, 36:18, 37:3, 70:20
**mother** [1] - 49:1
**motion** [28] - 8:16, 8:18, 9:3, 9:11, 9:14, 10:25, 11:9, 11:24, 12:1, 12:5, 12:12, 12:14, 13:14, 14:17, 15:18, 16:10, 16:12, 21:21, 22:2, 38:1, 59:22, 59:24, 60:20, 66:15, 66:17, 68:23, 70:15
**motions** [5] - 8:4, 19:19, 57:19, 58:2, 58:7
**mountain** [1] - 30:22
**mouth** [1] - 18:17
**move** [4] - 44:25, 48:23, 67:15
**moving** [2] - 19:9, 56:23
**Ms** [11] - 4:10, 7:20, 33:15, 62:12, 62:13, 62:14, 64:7, 67:2, 70:4, 72:12, 72:21

**MS** [4] - 62:16, 64:10, 67:6, 72:22
**MTA** [19] - 5:13, 9:19, 9:23, 10:5, 10:22, 11:4, 12:2, 13:7, 13:17, 14:9, 38:14, 40:24, 43:15, 45:20, 46:5, 48:3, 49:23, 56:25, 62:18
**MTA's** [2] - 9:18, 14:22
**multitask** [1] - 55:22
**Myers** [1] - 4:21
**MYERS** [1] - 2:3
**myself** [2] - 63:7, 68:23

## N

**N** [2] - 2:1, 3:1
**NAFTALIS** [1] - 3:14
**NAGEL** [28] - 2:6, 2:7, 4:17, 4:23, 5:2, 5:6, 6:13, 18:1, 32:11, 35:15, 39:11, 48:21, 50:20, 51:2, 51:5, 57:17, 58:12, 58:22, 58:25, 63:21, 64:24, 68:22, 69:1, 69:3, 70:21, 71:11, 71:13, 71:22
**Nagel** [28] - 4:15, 4:23, 5:5, 16:12, 20:12, 20:24, 32:10, 32:14, 33:6, 35:14, 39:10, 48:17, 50:18, 50:24, 52:2, 57:16, 58:5, 58:21, 63:20, 64:23, 68:21, 69:2, 70:15, 70:25, 71:8, 71:12, 71:21
**Nagel's** [1] - 18:4
**name** [1] - 4:15
**Nathan** [1] - 5:24
**NATHAN** [1] - 3:15
**Natural** [1] - 5:11
**necessarily** [1] - 53:25
**necessary** [3] - 50:2, 56:19, 61:2
**needs** [7] - 14:4, 22:24, 24:9, 33:7, 33:8, 39:2, 47:24
**Nees** [1] - 5:2
**neither** [2] - 18:23, 33:21
**NEPA** [16] - 9:20, 9:21, 10:21, 11:1, 11:2, 11:18, 13:11, 18:12, 19:4, 20:11, 43:13, 46:1, 46:6, 57:8, 59:24, 60:1

**never** [2] - 54:20, 55:6
**NEW** [2] - 1:1, 1:2
**new** [1] - 47:15
**New** [29] - 1:20, 2:4, 2:5, 2:8, 2:15, 2:20, 3:4, 3:12, 3:16, 4:12, 4:22, 5:19, 7:18, 8:15, 13:11, 13:25, 20:17, 20:20, 31:17, 32:12, 32:22, 43:15, 75:5, 75:12
**Newark** [1] - 1:20, 2:15, 73:11
**next** [18] - 5:13, 8:3, 8:10, 16:10, 19:9, 35:23, 38:25, 40:13, 40:19, 41:3, 41:16, 42:14, 43:9, 43:13, 52:2, 61:12, 66:15, 69:2
**Nina** [1] - 43:25
**nine** [1] - 68:10
**nobody** [2] - 6:16, 13:12
**none** [3] - 7:11, 8:1, 8:9
**North** [1] - 62:13
**nose** [1] - 18:17
**note** [8] - 13:11, 14:25, 18:13, 26:3, 32:21, 44:8, 44:22, 59:4
**noted** [2] - 24:20, 66:20
**notes** [1] - 31:16
**nothing** [5] - 17:3, 60:4, 65:13, 65:17, 65:19
**noticed** [2] - 29:17, 63:14
**notify** [1] - 67:24
**novel** [1] - 14:5
**novo** [1] - 58:10
**Number** [2] - 4:13, 4:14
**number** [11] - 7:16, 14:10, 17:1, 27:15, 29:17, 36:12, 36:16, 36:17, 52:19, 66:5, 70:1
**numbering** [5] - 36:4, 36:10, 36:11, 36:14, 36:19
**numbers** [2] - 36:23, 37:4
**NW** [1] - 3:7

## O

**O** [1] - 1:21

**o'clock** [1] - 69:16
**Oakwood** [1] - 3:12
**oat** [2] - 63:25
**object** [2] - 18:7, 18:8
**objection** [2] - 71:3, 71:5
**objections** [1] - 70:24
**obviate** [1] - 11:3
**obviously** [9] - 21:8, 32:20, 33:7, 41:24, 44:23, 46:18, 54:1, 54:22, 70:22
**occur** [2] - 14:13, 66:25
**October** [4] - 15:8, 22:2, 29:7, 29:24
**OF** [5] - 1:1, 1:2, 1:22, 2:11, 2:13
**Off** [1] - 40:9
**off** [10] - 4:7, 18:19, 26:25, 29:23, 29:25, 45:20, 55:10, 56:12, 60:10, 67:3
**Office** [3] - 1:19, 5:12, 30:21
**office** [1] - 6:3
**OFFICIAL** [1] - 75:1
**Official** [3] - 1:23, 75:3, 75:11
**often** [1] - 14:6
**Okay?but** [1] - 51:19
**old** [1] - 54:7
**once** [2] - 8:1, 12:18, 12:19, 38:19, 39:20, 54:19, 68:7
**once-in** [1] - 54:19
**one-off** [1] - 26:25
**open** [1] - 4:1
**opening** [1] - 12:14
**operate** [1] - 36:18
**operating** [2] - 14:6, 50:12
**opinion** [2] - 56:17, 61:6
**opportunity** [2] - 10:8, 51:16
**opposing** [1] - 25:23
**opposition** [3] - 8:7, 8:21, 16:25
**option** [3] - 26:12, 59:5, 59:10
**options** [1] - 59:3
**oral** [15] - 8:13, 11:20, 12:19, 19:19, 40:21, 61:20, 62:19, 62:21, 65:24, 66:24, 67:17, 67:18, 69:18, 70:21, 73:13
**Oral** [2] - 1:6, 1:17
**orally** [1] - 8:23

