# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY, *Plaintiff*, v. UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMNISTRATION, SHAILEN BHATT, in his official capacity as Administrator of the Federal Highway Administration, and RICHARD J. MARQUIS, in his official capacity as Division Administrator of the New York Division of the Federal Highway Administration, *Defendants*, and THE METROPOLITAN TRANSPORTATION AUTHORITY, *et al.*, *Defendant-Intervenors*. | Civil Action No. 23 Civ. 03885 Hon. Leo M. Gordon |

**BRIEF OF AMICI CURIAE ENVIRONMENTAL DEFENSE FUND, NEW YORK LEAGUE OF CONSERVATION VOTERS, TRI-STATE TRANSPORTATION CAMPAIGN, RIDERS ALLIANCE, OPEN PLANS, REAL ESTATE BOARD OF NEW YORK, NEW YORK LAWYERS FOR THE PUBLIC INTEREST, WE ACT FOR ENVIRONMENTAL JUSTICE, STREETSPAC, TRANSPORTATION ALTERNATIVES, NEW YORK PUBLIC INTEREST RESEARCH GROUP FUND, AND MICHAEL B. GERRARD IN OPPOSITION TO PLAINTIFF'S PROPOSED ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTEREST OF THE AMICI ...............................................................................1

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT .........................................................................................................2

I. Vacatur of the FONSI and Granting the Plaintiff's Requested TRO Would Cause Significant Disruption, Depriving Millions Regionwide of Cleaner Air and Less Congested Streets ......................................................5

II. The EA and FONSI complied with NEPA Requirements and the Areas That Court Ordered the FHWA to Address on Remand Have Already Been Addressed in the Supplemental Record and are Insignificant. ...............................................................................................7

III. The Harm to Human Health That Would be Caused by Vacating the FONSI and Granting Plaintiff's Requested TRO and the Relative Insignificance of the Basis for the Remand to FHWA Support the Court's Decision to Remand Without Vacating the FONSI under the *Allied-Signal* Test .................................................................................11

CONCLUSION ...................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Signal, Inc. v. U.S. NRC*,
  988 F.2d 146 (D.C. Cir 1993) ................................................................. 3, 4, 8, 11

*American Bankers Ass'n v. Nat'l Credit Union Admin.*,
  934 F.3d 649 (D.C. Cir. 2019) ....................................................................... 3

*Black Oak Energy, LLC v. FERC*,
  725 F.3d 230 (D.C. Cir. 2013) ...................................................................... 11

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*,
  781 F.3d 1271 (11th Cir. 2015) ..................................................................... 4

*Gulf Restoration Network v. Haaland*,
  47 F.4th 795 (D.C. Cir 2022) ..................................................................... 3, 8

*Natural Res. Def. Council v. EPA*,
  489 F.3d 1250 (D.C. Cir. 2007) ................................................................... 12

*Oglala Sioux Tribe v. U.S. NRC*,
  896 F.3d 520 (D.C. Cir 2018) ....................................................................... 9

*Prometheus Radio Project v. Fed. Commc'ns Comm'n*,
  824 F.3d 33 (3d Cir. 2016) ........................................................................... 3

*U.S. Sugar Corp. v. EPA*,
  844 F.3d 268 (D.C. Cir. 2016) ..................................................................... 12

**Statutes & Rules**

5 U.S.C. §551-559 ............................................................................................ 7

National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ....................... *passim*

**Other Authorities**

*Air Pollution and the Health of New Yorkers*: *The Impact of Fine Particles and Ozone*, N.Y.C. Dep't of Health & Mental Hygiene, https://www.nyc.gov/assets/doh/downloads/pdf/eode/eode-air-quality-impact.pdf (last visited January 1, 2025) ...........................................5 n.4

*All That We've Lost: Congestion Pricing Should Have Started on June 30*, Streetsblog NYC (June 30, 2024), https://nyc.streetsblog.org/2024/06/30/all-weve-lost-congestion-pricing-should-have-started-today (last visited January 1, 2025) ................7 n.10

Andrew Slottje, *Remand Without Vacatur in a Changing Environment*, 132 Yale Law Journal 932 (2023) ..........................................3 n.1

Central Business District (CBD) Tolling Program Final Environmental Assessment (EA), U.S. Dep't of Transp., Fed. Highway Admin. (Apr. 2023), https://new.mta.info/document/111101 ..........................................................6 n.6

