# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, SHAILEN BHATT, in his official capacity as Administrator of the Federal Highway Administration, and RICHARD J. MARQUIS, in his official capacity as Division Administrator of the New York Division of the Federal Highway Administration,<br><br>Defendants,<br><br>and<br><br>METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Defendant-Intervenors. | Civil Case No. 2:23-cv-03885 |

**PLAINTIFF STATE OF NEW JERSEY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS APPLICATION BY ORDER TO SHOW CAUSE FOR CLARIFICATION AND/OR RECONSIDERATION AND FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    I.    The Court Should Clarify that Its Decision Vacates the Final EA and FONSI ..................... 4

        A.  The Deficiencies in the Final EA and FONSI Are Significant ..................................... 6

        B.  Vacatur Will Not Cause a Serious Disruption ................................................................ 8

    II.   The Court Should Issue a TRO and PI ................................................................................. 9

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFL-CIO v. Chao*,
 496 F. Supp. 2d 76 (D.D.C. 2007) .................................................................................................8

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
 480 U.S. 531 (1987) ...............................................................................................................4, 10

*Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*,
 781 F.3d 1271 (11th Cir. 2015) ....................................................................................................8

*Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*,
 774 F.3d 173 (3d Cir. 2014) ....................................................................................................1, 5

*Council Tree Commc'ns, Inc. v. F.C.C.*,
 619 F.3d 235 (3d Cir. 2010) .........................................................................................................2

*Ctr. for Biological Diversity v. Ross*,
 480 F. Supp. 3d 236 (D.D.C. 2020) .............................................................................................5

*Env't Defense Ctr. v. Bureau of Ocean Energy Mgmt.*,
 36 F.4th 850 (9th Cir. 2022) ....................................................................................................2, 6

*Erlbaum v. N.J. Dep't of Env't Prot.*,
 2017 WL 465466 (D.N.J. Feb. 3, 2017) .....................................................................................11

*Food & Water Watch v. FERC*,
 28 F.4th 277 (D.C. Cir. 2022) ......................................................................................................5

*Gulf Restoration Network v. Haaland*,
 47 F.4th 795 (D.C. Cir. 2022) ......................................................................................................5

*Ingram v. Experian Info. Sols., Inc.*,
 83 F.4th 231 (3d Cir. 2023) .........................................................................................................5

*Int'l Swaps & Derivatives Ass'n v. U.S. Commodity Futures Trading Comm'n*,
 887 F. Supp. 2d 259 (D.D.C. 2012) .............................................................................................2

*League Wild. Defs./Blue Mtns. Biod. Proj. v. Forsgren*,
 309 F.3d 1181 (9th Cir. 2002) ...................................................................................................11

*Martinez v. Rivello*,
 2023 WL 3376545 (3d Cir. May 11, 2023) ...............................................................................11

*Matson Navigation Co., Inc. v. U.S. Dep't of Transp.*,
  471 F. Supp. 3d 60 (D.D.C.) ..................................................................................................8

*Max's Seafood Café v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) ...................................................................................................5

*Nat'l Parks & Conservation Ass'n v. Babbitt*,
  241 F.3d 722 (9th Cir. 2001), *abrogated on other grounds by Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ...............................................................................10

*Neighbors of Cuddy Mtn. v. U.S. Forest Serv.*,
  137 F.3d 1372 (9th Cir. 1998) ..........................................................................................6, 11

*O'Reilly v. U.S. Army Corps of Eng'rs*,
  477 F.3d 225 (5th Cir. 2007) ..........................................................................................2, 3, 6

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ................................................................................................11

*Prometheus Radio Project v. Fed. Commc's Comm'n*,
  824 F.3d 33 (3d Cir. 2016) .....................................................................................................7

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017) ..................................................10

*Robertson v. Methow Valley Citizens Council*,
  490 U.S. 332 (1989) ............................................................................................................2, 6

*S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*,
  588 F.3d 718 (9th Cir. 2009) ............................................................................................6, 11

