# Exhibit A

1   THE COURT: Stop. No. Okay. You had your bite at the
2   apple, Mr. Mastro. That's it. You got it.
3       Go ahead, Ms. Knauer, finish.
4   MS. KNAUER: I can't say for sure whether there is such
5   a case or not, but I don't think Mr. Mastro can either.
6   THE COURT: Okay. Thank you.
7   MS. KNAUER: Thank you.
8       (Brief pause.)
9   THE COURT: All right. Ladies and gentlemen, we are
10  gonna stand in recess. The Court's gonna go back into
11  chambers and think about a few things and then the Court will
12  come back out at an appropriate point in time and advise the
13  parties of what's next.
14      We stand in recess.
15  THE DEPUTY CLERK: All rise.
16      (Recess taken.)
17  THE DEPUTY CLERK: All rise.
18  THE COURT: Be seated, please.
19      I thank everyone for their patience and indulgence.
20      Before the Court is plaintiff's application for an
21  Order to Show Cause to set a briefing schedule on oral
22  argument for clarification and/or reconsideration and for a
23  temporary restraining order and preliminary injunction.
24      After consideration of the filings relative to
25  plaintiff's application, today's oral argument, and the

1  Court's opinion dated December 30, 2024, and all other papers
2  and proceedings in this action, the Court makes the following
3  findings and conclusions:
4       With respect to plaintiff's -- as to the issue of
5  clarification and reconsideration, with respect to plaintiff's
6  motion for clarification or reconsideration, the Court needs
7  to spend little time.
8       Plaintiff purports to bring its motion under Federal
9  Rules of Civil Procedure 59 and 60, see plaintiff's motion at
10 15, also citing without elaboration Local Civil Rule 7.1(i)
11 providing for motions for reconsideration.
12      Problematically, plaintiff fails to explain how its
13 request meets the standards set under those rules, see
14 generally the same, referring to Federal Rule of Civil
15 Procedure 59 to 60 and citing Local Civil Rule 7.1(i), in only
16 a single paragraph in the entire motion.
17      Plaintiff's failure to provide these rules is
18 particularly glaring with respect to Rule 59 which only
19 applies to final judgments.  The Court notes that it has not
20 entered final judgment in this action.
21      Therefore, as conceded by plaintiff, Rule 59 is not
22 applicable here.  See Federal Rule of Civil Procedure 59
23 providing for motion to alter or amend a judgment, emphasis
24 added.  Federal defendants' response at 10, Note 7.
25      As for Federal Rule of Civil Procedure 60 and local

1   Rule 7.1(i), as defendant intervenors explain, those rules
2   have clear standards for their application.  See defendant
3   intervenor's response at 910.
4        Noting that the Third Circuit has held that a court may
5   not grant a motion for reconsideration unless the moving party
6   shows at least one of the following:
7        1:  An intervening change in the controlling law;
8        2:  The availability of new evidence that was not
9   available when the Court issued its order;
10       Or 3:  The need to correct a clear error of law or fact
11  to prevent manifest injustice, quoting *Max's Seafood Café v.*
12  *Quinteros*, 176 F.3d 669, 677, Third Circuit, 1999.
13       Given plaintiff's failure to point to any of these
14  three -- those three criteria or even explain the applicable
15  standard, the Court will reject plaintiff's motion for, quote,
16  reconsideration.
17       To the extent that plaintiff seeks clarification as to
18  the Court's December 30, 2024, opinion on whether that opinion
19  vacated the final EA and FONSI, the omission of any language
20  regarding injunctive relief as well as the lack of an order
21  directing vacatur was clear enough and should speak for
22  itself.
23       However, to avoid any further confusion or needless
24  motion practice, the Court will confirm that its opinion did
25  not vacate the final EA or FONSI.  Instead, it ordered remand

on a limited set of issues for further explanation and, if appropriate, reconsideration.

The District of Columbia Circuit decision in *Allied-Signal*, *Inc. v. NRC*, 988 F.2d 146, D.C. Circuit, 1993, is the commonly accepted standard for deciding whether a remand does or does not require an accompanying vacatur of the underlying agency action.

The *Allied-Signal* standard has two components. The first is the evaluation of the seriousness of the agency's actions and deficiencies and thus the extent of doubt whether the agency chose correctly.

The second is the evaluation of disruptive consequences of an interim change that may itself be changed. The test is a balancing of the two components left to the exercise of the court's discretion.