**orders** [5] - 8:2, 8:9, 8:12, 39:23, 66:15
**ordinarily** [2] - 47:2, 47:7
**others** [3] - 1:13, 7:21, 56:11
**otherwise** [3] - 50:16, 61:18, 69:13
**OTIS** [3] - 65:17, 70:12, 73:1
**oTIS** [1] - 5:23
**Otis** [6] - 5:23, 7:20, 63:25, 65:16, 70:11, 72:25
**outcome** [1] - 47:17
**outlined** [2] - 47:23, 58:3
**outlining** [1] - 7:13
**outset** [1] - 31:19
**outside** [1] - 67:10
**outstanding** [1] - 7:18
**over** [5] - 18:18, 33:11, 40:19, 44:15, 62:1
**overlapping** [1] - 20:25
**overlaps** [1] - 31:13
**overlay** [1] - 57:23
**overnight** [1] - 70:3
**overseas** [1] - 64:13
**own** [1] - 20:17

**P**

**P** [5] - 2:1, 3:1, 3:6
**P.C** [1] - 2:18
**p.m** [1] - 67:22
**pages** [22] - 22:11, 22:12, 26:6, 27:2, 27:12, 27:18, 27:21, 28:2, 28:16, 28:25, 29:8, 29:9, 29:20, 36:8, 37:10, 37:14, 37:19, 37:20, 38:1, 38:5, 38:6
**Paget** [1] - 5:14
**PAGET** [1] - 2:18
**palpitations** [1] - 18:22
**paper** [3] - 22:14, 25:10, 30:22
**papers** [4] - 10:18, 16:23, 21:15, 52:1
**paragraph** [1] - 16:20
**paramount** [1] - 57:9
**Parkway** [1] - 2:8
**participants** [1] - 73:8
**participate** [2] - 18:11, 32:24
**participation** [1] - 31:19

**particular** [4] - 13:20, 37:21, 52:16
**particularly** [4] - 15:7, 34:6, 62:6, 62:7
**parties** [17] - 3:13, 3:17, 22:13, 23:1, 23:3, 23:22, 24:8, 26:17, 27:16, 34:18, 37:2, 37:9, 40:6, 56:8, 56:17, 57:20, 66:2
**parties'** [3] - 23:8, 23:24, 28:5
**partner** [1] - 5:15
**party** [5] - 8:24, 28:14, 68:24, 70:17, 70:22
**pass** [2] - 49:19, 73:17
**path** [1] - 55:19
**paths** [1] - 53:14
**patience** [1] - 69:4
**pause** [8] - 4:9, 9:8, 16:5, 44:6, 44:13, 44:16, 60:9, 60:13
**pay** [1] - 42:18
**Peltz** [1] - 5:10
**PELTZ** [1] - 2:12
**pending** [2] - 19:18, 58:18
**people** [4] - 34:6, 36:21, 72:13
**perceive** [2] - 46:16, 60:15
**percent** [4] - 16:22, 48:6, 48:13, 69:24
**perception** [1] - 6:17
**performed** [1] - 54:18
**perhaps** [2] - 24:14, 61:9
**period** [12] - 15:25, 42:21, 42:22, 53:10, 53:23, 54:4, 55:18, 59:8, 59:15, 61:1, 61:5, 61:14
**periods** [1] - 45:5
**permission** [1] - 8:17
**permissive** [1] - 70:19
**permit** [1] - 10:24
**person** [5] - 7:3, 7:4, 8:24, 22:19, 55:20
**perspective** [2] - 13:13, 24:12
**phase** [2] - 57:22, 58:7
**phone** [1] - 33:14
**phones** [1] - 60:7
**physical** [1] - 49:18
**pick** [2] - 32:23, 43:6
**pieces** [4] - 22:14, 25:10, 47:13, 72:10
**pipeline** [2] - 72:8, 72:14

**place** [3] - 38:22, 49:15, 67:11
**Plaintiff** [2] - 1:3, 2:5
**plaintiff** [5] - 4:24, 15:16, 52:25, 53:23, 55:10
**plaintiff's** [1] - 15:2
**plaintiffs** [11] - 4:19, 16:10, 18:5, 18:24, 19:3, 19:5, 19:17, 29:16, 38:10, 39:8, 55:10
**Plaintiffs** [2] - 1:14, 2:9
**plaintiffs'** [1] - 23:5
**plan** [9] - 9:25, 20:21, 35:6, 44:18, 45:9, 61:22, 66:25, 69:23, 70:14
**plane** [1] - 67:3
**planning** [2] - 7:13, 62:19, 73:14
**plans** [2] - 61:11, 64:8
**plate** [1] - 22:20
**plates** [1] - 49:19
**play** [5] - 22:1, 24:13, 32:23, 55:9, 58:3
**plus** [1] - 14:10
**podium** [3] - 9:6, 21:7, 21:9
**point** [11] - 15:17, 18:4, 19:4, 19:7, 42:6, 47:1, 51:13, 54:16, 58:24, 60:7, 73:13
**pointed** [2] - 15:23, 32:4
**points** [2] - 45:18, 69:7
**poles** [1] - 49:10
**politicians** [1] - 56:11
**pollutes** [1] - 17:11
**portion** [2] - 24:3, 61:23
**position** [11] - 5:20, 10:13, 13:4, 14:22, 15:2, 17:6, 19:25, 21:10, 23:4, 24:8, 32:12
**positions** [1] - 18:12
**positive** [1] - 13:10
**possibility** [2] - 23:2, 45:25
**possible** [7] - 16:14, 20:12, 24:8, 41:18, 51:22, 57:10, 59:21
**post** [1] - 44:15
**Post** [1] - 1:19
**posture** [2] - 19:8, 19:18, 57:5