Central Business District (CBD) Tolling Program Reevaluation, MTA (June 2024), https://new.mta.info/document/142711 .......................... 5 n.2 & n.3

United States Census Bureau data for Hudson County New Jersey as of 2020, https://data.census.gov/profile/Hudson_County,_New_Jersey?g=0 50XX00US34017 (last visited January 1, 2025) ............................................6 n.9

## INTEREST OF THE AMICI

All of the *amici* on whose behalf this brief is submitted were *amici* in the previous proceedings in this case, except for the addition of Michael B. Gerrard, who is Andrew Sabin Professor of Professional Practice at Columbia Law School and Faculty Director of the Sabin Center for Climate Change Law. Professor Gerrard contributed to the preparation of this brief. *Amici* represent broad and diverse interests across the region and are united by their strong commitment to ensuring implementation of this vital program on January 5th and realizing the essential health, safety and economic benefits for millions of people across the region provided by the CBD Tolling Program.

## SUMMARY OF ARGUMENT

Amici submit this brief to oppose Plaintiff's efforts to further delay or prevent the implementation of congestion pricing. Residents of the region deserve to receive the considerable environmental, health, transportation, equity and accessibility, environmental justice, and positive economic and financial benefits that the congestion pricing program would bring. Amici respectfully submit that this Court should deny the relief sought by Plaintiff for the following three reasons.

First, vacating the Federal Highway Administration's ("FHWA") Finding of No Significant Impact ("FONSI") and granting Plaintiff's requested TRO and preliminary injunction would significantly disrupt implementation of

congestion pricing. This disruption would deprive millions regionwide of the benefits of congestion pricing, including significant reductions in region-wide congestion and air pollution.

Second, any deficiencies identified in the Court's December 30, 2024 Opinion are minor and have already been addressed in supplements to the record.

Third, under the Allied-Signal test, the disruptive effect of Plaintiff's proposed relief as well as the absence of any significant, unaddressed deficiencies support the Court's decision to remand without vacating the FONSI.

## ARGUMENT

Neither this Court nor any other that has reviewed the extensive environmental record supporting the CBD Tolling Program has ordered vacatur or imposed an injunction blocking the Program. New Jersey nonetheless maintains that it is entitled to this relief. New Jersey is wrong. Under the prevailing test for vacatur, that remedy is entirely unwarranted here because vacating the Final EA and FONSI would be tremendously disruptive, the agency's errors are curable, and vacatur would have serious adverse consequences for human health and the environment.

A court's decision whether to vacate depends on the seriousness of the challenged document's deficiencies and the disruptive consequences of an interim change that may later be changed again. *Gulf Restoration Network v. Haaland*, 47

F.4th 795, 804 (D.C. Cir 2022) (remanding to agency to correct deficiencies in NEPA analysis, but refusing to vacate underlying decision to lease offshore lands for oil drilling) (citing *Allied-Signal, Inc. v. U.S. NRC*, 988 F.2d 146, 150-51 (D.C. Cir 1993)).  While courts examine both the extent of an agency's errors and the potential disruptive consequences, either prong can support a determination to remand without vacatur: "A strong showing of one factor may obviate the need to find a similar showing of the other." *American Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019).

      The *Allied-Signal* test has become the standard test for determining whether remand without vacatur is appropriate; it "balances the legal deficiencies of an agency's action against the hardship that vacating the action may cause."[1] The Third Circuit has relied on the test, observing that "[v]acatur typically is inappropriate where it is 'conceivable'" that an agency "can, if given the opportunity," cure a defect, particularly in light of "the 'disruptive consequences of vacating.'" *Prometheus Radio Project v. Fed. Commc'ns Comm'n*, 824 F.3d 33, 52 (3d Cir. 2016) (quoting *Allied-Signal*, 988 F.2d at 151).  Other circuits likewise view the *Allied-Signal* framework as "an instructive test for determining when a court should remand without vacating the agency's action." *Black Warrior*

---

[1] Andrew Slottje, *Remand Without Vacatur in a Changing Environment*, 132 Yale Law Journal 932, 932 (2023).

*Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015).

New Jersey would nonetheless have the Court deprive millions of New Jersey and New York residents of air quality and traffic improvements and impose significant health risks on the basis of issues that the Court has already determined could be explained by the agency on remand. But the Court got it right the first time by ordering remand without vacatur, and it should decline New Jersey's attempt to relitigate this issue, along with New Jersey's last-minute attempt to secure an injunction.