*San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.*,
  657 F. Supp. 2d 1233, 1241–42 (D. Colo. 2009) ..................................................................11

*Sierra Club v. Bosworth*,
  510 F.3d 1016 (9th Cir. 2007) ..........................................................................................6, 11

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ................................................................................................11

*Sierra Forest Legacy v. Sherman*,
  951 F. Supp. 2d 1100 (E.D. Cal. 2013) ..................................................................................5

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  985 F.3d 1032 (D.C. Cir. 2021) .....................................................................................2, 6, 7

*W. Watersheds Project v. Zinke*,
  441 F. Supp. 3d 1042 (D. Idaho 2020) ...................................................................................6

**Statutes**

5 U.S.C. § 706(2) ..................................................................................................................1, 5

**Other Authorities**

23 C.F.R. § 771.105(e)..................................................................................................................6

40 C.F.R. §1501.6(c).....................................................................................................................6

L. Civ. R. 7.1(i) .............................................................................................................................4

Fed. R. Civ. P. 29(a)(2).................................................................................................................4

**PRELIMINARY STATEMENT**

The question before the Court is straightforward: did it intend to vacate the Final EA and FONSI when it held that the "FHWA and Project Sponsors acted in an arbitrary and capricious manner in reaching their mitigation determination in the Final EA and FONSI" and remanded the case for further agency review? We understand the answer to necessarily be "yes"—as it must be under controlling Third Circuit law. But the MTA still thinks it can launch congestion pricing this Sunday anyway. We therefore respectfully ask this Court to either clarify that, in remanding this case, it also vacated the Final EA and FONSI, precluding the MTA from implementing this unprecedented congestion pricing plan until the remand proceedings this Court ordered are satisfactorily completed, or alternatively, to issue emergency injunctive relief to bar the MTA from altering the *status quo* by "flipping the switch" on congestion pricing in just two days.

Under the circumstances present here, vacatur must be ordered. The Third Circuit has been very clear: vacatur is "ordinarily" required where an agency action is found to be unlawful under the APA, and it is "particularly appropriate" where, as here, the Court would otherwise leave in place an agency action "that is causing the very adverse effect that [the agency] is charged with preventing, and [thus] would be 'legally sanction[ing] an agency's disregard of its statutory or regulatory mandate.'" *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 191 (3d Cir. 2014) (alteration in original) (citation omitted). Tellingly, the FHWA and MTA do not even cite APA Section 706(2), which expressly directs courts to "hold unlawful ***and set aside***" any agency decision that violates the APA. 5 U.S.C. § 706(2) (emphasis added).

Remand without vacatur is an exceptionally rare alternative remedy in this Circuit that is available in very limited circumstances, such as where (1) the "deficiencies in the challenged [agency action are not] serious" and (2) vacatur is "likely to create a[] serious disruption."

1

*Council Tree Commc'ns, Inc. v. F.C.C.*, 619 F.3d 235, 258 (3d Cir. 2010). Neither element is present here.

The "fail[ure] to provide a rational connection between the general mitigation commitments outlined and the specific resolution of any and all significant impacts that may result" from the congestion pricing scheme, despite there being "areas in New Jersey entitled to mitigation," is perhaps the most serious error that could arise from a mitigated FONSI. ECF No. 191 at 50, 53. "[O]mission of a reasonably complete discussion of possible mitigation measures … undermine[s] the 'action-forcing' function of NEPA." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352 (1989) (citation omitted). If significant impacts "*may*" occur and the agency does not explain how they will be mitigated, an EIS "must be prepared." *Env't Defense Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 878–79 (9th Cir. 2022). Vacatur is required here, as "the EA fails to sufficiently demonstrate that the mitigation measures adequately address and remediate the adverse impacts so that they will not significantly affect the environment." *O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d 225, 234 (5th Cir. 2007) (affirming remand with vacatur). Whether the FHWA believes it can rationalize its arbitrary decision on remand is irrelevant. "NEPA violations are serious notwithstanding an agency's argument that it might ultimately be able to justify the challenged action." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1053 (D.C. Cir. 2021).