Under the consideration set forth in *Allied-Signal* and precedent applying that decision in the Third Circuit and elsewhere, this Court remanded the matter without vacatur as it appeared reasonably likely that the FHWA and project sponsors would be able to further explain their decision in such a manner that would render the CBD Tolling Program to being ultimately sustained. See, for example, *Prometheus Radio Project v. Federal Communications Commission,* 824 F.3d at page 33 and 52, Third Circuit, 2016.

Vacatur typically is inappropriate where it is

1 conceivable that the agency can, if given the opportunity,
2 create a supportable action.
3     Also citing *Healthy Gulf v. FERC*, 107 F.4th 1033, 1047,
4 D.C. Circuit 2024, remanding without vacatur because it was
5 reasonably likely that FERC could reach the same decision on
6 remand and vacatur would needlessly disrupt the project.
7     Also citing *Food & Water Watch v. FERC*, 28 F.4th 277,
8 292, D.C. Circuit 2022; and *City of Overland Ohio v. FERC*,
9 932 F.3d 599, at page 611, D.C. Circuit 2019, remanding
10 without vacatur because it was plausible that the agency will
11 be able to supply the explanations required and vacatur of the
12 commission's orders would be quite disruptive.
13     As plaintiff acknowledges in its reply, remand without
14 vacatur has been found to be appropriate where the
15 deficiencies in the challenged agency action are not serious
16 and, two, vacatur is likely to create a serious disruption.
17     Plaintiffs reply at 1 through 2 quoting *Council Tree v.*
18 *FCC*, 619 F.3d 238 at page 258, Third Circuit, 2010.
19     Despite plaintiff's arguments to the contrary, the
20 Court concludes that both elements are met here. Here the
21 Court has remanded two issues to the FHWA. The first is the
22 FHWA decision not to allocate any place-based mitigation
23 dollars to New Jersey in contrast to the allocations to the
24 Bronx.
25     The Court found the discrepancy to be arbitrary and

1  capricious and remanded to the FHWA for explanation.
2       The second is the FHWA's reasoning as to the possible
3  alternatives to CBD tolling in light of the FHWA's post-final
4  EA and FONSI decisions regarding the actual tolling schedules.
5       For the mitigation remand, the Court finds pursuant to
6  the *Allied-Signal* standard that vacatur is inappropriate and
7  that the issue of mitigation dollars goes only to the paying
8  out of tolling funds or other financial resources, not to the
9  operation of the tolling itself.
10      The mitigation finding is not so serious as to justify
11 vacatur, thereby disrupting the collection of the tolls.
12      On the issue of alternatives, the Court finds that the
13 issue of vacatur is premature.  Whether or not there is a
14 problem with the agency's alternatives and analysis requires
15 reviewing the supplemental record and the Court will not
16 prejudge that issue by requiring vacatur of the initial
17 alternatives analysis.
18      The Court's December 30, 2024, opinion explains in
19 detail why plaintiff's challenges to the program lack merit
20 and granted a limited remand for further explanation on
21 two narrow issues but otherwise sustained the underlying
22 administrative analysis.
23      Defendants' responses -- collectively defendants and
24 defendant intervenor's responses to plaintiff's motion clearly
25 demonstrate how vacatur would cause a serious disruption,

1  given the pending launch of the program tomorrow night.  See,
2  e.g., Defendant Intervenor's response at 26 to 28, detailing
3  variety of monetary costs and other public interests that
4  would be damaged by enjoining the program.
5       This should provide the, quote, clarification, closed
6  quote, sought by plaintiff in its motion which the Court will
7  otherwise deny.
8       As to the preliminary injunction, in considering
9  plaintiff's application for preliminary injunctive relief, the
10 Court is guided by *Winter v. NRDC*, 555 U.S. page 7, 2008, a
11 foundational case in the NEPA context that addresses when
12 preliminary injunctive relief should be granted by a court in
13 connection with the alleged NEPA violation.
14      In that decision the court explained a four-factor
15 analysis postulating that a plaintiff seeking a preliminary
16 injunction must establish a likelihood of success on the
17 merits, a likelihood of irreparable injury in the absence of
18 preliminary relief, that the balance of equities tips in its
19 favor, and that an injunction is in the public interest,
20 citing NEPA Law and Litigation, section 4:68, Second Edition,
21 2024.
22      The Court further held that a plaintiff must show more
23 than a possibility of irreparable harm.  Rather, it must show
24 that irreparable injury is likely in the absence of an
25 injunction.  Citing again the NEPA Law and Litigation,