**potential** [2] - 51:14, 54:23
**potentially** [9] - 10:22, 28:9, 28:13, 36:2, 55:17, 60:19, 60:21, 62:1, 65:23
**practice** [2] - 37:24, 38:2
**precisely** [1] - 32:4
**predetermined** [1] - 47:17
**predicated** [1] - 14:18
**predict** [1] - 44:24
**preface** [1] - 23:21
**prefer** [1] - 9:6
**preference** [2] - 6:20, 72:1
**prejudice** [1] - 66:18
**prelude** [1] - 23:19
**premature** [1] - 13:15
**prepare** [1] - 46:5
**prepared** [5] - 10:15, 12:1, 53:24, 54:24, 58:15
**present** [9] - 6:9, 6:10, 19:10, 19:15, 31:25, 40:6, 61:20, 66:2, 70:21
**presentation** [2] - 62:19, 62:21
**presentations** [1] - 62:2
**president's** [1] - 61:10
**presidential** [1] - 15:9
**pressures** [2] - 55:7, 56:13
**pretty** [3] - 26:10, 39:25, 70:13
**prevent** [1] - 24:12
**previously** [2] - 32:19, 66:20
**pricing** [3] - 15:10, 31:10, 54:20
**principally** [1] - 40:14
**prior** [3] - 7:16, 24:25, 43:21
**priority** [1] - 63:7
**pro** [2] - 7:15, 66:21
**probably** [3] - 36:19, 43:20, 45:10
**problem** [4] - 23:10, 63:2, 65:8, 72:8
**problems** [2] - 17:23, 62:10
**procedural** [4] - 12:12, 19:8, 53:8, 53:21
**procedurally** [1] - 58:23
**procedure** [5] - 14:5,

14:6, 18:9, 18:13, 50:12
**proceed** [8] - 6:8, 7:12, 18:19, 19:5, 19:9, 20:11, 21:23, 24:19
**proceeding** [1] - 16:9
**proceedings** [4] - 6:14, 73:22, 75:6, 75:7
**PROCEEDINGS** [1] - 4:1
**Proceedings** [1] - 1:25
**proceeds** [1] - 45:25
**process** [6] - 11:6, 29:16, 31:19, 35:1, 42:3, 43:18, 45:22, 49:22, 51:19
**processes** [1] - 24:7
**produced** [1] - 1:25
**product** [2] - 47:3, 47:6
**professional** [1] - 73:6
**professionalism** [1] - 66:7
**program** [1] - 9:25
**programming** [2] - 49:22, 50:2
**progress** [1] - 40:11
**prohibition** [1] - 18:7
**project** [4] - 27:10, 43:14, 45:25, 46:10
**projects** [2] - 14:6, 50:14
**promised** [1] - 71:14
**promptly** [2] - 13:12, 31:13
**pronounced** [1] - 4:16
**proposal** [8] - 11:4, 13:21, 24:10, 41:15, 47:7, 47:15, 67:22, 68:5
**proposals** [5] - 34:17, 35:22, 35:24, 67:22, 72:6
**proposed** [3] - 13:5, 13:14, 14:9
**prose** [1] - 56:10
**protect** [1] - 56:19
**provide** [9] - 10:12, 25:20, 26:12, 36:25, 38:22, 55:12, 69:15, 70:25
**provided** [3] - 14:15, 24:25, 44:10
**providently** [1] - 55:24
**provides** [1] - 27:8
**providing** [1] - 24:23
**proximate** [1] - 48:20

prudent [2] - 10:23, 11:11
public [1] - 44:9
publicly [1] - 48:6
pull [2] - 60:7
pulled [1] - 56:12
pure [1] - 17:16
purely [1] - 18:11
purpose [1] - 6:10
purposes [6] - 7:13, 9:10, 36:14, 53:18, 61:3, 73:14
push [2] - 46:2, 46:6
pushes [1] - 61:8
put [8] - 9:1, 23:3, 24:7, 42:4, 42:9, 47:4, 48:14, 72:13
putting [1] - 24:12

## Q

questions [20] - 6:25, 7:7, 7:24, 8:7, 17:24, 17:25, 24:10, 38:8, 46:21, 55:3, 68:15, 68:16, 69:6, 70:5, 70:12, 71:16, 72:20, 73:1, 73:6, 73:18
quick [3] - 45:6, 45:18, 60:1
quicker [1] - 44:25
quickly [2] - 20:12, 57:10
quite [6] - 12:22, 12:24, 15:10, 22:10, 46:13, 70:19
quote [1] - 29:12
quotes [1] - 42:5

## R

R [4] - 1:19, 1:21, 2:1, 3:1
rack [1] - 63:16
raise [1] - 64:18
raised [1] - 16:24
raising [1] - 15:5
RANDEE [1] - 2:7
Randy [1] - 4:20
RANDY [1] - 2:2
range [2] - 22:13, 28:3
raring [1] - 63:17
rather [1] - 55:17
RAYMOND [1] - 3:6
re [3] - 46:23, 47:14, 60:21
re-examination [2] - 46:23, 47:14
re-hearing [1] - 60:21
reaction [2] - 30:17,