*Amici* address three points below. First, *amici* address the "disruptive consequences" prong of the *Allied-Signal* framework, because similar considerations also demonstrate why any extraordinary injunction at this late stage would be inappropriate and unjust. Next, in Section II of this brief, we discuss the relative seriousness of the deficiencies the Court identified in its opinion, including whether the deficiencies have already been addressed by subsequent agency action. Finally, in Section III of the brief, *amici* describe the significant risks to human health that would be caused by vacatur or injunction.

## I.    Vacatur of the FONSI and Granting the Plaintiff's Requested TRO Would Cause Significant Disruption, Depriving Millions Regionwide of Cleaner Air and Less Congested Streets

In this section, we want to highlight not only the significant disruption that would be caused by vacating the FHWA's FONSI but also the irreparable harm that would result if the court were to grant the Plaintiff's requested Temporary Restraining Order ("TRO") to stop the implementation of the CBD Tolling Program this Sunday, January 5, 2025.

Implementing the CBD Tolling Program would begin to lessen the region's persistent air pollution and worst in the nation congestion. The adopted program would significantly reduce truck trips across Manhattan, ultimately reducing such trips by up to 55% and daily vehicle volume within the CBD by 17% compared to current conditions when the tolls are fully phased in.[2] This would result in concomitant air pollution reductions in the entire region, including New Jersey.[3] These reductions in air pollution would result in real improvements in public health in New York and New Jersey. The City of New York estimates that reductions in PM2.5 levels by 10% could reduce hundreds of premature deaths, hospital admissions and emergency room visits annually.[4] When fully

---

[2] Central Business District (CBD) Tolling Program Reevaluation ("Reevaluation"), MTA (June 2024), ES-7, Table 1.1, https://new.mta.info/document/142711.
[3] *Id.* at ES-9.
[4] *Air Pollution and the Health of New Yorkers*: *The Impact of Fine Particles and Ozone*, N.Y.C. Dep't of Health & Mental Hygiene, https://www.nyc.gov/assets/doh/downloads/pdf/eode/eode-air-quality-impact.pdf (last visited January 1, 2025).

phased in, the CBD Tolling program is projected to reduce PM2.5 levels in the CBD from traffic by 11.37% and 5.39% in Hudson County, New Jersey.[5] This will benefit not only the approximately 617,000 CBD residents,[6] the 7.7 million people who, on average, enter and leave the CBD daily,[7] including the approximately 771,820 New Jersey residents expected to commute into the CBD by PATH trains and by NJ TRANSIT bus and rail when the program is fully phased in[8] but the more than 720,000 residents of Hudson County[9], New Jersey.

In addition to the environmental benefits detailed above, implementing the CBD Tolling Program will provide up to $15 billion dollars of funding on a regular basis for improvements to the regional transportation systems that serve many millions of citizens in the Tri-State Metropolitan area.

Vacating the FONSI or issuing a TRO would further delay the achievement of those reductions and additional transit funding not only for an indefinite period of time but perhaps permanently, depending on FHWA's response to such a delay. Those air pollution and congestion reductions have already been delayed from June 30, 2024. During that time, drivers in the CBD,

---

[5] Reevaluation at 93, Table 10.3.
[6] Central Business District (CBD) Tolling Program Final Environmental Assessment (EA), U.S. Dep't of Transp., Fed. Highway Admin. (Apr. 2023), ES-2 at DOT_0036193, https://new.mta.info/document/111101.
[7] *Id.* at Figure ES-3 at DOT_0036194.
[8] See Reevaluation at 43, Table 4C.1. The 636,000 residents combines the 161,171 expected to commute into the CBD from New Jersey by rail with the 475,141 expected to commute into the CBD from Manhattan via NJ TRANSIT bus.
[9] *See* United States Census Bureau data for Hudson County New Jersey as of 2020, https://data.census.gov/profile/Hudson_County_New_Jersey?g=050XX00US34017 (last visited January 1, 2025)

including drivers from New Jersey, have wasted over 7 million more hours sitting in traffic than if congestion pricing had been in place; and an additional 1.3 million tons of greenhouse gases have been emitted.[10]  The lack of funding has also put a pause on a number of important transit projects.  Every day that the implementation of the CBD Tolling Program is further delayed, more driver hours are wasted and unnecessary premature deaths, hospital visits and emergency room visits occur.