Nor can the FHWA and MTA credibly claim that vacatur would cause any "serious disruption." "[M]aintain[ing] the *status quo*" pending the remand proceedings would "cause *far less* disruption than vacating the regime after it has gone into effect." *Int'l Swaps & Derivatives Ass'n v. U.S. Commodity Futures Trading Comm'n*, 887 F. Supp. 2d 259, 284 (D.D.C. 2012). Indeed, New York's Governor and the MTA paused this congestion pricing scheme for months

2

when it suited their purposes. They cannot now decry a limited delay caused by their own failure to put together rational mitigation measures.

The MTA claims that "[c]ourts regularly recognize that remand without vacatur is warranted in NEPA cases," ECF No. 201 at 2–3, but that mischaracterizes the caselaw, particularly when the remand involves mitigation deficiencies. In *O'Reilly*, 477 F.3d at 230–31, 233–34, 240–41, for example, the Fifth Circuit affirmed a remand *with* vacatur, reasoning that "mere perfunctory and conclusory language" about mitigation measures "will not be deemed to constitute an adequate record and cannot serve to support the agency's decision not to prepare an EIS." *Id.* at 231. Here, there was not even "perfunctory and conclusory language"; there was no language at all. The MTA and FHWA cite no NEPA case, and we are aware of none, where a court has remanded for mitigation deficiencies without vacating.

Regardless of whether this Court is ready to order vacatur, it should immediately enjoin the FHWA and MTA from implementing the congestion pricing scheme pending the remand. Indeed, courts in NEPA cases routinely enjoin projects from going forward pending remands to address mitigation deficiency. *See infra* Sec. II. All of the factors necessary for injunctive relief are present here. There is a more than reasonable probability that New Jersey will succeed in (i) demonstrating vacatur is required, and (ii) establishing its NEPA claims, including those on which this Court reserved judgment. Indeed, this Court has already held on summary judgment in New Jersey's favor that the FHWA's failure to provide a "rational" explanation of how its "mitigation commitments" would alleviate potential significant adverse impacts in New Jersey was "arbitrary and capricious." ECF No. 191 at 50, 52–53. New Jersey has also shown that it will suffer irreparable harm beginning on Day One of congestion pricing due to traffic diversions, which, unmitigated, will cause increased air pollution in many New Jersey

3

communities. Such "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987). Finally, the FHWA will suffer no prejudice from a delay, the MTA's further delay in any tolling revenues would be *de minimis* and does not outweigh the harm to New Jersey, and the public interest weighs heavily in New Jersey's favor.

For all of these reasons, this Court should now clarify that its decision vacated the Final EA and FONSI, and, alternatively, issue emergency injunctive relief barring this congestion pricing scheme from going forward for the duration of these remand proceedings. Either remedy precludes the MTA from altering the *status quo* by "flipping the switch" on congestion pricing this Sunday, as it has threatened to do.[1]

## ARGUMENT

### I. The Court Should Clarify that Its Decision Vacates the Final EA and FONSI

New Jersey seeks clarification of this Court's decision, which did not expressly address vacatur. Unable to refute the propriety of this request, FHWA and the MTA ignore that New Jersey asks the Court to clarify what it did, not "change its mind." ECF No. 201 at 9. However, to the extent the Court remanded without vacatur, New Jersey has "set[] forth … controlling decisions which [it] believes the Judge has overlooked." L. Civ. R. 7.1(i); *contra* ECF No. 200 at 8; ECF No. 201 at 9. Respectfully, the Court's decision does not indicate that it considered and

---

[1] Two groups of amici curiae impermissibly filed briefs in opposition to New Jersey's motion, ECF Nos. 197, 199, without seeking "the consent of the parties or leave of court," Fed. R. Civ. P. 29(a)(2). The Court should not consider these briefs, especially because they rely on evidence outside the administrative record, *see e.g.*, ECF No. 197 at 6–10; ECF No. 199 at 7, and one requests disclosure of confidential settlement materials, *see* ECF No. 197.

applied controlling Third Circuit precedent.[2] New Jersey's motion is thus far afield of a "recapitulation" of arguments already litigated, considered, and decided. *Contra* ECF No. 200 at 11; ECF No. 201 at 10. It is a request that the Court clarify its ruling and, if necessary, "correct a clear error of law." *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); ECF No. 201 at 10 (agreeing reconsideration may be granted on these grounds).