1  section 4:68.  Quoting *Winter*, see also, right, the same NEPA
2  Law and Litigation, section 4:68:   (Reading.)
3         The court was quite firm in requiring the
4      showing of a likelihood of irreparable injury.  A
5      showing of a possibility of injury will not
6      suffice, even if the plaintiff provides a strong
7      showing of likelihood of success.
8         The first two factors are most critical and a
9      court only need reach the remaining factors if the
10     movant first demonstrates that it can win on the
11     merits and that it will suffer irreparable harm in
12     the absence of preliminary relief.
13     *Reilly v. The City of Harrisburg*, 853 F.3d 179,
14 Third Circuit, 2017.  Additionally, the public interest and
15 balance of harms inquiries may merge in cases such as NEPA
16 litigation in which the Government is the party opposing the
17 injunction.  See NEPA Law and Litigation, section 4:73.  See
18 also *Nken*, that's N-K-E-N, *v. Holder*, 556 U.S. 418 at
19 page 435, 2009.
20        Here, after review of the record and consideration of
21 the proceedings today, plaintiff has failed to demonstrate
22 that it is likely to succeed on the merits in its effort to
23 vacate the final EA and FONSI and require the FHWA to prepare
24 an EIS, nor has plaintiff shown the irreparable harm required
25 to prevail in its motion for emergency injunctive relief.

1        With respect to the issue of likelihood of success on
2   the merits, the Court has recently issued a lengthy opinion on
3   the merits rejecting the majority of plaintiff's claims,
4   including its request to vacate the final EA and FONSI and
5   order the preparation of an EIS.
6        While the Court did remand for consideration and
7   further explanation as to a limited discrete set of issues
8   having to do with the agency's consideration of alternatives
9   and the provision of mitigation funding, those issues do not
10  appear to pose insurmountable obstacles for the ultimate
11  approval of the CBD Tolling Program.
12       Thus, while plaintiff has demonstrated some likelihood
13  of success on the merits as to the issue of mitigation
14  funding, this limited remand in and of itself does not
15  demonstrate that plaintiff is likely to prevail on the merits
16  of its broader claims.
17       Putting plaintiff's likelihood of success after remand
18  to the side, plaintiff's request for emergency injunctive
19  relief must fail as plaintiff has failed to demonstrate a
20  likelihood of irreparable harm.
21       As federal defendants emphasize, plaintiff fails to
22  demonstrate its claimed irreparable harm with any evidence;
23  see federal defendants response at 20 to 21, relying on *City
24  of Tempe v. FAA*, 239 F.Supp.2d, 55, District of D.C., 2003,
25  among other cases.

1          Instead, plaintiff's showing of irreparable harm
2  consists of a single record citation and some case precedent.
3  See plaintiff's motion at 23 to 28, citing in the
4  administrative record DOT_0036 -- should be 0003635 as
5  evidence of air quality harm to New Jersey if congestion
6  pricing goes into effect.
7          As noted above and recognized in the parties' briefs,
8  the primary basis for the Court's remand was a lack of
9  specificity as to place-based mitigation funding and
10 potentially impacted areas in New Jersey.
11         While plaintiff decries how critical this mitigation
12 funding is to ameliorate the effects of environmental harm
13 from the program, see plaintiffs motion at 23 to 28 again,
14 plaintiff cannot escape the fact that the harm at issue here
15 is fundamentally one of money.
16         As plaintiff has failed to demonstrate a likelihood of
17 irreparable harm, that is harm that cannot be remedied by
18 monetary damages, the Court will deny plaintiff's motion for
19 emergency injunctive relief, see *Erlbaum v. New Jersey*
20 *Department of Environmental Protection*, No. 16, Civil
21 Docket 8198, 2017 Westlaw 465466, at page 15, District of
22 New Jersey, February 3, 2017.
23         The possibility that adequate compensatory or other
24 corrective relief will be available at a later date in the
25 ordinary course of litigation weighs heavily against the claim