30:18
read [1] - 57:18
readers [1] - 49:19
reading [1] - 16:17
ready [7] - 48:10, 54:14, 57:6, 61:6, 63:13, 63:16, 64:5
real [3] - 30:22, 39:15, 60:8
realize [2] - 37:14, 62:8
really [8] - 15:1, 20:5, 32:6, 45:19, 57:14, 57:20, 58:15, 64:20
rear [1] - 63:17
reason [2] - 33:13, 46:25
reasonable [4] - 34:20, 53:22, 56:6, 61:1
reasons [1] - 20:22
recall [1] - 41:19
received [4] - 7:12, 8:21, 39:21, 41:4
recess [1] - 65:20
Recess [2] - 40:5, 66:1
recite [1] - 44:19
recognized [1] - 20:19
recommendation [6] - 13:18, 14:1, 41:2, 41:8, 41:14, 41:15
recommended [1] - 13:19
reconvene [2] - 40:3, 54:15
record [44] - 4:19, 6:11, 21:18, 21:25, 22:4, 22:6, 22:8, 22:17, 23:4, 23:7, 23:22, 23:23, 24:4, 24:21, 24:24, 25:3, 25:9, 25:22, 26:4, 27:2, 28:11, 28:12, 30:8, 30:19, 31:12, 31:23, 32:2, 32:7, 33:9, 34:13, 35:2, 35:24, 36:10, 39:1, 39:7, 39:21, 40:9, 41:25, 58:8, 58:11, 67:20, 68:7, 72:2, 75:7
recorded [1] - 1:25
records [3] - 24:16, 24:22, 25:21
reduced [1] - 28:16
reevaluate [1] - 14:7
reevaluation [9] - 14:4, 42:14, 42:20, 42:21, 42:25, 43:11, 44:12, 45:22, 50:9

reevaluations [1] - 50:12
reference [1] - 16:21
referred [3] - 28:21, 46:23, 49:8
referring [2] - 23:10, 29:21
refers [1] - 37:3
regard [1] - 51:13
regardless [1] - 49:11
regularly [1] - 24:15
regulation [2] - 42:22, 50:11
REICHMAN [9] - 3:11, 3:11, 5:18, 63:23, 64:13, 65:13, 67:9, 70:8, 72:24
Reichman [8] - 5:19, 63:22, 64:12, 65:12, 67:7, 70:7, 72:23
reiterate [2] - 59:6, 66:5
related [1] - 20:25
relatively [2] - 54:3, 55:21
relax [3] - 18:16, 18:19, 59:2
release [1] - 61:7
relegated [1] - 17:17
relevance [1] - 15:7
relevant [6] - 15:1, 15:16, 24:17, 30:9, 37:15, 39:2
relief [8] - 53:1, 53:2, 54:22, 55:11, 57:22, 57:25, 60:22, 70:22
remain [2] - 45:23, 45:25
remand [6] - 53:6, 53:17, 59:5, 59:7, 59:8, 59:11
remedies [3] - 52:4, 52:13, 54:23
remedy [3] - 58:24, 59:4, 59:5
remember [1] - 8:25
removed [1] - 29:18
renewal [1] - 66:19
repair [1] - 46:1
repeat [2] - 26:23, 44:3
repeated [1] - 21:15
reply [3] - 8:22, 12:15, 16:15
reported [1] - 48:4
Reporter [1] - 1:23, 75:4, 75:11
reporter [2] - 6:8, 6:10, 40:1
REPORTER'S [1] -

75:1
representation [1] - 20:17
representing [3] - 4:22, 5:24, 54:12
represents [1] - 29:12
request [12] - 8:15, 8:25, 9:4, 9:11, 11:14, 12:11, 15:4, 15:15, 19:18, 55:16, 66:17, 67:21
requested [1] - 29:16
requests [1] - 72:5
require [1] - 53:2
required [2] - 43:13, 47:14
requirements [1] - 52:22
reserve [3] - 16:8, 21:22, 62:1
resident [1] - 1:12
resist [1] - 32:21
resolution [4] - 9:22, 11:1, 11:2, 20:11
resolve [1] - 11:3
resolved [3] - 13:12, 19:4, 20:13
Resources [1] - 5:11
resources [2] - 19:1, 33:22
respect [9] - 8:2, 21:24, 28:13, 36:14, 39:25, 51:23, 66:8, 67:20, 73:8
respectfully [3] - 10:24, 17:20, 20:15
respond [3] - 12:9, 13:2, 50:24
responded [1] - 31:4
response [13] - 6:6, 7:8, 7:10, 7:23, 7:25, 8:8, 12:15, 14:17, 16:1, 16:7, 37:7, 38:9, 68:3
responses [3] - 35:20, 38:17, 39:18
rest [2] - 21:23, 73:20
restrictions [1] - 69:12
resubmit [2] - 39:6, 68:14
return [1] - 65:25
returning [1] - 66:23
review [10] - 10:1, 11:6, 21:3, 22:9, 22:16, 24:4, 32:2, 37:14, 47:2, 68:8
Review [1] - 41:1
reviewing [2] - 22:17, 47:3
reviews [1] - 15:6

revised [1] - 46:6
RICE [1] - 2:6
Rice [1] - 4:23
RICHARD [1] - 1:12
Richard [3] - 2:10, 2:17, 4:24
RIESEL [1] - 2:18
Riesel [1] - 5:15
ripe [1] - 9:16
ripeness [2] - 11:10, 14:18
rise [2] - 4:4, 15:10
risk [1] - 17:7
RMR [3] - 1:23, 75:3, 75:10
ROBERTA [1] - 3:3
rodeo [1] - 56:23
role [1] - 62:1
rollover [1] - 69:23
Roseland [1] - 2:8
rough [2] - 48:20, 60:10
roughly [4] - 27:11, 28:2, 29:20, 36:7
row [3] - 5:3, 36:12, 36:16
RPR [3] - 1:23, 75:3, 75:10
ruling [1] - 59:12
run [5] - 15:21, 40:4, 55:5, 55:6, 55:10
running [2] - 39:22, 60:20