**II.     The EA and FONSI complied with NEPA Requirements and the Areas That Court Ordered the FHWA to Address on Remand Have Already Been Addressed in the Supplemental Record and are Insignificant.**

The December 30 Opinion of this Court, after a very thorough analysis, dismissed almost all of the Plaintiff's allegations that the FHWA acted arbitrarily or capriciously and thus did not comply with the Administrative Procedure Act[11] (APA) in developing the EA and FONSI as required by the National Environmental Policy Act.[12]  While the Court did not fault the FHWA's overall NEPA analysis, the Court remanded two issues to the agency for further explanation:[13]

---

[10] *See All That We've Lost: Congestion Pricing Should Have Started on June 30*, Streetsblog NYC (June 30, 2024), https://nyc.streetsblog.org/2024/06/30/all-weve-lost-congestion-pricing-should-have-started-today (last visited January 1, 2025)
[11] 5 U.S.C. §551-559.
[12] *See* Opinion of Judge Leo M. Gordon, No. 2:23-cv-03885 (D. N.J. Dec. 30, 2024), ECF No. 191 ("Opinion").
[13] The Court also asked the FHWA to address one of Plaintiff's allegations as a matter of first interest in the FHWA's response to the Court's remand.  See Opinion at 14 n.7.  This is not a "deficiency" in the FHWA's NEPA analysis. Instead, this is a clarification of the correct procedure to address this particular Plaintiff allegation.

1. Mitigation: The relationship between the general mitigation commitments outlined in the EA and the resolution of any and all specific implementation impacts that require mitigation. Specifically, the Court asked for an explanation of the differing levels of mitigation in the Bronx compared to potentially significantly impacted areas in New Jersey.[14]

2. Alternatives: The reason why alternative T-2 (tolling the East River Bridges) was rejected when it appears as though it would achieve the same objectives as the adopted CBD Tolling Program considering the lowered levels of revenue that will be raised in the early stages of the phased in CBD Tolling Program.[15]

Neither of these are "serious deficiencies" under the *Allied-Signal* and *Gulf Restoration* standards for the following reasons:

First, the Court acknowledges in the Opinion that FHWA has already supplemented the record to address the Court's requests for further explanation. Although the Court reviewed this further information, in response to arguments from the Defendants and Defendant's Intervenors, it did not consider that information in reaching its decision.[16] *Amici* believe that these record supplements provide the explanations that the Court seeks from the FHWA on remand. However, even if they ultimately do not, the fact that responses to the Court's requests for explanations already exist means that these so-called "deficiencies"

---

[14] Opinion Section III.C.
[15] Opinion Section III.D
[16] See the discussion at page 52, footnote 17 of the Opinion regarding the supplemental explanations for allocating money for placed based mitigation in New Jersey versus the Bronx ending with the Court stating that "no part of this Opinion depends on any information contained in that supplemental record."  See also the reference to the Supplement to the Record, ECF Nos 186 & 187 at page 62 of the Opinion.

- 8 -

are capable of being addressed and are thus not sufficient to justify vacatur. See, *Oglala Sioux Tribe v. U.S. NRC*, 896 F.3d 520, 538 (D.C. Cir 2018) (deficiencies in NEPA analysis not sufficient to justify vacatur because court not given any reason to expect agency could not correct those deficiencies on remand) (internal citations omitted). Here, the Court may not have been able to base its determination as to whether a specific mitigation program or alternatives analysis was sufficiently justified by FHWA on the information the Court reviewed. However, the June 2024 reevaluation provides the explanation that the Court seeks. Therefore, the so-called deficiencies are insufficient to justify vacatur.

Second, the remand does not address the adequacy of the NEPA analysis itself. The Court does not identify significant potential environmental impacts that went unaddressed in the EA nor does the Court require additional studies or assessments by the FHWA or Project Sponsors. In addition, the Court does not indicate that the FHWA or the Project Sponsors did not take a "hard look" at any of the NEPA issues involved in the CBD Tolling Program. On the contrary the Court rejects all of Plaintiff's arguments that the FHWA's NEPA analysis itself was flawed. Therefore, the Court is not stating that the analysis was insufficient. This finding is consistent with a similar finding by Judge Lewis J. Liman (S.D.N.Y.) that the EA complied with NEPA requirements after an exhaustive

- 9 -

review of the adequacy of the EA in his June 20, 2024 Opinion in the consolidated cases of *Mulgrew v. U.S. Department of Transportation*.[17]

In addition, the Court on pages 61-62 of its Opinion concluded that the FHWA considered a range of alternatives and explained its determination. The Opinion further stated that the FHWA's analysis of alternatives went far beyond the requirements of the regulations and the standard of review. However, the Court reserved judgment with regard to the claim related to alternative T-2 which would require tolling of various bridges based on what it characterized as the diminished importance of revenue in the latest phased in proposal.