FHWA and the MTA misrepresent New Jersey's position on when vacatur is required. *See* ECF No. 201 at 11; ECF No. 200 at 8. Where a court determines that an agency's action violates Section 706(2) of the APA, it will "[o]rdinarily … vacat[e] [the] invalid agency action and remand[] the matter to the agency for further review." *Comite' De Apoyo*, 774 F.3d at 191. That courts have discretion to order remand without vacatur in exceptional circumstances does not undermine this well-settled principle. *Contra* ECF No. 200 at 10; ECF No. 201 at 12–13.[3] Neither FHWA nor MTA have carried their "'burden to prove that vacatur is unnecessary.'" *Ctr. for Biological Diversity v. Ross*, 480 F. Supp. 3d 236, 245 (D.D.C. 2020) (citation omitted).[4]

---

[2] These cases need not have been raised prior to the Court's decision, *cf. Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 240 n.5 (3d Cir. 2023), particularly since New Jersey seeks clarification.

[3] FHWA and the MTA wrongly argue that, because courts in other NEPA cases have remanded without vacatur, the same is required here. *See* ECF No. 200 at 10, 12; ECF No. 201 at 12–13. But in those cases, the identified deficiency was relatively minor, and vacatur either (i) would have seriously disrupted a project already underway, or (ii) was not necessary because the project could not proceed pending remand. *See, e.g., Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106–07 (E.D. Cal. 2013) ("defect" in "NEPA analysis" was "'relatively minor,'" and vacatur would have "extremely 'disruptive consequences'"); *Gulf Restoration Network v. Haaland*, 47 F.4th 795, 805 (D.C. Cir. 2022) (agency failed to consider a report that "should not change the bottom line"; "vacatur would be highly disruptive"; and no risk of environmental harm absent vacatur because "exploration and development cannot occur absent further regulatory approvals"); *Food & Water Watch v. FERC*, 28 F.4th 277, 292 (D.C. Cir. 2022) (agency failed to "adequately account[] for foreseeable downstream greenhouse-gas emissions" but could "arrive at the same finding of no significant impact" after doing so; and vacatur would be "'quite disruptive'" as the project was "either mid-construction or operational").

[4] In fact, they forfeited this argument by raising it for the first time at oral argument. *See* ECF No. 201 at 12 (admitting issue was first addressed at oral argument); ECF No. 200 at 11 (same).

### A. The Deficiencies in the Final EA and FONSI Are Significant

"[W]here an agency's NEPA review suffers from a 'significant deficiency,' refusing to vacate the corresponding agency action would 'vitiate' the statute." S*tanding Rock*, 985 F.3d at 1052; *Bureau of Ocean Energy Mgmt.*, 36 F.4th at 882. The "seriousness" of the deficiencies "'should be measured by the effect the error has in contravening the purposes of the statute[s] in question,' here, the APA … and NEPA." *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1083 (D. Idaho 2020) (citation omitted). FHWA's failure to provide a "rational connection" between the EA's mitigation measures and its resolution of significant impacts is a significant deficiency because it contravenes the very purpose of NEPA. ECF No. 191 at 53.

Where an agency issues a mitigated FONSI, its discussion of and commitment to enforceable mitigation measures is a fundamental requirement. *Robertson*, 490 U.S. 332, 352 (1989); *Neighbors of Cuddy Mtn. v. U.S. Forest Serv.*, 137 F.3d 1372, 1380 (9th Cir. 1998); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007). "An essential component of a reasonably complete mitigation discussion is an assessment of whether the proposed mitigation measures can be effective." *S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718, 727 (9th Cir. 2009). "An EIS must be prepared if there are 'substantial questions' regarding whether an agency's proposed action may have significant impacts." *Bureau of Ocean Energy Mgmt.*, 36 F.4th at 878–79; 40 C.F.R. §1501.6(c) ("mitigated [FONSI] shall state any enforceable mitigation requirements"); 23 C.F.R. § 771.105(e).