1  of irreparable harm.  Quoting *In Re: Revel AC, Inc.*, 802 F.3d
2  558, 571, Third Circuit, 2015.
3  　　　　Defendant intervenors have acknowledged that such
4  compensatory relief remains available.  See defendant
5  intervenor's response in opposition to plaintiff's motion for
6  emergency relief at page 23, ECF No. 201, arguing that even in
7  the unlikely event that the Court should determine following
8  remand that the FHWA's explanation of the funding commitment
9  is insufficient, that can be easily fixed by the project
10  sponsors making a larger financial commitment.
11  　　　　Accordingly, the Court will deny plaintiff's
12  application for emergency injunctive relief.
13  　　　　On the issue of filing of briefs, a note on what the
14  Court has considered in reaching the above conclusions --
15  findings and conclusions.
16  　　　　There were multiple briefs filed in connection with
17  this emergency motion.  Some, like plaintiff's reply, were not
18  specifically authorized by the rules or accepted by leave of
19  Court after consultation with the parties.
20  　　　　Some, however, like those from amicus curiae, both in
21  support and opposing the motion, were not approved by consent
22  of the parties nor the Court.  See plaintiffs's reply at 4,
23  Note 1.
24  　　　　Plaintiff encouraged the Court not to consider any of
25  the filings by amicus curiae and the Court agrees that it will

1  not and did not consider those unauthorized filings from
2  either side.
3      A written order reflecting the Court's conclusions
4  expressed today will be entered shortly.  In a nutshell, that
5  order will provide that the plaintiff's Order to Show Cause is
6  denied in light of the text order ECF No. 119 setting the
7  schedule for briefing and oral argument on plaintiff's
8  application.
9      Further, that plaintiff's application for clarification
10 and/or reconsideration is denied and that the plaintiff's
11 application for a temporary restraining order and preliminary
12 injunction is denied.
13     That concludes the Court's recitation of its findings
14 and conclusions.
15     The Court thanks the parties for their participation
16 today, the quality of their presentations, and the briefs
17 submitted to the Court in very short order.
18     Mr. Mastro, you rise.
19     MR. MASTRO:  Yes, Your Honor.  Given Your Honor's
20 ruling and the lateness of the hour and we have to await the
21 written order and then notice an appeal, the likelihood that
22 we will be able to get an emergency application before the
23 Third Circuit until tomorrow at the earliest on a weekend when
24 they're flipping the switch, you know, at 11:59 on Sunday, we
25 respectfully request the Court grant an emergency injunction

1  giving us several days to have our application heard in the
2  Third Circuit.
3      We will make it by tomorrow and that would give time
4  for the Third Circuit to decide the question of whether to
5  grant a temporary restraining order or a preliminary
6  injunction during the pendency of the appeal.
7      We respectfully request that Your Honor give us
8  five days to allow the Third Circuit and one judge in the
9  Third Circuit to take up that issue because it seems highly
10 unlikely that we'll be able to get before even a single judge
11 by Sunday night.
12      THE COURT:  I can assure you, Mr. Mastro, I have been
13 in contact with the clerk's office at the Third Circuit all
14 day.  They are awaiting my phone call telling them of the
15 outcome of this proceeding and they are prepared to receive a
16 phone call from you.  They are working acidulously to make
17 sure that a judge or judges are available to hear your
18 emergency request.
19      MR. MASTRO:  I understand that, Your Honor, and, yes,
20 we have also been on the phone.  Your Honor --
21      THE COURT:  Mr. Mastro, I'll let you take it up with
22 the Third Circuit.  I have made my decision for the day.
23      MR. MASTRO:  So Your Honor is denying our request
24 for --
25      THE COURT:  I'm denying your request.

1        Any other business before the Court?
2        UNIDENTIFIED SPEAKER:  I'm a member of the public --
3   excuse me, media.  May I approach and be heard?
4        THE COURT:  You're not a party to this case.  I have
5   made my decision.  Anything you want to ask anybody, you can.
6        The Court stands by its written opinion and what it
7   read into the record.  The Court has no other comments.
8        There being no further business, this matter is
9   adjourned.
10       THE DEPUTY CLERK:  All rise.
11           (Which were all the proceedings held in the
12            above-entitled matter on said date.)
13                     *   *   *   *   *

**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR,** Official Court Reporter of the United States District Court for the District of New Jersey, do hereby certify that the foregoing proceedings are a true and accurate transcript from the record of proceedings in the above-entitled matter.

*/S/Lisa A. Larsen, RPR, RMR, CRR, FCRR*
Official U.S. District Court Reporter ~
District of New Jersey

DATED this January 5, 2025