## S

S [2] - 2:1, 3:1
s [1] - 37:1
s-stamped [1] - 37:1
sake [5] - 11:12, 37:13, 56:16, 60:11, 60:14
Samantha [1] - 5:10
SAMANTHA [1] - 2:12
same [21] - 7:2, 7:6, 15:13, 15:18, 19:7, 20:13, 20:14, 22:21, 22:22, 23:11, 23:13, 25:20, 28:1, 29:10, 39:14, 42:19, 44:1, 55:3, 55:23, 57:1, 71:15
Saturday [1] - 60:16
says [1] - 6:21
scenario [1] - 14:13
scenarios [1] - 49:24
schedule [1] - 40:21
scheduled [2] - 41:3, 41:11
schedules [2] - 34:4,

66:22
**scheme** [3] - 31:10, 52:21, 54:20
**school** [1] - 34:7
**school-aged** [1] - 34:7
**SCHWARTZBERG** [1] - 3:15
**Schwartzberg** [1] - 5:24
**scope** [2] - 10:21, 59:8
**Scotch** [1] - 44:15
**seated** [3] - 4:5, 40:7, 66:3
**second** [8] - 17:7, 19:7, 22:12, 29:9, 29:15, 46:4, 46:8
**secondly** [1] - 14:3
**seconds** [1] - 24:1
**section** [1] - 37:21
**secure** [2] - 25:21, 38:23
**seeing** [1] - 73:13
**seek** [3] - 16:16, 19:17, 55:11
**seeking** [3] - 8:17, 18:5, 60:21
**seems** [3] - 18:10, 23:7, 59:23
**sees** [1] - 16:17
**self** [1] - 56:15
**self-aware** [1] - 56:15
**send** [1] - 73:17
**sense** [16] - 17:10, 34:15, 36:4, 41:17, 42:2, 43:17, 43:23, 49:23, 51:20, 52:19, 53:9, 53:13, 53:22, 54:24, 55:15, 70:20
**separate** [2] - 17:10, 58:21
**series** [2] - 7:15, 41:10
**seriously** [1] - 25:9
**serve** [2] - 56:7, 60:19
**served** [1] - 25:22
**serves** [1] - 8:22
**set** [6] - 16:19, 24:11, 37:2, 39:7, 42:16, 50:21
**setting** [1] - 51:23
**seven** [1] - 68:13
**Shailen** [1] - 2:17
**shall** [2] - 21:25, 55:8
**shape** [1] - 66:12
**share** [1] - 27:23
**Shari** [1] - 5:11
**SHARI** [1] - 2:12
**sharing** [1] - 25:23
**she** [1] - 62:20
**she's** [1] - 44:2

**shed** [1] - 23:17
**sheet** [1] - 44:3
**shoes** [1] - 57:24
**short** [1] - 54:3
**shortly** [2] - 65:25, 71:7
**shoulders** [1] - 63:15
**side** [7] - 6:22, 11:17, 12:9, 20:24, 28:1, 71:1
**significance** [1] - 22:22
**significant** [2] - 20:18, 21:1, 21:19, 22:15, 27:7, 27:9, 31:8, 50:1, 62:21
**SILAGI** [1] - 2:14
**Silagi** [1] - 5:12
**silence** [2] - 4:7, 37:8
**silly** [1] - 6:24
**similar** [1] - 25:20
**similarly** [1] - 1:13
**simple** [1] - 6:10
**simplest** [1] - 36:18
**simply** [2] - 17:5, 35:1
**since** [3] - 11:25, 12:12, 57:24
**single** [4] - 25:11, 39:1, 39:6, 69:14
**sir** [6] - 18:1, 35:15, 60:5, 69:8, 71:13, 71:25
**sit** [1] - 24:2
**site** [2] - 25:21, 25:23
**sitting** [1] - 5:4
**situated** [1] - 1:13
**situation** [2] - 6:20, 58:11
**situations** [2] - 24:22, 59:9
**Sive** [1] - 5:14
**SIVE** [1] - 2:18
**six** [1] - 69:19
**size** [4] - 25:5, 27:18, 28:17, 72:2
**slightly** [1] - 53:19
**slimmed** [9] - 30:7, 32:6, 33:9, 36:9, 39:1, 39:7, 39:21, 68:7, 72:2
**slimmed-down** [9] - 30:7, 32:6, 33:9, 36:9, 39:1, 39:7, 39:21, 68:7, 72:2
**slow** [4] - 12:11, 17:1, 17:2, 17:22
**slower** [1] - 45:1
**slowing** [1] - 11:15
**slows** [2] - 11:1, 51:19
**small** [3] - 22:19,

27:18, 55:21
**smart** [1] - 38:3
**SOKOLICH** [1] - 1:11
**Sokolich** [7] - 2:9, 4:13, 4:16, 4:24, 7:19, 16:10, 18:5
**solution** [1] - 23:18
**somebody** [1] - 44:14
**someone** [1] - 6:21
**something** [11] - 8:13, 21:8, 22:8, 33:12, 35:4, 55:23, 56:24, 58:21, 59:23, 67:12, 72:6
**sometime** [6] - 8:3, 44:17, 60:17, 60:25, 61:5, 61:9
**somewhere** [7] - 22:13, 28:2, 43:6, 44:11, 51:15, 60:15, 68:13
**soon** [3] - 11:16, 15:24, 59:21
**sooner** [3] - 35:5, 51:20, 63:12
**sorry** [1] - 29:2
**Southern** [1] - 30:20
**sovereign** [2] - 19:10, 19:15
**space** [1] - 67:3
**SPALDING** [1] - 2:2
**Spalding** [1] - 4:21
**span** [1] - 61:18
**speak** [7] - 19:12, 21:6, 26:20, 45:19, 46:18, 62:14, 72:12
**speak..** [1] - 60:12
**SPEAKER** [4] - 33:2, 33:3, 38:18, 39:19
**speaks** [1] - 47:16
**specific** [7] - 11:4, 13:17, 20:19, 23:23, 50:8, 50:13, 59:5
**specifically** [2] - 16:21, 69:5
**spend** [3] - 23:2, 55:17, 55:24
**spinning** [1] - 63:17
**spoken** [1] - 61:11
**sponsors** [3] - 43:14, 44:17, 46:10
**sponte** [1] - 52:7
**spreadsheet** [1] - 29:9
**Square** [1] - 1:19
**staff** [3] - 22:19, 25:15, 55:21
**stake** [4] - 42:9, 51:14, 65:24, 67:14
**stakeholder** [1] - 31:18