*Amici* believe that the analysis of the alternatives does not change based on the revised tolling program since the objections raised by the FHWA and the Project Sponsors remain the same. In addition, the revenue is still a critically important part of the overall program despite the phase-in change.

This issue clearly does not justify the relief requested by the Plaintiff in its request for preliminary relief, nor does it establish an error that could not be cured on remand, thereby justifying vacatur.

Here the Court is simply asking the FHWA to revise its explanation of certain specific findings and to further discuss the alternative analysis.  At most,

---

[17] Opinion and Order, in consolidated cases 24-cv-1644(LJL), 24-cv-367(LJL), 23-cv-10365(LJL) (S.D.N.Y. June 20, 2024), ECF No. 86.

the Court is asking for the FHWA to potentially change one rationale for one portion of its findings regarding mitigation and add some wording to the alternative analysis. Plaintiff's mischaracterizations to the contrary, this request for additional explanation does not rise to the level of seriousness needed to justify vacatur. The Court need only find it "plausible" that the agency will reach the same result on remand while redressing its failure to explain. *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013) (finding it "plausible that [the agency] can redress its failure of explanation on remand while reaching the same result").

**III.    The Harm to Human Health That Would be Caused by Vacating the FONSI and Granting Plaintiff's Requested TRO and the Relative Insignificance of the Basis for the Remand to FHWA Support the Court's Decision to Remand Without Vacating the FONSI under the *Allied-Signal* Test**

As described above, *Allied-Signal* established a two-part test to determine whether to vacate when courts remand to an agency to address NEPA issues: first is the seriousness of the basis for the remand, second is the disruption that a remand would cause. We believe that both prongs of this test are clearly satisfied here.

We began with the disruptive consequences of vacating the FONSI and granting the Plaintiff's requested TRO because we believe that they are so significant as to be literally a matter of life and death, of hospital admissions and

- 11 -

emergency room visits. Furthermore, significant amounts of time and money continue to be wasted by sitting in unnecessary traffic while investments that could improve transit and mobility go wanting. Simply because millions have been required to endure this dire set of circumstances for decades does not mean that stopping the one program that could provide some measure of relief does not have significant impacts that cause irreparable harm.

As discussed in Section II, the Opinion does not reject the FHWA's overall NEPA analysis but simply requests additional explanations that already exist in supplemental record submissions of which the Court is aware but, in response to a party request, did not use as the basis for this Opinion. Therefore, to the extent that these areas requiring additional explanation could be characterized as a "deficiency" that deficiency is very minor and has already been addressed.

At bottom, the inescapable reality is that New Jersey's request would harm human health and the environment throughout the region. In cases like this one, courts have repeatedly held that remand without vacatur is appropriate because the challenged agency decision protects public health and safety. Particularly in cases where the "defects are curable," courts give great weight to the need to avoid defeating "the enhanced protection of the environmental values." *U.S. Sugar Corp. v. EPA*, 844 F.3d 268, 270 (D.C. Cir. 2016) (quoting *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008)); *see also Natural Res.*

- 12 -

*Def. Council v. EPA*, 489 F.3d 1250, 1265 (D.C. Cir. 2007) ("Where the court has concluded that a final rule is deficient, the court has traditionally not vacated the rule if doing so would have serious adverse implications for public health and the environment.").

## CONCLUSION

For the reasons set forth above, *amici* respectfully urge the Court to deny Plaintiff's Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction.

Dated: January 2, 2025                                  Respectfully submitted,

/s/ Andrew D. Otis
Andrew D. Otis*
Karen Steinberg Kennedy*
Cynthia Lovinger Siderman
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Charles S. Warren*
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
(212) 448-1100

    Dror Ladin**
    EARTH JUSTICE
    48 Wall Street, 15th Floor
    New York, NY 10005
    (917) 410-8701

    *Attorneys for Amici Curiae*

    *\*Admitted pro hac vice*
    *\*\* Pro hac vice admission pending*

- 14 -