FHWA's failure to abide by these requirements is not a "discrete issue[]" that can be "readily corrected on remand." ECF No. 200 at 11. It is a "significant deficiency" that requires vacatur. *See, e.g.*, *O'Reilly*, 477 F.3d at 234 (affirming vacatur where "EA fail[ed] to sufficiently demonstrate that the mitigation measures adequately address and remediate the adverse impacts so that they will not significantly affect the environment"). As in *O'Reilly*, FHWA's Final EA and

6

FONSI do not provide a "rational basis" for determining that the agency complied with NEPA so they must be vacated. *Id*.

FHWA and MTA wrongly claim that vacatur "is inappropriate [since] it is 'conceivable' that the [agency] can, if given the opportunity, create a supportable [action]." ECF No. 200 at 8, 11–15 (citing *Prometheus Radio Project v. Fed. Commc's Comm'n*, 824 F.3d 33, 52 (3d Cir. 2016)). For one, *Prometheus* concerned a very different situation in which an agency failed to timely *review* its existing rules and petitioners sought vacatur on the basis of "agency delay rather than arbitrary and capricious action." *Prometheus*, 824 F.3d at 52. In the latter, more typical circumstance presented here, vacatur is the default remedy. *See supra* at 5. Moreover, *Prometheus* did not involve NEPA. "NEPA violations are serious notwithstanding an agency's argument that it might ultimately be able to justify the challenged action" because "[i]f, when an agency declined to prepare an EIS before approving a project, courts considered only whether the agency was likely to ultimately justify the approval, it would subvert NEPA's purpose" and "giv[e] substantial ammunition to agencies seeking to [act] first and conduct comprehensive reviews later." *Standing Rock*, 985 F.3d at 1052–53.

There is no indication that FHWA will be able to "provide a rational connection between the general mitigation commitments outlined and the specific resolution of any and all significant impacts." ECF No. 191 at 53; *Standing Rock*, 985 F.3d at 1052–53 ("[W]here an EIS was required but not prepared, courts should harbor substantial doubt that '"the agency chose correctly"' regarding the substantive action" (citation omitted)). Even if this Court could consider that Re-Evaluation 2 provides meager mitigation funding to just four New Jersey communities (it cannot, *see* ECF No. 191 at 53), it still suffers from the same infirmity this Court identified: it does not explain how the mitigation measures provided will reduce significant

7

impacts to a level of insignificance.[5] Nor does it explain why the MTA committed to no concrete place-based mitigation for New Jersey despite doing so for the Bronx, notwithstanding that the Final EA identified fifteen environmental justice communities in New Jersey with pre-existing air pollutant or chronic disease levels above the 90th percentile—including four already overburdened communities that "may need mitigation." DOT_0007319–20; DOT_0037030.[6]

### B. Vacatur Will Not Cause a Serious Disruption

"[T]his is not a case in which vacatur would have consequences that would prove difficult to unscramble or would alter the status quo in a manner that cannot readily be restored." *Matson Navigation Co., Inc. v. U.S. Dep't of Transp.*, 471 F. Supp. 3d 60, 66 (D.D.C.), *judgment entered*, 480 F. Supp. 3d 282 (D.D.C. 2020) (granting vacatur). Rather, it would "preserve[] the status quo" pending the resolution of this litigation. *See AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92 (D.D.C. 2007). Nor would a short delay undermine the "steps" MTA has already taken to "ensure the Project is ready to be started up seamlessly." *Contra* ECF No. 200 at 15. The tolling structures can remain in place until FHWA completes an adequate environmental review. While MTA claims it will incur millions of dollars per month in costs, it does not explain why it must operate a "roadside tolling system," a "back-office system," maintain a "customer contact center," or incur "consultant costs" if congestion pricing has not yet begun. ECF No. 202 at 7. Nor does it explain why those costs, if indeed unavoidable, are so disruptive as to preclude a six-