**stamp** [2] - 36:11, 36:17
**stamped** [1] - 37:1
**stand** [1] - 65:20
**standard** [3] - 14:5, 22:16, 50:12
**standards** [2] - 32:1, 52:21
**start** [13] - 13:10, 39:22, 43:23, 49:14, 61:16, 61:23, 61:25, 63:11, 63:17, 68:8, 69:16, 69:17
**started** [1] - 10:17
**starting** [2] - 61:4, 63:12
**starts** [2] - 7:3, 49:8
**state** [3] - 16:22, 17:5, 22:1
**State** [16] - 2:5, 4:11, 4:22, 7:18, 8:15, 13:11, 13:25, 14:14, 16:22, 17:6, 17:12, 18:6, 20:16, 32:11, 32:22, 43:15
**STATE** [1] - 1:2
**State's** [2] - 18:12, 27:19
**statements** [1] - 21:13
**STATES** [9] - 1:1, 1:5, 1:16, 2:11, 2:11, 2:12, 2:12, 2:13, 2:14
**States** [9] - 2:16, 4:2, 4:12, 5:12, 19:11, 19:16, 24:2, 24:5, 75:4
**status** [4] - 7:16, 8:12, 17:17, 71:1
**statute** [4] - 42:21, 46:24, 47:1, 50:10
**statutes** [1] - 52:22
**stay** [4] - 19:3, 33:6, 39:23, 70:2
**stayed** [1] - 19:8
**stenography** [1] - 1:25
**step** [4] - 30:19, 42:14, 43:9, 43:14
**steps** [4] - 13:16, 14:10, 48:3, 56:19
**still** [3] - 14:9, 15:19, 68:23
**story** [3] - 7:3, 7:5, 56:25
**straight** [2] - 17:2, 52:8
**Street** [2] - 2:14, 3:7
**streetlights** [1] - 49:11
**stretch** [1] - 40:2
**stroking** [1] - 58:14

**strongly** [2] - 33:25, 55:14
**structure** [8] - 13:18, 13:20, 42:1, 42:13, 42:15, 42:16, 43:12, 49:12
**study** [2] - 53:18, 54:3
**stupid** [1] - 6:24
**sua** [1] - 52:7
**sub** [1] - 37:2
**sub-set** [1] - 37:2
**subject** [1] - 66:18
**submission** [1] - 19:2
**submit** [2] - 17:5, 18:6
**submitted** [7] - 8:20, 9:19, 11:2, 11:19, 16:15, 39:4, 57:6
**subsequent** [2] - 8:10, 10:20
**substantial** [1] - 26:4
**success** [1] - 58:1
**successfully** [1] - 25:15
**sufficient** [2] - 9:1, 15:25
**suggest** [5] - 10:24, 33:17, 33:25, 59:13, 72:11
**suggested** [1] - 10:2
**suggesting** [1] - 28:9
**suggestion** [3] - 23:21, 32:18, 36:22
**suggestions** [2] - 24:13
**Suite** [1] - 3:7
**summarize** [2] - 6:15, 22:1
**summarized** [2] - 54:12, 59:3
**summarizes** [1] - 27:8
**summary** [1] - 57:19
**supplement** [2] - 8:16, 13:14
**supplemental** [4] - 10:1, 22:7, 28:22, 46:1
**supplements** [1] - 9:15
**supply** [1] - 67:21
**support** [11] - 10:13, 12:14, 16:22, 17:6, 18:6, 18:12, 19:2, 20:10, 25:14, 32:11, 70:17
**supporting** [2] - 5:20, 5:25
**supposed** [2] - 47:3, 64:13
**sure** [21] - 6:11, 6:16, 7:1, 14:7, 15:6,

21:16, 22:10, 23:13,
23:15, 35:3, 42:11,
44:1, 51:11, 52:2,
52:3, 52:7, 52:17,
61:6, 61:10, 71:15,
72:15
**surrogate** [1] - 73:17
**switch** [4] - 48:5,
48:11, 48:23, 60:15
**switching** [1] - 48:23
**system** [6] - 36:10,
36:14, 36:19, 50:3,
50:25, 51:4

**T**

**table** [2] - 7:3, 33:6
**tad** [1] - 58:6
**take** [17] - 14:23,
18:16, 18:19, 26:6,
34:8, 42:3, 43:17,
43:19, 48:8, 54:25,
56:1, 56:18, 59:2,
60:19, 61:7, 68:8,
69:18
**taken** [2] - 40:5, 66:1
**takes** [2] - 7:1, 52:5
**taking** [1] - 48:3
**talk** [10] - 6:7, 10:9,
24:14, 33:13, 33:19,
33:20, 36:20, 45:4,
60:8, 72:12
**talking** [6] - 15:13,
23:13, 25:12, 62:12
**Tape** [1] - 44:15
**target** [1] - 60:25
**targeted** [1] - 72:7
**tax** [1] - 61:14
**TBTA** [12] - 9:23,
13:21, 14:3, 41:5,
41:13, 41:14, 41:15,
41:24, 42:13, 44:5,
44:11, 49:12
**tear** [1] - 18:18
**tech** [2] - 72:13
**technical** [1] - 25:16
**technology** [2] -
48:24, 49:1
**teen** [2] - 64:3, 70:9
**template** [1] - 57:20
**ten** [3] - 40:3, 68:10,
68:13
**tends** [2] - 34:5, 37:24
**TENZER** [1] - 3:2
**Tenzer** [1] - 5:16
**terms** [5] - 36:9,
42:10, 48:19, 57:21,
65:24
**terribly** [1] - 33:22
**text** [1] - 39:20