---

[5] Re-Evaluation 2 neither (i) identifies which communities will receive which mitigation measures and when, nor (ii) rectify FHWA's arbitrary alternatives analysis. *See* ECF No. 192-1 at 20–22. FHWA admits that the revenue requirement became a moving target that could be—and was—significantly lowered at the whim of the MTA. *See* ECF No. 200 at 14–15.

[6] To correct this deficiency, FHWA would have to alter its entire mitigation scheme, not provide "further explanation." As such, this error "incurably tainted [FHWA's] decisionmaking process," which, per FHWA's own authorities, counsels in favor of vacatur. ECF No. 200 at 12 (quoting *Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015)).

8

*week* pause when New York and the MTA previously delayed congestion pricing for six *months*. Denying vacatur would be far more disruptive in this case than granting it.

## II.     The Court Should Issue a TRO and PI

Alternatively, the court should issue a TRO and PI. It is outrageous for FHWA and the MTA to claim injunctive relief is unavailable because New Jersey "delayed seeking a preliminary injunction until 'the last minute'" and the Court has now issued a final "decision on the merits." ECF No. 201 at 22–23 (citation omitted); ECF No. 200 at 16–17. New Jersey repeatedly raised its intention to file an emergency application with the Court prior to its decision and followed the Court's suggestion that such an application was unnecessary because a merits decision would be made before congestion pricing was implemented. Moreover, the Court must still decide the issues on which it reserved judgment and ordered remand. New Jersey's request is timely.

New Jersey satisfies the factors to warrant injunctive relief. *First*, New Jersey is likely to succeed on the merits of its claim that the Court's decision vacated the Final EA and FONSI. *See supra* Sec. I; ECF No. 192-1 at 16–18. Further, New Jersey has already succeeded on the merits of at least one of its claims (the mitigation claim), which is sufficient in itself to show a reasonable probability of success on the merits. *See* ECF No. 192-1 at 19 n.14. New Jersey is also likely to succeed on its claims that FHWA violated NEPA by undertaking an arbitrary alternatives analysis and not evaluating the adopted tolling scheme. *See* ECF No. 192-1 at 20–23.

FHWA and MTA try to avoid this reality by asserting that New Jersey's application advances new claims. (*See* ECF No. 200 at 18; ECF No. 201 at 15.) On the contrary, New Jersey's application rests solely on the claims in its complaint—including the failure of FHWA to appropriately assess mitigation measures in New Jersey and FHWA's failure to properly analyze alternatives. To the extent that New Jersey relies on FHWA's reevaluations post-dating the

9

administrative record, it does so because these reevaluations further bring into focus the insufficiencies of the Final EA and FONSI—not because they are essential for obtaining relief.

*Second*, New Jersey has shown that it will "more likely than not" suffer irreparable harm in the absence of preliminary relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). Contrary to FHWA's unsupported contention otherwise (*see* ECF No. 200 at 21), New Jersey will begin experiencing significant traffic diversions and attendant air quality decreases on Day One of congestion pricing. *See* ECF No. 192-1 at 23–25. This "environmental injury by its nature" cannot "be adequately remedied by money damages" and is likely to be "permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co.*, 480 U.S. at 545. MTA suggests that this harm to New Jersey will be temporary, ECF No. 201 at 24, while FHWA argues the Court already found New Jersey will suffer no irreparable harm or only "speculative" harm, ECF No. 200 at 20. Not so. The Court acknowledges "significant adverse effects likely to result" in New Jersey which can be reduced only through mitigation. ECF No. 191 at 19, 50. And air pollution impacts cannot be remedied after the fact.