**thanking** [1] - 65:14
**thanks** [1] - 63:21
**theater** [1] - 32:23
**theme** [1] - 49:17
**themselves** [1] - 56:19
**thereafter** [2] - 49:12,
63:24
**therefore** [2] - 14:7,
15:19
**they're** [4] - 10:19,
44:24, 48:6, 56:11
**thinking** [1] - 31:14
**third** [3] - 5:3, 16:19,
17:13
**Third** [1] - 60:23
**though** [2] - 22:20,
31:18
**thought** [2] - 34:14,
70:19
**thoughts** [1] - 37:6
**three** [10] - 8:4, 12:7,
12:17, 15:24, 16:24,
25:12, 26:7, 26:10,
27:18, 27:22
**throated** [4] - 10:15,
11:9, 11:24, 12:1
**throughout** [1] - 21:15
**Thursday** [2] - 19:9,
66:25
**timeline** [11] - 22:18,
40:19, 45:19, 46:14,
46:17, 46:19, 48:9,
50:13, 56:15, 58:4,
60:11
**timelines** [3] - 40:24,
50:4, 51:23
**times** [1] - 17:19
**timing** [3] - 34:15,
46:2, 46:12
**TMRB** [4] - 13:19,
41:8, 41:13, 41:15
**today** [14] - 5:1, 7:13,
7:17, 8:14, 53:11,
53:25, 56:22, 57:8,
58:15, 63:13, 65:10,
66:9, 66:11
**today's** [2] - 8:10, 9:10
**together** [1] - 56:22
**TOLENTINO** [1] - 3:6
**toll** [3] - 48:25, 49:20,
50:23
**tolling** [20] - 13:18,
13:20, 14:11, 41:6,
41:25, 42:13, 42:14,
43:12, 43:16, 43:21,
43:23, 44:18, 45:9,
45:10, 46:4, 46:8,
49:8, 49:12, 49:14,
52:20
**too** [5] - 31:18, 35:8,

54:25, 64:24, 73:11
**top** [3] - 18:18, 28:4,
58:17
**topic** [1] - 71:16
**torn** [1] - 55:10
**total** [1] - 22:13
**touch** [2] - 40:21,
72:13
**towards** [2] - 34:4,
56:12
**tracks** [1] - 38:6
**TRADE** [1] - 1:22
**Trade** [2] - 24:3, 24:6
**traffic** [1] - 73:11
**Traffic** [1] - 41:1
**transcript** [2] - 6:13,
75:6
**Transcript** [1] - 1:25
**transcription** [1] -
1:25
**Transportation** [10] -
1:6, 1:17, 2:16, 3:9,
4:12, 4:14, 5:25,
27:17, 46:10, 46:12
**TRANSPORTATION**
[1] - 1:9
**travel** [1] - 69:14
**traveling** [2] - 68:1,
69:11
**treat** [1] - 57:1
**treated** [1] - 66:8
**Tri** [1] - 40:24
**Tri-Borough** [1] -
40:24
**Triborough** [1] - 3:9
**triggers** [1] - 45:20
**trips** [1] - 66:23
**true** [1] - 75:6
**Trump** [1] - 15:7
**truncated** [1] - 28:11
**trust** [7] - 31:24, 38:1,
48:12, 54:5, 56:20,
62:14, 73:16
**try** [13] - 13:10, 21:12,
23:12, 25:18, 30:19,
33:8, 36:17, 47:25,
49:7, 56:6, 57:4,
57:5, 69:19
**trying** [3] - 47:4,
66:22, 67:2
**Tuesday** [3] - 35:23,
67:25, 68:1
**tuned** [1] - 39:23
**Tunnel** [2] - 3:10,
40:25
**turn** [1] - 4:7
**turns** [2] - 51:19,
60:16
**twice** [2] - 8:1, 17:4
**two** [26] - 12:7, 12:13,

15:24, 16:11, 16:16,
16:17, 17:21, 22:4,
27:18, 29:4, 29:12,
33:21, 34:19, 34:20,
35:5, 40:1, 41:21,
49:2, 55:21, 55:22,
61:21, 65:4, 68:8,
69:7, 70:14
**Two** [1] - 1:19
**two-and-a-half** [2] -
34:20, 35:5
**typically** [2] - 49:10,
50:14

**U**

**U.S** [4] - 1:22, 24:5,
30:21, 75:11
**ultimate** [2] - 23:21,
54:22
**ultimately** [4] - 13:22,
14:22, 49:11, 54:17
**unavailable** [2] -
61:17, 62:25
**under** [9] - 9:16,
20:21, 22:16, 32:2,
46:24, 52:13, 52:22,
54:18, 60:24
**undercut** [1] - 15:2
**underlying** [2] - 17:9,
58:1
**underneath** [2] -
31:18, 67:8
**understand** [22] -
6:16, 9:17, 12:22,
22:1, 22:25, 23:4,
24:9, 28:8, 29:3,
36:4, 36:6, 37:20,
40:24, 41:7, 47:20,
49:17, 51:10, 52:3,
52:18, 54:5, 68:17,
71:18
**understandable** [1] -
17:11
**understanding** [8] -
22:22, 40:18, 42:20,
45:5, 46:10, 47:22,
52:4, 58:9
**understands** [1] -
21:16
**understood** [5] -
12:16, 38:10, 63:16,
68:20, 70:2
**unfavorable** [1] -
59:12
**UNIDENTIFIED** [4] -
33:2, 33:3, 38:18,
39:19
**uniform** [1] - 39:6
**UNITED** [9] - 1:1, 1:5,