Moreover, FHWA was required to prepare a reasonably complete discussion of mitigation measures. *See supra* Sec. I.A. Contrary to what FHWA and the MTA now claim, ECF No. 200 at 19–20; ECF No. 201 at 19–20, the failure to include such a discussion when significant environmental impacts may otherwise occur indisputably constitutes irreparable harm. *See, e.g.*, *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 734 (9th Cir. 2001), *abrogated on other grounds by Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) (requiring injunction where it was "unclear" from the EA "whether mitigation measures were "sufficiently

10

related to the effects they [were] designed to cure").[7] New Jersey's remedy "would be meaningless if [congestion pricing] were to proceed during the pendency of this litigation," because even if it "ultimately prevailed," "alternatives would be foreclosed [at that point] and the environmental harm would already be inflicted." *San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.*, 657 F. Supp. 2d 1233, 1241–42 (D. Colo. 2009).[8]

*Third*, the final two injunctive-relief factors favor the State. Delay will not harm FHWA, and any *de minimis* delay in the MTA's collection of tolling revenues is purely financial harm that cannot constitute "even greater harm" than New Jersey will suffer if congestion pricing proceeds. *Martinez v. Rivello*, 2023 WL 3376545, at *1 (3d Cir. May 11, 2023).[9] The public interest in safeguarding the environment and public health also weigh in favor of an injunction. *See Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) ("[P]ublic interest favor[s] issuance of an injunction because allowing a potentially environmentally damaging program to proceed without an adequate record of decision runs contrary to the mandate of NEPA.")

---

[7] *See also S. Fork Band*, 588 F.3d at 727–28 (requiring injunction where EIS did not "assess the effectiveness of the mitigation measures" and "[t]he likelihood of irreparable environmental injury without adequate study of the adverse effects and possible mitigation is high"); *League Wild. Defs./Blue Mtns. Biod. Proj. v. Forsgren*, 309 F.3d 1181, 1192 (9th Cir. 2002) (requiring injunction where agency did not "discuss[] mitigation measures in significant detail"); *Neighbors of Cuddy Mtn*, 137 F.3d at 1380 (requiring injunction because "perfunctory description of mitigating measures is inconsistent with [NEPA's] 'hard look' [requirement]").

[8] MTA suggests it may cure the deficiencies in its allocation of mitigation funds by simply "making a larger financial commitment." ECF No. 201 at 23–24. But this argument misses the mark. Unlike in *Erlbaum v. N.J. Dep't of Env't Prot.*, 2017 WL 465466, at *16 (D.N.J. Feb. 3, 2017), where "fear" of "speculative" harm could readily be remedied by using funds to purchase a drainage system, irreparable harm will occur here as soon as traffic diverts into New Jersey.

[9] A temporary injunction would not "*de facto* enjoin the Traffic Mobility Act," which does not set a deadline for congestion pricing. *Contra* ECF No. 200 at 23. And while MTA argues that a postponement will cost it over $50 million monthly, ECF No. 201 at 26–27, ECF No. 202 at ¶¶ 20–21, any funds lost are "self-inflicted wounds"; had a proper environmental review occurred in the first place, no injunction would be necessary. *Sierra Club v. Trump*, 929 F.3d 670, 706 (9th Cir. 2019). "[T]he public interest in this case lies in safeguarding public health rather than with assuaging [New York's] budgetary woes." *Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013).

## **CONCLUSION**

For these reasons, the Court should clarify that its December 30, 2024 decision vacates the Final EA and FONSI and/or issue a TRO and PI.

Dated:  New York, New York          By:  */s/ Randy M. Mastro*
        January 3, 2025

Randy M. Mastro (NJ Bar No. 011681982)
Craig Carpenito (NJ Bar No. 027102000)
Jessica Benvenisty (*pro hac vice*)
Lauren Myers (*pro hac vice*)
Camilla Akbari (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel. (212) 556-2100

Peter Hsiao (*pro hac vice*)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel. (213) 433-4355

Cynthia AM Stroman (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4704
Tel. (202) 737-0500

*Attorneys for Plaintiff*