1:16, 2:11, 2:11,
2:12, 2:12, 2:13,
2:14
**United** [9] - 2:16, 4:2,
4:12, 5:12, 19:11,
19:16, 24:2, 24:5,
75:4
**unlawful** [3] - 53:17,
54:2, 54:18
**unnecessarily** [1] -
69:21
**unnoticed** [1] - 66:9
**unprecedented** [2] -
31:9, 54:19
**unripe** [1] - 15:19
**until** [8] - 12:1, 16:8,
35:23, 42:6, 59:24,
64:13, 68:3, 72:9
**unwieldy** [1] - 25:4
**urge** [2] - 37:24, 55:14
**us** [18] - 7:12, 10:24,
11:13, 11:20, 24:15,
40:1, 40:2, 45:4,
48:22, 49:2, 49:3,
52:5, 56:22, 57:20,
58:7, 61:8, 63:8,
63:12
**used** [2] - 24:15, 49:13
**usefully** [1] - 55:25
**users** [1] - 56:10
**utilize** [1] - 36:13
**utmostly** [1] - 57:13

**V**

**vacate** [1] - 59:11
**vacation** [2] - 34:5,
64:10
**vacatur** [1] - 59:10
**valid** [3] - 14:9, 45:24,
45:25
**variable** [1] - 46:13
**variables** [1] - 43:24
**variation** [1] - 49:17
**variety** [1] - 39:5
**various** [2] - 18:8,
52:22
**verge** [1] - 19:19
**vernacular** [1] - 13:15
**version** [4] - 28:12,
30:8, 32:6, 36:9
**versions** [1] - 26:5
**via** [1] - 25:23
**viability** [1] - 11:9
**vice** [2] - 7:15, 66:21
**viciates** [1] - 21:3
**view** [3] - 15:10, 58:4,
68:23
**virtually** [1] - 61:21
**virtue** [1] - 23:6

**voluminous** [3] - 24:16, 24:21, 24:22
**vs** [4] - 1:4, 1:15, 4:12, 4:13

## W

**waiver** [2] - 19:10, 19:15
**wanted** [3] - 50:13, 51:11, 57:2
**wants** [2] - 11:20, 59:21
**Warren** [1] - 7:19
**Washington** [1] - 3:8
**wasn't** [1] - 31:20
**way** [15] - 6:14, 17:11, 23:3, 26:1, 31:20, 33:25, 37:10, 39:14, 39:23, 48:6, 50:24, 56:22, 57:18, 58:3, 65:14
**ways** [3] - 23:11, 39:5, 61:11
**we'll** [13] - 8:13, 14:21, 14:23, 14:24, 15:15, 31:12, 32:5, 40:3, 52:10, 58:23, 71:6, 72:11, 72:14
**we've** [2] - 29:23, 44:14
**Wednesday** [2] - 66:25, 68:3
**week** [13] - 19:9, 25:2, 34:18, 35:22, 39:6, 61:10, 62:7, 66:24, 67:8, 67:11, 68:9, 71:8, 73:20
**weeks** [11] - 12:7, 12:17, 15:24, 34:19, 34:20, 35:5, 47:14, 61:7, 61:12, 73:12
**welcome** [4] - 19:22, 20:24, 21:5, 21:20
**well** [26] - 4:13, 5:5, 10:6, 12:3, 14:13, 17:13, 22:11, 22:17, 25:20, 26:24, 35:6, 39:25, 46:25, 48:14, 49:16, 49:24, 54:9, 54:12, 56:4, 56:13, 56:20, 57:3, 59:4, 64:3, 65:15, 73:12
**Wettre** [1] - 33:21
**whatever** [6] - 12:10, 12:17, 27:3, 37:19, 71:9, 72:15
**whatsoever** [2] - 17:10, 17:23
**wheels** [1] - 63:17

**whenever** [1] - 63:7
**whisper** [1] - 19:13
**white** [1] - 35:10
**whole** [2] - 34:5, 65:21
**whoops** [1] - 15:22
**widely** [1] - 48:4
**willing** [3] - 8:23, 9:4, 20:3
**window** [2] - 61:4, 73:16
**wise** [1] - 58:24
**wish** [7] - 16:6, 19:5, 19:23, 33:1, 40:8, 68:17, 73:12
**wishes** [2] - 8:24, 64:17
**within** [3] - 8:3, 8:10, 66:15
**without** [4] - 17:2, 47:2, 59:11, 66:18
**word** [2] - 42:1, 42:4
**words** [1] - 11:24
**work** [11] - 23:22, 29:23, 31:11, 32:20, 33:23, 33:25, 37:3, 37:9, 40:20, 56:6, 60:10
**working** [1] - 29:25
**works** [1] - 61:18
**world** [1] - 56:24
**worry** [1] - 15:3
**worst** [1] - 35:7
**wouldn't** [1] - 47:1
**write** [1] - 44:2
**write-up** [1] - 44:2
**writing** [2] - 32:24, 44:6
**wrong** [2] - 21:15, 27:12

## X

**X** [2] - 6:21

## Y

**year** [1] - 11:5
**yep** [1] - 68:25
**yet** [3] - 15:21, 54:11, 55:5
**York** [10] - 2:4, 2:20, 3:4, 3:16, 43:15
**you'll** [4] - 23:16, 38:22, 68:4, 73:10
**yourself** [2] - 18:14, 62:15
**yourselves** [1] - 4:19

## Z

**zone** [1] - 68:2